STEVE MARSHALL
*Attorney General of Alabama*
Edmund G. LaCour Jr. (*pro hac vice* pending)
*Solicitor General*
James W. Davis (*pro hac vice* pending)
*Deputy Attorney General*
A. Barrett Bowdre (*pro hac vice* pending)
*Deputy Solicitor General*
Office of the Alabama Attorney General
  501 Washington Ave.
  P.O. Box 300152
  Montgomery, AL 36130
  Telephone: (334) 353-2196
  Fax: (334) 353-8400
  E-mail: edmund.lacour@AlabamaAG.gov
        jim.davis@AlabamaAG.gov
        barrett.bowdre@AlabamaAG.gov

Paul Beard II (SBN 210563)
FISHER BROYLES LLP
  5670 Wilshire Blvd., Ste. 1800
  Los Angeles, CA 90036-5653
  Telephone: (818) 216-3988
  Fax: (213) 402-5034
  E-mail: paul.beard@fisherbroyles.com

*Attorneys for Proposed Defendant-Intervenor State
of Alabama*

TIMOTHY C. FOX
*Attorney General of Montana*
Melissa Schlichting (SBN 220258)
*Deputy Attorney General*
Montana Department of Justice
  215 N. Sanders St.
  P.O. Box 201401
  Helena, MT 59620-1401
  Telephone: (406) 444-2026
  Fax: (406) 444-3549
  E-mail: MSchlichting@mt.gov

*Attorneys for Proposed Defendant-
Intervenor State of Montana*

*[Additional counsel listed on signature
page]*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| STATE OF CALIFORNIA, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>DAVID BERNHARDT, U.S. Secretary of the Interior, *et al.*,<br><br>    Defendants. | Case No. 4:19-cv-06013-JST<br><br>**NOTICE OF MOTION AND MOTION OF THE STATES OF ALABAMA, ALASKA, ARIZONA *ex rel.* the ARIZONA GAME and FISH COMMISSION, ARKANSAS, IDAHO, KANSAS, MISSOURI, MONTANA, NEBRASKA, NORTH DAKOTA, UTAH, WEST VIRGINIA, and WYOMING TO INTERVENE AS DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATIONS IN SUPPORT THEREOF.**<br><br>Date: January 22, 2020<br>Time: 2:00 p.m.<br>Place: Courtroom 6, 2nd Floor<br>Judge: Hon Jon S. Tigar |

1

## NOTICE OF MOTION AND MOTION TO INTERVENE

2

TO THIS HONORABLE COURT AND COUNSEL FOR THE PARTIES:

3

PLEASE TAKE NOTICE, pursuant to Civil Local Rule 7-2, that on January 22, 2020, at

4

2:00 p.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable

5

Jon S. Tigar (Courtroom 6, 2nd Floor), the States of Alabama, Alaska, Arizona *ex rel.* the

6

Arizona Game and Fish Commission, Arkansas, Idaho, Kansas, Missouri, Montana, Nebraska,

7

North Dakota, Utah, West Virginia, and Wyoming, will and hereby do move to intervene as

8

defendants in the above-entitled action.

9

With this Motion, the Proposed Defendant-Intervenors seek an Order from the Court

10

permitting them to intervene in this action under Federal Rule of Civil Procedure 24. This

11

Motion is supported by the accompanying Memorandum of Points and Authorities, the proposed

12

Order, declarations from several Proposed Defendant-Intervenor States, and any oral argument

13

the Court may allow. In accordance with Federal Rule of Civil 24(c), the Proposed Defendant-

14

Intervenors have also attached a proposed Answer.

15

Counsel for the Proposed Defendant-Intervenors informed counsel for the parties about

16

this motion, and counsel for the parties stated that the parties take no position on the motion.

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2
Page

3
NOTICE OF MOTION AND MOTION TO INTERVENE ........................................................... i

4
LIST OF DECLARATIONS IN SUPPORT ........................................................... iv

5
TABLE OF AUTHORITIES ........................................................... v

6
MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 1

7
STATEMENT OF ISSUES TO BE DECIDED ........................................................... 1

8
I.      BACKGROUND ........................................................... 2

9
    A.      Several Proposed Defendant-Intervenors Challenge the Services'
2016 Rules. ........................................................... 2

10
    B.      The Services Issue Revised Rules ........................................................... 4

11
        1.      Regulations for Listing Species and Designating Critical
Habitat, 84 Fed. Reg. 45,020…………… ........................................................... 6

12

13
        2.      Regulations for Prohibitions to Threatened Wildlife and
Plants, 84 Fed. Reg. 44,753………… ........................................................... 7

14
        3.      Regulations for Interagency Cooperation, 84 Fed. Reg.
44,976………. ........................................................... 8

15

16
    C.      Plaintiffs Challenge the 2019 Rulemaking. ........................................................... 10

17
    D.      The Proposed Defendant-Intervenor States Have Interests That
Will Be Affected By This Action. ........................................................... 11

18
II.      ARGUMENT ........................................................... 14

19
    A.      The Proposed Defendant-Intervenors Are Entitled to Intervene as a
Matter of Right. ........................................................... 14

20

21
        1.      The Motion is Timely. ........................................................... 15

22
        2.      The Proposed Defendant-Intervenors Have Significantly
Protectable Interests Relating to This Action. ........................................................... 16

23
        3.      Plaintiffs' Challenge Threatens to Impair the Interests of
the Proposed Defendant-Intervenors. ........................................................... 19

24

25
        4.      The Federal Defendants Cannot Adequately Represent the
Interests of the Proposed Defendant-Intervenors. ........................................................... 21

26
    B.      In the Alternative, the Court Should Grant the Proposed
Defendant-Intervenors Permission to Intervene. ........................................................... 23

27

28
III.      CONCLUSION ........................................................... 24

1

CERTIFICATE OF SERVICE .................................................................................................. 27

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LIST OF DECLARATIONS IN SUPPORT**

1. Declaration of Christopher M. Blankenship, Commissioner of the Alabama Department of Conservation and Natural Resources

2. Declaration of Douglas Vincent-Lang, Commissioner of the Alaska Department of Fish and Game

3. Declaration of Jim DeVos, Arizona Game and Fish Department

4. Declaration of Scott Pugrud, Administrator of the Idaho Governor's Office of Species Conservation

5. Declaration of Jeffrey A. Chanay, Chief Deputy Attorney General for the State of Kansas

6. Declaration of Melissa Schlichting, Deputy Attorney General for the State of Montana

7. Declaration of James N. Douglas, Director of the Nebraska Game and Parks Commission

8. Declaration of John M. Masslon II, Assistant Solicitor General for the State of West Virginia

9. Declaration of Angela Bruce, Deputy Director of the Wyoming Game and Fish Department

1

# TABLE OF AUTHORITIES

2

## CASES

3

Pages

4

*Ala. ex rel. Steven T. Marshall v. Nat'l Marine Fisheries Serv.*,
  No. 1:16-cv-00593-CG-MU (S.D. Ala. Feb. 2, 2017) ........................................... 2, 4

5

6

*Animal Legal Defense Fund v. Bernhardt*,
  No. 4:19-cv-06813-JST (filed Oct. 21, 2019) ........................................................ 1

7

*Arakaki v. Cayetano*,
  324 F.3d 1078 (9th Cir. 2003) .............................................................................. 21

8

9

*Ariz. Cattle Growers' Ass'n v. Salazar*,
  606 F.3d 1160 (9th Cir. 2010) ............................................................................... 3

10

11

*Black Warrior Riverkeeper, Inc. v. Ala. Dep't of Transp.*,
  No. 2:11-cv-267-WKW, 2016 WL 233672 (M.D. Ala. Jul. 19, 2016) ................... 18

12

*California ex rel. Lockyer v. United States*,
  450 F.3d 436 (9th Cir. 2006) ............................................................................... 16

13

14

*Californians For Safe & Competitive Dump Truck Transp. v. Mendonca*,
  152 F.3d 1184 (9th Cir. 1998) ............................................................................. 22

15

16

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
  647 F.3d 893 (9th Cir. 2011) ......................................................................... 16, 20

17

18

*County of Fresno v. Andrus*,
  622 F.2d 436 (9th Cir. 1980) ......................................................................... 16, 19

19

*Ctr. for Biological Diversity v. Bernhardt*,
  No. 4:19-cv-05206-JST (filed Aug. 21, 2019) ....................................................... 1

20

21

*Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*,
  698 F.3d 1101 (9th Cir. 2012) ............................................................................... 9

22

23

*Forest Conservation Council v. U.S. Forest Serv.*,
  66 F.3d 1489 (9th Cir. 1995) ............................................................................... 22

24

*Freedom from Religion Found., Inc. v. Geithner*,
  644 F.3d 836 (9th Cir. 2011) ............................................................................... 23

25

26

*Fund For Animals, Inc. v. Norton*,
  322 F.3d 728 (D.C. Cir. 2003) ............................................................................. 18

27

28

*Georgia v. U.S. Army Corps of Eng'rs*,
 302 F.3d 1242 (11th Cir. 2002) ............................................................... 22

*Idaho Farm Bureau Fed'n v. Babbitt*,
 58 F.3d 1392 (9th Cir. 1995) ................................................................. 16

*Kootenai Tribe of Idaho v. Veneman*,
 313 F.3d 1094 (9th Cir. 2002) ........................................................... 23, 24

*Nat'l Farm Lines v. Interstate Commerce Comm'n*,
 564 F.2d 381 (10th Cir. 1977) ............................................................... 22

*San Luis & Delta-Mendota Water Auth.*,
 747 F.3d 581 (9th Cir. 2014) ................................................................. 10

*Sierra Club v. EPA*,
 995 F.2d 1478 (9th Cir. 1993) ............................................... 15, 16, 19, 21

*Sierra Club v. Espy*,
 18 F.3d 1202 (5th Cir. 1994) ................................................................. 22

*Smith v. L.A. Unified Sch. Dist.*,
 830 F.3d 843 (9th Cir. 2016) ................................................................. 15

*Stringfellow v. Concerned Neighbors in Action*,
 480 U.S. 370 (1987)............................................................................... 21

*Sw. Ctr. for Biological Diversity v. Berg*,
 268 F.3d 810 (9th Cir. 2001) ........................................................... 21, 22

*Trbovich v. United Mine Workers*,
 404 U.S. 528 (1972)............................................................................... 21

*United States v. Alisal Water Corp.*,
 370 F.3d 915 (9th Cir. 2004) ................................................................. 15

*United States v. City of Los Angeles*,
 288 F.3d 391 (9th Cir. 2002) ........................................................ 15, 16, 19

*United States v. Stringfellow*,
 783 F.2d 821 (9th Cir. 1986) ................................................................. 21

*Vivid Entm't, LLC v. Fielding*,
 774 F.3d 566 (9th Cir. 2014) ................................................................. 21

*WildEarth Guardians v. Jewell*,
 320 F.R.D. 1 (D.D.C. 2017)............................................................. 17, 22

*WildEarth Guardians v. Nat'l Park Serv.*,
  604 F.3d 1192 (10th Cir. 2010) ............................................................ 18, 19

*Wilderness Soc'y v. U.S. Forest Serv.*,
  630 F.3d 1173 (9th Cir. 2011) .................................................................. passim

**STATUTES**

16 U.S.C. § 1532(5)(A)(i) ............................................................................. 3, 20

16 U.S.C. § 1532(5)(A)(ii) ................................................................................... 3

16 U.S.C. § 1532(6) ............................................................................................ 6

16 U.S.C. § 1532(13) ........................................................................................ 11

16 U.S.C. § 1532(20) .......................................................................................... 6

16 U.S.C. § 1533(d) ............................................................................................ 7

16 U.S.C. § 1536(a) ........................................................................................ 3, 8

16 U.S.C. § 1536(a)(2) ........................................................................................ 3

16 U.S.C. § 1538(a) ............................................................................................ 7

**REGULATIONS**

50 C.F.R. § 17.31(a) .............................................................................. 8, 13, 17

50 C.F.R. § 17.31(c) .......................................................................................... 17

50 C.F.R. § 17.71(a) ............................................................................................ 8

50 C.F.R. § 402.02 ......................................................................................... 9, 10

50 C.F.R. § 402.14(c) ........................................................................................ 10

50 C.F.R. § 402.14(g) ........................................................................................ 10

50 C.F.R. § 402.14(h) ........................................................................................ 10

50 C.F.R. § 402.14(l) ......................................................................................... 10

50 C.F.R. § 402.17(a) .......................................................................................... 9

50 C.F.R. § 402.17(b) ........................................................................................ 10

50 C.F.R. § 424.11(b) .......................................................................................... 7

50 C.F.R. § 424.11(d) .......................................................................................... 7

50 C.F.R. § 424.11(e) .......................................................................................... 6

50 C.F.R. § 424.12(b)(1-5) .................................................................................. 2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

50 C.F.R. § 424.12(b)(2) ................................................................................ 6

**FEDERAL REGISTER**

43 Fed. Reg. 18,180 (Apr. 28, 1978) ............................................................ 8

49 Fed. Reg. 38,900 (Oct. 1, 1984)................................................................ 2

71 Fed. Reg. 34,154 (June 13, 2006) .................................................... 12, 17

77 Fed. Reg. 76,740 (Dec. 28, 2012) .......................................................... 14

81 Fed. Reg. 7214 (Feb. 11, 2016) ...................................................... 3, 4, 9

81 Fed. Reg. 7414 (Feb. 11, 2016) .................................................. 2, 3, 6, 20

83 Fed. Reg. 35,174 (Jul. 25, 2018) ............................................................ 4

83 Fed. Reg. 35,178 (Jul. 25, 2018) ......................................................... 4, 9

83 Fed. Reg. 35,193 (Jul. 25, 2018) ............................................................ 4

84 Fed. Reg. 44,753 (Aug. 27, 2019) ................................................ 1, 4, 7, 12

84 Fed. Reg. 44,976 (Aug. 27, 2019) ................................................ 1, 4, 8, 14

84 Fed. Reg. 45,020 (Aug. 27, 2019) .................................................... 4, 6, 7

**RULES**

Civil Local Rule 7-2 .......................................................................................i

Fed R. Civ. P. 24 .......................................................................................i, 20

Fed. R. Civ. P. 24(a) ........................................................................ 14, 16, 23

Fed. R. Civ. P. 24(a)(1) ............................................................................... 20

Fed. R. Civ. P. 24(a)(2) .................................................................. 14, 16, 19, 20

Fed. R. Civ. P. 24(b) .................................................................................... 23

Fed. R. Civ. P. 24(b)(1)(B) .................................................................... 23, 24

Fed. R. Civ. P. 24(b)(3) ............................................................................... 24

Fed. R. Civ. P. 24(c) .......................................................................................i

Notice of Mot., Mot. to Intervene, & Mem. in
Support of Mot., Case No. 4:19-cv-06013-JST

## MEMORANDUM OF POINTS AND AUTHORITIES

### STATEMENT OF ISSUES TO BE DECIDED

The U.S. Fish and Wildlife Service ("FWS") and the National Marine Fisheries Service ("NMFS") recently promulgated three Final Rules addressing how the Services will implement the Endangered Species Act ("ESA"). *See* 84 Fed. Reg. 45,020, 44,753, and 44,976 (Aug. 27, 2019). The Final Rules come on the heels of the Agencies' settlement of litigation challenging rules they promulgated in 2016, which covered several of the same issues as the Final Rules, but had unlawfully expanded the Agencies' authority under the ESA.

The Plaintiff States have challenged the Final Rules as unlawful under the ESA, the Administrative Procedure Act ("APA"), and the National Environmental Protection Act ("NEPA"). *See* First Am. Compl. at 42-50, ECF No. 28. The Proposed Defendant-Intervenors— Alabama, Alaska, Arizona *ex rel.* the Arizona Game and Fish Commission, Arkansas, Idaho, Kansas, Missouri, Montana, Nebraska, North Dakota, Utah, West Virginia, and Wyoming—seek to defend the Final Rules. Many of these States worked to secure these sensible regulatory changes, both by challenging the 2016 rules and by supporting the new Rules during the notice and comment period. All these States stand to benefit from the Rules. Thus, if Plaintiffs are successful in invalidating the Rules or enjoining their application, the Proposed Defendant-Intervenor States will be harmed.[1] The clarity and predictability the Rules bring will be wiped away; the States will face unnecessary and unlawful regulatory burdens; and the ability of States, non-profits, and landowners to creatively cooperate to help at-risk species will be reduced.

This motion presents the following issues:

1.  Whether the Proposed Defendant-Intervenors are entitled to intervene as of right in this case.

2.  Whether the Court should grant the Proposed Defendant-Intervenors' motion for permissive intervention.

---

[1] There are two related cases pending before the Court that present similar challenges. *See Animal Legal Defense Fund v. Bernhardt*, No. 4:19-cv-06813-JST (filed Oct. 21, 2019); *Ctr. for Biological Diversity v. Bernhardt*, No. 4:19-cv-05206-JST (filed Aug. 21, 2019). The Proposed Defendant-Intervenors may seek intervention in those cases to the extent necessary to defend the Rules.

# I.   BACKGROUND

## A.   Several Proposed Defendant-Intervenors Challenge the Services' 2016 Rules.

On February 11, 2016, the Services issued two regulations that were challenged as unlawful by a coalition of 20 States: Alabama, Arkansas, Alaska, Arizona, Colorado, Idaho, Kansas, Louisiana, Michigan, Missouri, Montana, Nebraska, Nevada, the New Mexico Department of Game and Fish, North Dakota, South Carolina, Texas, West Virginia, Wisconsin, and Wyoming. *See* First Am. Compl., *Ala. ex rel. Steven T. Marshall v. Nat'l Marine Fisheries Serv.*, No. 1:16-cv-00593-CG-MU (S.D. Ala. Feb. 2, 2017), ECF 30.

The first challenged regulation concerned the designation of "critical habitat" for threatened or endangered species. *See* Listing Endangered and Threatened Species and Designating Critical Habitat; Implementing Changes to the Regulation for Designating Critical Habitat, 81 Fed. Reg. 7414 (Feb. 11, 2016). That rule eliminated the two-step approach the Services had used to designate critical habitat since 1984. *See* 49 Fed. Reg. 38,900, 38,909 (Oct. 1, 1984) (previously codified at 50 C.F.R. § 424.12(b)(1-5)). Under that two-step approach, the Services first looked to lands the species already occupied and determined whether those lands were adequate to meet the species' conservation needs. If the lands were inadequate, the Services then proceeded to the second step: designating as "critical habitat" unoccupied areas that contained the biological or physical elements "essential to the conservation of the species." *Id.*

With the 2016 rule change, the Services collapsed this longstanding two-step approach: No longer did they first have to look to occupied areas before designating unoccupied areas as critical habitat. *See* 81 Fed. Reg. 7414, 7426-27. Not only that, but the Services could designate unoccupied areas as critical habitat more easily than they could designate occupied areas as critical habitat because "[t]he presence of physical or biological features [wa]s not required ... for the inclusion of unoccupied areas in a designation of critical habitat." 81 Fed. Reg. 7414, 7420. Thus, under the 2016 rule, the Services could deem unoccupied land as critical habitat even if the habitat where the species lived was adequate to ensure its conservation and even if the unoccupied land was not actually habitable by the species.

1    That situation was untenable under the ESA. The text of the statute specifically

2    "differentiates between 'occupied' and 'unoccupied' areas, [and] impos[es] a more onerous

3    procedure on the designation of unoccupied areas." *Ariz. Cattle Growers' Ass'n v. Salazar*, 606

4    F.3d 1160, 1163 (9th Cir. 2010). Indeed, under the ESA, "specific areas outside the geographical

5    area occupied by the species" may be designated as critical habitat only if the Services conclude

6    "that such areas are *essential* for the conservation of the species." 16 U.S.C. § 1532(5)(A)(ii)

7    (emphasis added). That ordering means that if designating an occupied area alone as critical

8    habitat would meet conservation goals, then designating unoccupied areas cannot be "essential"

9    for the conservation of the species. Yet that is exactly what the 2016 rules allowed.

10    At the same time, the Services also made the designation of *occupied* areas as critical

11    habitat easier than the ESA allows. As part of their rule change, the Services declared that the

12    "physical or biological features" essential for the conservation of the species "can include

13    features that allow for the periodic development of habitat characteristics" that do not actually

14    exist but could, in theory, exist one day. 81 Fed. Reg. 7414, 7422. That change, too, was in

15    contravention of the text of the ESA, which limits the designation of occupied habitat to areas

16    "*on which are found* those physical or biological features essential to the conservation of the

17    species," 16 U.S.C. § 1532(5)(A)(i) (emphasis added)—not "*on which one day may be found*

18    those physical or biological features essential to the conservation of the species."

19    The second regulation challenged by the States concerned the Services' new definition of

20    "destruction or adverse modification" of critical habitat. *See* Interagency Cooperation—

21    Endangered Species Act of 1973, as Amended; Definition of Destruction or Adverse

22    Modification of Critical Habitat, 81 Fed. Reg. 7214 (Feb. 11, 2016). Under the ESA, federal

23    agencies must consult with the Services to ensure that their actions do not "result in the

24    destruction or adverse modification of [critical] habitat" of an endangered species. 16 U.S.C.

25    § 1536(a)(2). In this way federal agencies must not act in a way that makes "essential" habitable

26    land or water uninhabitable for a listed species. *See id.* § 1532(5)(A)(i) (defining "critical

27    habitat"). But in their rule change, the Services defined "destruction or adverse modification" to

28

1    include alterations "that preclude or significantly delay development" of features that would be,

2    if only they existed, essential to the conservation of a species. 81 Fed. Reg. 7214, 7226.

3        In November 2016, a group of 18 States (later joined by two additional States) sued the

4    Services and the Secretaries of the Departments of the Interior and Commerce to challenge the

5    regulatory changes as unlawful under the ESA and APA. *See Ala. ex rel. Steven T. Marshall*, No.

6    1:16-cv-00593-CG-MU (S.D. Ala. Nov. 29, 2016). In March 2018, the case settled. As part of

7    the settlement agreement, the Services agreed to reconsider the critical habitat regulations and

8    their definition of "destruction or adverse modification." They also agreed to notify the States if

9    no rule change would be forthcoming, in which case the States could renew their challenge.

10   *See* Decl. of Christopher M. Blankenship, Ala. Dep't of Conservation & Natural Res. at 2-3;

11   Decl. of Douglas Vincent-Lang, Alaska Dep't of Game & Fish at 4.

12       **B.    The Services Issue Revised Rules.**

13       As they agreed to do in the settlement of the 2016 litigation, the Services did reconsider

14   the challenged regulations. In July 2018, they issued three notices of proposed rulemaking, two

15   of which concerned the regulations challenged in the 2016 lawsuit. *See* Revision of the

16   Regulation for Listing Species and Designating Critical Habitat, 83 Fed. Reg. 35,193 (Jul. 25,

17   2018); Revision of the Regulations for Prohibitions to Threatened Wildlife and Plants, 83 Fed.

18   Reg. 35,174 (Jul. 25, 2018); Revision of Regulations for Interagency Cooperation, 83 Fed. Reg.

19   35,178 (Jul. 25, 2018). The Services promulgated the Final Rules on August 27, 2019. *See*

20   Regulations for Listing Species and Designating Critical Habitat, 84 Fed. Reg. 45,020 (Aug. 27,

21   2019); Regulations for Prohibitions to Threatened Wildlife and Plants, 84 Fed. Reg. 44,753

22   (Aug. 27, 2019); Regulations for Interagency Cooperation, 84 Fed. Reg. 44,976 (Aug. 27, 2019).

23       Each of the Proposed Defendant-Intervenors voiced support for various aspects of the

24   new rules. *See* Joint Comments of the States of Alabama, Arkansas, Kansas, Louisiana,

25   Michigan, Montana, Nebraska, Texas, West Virginia, and Wyoming (FWS Comment ID FWS-

26   HQ-ES-2018-0006-56645, Sept. 23, 2018), *available at*  https://bit.ly/34dRKSX; Comments of

27   Ala. Forestry Comm'n (FWS Comment ID FWS-HQ-ES-2018-0006-40361, Sept. 19, 2018),

28

1   *available at* https://bit.ly/34nXDgg; Comments of Alaska Dep't of Fish & Game (FWS

2   Comment IDs FWS-HQ-ES-2018-0006-58866, Sept. 23, 2018; FWS-HQ-ES-2018-0007-62966,

3   Sept. 23, 2018; and FWS-HQ-ES-2018-0009-59327, Sept. 23, 2018), *available at*

4   https://bit.ly/2P7PmXD, https://bit.ly/2rYcb80, and https://bit.ly/2DJkdnU; Comments of Ariz.

5   Game & Fish Dep't (FWS Comment ID FWS-HQ-ES-2018-0007-62271, Sept. 23, 2018),

6   *available at* https://bit.ly/2DQH0hF; Comments of Idaho Office of Species Conservation (FWS

7   Comment ID FWS-HQ-ES-2018-0006-57439, Sept. 23, 2018), *available at*

8   https://bit.ly/2P9ducm; Comments of Mo. Dep't of Conservation (FWS Comment IDs FWS HQ-

9   ES-2018-0006-43643, Sept. 20, 2018; FWS-HQ-ES-2018-0007-49309, Sept. 20, 2018; and

10  FWS-HQ-ES-2018-0009-48223, Sept. 20, 2018), *available at* https://bit.ly/34Px6cb,

11  https://bit.ly/2RjBMTN, and https://bit.ly/2OQ4PN0; Comments of N.D. Dep't of Transp. (FWS

12  Comment ID FWS-HQ-ES-2018-0009-56477, Sept. 24, 2018), *available at*

13  https://bit.ly/2YhVLUi; Comments of Utah Public Lands Policy Coordinating Office (FWS

14  Comment IDs FWS-HQ-ES-2018-0006-55392, Sept. 23, 2018; FWS-HQ-ES-2018-0007-60748,

15  Sept. 23, 2018; and FWS-HQ-ES-2018-0009-59338, Sept. 23, 2018), *available at*

16  https://bit.ly/34Tjmx7, https://bit.ly/2PeqoWw, and https://bit.ly/364AGzf; Comments of Wyo.

17  Gov. Matthew H. Mead (FWS Comment IDs FWS-HQ-ES-2018-0006-59914, Sept. 23, 2018;

18  FWS-HQ-ES-2018-0007-62581, Sept. 23, 2018; and FWS-HQ-ES-2018-0009-57022, Sept. 23,

19  2018), *available at* https://bit.ly/34QJCs0, https://bit.ly/38c76JV, and https://bit.ly/365F2WP.

20       In addition to rescinding the 2016 regulations, the new Rules are designed to make the

21  regulatory process more predictable and transparent, streamline interagency cooperation, and

22  spur innovation by States and other stakeholders to protect at-risk species. As their titles indicate,

23  the Rules concern three broad categories related to the Services' administration of the ESA:

24  regulations for listing species and designating critical habitat, regulations prohibiting "take" of

25  threatened wildlife and plants, and regulations governing interagency cooperation.

26

27

28

Notice of Mot., Mot. to Intervene, & Mem. in Support
                                              of Mot., Case No. 4:19-cv-06013-JST

1             1.      <u>Regulations for Listing Species and Designating Critical Habitat</u>

2                  <u>84 Fed. Reg. 45,020</u>

3        The Rule for listing species and designating critical habitat amends the regulations in the

4 following important ways:

5        *Designating Unoccupied Areas as Critical Habitat.* As noted above, under the 2016

6 rules, the Services could designate unoccupied areas as critical habitat even if occupied areas

7 alone would have satisfied conservation goals and even if the species would not have survived in

8 the unoccupied area because of the absence of critical physical or biological features. *See* 81 Fed

9 Reg. 7414, 7439 (Feb. 11, 2016). The first new Rule corrects these problems. Under the new

10 Rule (which is similar in substance to the old 1984 rule), "the Secretary will first evaluate areas

11 occupied by the species" and "will only consider unoccupied areas to be essential where a

12 critical habitat designation limited to geographical areas occupied would be inadequate to ensure

13 the conservation of the species." 50 C.F.R. § 424.12(b)(2). Moreover, "for an unoccupied area to

14 be considered essential, the Secretary must determine that there is a reasonable certainty both

15 that the area will contribute to the conservation of the species and that the area contains one or

16 more of those physical or biological features essential to the conservation of the species." *Id.*

17        *Delisting Standards.* The new Rule makes clear that the Services will use the same

18 standards for delisting species as they do for listing species. *See* 50 C.F.R. § 424.11(e). The

19 regulatory language is consistent with the Services' practice and clarifies that there is not a more

20 stringent standard for delisting than for an initial listing. The language helps ensure that species

21 do not remain on the "threatened" and "endangered" lists once they have recovered to such an

22 extent that they are no longer "threatened" or "endangered."

23        *Defining "Foreseeable Future."* The ESA defines the term "endangered species" as "any

24 species which is in danger of extinction," 16 U.S.C. § 1532(6), and the term "threatened species"

25 as "any species which is likely to become an endangered species within the foreseeable future,"

26 *id.* § 1532(20). The Rule now defines what "foreseeable future" means: "The term foreseeable

27 future extends only so far into the future as the Services can reasonably determine that both the

28

future threats and the species' responses to those threats are likely." 50 C.F.R. § 424.11(d). The Rule also provides that "[t]he Services will describe the foreseeable future on a case-by-case basis, using the best available data and taking into account considerations such as the species' life-history characteristics, threat-projecting timeframes, and environmental liability." *Id.* The definitions provide additional predictability for groups affected by or interested in ESA regulations.

*Public Disclosure of (Though Not Reliance On) Economic Impacts In Listing Decisions.* Under the former version of 50 C.F.R. § 424.11(b), the decision to list a species as endangered or threatened could be made "solely on the basis of the best available scientific and commercial information regarding a species' status, without reference to possible economic or other impacts of such determination." Under the new Rule, the scientific and commercial information concerning the species' status will still be the "sole" basis for the agency's decision, but the agency may now provide the public information regarding the economic impacts of the listing determination. This change will not affect how the Services make their listing determinations, but it will promote governmental transparency and public awareness. *See* 84 Fed. Reg. 45,020, 45,024.

2.    Regulations for Prohibitions to Threatened Wildlife and Plants

84 Fed. Reg. 44,753

Under the ESA, a species listed as endangered receives automatic protections, including against any "take" by a private or public entity. 16 U.S.C. § 1538(a). By contrast, the ESA does not afford the same statutory protections to threatened species. Instead, "[w]henever any species is listed as a threatened species ... the Secretary shall issue such regulations as he deems necessary and advisable to provide for the conservation of such species." 16 U.S.C. § 1533(d). The Act also specifies that the Secretary "may" extend to threaten species all the protections afforded to endangered species. *Id.*

Since 1978, FWS has extended those protections by blanket rule. Instead of issuing species-specific regulations to protect a threatened species, FWS promulgated a rule that

automatically extended to all threatened species the same statutory protections that apply to endangered species. *See* Protection for Threatened Species of Wildlife, 43 Fed. Reg. 18,180, 18,181 (Apr. 28, 1978). The second new Rule repeals that blanket extension. Going forward, FWS will take a more tailored approach to the protection of newly listed threatened species and will promulgate species-specific prohibitions, protections, or restrictions when a species is listed as threatened. *See* 50 C.F.R. §§ 17.31(a) (threatened wildlife), 17.71(a) (threatened plants). This is the approach the National Marine Fisheries Service has always taken. By recognizing a middle tier between endangered and unlisted species—as established in the ESA—the Rule encourages creative conservation efforts, aligns the incentives of landowners with the interests of at-risk species, and allows for activities that pose no threat to the species but which may not be allowed if these species are automatically treated as "endangered" by blanket rule. The Rule also restores to the States a greater role in the protection of their threatened species, as originally contemplated by the Congress that passed the ESA.

### 3.   Regulations for Interagency Cooperation
### 84 Fed. Reg. 44,976

The third Rule promulgated by the Services concerns interagency consultation and amends the provisions challenged in the 2016 lawsuit. As explained above, Section 7 of the ESA requires federal agencies to consult with the Secretaries of the Interior and Commerce to ensure that any action authorized, funded, or carried out by the agencies is not likely to jeopardize the continued existence of endangered or threatened species or result in the destruction or adverse modification of critical habitat for those species. *See* 16 U.S.C. § 1536(a). The activities by the "action agencies" could include, *inter alia*, a decision whether to issue permits to States or private parties to engage in economic development. The Rule adopts several procedural changes to the informal and formal consultation processes, and amends the definitions of some of the terms defining those processes. Some of the changes include:

*Amending Definition of "Destruction or Adverse Modification."* The new Rule provides: "Destruction or adverse modification means a direct or indirect alteration that appreciably

diminishes the value of critical habitat as a whole for the conservation of a listed species." 50 C.F.R. § 402.02. The Rule adds the phrase "as a whole," which codifies the approach the Services have previously taken. *See* 81 Fed. Reg. 7214, 7221 (Feb. 11, 2016) (explaining that "the question is whether the action will appreciably diminish the value of the critical habitat *as a whole*, not just in the action area" (emphasis added)). The Rule also deletes from the relevant 2016 rule a second sentence which had provided: "Such alterations may include, but are not limited to, those that alter the physical or biological features essential to the conservation of a species or that preclude or significantly delay development of such features." This change helps clarify that the Services will not deem activity to appreciably diminish the value of critical habit based on speculation about the sorts of physical or biological features that could one day exist there.

    *Defining "Effects of the Action."* The Rule clarifies the standard the Services have applied in the past when determining the "effects of the action" being considered. *See Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, 698 F.3d 1101, 1113 (9th Cir. 2012). "Effects of the action" is now defined as "all consequences to listed species or critical habitat that are caused by the proposed action," with the limitation that "[a] consequence is caused by the proposed action if it would not occur but for the proposed action and it is reasonably certain to occur." 50 C.F.R. § 402.02.

    *Defining "Reasonably Certain to Occur."* The Rule also clarifies the application of the "reasonably certain to occur" standard to activities "caused by but not included in the proposed action and activities under cumulative effects." 83 Fed. Reg. 35,178, 35,189. Under the Rule, "[a] conclusion of reasonably certain to occur must be based on clear and substantial information, using the best scientific and commercial data available." 50 C.F.R. § 402.17(a). The Rule also provides that "[c]onsiderations for determining that a consequence to the species or critical habitat is not caused by the proposed action" include whether the consequence is (1) "so remote in time from the action under consultation that it is not reasonably certain to occur"; (2) "so geographically remote from the immediate area involved in the action that it is not

1   reasonably certain to occur"; and (3) "only reached through a lengthy causal chain that involves

2   so many steps as to make the consequence not reasonably certain to occur." *Id.* § 402.17(b). By

3   making clear to regulated parties that such remote consequences will not be attributed to their

4   proposed conduct, the Rule allows parties to arrange their conduct with greater certainty.

5          *Measuring "Effects of the Action" from the "Environmental Baseline."* When the

6   Services determine whether the effects of an agency's proposed actions are likely to have

7   consequences for listed species or critical habit, the Services measure those effects against an

8   "environmental baseline" that factors in current conditions. *See San Luis & Delta-Mendota*

9   *Water Auth.*, 747 F.3d 581, 638 (9th Cir. 2014). The Rule now defines "environmental baseline"

10  as "the condition of the listed species or its designated critical habitat in the action area, without

11  the consequences to the listed species or designated critical habitat caused by the proposed

12  action." 50 C.F.R. § 402.02. Added clarity in this definition provides additional certainty for

13  States that are considering various development or conservation actions.

14         *Revisions to the Formal Consultation Process*. The new Rule revises the formal

15  consultation process by describing what information is needed for an agency to initiate the

16  formal consultation process, 50 C.F.R. § 402.14(c); clarifying the responsibilities of each of the

17  States and the steps it will take in determining whether a proposed action may affect a listed

18  species or its critical habitat, *id.* § 402.14(g); and allowing the Services to adopt an agency's

19  initiation package as their own biological opinion, *id.* § 402.14(h). The new Rule also provides a

20  method for expedited consultations, which are appropriate for "[c]onservation actions whose

21  primary purpose is to have beneficial effects on listed species." *Id.* § 402.14(l).

22         **C.      Plaintiffs Challenge the 2019 Rulemaking.**

23         Plaintiffs in this action are a coalition of States, the City of New York, and the District of

24  Columbia. They brought this action against the Services and the Secretaries of the Departments

25  of the Interior and Commerce alleging that the new Rules violate the ESA, APA, and NEPA. The

26  Plaintiff States seek a declaratory judgment from the Court to that effect, as well as an order

27  vacating the Rules and a "mandatory injunction requiring the Services to immediately withdraw

28

Notice of Mot., Mot. to Intervene, & Mem. in Support
of Mot., Case No. 4:19-cv-06013-JST

the Final Rules and reinstate the prior regulatory regime." Am. Compl., ECF No. 28 at 53. The

Federal Defendants filed a motion to dismiss on December 6, 2019, ECF No. 46, and the Court

has not yet ruled on any substantive matters.

### D.      The Proposed Defendant-Intervenor States Have Interests That Will Be Affected By This Action.

The Proposed Defendant-Intervenors are a coalition of 13 States: Alabama, Alaska,

Arizona *ex rel.* the Arizona Game and Fish Commission, Arkansas, Idaho, Kansas, Missouri,

Montana, Nebraska, North Dakota, Utah, West Virginia, and Wyoming. Many of the States were

plaintiffs in the litigation over the 2016 rule and thus have a particular interest in defending the

result of the settlement agreement that ended that litigation. And during the notice and comment

period that culminated in the Final Rules, each State filed comments supporting certain of the

proposed changes. Further, all of the States benefit from the Rules, which bring added clarity and

predictability to the regulatory process, streamline interagency cooperation, and create more

room for States to work creatively with the Services and other stakeholders to protect at-risk

species.

The Proposed Defendant-Intervenor States have an interest in how the Services designate

critical habitat and define its destruction or adverse modification. States are expressly covered by

the ESA, along with individuals, corporations, municipalities, and political subdivisions of each

State and the uses and activities upon lands owned or controlled by such persons. 16 U.S.C.

§ 1532(13). Thus, State transportation projects, pipeline construction and maintenance, forest

and storm water management, and other key infrastructure operations must comply with any

applicable prohibitions protecting listed species and designated critical habitat for such species.

Accordingly, when the Services designate land as critical habitat, there are serious implications

for States' authority. That is why many of the Proposed Defendant-Intervenors challenged the

Services' 2016 rules, and why they seek to defend the new Rules, which provide States greater

clarity when planning and carrying out both development and conservation projects.

Moreover, as explained in more depth below and in the attached declarations, each of the

States acts as the primary protector of its wildlife. And because each State is home to threatened and endangered species protected by the ESA, each State benefits from the added flexibility of the new Rules that encourage creative solutions for protecting wildlife while also recognizing the interests of landowners. For example, in conjunction with FWS, Alabama has implemented a "safe harbor" program to incentivize landowners to protect open, mature pine woodlands that serve as habitat for the red-cockaded woodpecker (*Picoides borealis*), a federally listed endangered species. *See* Decl. of Christopher M. Blankenship, Ala. Dep't of Conservation & Natural Res. at 1-2; *see also* Proposed Programmatic Statewide Red-cockaded Woodpecker Safe Harbor Agreement, AL, 71 Fed. Reg. 34,154 (June 13, 2006). Under the program, landowners agree to manage their land in a way that is expected to benefit the red-cockaded woodpecker. In exchange, the landowners will not incur any new restrictions if their woodpecker populations expand beyond the baseline level that exists at the time of the agreement. While these sorts of programs are possible under the previous regulations, the new Rules make it easier for such creative and targeted solutions to be implemented. And such programs demonstrate that the Rules are not an attempt to roll back vital protections, but are instead a continuation of the Services' decision to take a more tailored and collaborative approach to conservation—either through the allowance of a Section 10 take permit (as with the safe harbor program) or through the issuance of special, species-specific Section 4(d) regulations (as contemplated by the Rules). *See* 84 Fed. Reg. 44,753, 44,754; *see also* Decl. of Angela Bruce, Wyo. Game & Fish Dep't at ¶ 6 (explaining that Wyoming used a Section 10(j) designation to successfully facilitate reintroduction of the black-footed ferret); Comment of Mo. Dep't of Conservation (FWS Comment ID FWS-HQ-ES-2018-0007-49309, Sept. 20, 2018), *available at* https://bit.ly/2RjBMTN (noting that species considered for federal listing are often already identified as species of concern by the State and that "State agencies can provide valuable, experience-based information and guidance on the development of species-specific 4(d) rules that might be effective in protecting and recovering the species, while avoiding prohibitions that might make management and recovery more difficult and minimizing potential conflicts with

1    stakeholders").

2         Another example from Alabama is its Gopher Tortoise Project. *See* Decl. of Christopher

3    M. Blankenship, Ala. Dep't of Conservation Natural Res. at 2. The gopher tortoise (*Gopherus*

4    *polyphemus*) has been listed as a federally threatened species in west Alabama, and FWS is

5    expected to decide whether to list the tortoise as a threatened species in other parts of Alabama

6    by 2022. Because 95% of gopher tortoise habitat is owned by private landowners, enlisting the

7    landowners' help in protecting habitat and identifying where the gopher tortoise currently lives is

8    crucial. But landowners are understandably reticent about reporting whether they have tortoises

9    on their land because of the attendant regulatory burdens that could come if the tortoise is listed

10   as threatened throughout Alabama. *See id.* Fortunately, under the new Rules, those

11   understandable fears could be eased because threatened species would not necessarily be treated

12   the same as endangered species. *See* 50 C.F.R. § 17.31(a). Instead, following the lead of NMFS,

13   FWS will use a more tailored approach and consider special rules for each species at the time of

14   listing, thereby allowing additional room for Alabama to engage landowners in the protection of

15   the gopher tortoise while also accommodating the landowners' needs. *See also* Comment of

16   Idaho Office of Species Conservation (FWS Comment ID FWS-HQ-ES-2018-0006-57439, Sept.

17   23, 2018), *available at* https://bit.ly/2P9ducm (noting that the new Rules "will afford more

18   opportunity for [Idaho] to work with the FWS and capitalize on these benefits in tailoring the

19   regulations to the conservation needs of the species" and will "create consistency in the

20   application of Section 4(d) between FWS and NMFS" (quotation marks omitted)).

21        Alaska provides another good example. As it noted in its comment letter, how the

22   Services define "foreseeable future," and how they designate potential, unoccupied habitat as

23   "critical," are critically important to Alaska. *See* Comment of Alaska Dep't of Fish & Game

24   (FWS Comment ID FWS-HQ-ES-2018-0006-58866, Sept. 23, 2018), *available at*

25   https://bit.ly/2P7PmXD; *see also* Decl. of Douglas Vincent-Lang, Alaska Dep't of Game & Fish

26   at 6. Alaska is particularly concerned about the uncertainty involved in listing decisions based on

27   models forecasting out to 100 years—like the decision the NMFS made when listing bearded

28

Notice of Mot., Mot. to Intervene, & Mem. in Support
of Mot., Case No. 4:19-cv-06013-JST

1   seals as a threatened species. *See* Threatened Status for the Beringia and Okhotsk Distinct

2   Population Segments of the Erignathus barbatus nauticus Subspecies of the Bearded Seal, 77

3   Fed. Reg. 76,740 (Dec. 28, 2012). Alaska expects that the regulations concerning the definition

4   of "foreseeable future" and the designation of unoccupied "critical habitat" will alleviate some of

5   the uncertainty that previous listing rules produced.

6          Finally, the Rules will help the Proposed Defendant-Intervenors meet both their

7   development and conservation goals by providing clarity and efficiency to the Section 7

8   consultation process. *See* 84 Fed. Reg. 44,976; Comments of Utah Public Lands Policy

9   Coordinating Office (FWS Comment ID FWS-HQ-ES-2018-0009-59338, Sept. 23, 2018),

10  *available at* https://bit.ly/364AGzf ("[Utah] looks forward to working with the Services to utilize

11  programmatic consultations as defined in the proposed rule. Often, actions that occur routinely in

12  a particular geographic area[] have very well-known and understood effects on species. Though

13  the effects of an action are well-understood, projects are often delayed by the Services' use [of]

14  the consultation process. The proposed definition of programmatic consultation will reduce costs

15  while increasing the Services' ability to fulfill its duties under the ESA."). And each State will be

16  harmed if those Rules are invalidated, as the Plaintiff States propose, or if a different

17  compromise is reached between the Plaintiff States and the Federal Defendants.

18  **II.    ARGUMENT**

19          **A.    The Proposed Defendant-Intervenors Are Entitled to Intervene as a Matter**

20                 **of Right.**

21          Federal Rule of Civil Procedure 24(a) provides: "On timely motion, the court must permit

22  anyone to intervene who ... claims an interest relating to the property or transaction that is the

23  subject of the action, and is so situated that disposing of the action may as a practical matter

24  impair or impede the movant's ability to protect its interest, unless existing parties adequately

25  represent that interest." Fed. R. Civ. P. 24(a)(2).

26          The Court must permit intervention of right so long as four requirements are met: (1) the

27  motion is timely; (2) the applicants "claim a significantly protectable interest relating to the

28

property or transaction" at issue; (3) "disposition of the action may as a practical matter impair or impede [the applicants'] ability to protect that interest"; and (4) the existing parties may not adequately represent the applicants' interests. *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (en banc) (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993)). The Ninth Circuit has "repeatedly instructed" that these requirements "are to be broadly interpreted in favor of intervention." *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 853 (9th Cir. 2016) (brackets omitted). That is because the Court is to be guided by "practicable and equitable considerations," and "[a] liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *Wilderness Soc'y*, 630 F.3d at 1179 (quoting *United States v. City of Los Angeles*, 288 F.3d 391, 397-98 (9th Cir. 2002)).

All four requirements are met here. First, the motion is timely because the action is in its early stages—the Federal Defendants' responsive pleading was filed just days before this motion was filed. Second, as demonstrated in this memorandum and the attached declarations, the Proposed Defendant-Intervenors have significant protectable interests in this action. Third, if the Plaintiff States succeed in invalidating the Rules, the Proposed Defendant-Intervenors will be harmed and become subject once again to the very rules that many of them challenged in the 2016 litigation as unlawful. Fourth, the Federal Defendants cannot adequately represent the unique, sovereign interests of the Intervenor States.

### 1.   The Motion is Timely.

The Proposed Defendant-Intervenor States meet the first element for intervention: timeliness. Timeliness is "determined by the totality of the circumstances facing would-be intervenors, with a focus on three primary factors: '(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay.'" *Smith*, 830 F.3d 843 at 854 (quoting *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004)).

All those factors point to timeliness in this case. The Plaintiff States filed their initial complaint on September 25, 2019, and their first amended complaint on October 22, 2019. The

1    Federal Defendants' motion to dismiss was filed on December 6, just a few days before this

2    motion was filed. The Federal Defendants have not filed an answer, no substantive matters have

3    been ruled on, and the case management conference is set for March 3, 2020. There has thus

4    been no delay by the Proposed Defendant-Intervenors, and likewise no prejudice because

5    intervention will not result in any delay to the resolution of this case. All the "traditional features

6    of a timely motion" have been met. *See Citizens for Balanced Use v. Mont. Wilderness Ass'n*,

7    647 F.3d 893, 897 (9th Cir. 2011); *see also Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392,

8    1397 (9th Cir. 1995) (intervention motion was timely when filed four months after the complaint

9    and two months after the answer).

10                    2.      The Proposed Defendant-Intervenors Have Significantly Protectable

11                            Interests Relating to This Action.

12           The Proposed Defendant-Intervenors also meet the second element for intervention: They

13   have "'significantly protectable' interest[s] relating to the property or transaction which is the

14   subject of the action." *Wilderness Soc'y*, 630 F.3d at 1177 (quoting *Sierra Club*, 995 F.2d at

15   1481). "[T]he 'interest' test directs courts to make a 'practical, threshold inquiry,' and 'is

16   primarily a practical guide to disposing of lawsuits by involving as many apparently concerned

17   persons as is compatible with efficiency and due process.'" *City of Los Angeles*, 288 F.3d at 398

18   (quoting *County of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980)). The test "does not

19   require a specific legal or equitable interest," *Wilderness Soc'y*, 630 F.3d at 1179, nor must the

20   "prospective intervenor[s'] asserted interest ... be protected by the statute under which the

21   litigation is brought to qualify as 'significantly protectable' under Rule 24(a)(2)." *Id.* (quoting

22   *Sierra Club*, 995 F.2d at 1481). Instead, "prospective intervenor[s] 'ha[ve] a sufficient interest

23   for intervention purposes if [they] will suffer a practical impairment of [their] interests as a result

24   of the pending litigation.'" *Id.* (quoting *California ex rel. Lockyer v. United States,* 450 F.3d 436,

25   441 (9th Cir. 2006)); *see also id.* at 1180 ("[T]he operative inquiry should be whether the

26   'interest is protectable under some law' and whether 'there is a relationship between the legally

27   protected interest and the claims at issue.'" (quoting *Sierra Club*, 995 F.2d at 1484)).

28

1    The Proposed Defendant-Intervenors have just this kind of interest. Indeed, the outcome

2    of the case will affect not just the Plaintiff States or the Federal Defendants, but each and every

3    State. That is because the challenged regulations affect how at-risk species are protected in each

4    State.

5    If Plaintiffs succeed, all States will be burdened by a regulatory regime that violates the

6    text of the ESA and impairs the abilities of the States to protect their at-risk species in creative

7    ways. As already noted above, under the Rules challenged by Plaintiffs, there is more room for

8    States to take the lead in protecting threatened species in ways that also protect landowners'

9    rights to make reasonable use of their properties. Such cooperative federalism was possible under

10   the prior rules, but it was onerous—requiring either a special permit under Section 10 or a

11   species-specific rule under Section 4 of the ESA because FWS treated "endangered" and

12   "threatened" species exactly alike. *Cf.* Proposed Programmatic Statewide Red-cockaded

13   Woodpecker Safe Harbor Agreement, AL, 71 Fed. Reg. 34,154 (June 13, 2006) (notice of

14   application by Alabama for Section 10 permit to create a safe harbor program for the endangered

15   red-cockaded woodpecker). By removing the blanket extension for threatened species, the new

16   Rules provide for a more tailored approach by which FWS may determine that the State's

17   regulation of the species is adequate—or it may issue a species-specific rule. *See* 50 C.F.R.

18   § 17.31(a), (c); Comment of Idaho Office of Species Conservation (FWS Comment ID FWS-

19   HQ-ES-2018-0006-57439, Sept. 23, 2018), *available at* https://bit.ly/2P9ducm (noting that the

20   new Rules "will afford more opportunity for [Idaho] to work with the FWS and capitalize on

21   these benefits in tailoring the regulations to the conservation needs of the species" and will

22   "create consistency in the application of Section 4(d) between FWS and NMFS" (quotation

23   marks omitted)). The Proposed Defendant-Intervenor States thus have an interest in defending

24   the Rules challenged by Plaintiffs, because the States benefit from those very Rules. *See, e.g.*,

25   *WildEarth Guardians v. Jewell*, 320 F.R.D. 1, 4 (D.D.C. 2017) (allowing intervention by group

26   of States to defend against environmental groups' NEPA challenge to federal government's

27   approval of certain oil and gas leases on public lands because the intervening States would be

28

affected by the revocation of that approval); *see also WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1199 (10th Cir. 2010) (recognizing that "the interest of a prospective defendant-intervenor may be impaired where a decision in the plaintiff's favor would return the issue to the administrative decision-making process, notwithstanding the prospective intervenor's ability to participate in formulating any revised rule or plan"); *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 737 (D.C. Cir. 2003) (permitting Mongolia to intervene in an action challenging the Secretary of the Interior's classification of a Mongolian sheep as threatened).

The Proposed Defendant-Intervenors likewise have significantly protectable interests in the Rules that alter the 2016 definitions of "unoccupied critical habitat" and "destruction or adverse modification"—definitions that led many of the States to sue the Services in 2016. The new Rules benefit the Intervenor States by reducing the likelihood that their land and waters will be unlawfully designated as critical habit and by increasing regulatory predictability by providing a clearer definition of when activity will trigger the consultation process. *See* Comment of Alaska Dep't of Fish & Game (FWS Comment IDs FWS-HQ-ES-2018-0006-58866, Sept. 23, 2018), *available at* https://bit.ly/2P7PmXD (explaining that, because of climate change, "[m]ore than any other state, Alaska deals with threats to habitat that cannot be addressed through management, one factor for consideration of critical habitat designation," and is thus directly benefitted by rules that bring clarity to the designation process).

Moreover, the Proposed Defendant-Intervenors often must cooperate with action agencies before engaging in infrastructure projects and other development, which often triggers Section 7 consultation with the Services. *See* Comments of N.D. Dep't of Transp. (FWS Comment ID FWS-HQ-ES-2018-0009-56477, Sept. 24, 2018), *available at* https://bit.ly/2YhVLUi (noting that North Dakota "recently implemented a programmatic consultation with [the Federal Highway Administration] and USFWS which has facilitated a standardized, efficient approach for Section 7 ESA compliance"); *Black Warrior Riverkeeper, Inc. v. Ala. Dep't of Transp.*, No. 2:11-cv-267-WKW, 2016 WL 233672, at *23, *33-34 (M.D. Ala. Jul. 19, 2016) (challenging an environmental impact statement conducted by State Department of Transportation and the

Federal Highway Administration regarding highway project that would, plaintiffs alleged, unlawfully impact endangered species). Because the new Rules streamline aspects of the consultation process, they will promote more efficient determinations by action agencies and the Services, which will allow States to more effectively serve their citizens. *See* Comments of Utah Public Lands Policy Coordinating Office (FWS Comment ID FWS-HQ-ES-2018-0009-59338, Sept. 23, 2018), *available at* https://bit.ly/364AGzf ("Streamlining the consultation process for actions or projects with minimal adverse impact[s] that are known and predictable will streamline the consultation process. This proposal could also incentivize more rapid development of projects that are beneficial to species recovery, but may result in minimal incidental [take] through project development and implementation. This outcome also increases interagency ESA consultation support, and other modular capacity to accelerate restoration in priority areas.").

Finally, the States have an interest in not re-litigating the 2016 rule changes all over again, which they will have to do if Plaintiffs' challenge succeeds. It is far more "compatible with efficiency and due process" to allow the Proposed Defendant-Intervenors to intervene in this action to defend the 2019 rule changes so that, if they are successful, they will not have to re-litigate the 2016 changes anew. *City of Los Angeles*, 288 F.3d at 398 (quoting *County of Fresno*, 622 F.2d at 438).

> 3.    <u>Plaintiffs' Challenge Threatens to Impair the Interests of the Proposed Defendant-Intervenors.</u>

For these same reasons, the third element for intervention is also met: "[D]isposition of the action may as a practical matter impair or impede [the intervenors'] ability to protect [their] interest." *Wilderness Soc'y*, 630 F.3d at 1177 (quoting *Sierra Club*, 995 F.2d at 1481); *see* Fed. R. Civ. P. 24(a)(2). This element "presents a minimal burden." *Nat'l Park Serv.*, 604 F.3d at 1199. To satisfy the "practical impairment" requirement, applicants need only show that the disposition of the action "*may* as a practical matter impair or impede the[ir] ability to protect [their] interest"—not that the disposition necessarily will do so. Fed. R. Civ. P. 24(a)(2) (emphasis added); *see City of Los Angeles*, 288 at 401 ("[T]he relevant inquiry is whether the

1    [disposition] 'may' impair rights 'as a practical matter' rather than whether the [disposition] will

2    'necessarily' impair them." (quoting Fed. R. Civ. P. 24(a)(2)). In other words, if applicants may

3    be affected "in a practical sense by the determination made in an action, [they] should, as a

4    general rule, be entitled to intervene." *Citizens for Balanced Use*, 647 F.3d at 898 (quoting Fed

5    R. Civ. P. 24 advisory committee's note).

6         As demonstrated above, the interests of the Proposed Defendant-Intervenors will be

7    impaired if Plaintiffs succeed in their challenge. To take but one more example, if the Court

8    grants Plaintiffs' requested relief, the 2016 rule changes will come back in full force. That will

9    mean that the Proposed Defendant-Intervenor States (and indeed all States) will once again be

10   subject to the unlawful single-step critical habitat rule in which the Services may deem

11   unoccupied land as critical habitat even if the habitat where the species already lives can meet all

12   conservation goals and even if the unoccupied land is not actually habitable by the species.

13   *See* 81 Fed. Reg. 7414, 7426-27. This effect would subject States to regulations that would be

14   unlawful under the ESA and would infringe on the States' ability to protect both their lands and

15   their wildlife. *See* 16 U.S.C. § 1532(5)(A)(i) (limiting designation of occupied habitat to areas

16   "on which are found those physical or biological features essential to the conservation of the

17   species").

18        The Proposed Defendant-Intervenors directly benefit from the challenged Rules. In

19   addition to repealing the unlawful 2016 regulations, the Rules provide additional clarity and

20   certainty to how the Services designate critical habitat, list and de-list species, protect threatened

21   species, and work with other governmental agencies in formulating biological opinions. If

22   Plaintiffs succeed in their lawsuit, those Rules would be voided, and the benefits to States that

23   they bring will go away. On the other hand, these harms will be avoided if this Court upholds the

24   Services' Rules. *See* Decl. of Douglas Vincent-Lang, Alaska Dep't of Fish & Game at 7-9

25   (detailing ways that Alaska will be harmed if Plaintiffs prevail in their lawsuit). It is thus clear

26   that "disposing of the action may as a practical matter impair or impede the [Proposed

27   Defendant-Intervenors'] ability to protect [their] interests." Fed. R. Civ. P. 24(a)(1).

28

4. <u>The Federal Defendants Cannot Adequately Represent the Interests of the Proposed Defendant-Intervenors.</u>

Finally, the Proposed Defendant-Intervenors also meet the fourth element for intervention of right: Their interests will "be inadequately represented by the parties to the action." *Wilderness Soc'y*, 630 F.3d at 1177 (quoting *Sierra Club*, 995 F.2d at 1481). "The burden on proposed intervenors in showing inadequate representation is minimal, and would be satisfied if they could demonstrate that representation of their interests 'may be' inadequate." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). Factors to consider in making this determination include: (1) whether the present parties "will undoubtedly make all the intervenor[s'] arguments," (2) whether the present parties are "capable and willing to make such arguments," and (3) whether the intervenors "would offer any necessary elements to the proceedings that other parties would neglect." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001). Importantly, "it is not Applicants' burden at this stage in the litigation to anticipate specific differences in trial strategy. It is sufficient for Applicants to show that, because of the difference in interests, it is likely that Defendants will not advance the same arguments as Applicants." *Id.* at 824.

While it is expected that the Federal Defendants will defend the challenged Rules for the foreseeable future, it is unclear how the Federal Defendants will do so or for how long. As the settlement of the 2016 litigation itself shows, the Federal Defendants may in fact decide to change direction. That would harm the interests of the Proposed Defendant-Intervenors just as surely as if Plaintiffs receive the full relief they seek from this Court.[2] *See United States v. Stringfellow*, 783 F.2d 821, 828 (9th Cir. 1986) (observing that "should settlement become a viable alternative in this litigation, it is highly unlikely that" the government defendants would craft "a settlement that would adequately address [the intervenor's] interests"), *vacated on other grounds by Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370 (1987).

---

[2]   It is well established that the Proposed Defendant-Intervenors need not show Article III standing to intervene. *See Vivid Entm't, LLC v. Fielding*, 774 F.3d 566, 573 (9th Cir. 2014).

1    Moreover, the Federal Defendants simply cannot adequately represent the sovereign

2    interests of States. *See Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499

3    (9th Cir. 1995) (noting that the federal government is "required to represent a broader view than

4    the more narrow, parochial interests" of the proposed state and county intervenors), *abrogated*

5    *on other grounds by Wilderness Soc'y*, 630 F.3d at 1117. Each Proposed Defendant-Intervenor

6    State has unique interests in defending its at-risk species, and each State likewise has unique

7    ways that it will serve those interests. In this way the States can explain to the Court how any

8    potential ruling will affect them specifically, thereby "offer[ing] important elements to the

9    proceedings that the existing parties would likely neglect." *Sw. Ctr. for Biological Diversity*, 268

10   F.3d at 822.

11   Not only that, but the interests of the States and the Federal Defendants will not always

12   be aligned with regard to the implementation of the regulations. For example, not only does each

13   State own the wildlife within its borders, but it also owns land that could be subject to FWS's

14   "critical habitat" designation. It is no wonder, then, that federal courts have routinely held that

15   federal agencies cannot adequately represent other interests in lawsuits challenging federal

16   decision-making. *See Californians For Safe & Competitive Dump Truck Transp. v. Mendonca*,

17   152 F.3d 1184, 1190 (9th Cir. 1998) (affirming grant of intervention to labor union "because the

18   employment interests of [the union's] members were potentially more narrow and parochial than

19   the interests of the public at large"); *see also Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d

20   1242, 1256 (11th Cir. 2002) (holding that federal defendant did not adequately represent State's

21   interest in interstate waters); *Sierra Club v. Espy*, 18 F.3d 1202, 1207-08 (5th Cir. 1994) (finding

22   that the government did not adequately represent the interests of intervenors because "[t]he

23   government must represent the broad public interest"); *Nat'l Farm Lines v. Interstate Commerce*

24   *Comm'n*, 564 F.2d 381, 384 (10th Cir. 1977) ("We have here also the familiar situation in which

25   the governmental agency is seeking to protect not only the interest of the public but also the

26   private interest of the petitioners in intervention, a task which is on its face impossible."); *Jewell*,

27   320 F.R.D. at 4-5 ("While the Federal Defendants' duty runs to the interests of the American

28

1   people as a whole, the state-intervenors will primarily consider the interests of their own

2   citizens.").

3        All four requirements for intervention have thus been satisfied. The motion is timely; the

4   Proposed Defendant-Intervenors have significant protectable interests in this action; those

5   interests will be harmed if Plaintiffs succeed in their challenge; and the existing parties do not

6   adequately represent those interests.

7       **B.**    **In the Alternative, the Court Should Grant the Proposed Defendant-**

8            **Intervenors Permission to Intervene.**

9        If the Court does not grant intervention as a matter of right, it should permit the Proposed

10   Defendant-Intervenors to intervene under Federal Rule of Civil Procedure 24 (b)(1)(B). That

11   Rule provides: "On timely motion, the court may permit anyone to intervene who ... has a claim

12   or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P.

13   24(b)(1)(B). The requirements for permissive intervention are laxer than those for intervention as

14   of right. "Unlike Rule 24(a), a 'significant protectable interest' is not required by Rule 24(b) for

15   intervention; all that is necessary for permissive intervention is that the intervenor's 'claim or

16   defense and the main action have a question of law or fact in common.'" *Kootenai Tribe of Idaho*

17   *v. Veneman*, 313 F.3d 1094, 1108 (9th Cir. 2002) (quoting Fed. R. Civ. P. 24(b)), *abrogated on*

18   *other grounds by Wilderness Soc'y*, 630 F.3d at 1173. A movant must typically show "(1) an

19   independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and

20   fact between the movant's claim or defense and the main action." *Freedom from Religion*

21   *Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011).

22        Those requirements are met here. First, "the independent jurisdictional grounds

23   requirement does not apply to proposed intervenors in federal-question cases when the proposed

24   intervenor is not raising new claims." *Id.* at 844. Because the Proposed Intervenors seek to

25   intervene as defendants, they raise no new claims and thus present no concerns about any

26   "enlargement of federal jurisdiction." *Id.*

27

28

1    Second, as explained above, this motion to intervene is timely and will not delay these

2    proceedings. *See supra* Part II.A.1. The motion is being filed just a few days after the Federal

3    Defendants filed a motion to dismiss. That motion has not yet been ruled on, or even briefed by

4    the Plaintiffs.

5    Third, the Proposed Defendant-Intervenors will "assert 'defenses' of the government

6    rulemaking that squarely respond to the challenges made by [P]laintiffs." *Kootenai Tribe*, 313

7    F.3d at 1111. The Plaintiffs seek to challenge the Final Rules issued by the Services; the

8    Proposed Defendant-Intervenors seek to defend them. Such a defense clearly "shares with the

9    main action a common question of law or fact." Fed. R. Civ. P. 24(b) (1)(B).

10   Finally, intervention will "not unduly delay or prejudice the adjudication of the rights of

11   the original parties." Fed. R. Civ. P. 24(b) (3). The litigation is still at an early stage, and the

12   Proposed Defendant-Intervenors do not seek to modify the existing scheduling order. The Court

13   should therefore grant the Proposed Defendant-Intervenors permission to intervene in order to

14   allow them to represent their unique interests in this action.

15   **III.    CONCLUSION**

16   For the foregoing reasons, the Proposed Defendant-Intervenors respectfully request that

17   the Court grant their motion to intervene.

18

19

20

21

22

23

24

25

26

27

28

1    DATED:  December 9, 2019                Respectfully submitted,

2    STEVE MARSHALL                          TIMOTHY C. FOX
     Attorney General of Alabama             Attorney General of Montana
3
     /s/ Edmund G. LaCour Jr.                /s/ Melissa Schlichting
4    Edmund G. LaCour Jr. (*pro hac vice* pending)   Melissa Schlichting (SBN 220258)
     *Solicitor General*                     *Deputy Attorney General*
5    James W. Davis (*pro hac vice* pending)   Montana Department of Justice
     *Deputy Attorney General*               215 N. Sanders St., P.O. Box 201401
6    A. Barrett Bowdre (*pro hac vice* pending)   Helena, MT 59620-1401
     *Deputy Solicitor General*              Telephone: (406) 444-3602
7    Office of the Alabama Attorney General   Fax: (406) 444-3549
     501 Washington Ave.                     E-mail: MSchlichting@mt.gov
8    P.O. Box 300152
     Montgomery, AL 36130                     *Attorneys for Proposed Defendant-Intervenor*
9    Telephone: (334) 353-2196               *State of Montana*
     Fax: (334) 353-8400
10   E-mail: edmund.lacour@AlabamaAG.gov      DEREK SCHMIDT
     jim.davis@AlabamaAG.gov                  Attorney General of Kansas
11   barrett.bowdre@AlabamaAG.gov
                                              /s/ Jeffrey A. Chanay
12   /s/ Paul Beard II                        Jeffrey A. Chanay (*pro hac vice* pending)
     Paul Beard II (SBN 210563)               *Chief Deputy Attorney General*
13   FisherBroyles LLP                        Office of the Kansas Attorney General
     5670 Wilshire Blvd., Ste. 1800           Memorial Hall
14   Los Angeles, CA 90036-5653               120 SW Tenth Avenue
     Telephone: (818) 216-3988                Topeka, KS 66612-1597
15   Fax: (213) 402-5034                      Telephone: (785) 296-2215
     E-mail: paul.beard@fisherbroyles.com     Fax: (785) 291-3767
16                                            E-mail: jeff.chanay@ag.ks.gov
     *Attorneys for Proposed Defendant-Intervenor*
17   *State of Alabama*                       *Attorneys for Proposed Defendant-Intervenor*
                                              *State of Kansas*
18   MARK BRNOVICH
     Attorney General of Arizona              DOUGLAS J. PETERSON
19                                            Attorney General of Nebraska
     /s/ L. John LeSueur
20   L. John LeSueur (*pro hac vice* forthcoming)   /s/ Justin D. Lavene
     Arizona State Bar No. 022556             Justin D. Lavene (*pro hac vice* pending)
21   Assistant Attorney General              *Assistant Attorney General*
     Office of the Arizona Attorney General   Carlton Wiggam (*pro hac vice* pending)
22   2005 N. Central Avenue                   *Assistant Attorney General*
     Phoenix, Arizona 85004                   2115 State Capitol
23   Telephone: (602) 542-0640                Lincoln, NE 68509
     John.LeSueur@azag.gov                    Telephone: (402) 471-2682
24                                            E-mail: justin.lavene@nebraska.gov
     *Attorneys for Proposed Defendant-Intervenor*   carlton.wiggam@nebraska.gov
25   *State of Arizona ex rel. Arizona Game and Fish*
     *Commission*                             *Attorneys for Proposed Defendant-Intervenor*
26                                            *State of Nebraska*
     * In compliance with Civil Local Rule 5-1(i),
27   the filer of this document attests that all
     signatories listed have concurred in its filing.   *[Additional counsel listed on next page]*
28

Notice of Mot., Mot. to Intervene, & Mem. in Support
                                              of Mot., Case No. 4:19-cv-06013-JST

1

2

KEVIN G. CLARKSON
Attorney General of Alaska

WAYNE STENEHJEM
Attorney General of North Dakota

LESLIE RUTLEDGE
Attorney General of Arkansas

SEAN REYES
Attorney General of Utah

3

4

LAWRENCE G. WASDEN
Attorney General of Idaho

PATRICK MORRISEY
Attorney General of West Virginia

5

6

ERIC S. SCHMITT
Attorney General of Missouri

BRIDGET HILL
Attorney General of Wyoming

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Notice of Mot., Mot. to Intervene, & Mem. in Support
of Mot., Case No. 4:19-cv-06013-JST

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 9, 2019, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system, which will send notification of such to the attorneys of record.

DATED:  December 9, 2019

Respectfully submitted,

/s/ Melissa Schlichting
Melissa Schlichting (SBN 220258)
*Deputy Attorney General*
Montana Department of Justice
215 N. Sanders St.
P.O. Box 201401
Helena, MT 59620-1401
Telephone: (406) 444-2026Fax: (406) 444-3549
E-mail: MSchlichting@mt.gov

*Attorney for Proposed Defendant-Intervenor State of Montana*