CHRISTOPHER J. CARR (SBN 184076)
Chris.Carr@BakerBotts.com
NAVI SINGH DHILLON (SBN 279537)
Navi.Dhillon@BakerBotts.com
BAKER BOTTS LLP
101 California Street, Suite 3600
San Francisco, California 94111
Telephone:   (415) 291-6200

SCOTT A. KELLER (*pro hac vice* application pending)
Scott.Keller@BakerBotts.com
BAKER BOTTS LLP
1299 Pennsylvania Ave. NW
Washington, DC 20004
Telephone:   (202) 639-7700

Attorneys for Proposed Defendant-Intervenors
AMERICAN FARM BUREAU FEDERATION; AMERICAN
FOREST RESOURCE COUNCIL; AMERICAN PETROLEUM
INSTITUTE; FEDERAL FOREST RESOURCE COALITION;
NATIONAL ALLIANCE OF FOREST OWNERS; NATIONAL
ASSOCIATION OF HOME BUILDERS; NATIONAL
CATTLEMEN'S BEEF ASSOCIATION; and PUBLIC LANDS
COUNCIL.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| STATE OF CALIFORNIA, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>DAVID BERNHARDT, U.S. Secretary of the Interior, et al.,<br><br>    Defendants. | Case No. 4:19-cv-06013-JST<br><br>Related Case:  No. 4:19-cv-05206-JST<br>Related Case:  No. 4:19-cv-06812-JST<br><br>**PROPOSED DEFENDANT-INTERVENORS' NOTICE OF MOTION AND MOTION TO INTERVENE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:       February 26, 2020<br>Time:       2:00 p.m.<br>Courtroom:  6<br>Judge:      Hon. Jon S. Tigar |

## NOTICE OF MOTION AND MOTION TO INTERVENE

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that on Wednesday, February 26, 2020 at 2:00 p.m., or as soon as the matter may be heard in the courtroom of the Honorable Jon S. Tigar, located at the Oakland Courthouse, 1301 Clay Street, Oakland, California 94612, American Farm Bureau Federation, American Forest Resource Council, American Petroleum Institute, Federal Forest Resource Coalition, National Alliance Of Forest Owners, National Association Of Home Builders, National Cattlemen's Beef Association, and Public Lands Council (collectively, "Proposed Intervenors"), will and hereby do move to intervene in this action.

The Proposed Intervenors seek an order granting them leave to intervene as defendant-intervenors pursuant to Rule 24 of the Federal Rules of Civil Procedure.  In accordance with Rule 24(c), the Proposed Intervenors have attached a Proposed Answer in Intervention as **Exhibit A** to the supporting Declaration of Chris Carr.

This Motion is based on this Notice of Motion, the supporting Memorandum of Points and Authorities, the Declarations of Ryan Yates ("Yates/AFBF Decl."), Travis Joseph ("Joseph/AFRC Decl."), Stephanie Meadows ("Meadows/API Decl."), William Imbergamo ("Imbergamo/FFRC Decl."), William R. Murray ("Murray/NAFO Decl."), Thomas Ward ("Ward/NAHB Decl."), Mary-Thomas Hart ("Hart/NCBA Decl."), Tanner Beymer ("Beymer/PLC Decl."), all pleadings and papers filed in this action, and such other written and oral argument or evidence as may be presented at or before the time this motion is taken under submission.

Pending before the Court are three related actions.  On December 6, 2019, federal defendants filed a motion to dismiss in all three actions.  On December 9, the States of Alabama, Alaska, Arizona *ex rel*. the Arizona Game and Fish Commission, Arkansas, Idaho, Kansas, Missouri, Montana, Nebraska, North Dakota, Utah, West Virginia, and Wyoming filed a motion to intervene in *State of California v. Bernhardt*, No. 19-cv-06013-JST (N.D. Cal., Sept. 25, 2019).  The hearings on those motions are set for February 26, 2019.  In an effort to coordinate and streamline these proceedings, Proposed Intervenors have noticed this motion for the same date and will confer with the parties to see

-i-

if the intervention motions can be resolved via stipulation.

## STATEMENT OF ISSUES TO BE DECIDED

Pursuant to Civil L.R. 7-4, the Proposed Intervenors submit that the issues to be decided on this Motion are:

1. Whether the Proposed Intervenors, as representatives of the community regulated by the rules at issue in this litigation with significantly protectable interests that are potentially affected by the outcome of this litigation, meet the requirements set forth in Rule 24(a) to intervene in this action as a matter of right.

2. Alternatively, whether the Proposed Intervenors, as the organization whose members have significantly protectable interests, as representatives of the community regulated by the rules at issue in this litigation with significantly protectable interests that are potentially affected by the outcome of this litigation, meet the requirements for permissive intervention set forth in Rule 24(b).

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...........................................................................................................1

II.   BACKGROUND ............................................................................................................1

A.   ESA Statutory and Regulatory Scheme. ......................................................................1

B.   The 2019 ESA Rules........................................................................................................3

      1.     Species Listing and Critical Habitat Designation Rule...................................3

      2.     The 4(d) Rule. .................................................................................................5

      3.     The Interagency Cooperation and Interagency Consultation Process Rule.................6

C.   Plaintiffs Have Sued to Vacate the 2019 Rules. ........................................................7

III.  ARGUMENT ..................................................................................................................8

A.   The Proposed Intervenors Are Entitled to Intervene as of Right Under Rule 24(a)(2). ............8

      1.     The Proposed Intervenors' Motion Is Timely...............................................8

      2.     The Proposed Intervenors and Their Members Have Significantly Protectable Interests in the Outcome of This Action. ........................................9

      3.     The Disposition of This Action May Impair the Proposed Intervenors' Ability to Protect Their Interests............................................14

      4.     Proposed Intervenors' Interests Are Not Adequately Represented. ...........................15

B.   In the Alternative, Proposed Intervenors Should Be Granted Permissive Intervention Pursuant to Rule 24(b)(1)(B). ......................................................16

IV.  CONCLUSION..............................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Animal Legal Def. Fund v. Bernhardt,*
    No. 19-cv-06812-JST (N.D. Cal. Oct. 21, 2019) ..........................................................7

*Arakaki v. Cayetano,*
    324 F.3d 1078 (9th Cir. 2003) ..................................................................................8, 14

*Bennett v. Spear,*
    520 U.S. 154 (1997)........................................................................................2, 9, 10

*Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.,*
    309 F.3d 1113 (9th Cir. 2002) ..........................................................................................8

*Center for Biological Diversity v. Bernhardt,*
    No. 19-cv-05206-JST (N.D. Cal. Aug. 21, 2019).................................................................7

*Center for Biological Diversity v. U.S. Fish & Wildlife Service,*
    No. 15-cv-05754-JST (N.D. Cal. Apr. 7, 2016) ..........................................................13

*Citizens for Balanced Use v. Mont. Wilderness Ass'n,*
    647 F.3d 893 (9th Cir. 2011) .........................................................................................15

*County of Fresno v. Andrus,*
    622 F.2d 436 (9th Cir. 1980) .....................................................................................9, 15

*Donnelly v. Glickman,*
    159 F.3d 405 (9th Cir. 1998) .........................................................................................16

*Forest Conservation Council v. U.S. Forest Serv.,*
    66 F.3d 1489 (9th Cir. 1995) ....................................................................................14, 15

*Freedom from Religion Found., Inc. v. Geithner,*
    644 F.3d 836 (9th Cir. 2011) .........................................................................................16

*Idaho Farm Bureau Fed'n v. Babbitt,*
    58 F.3d 1392 (9th Cir. 1995) ......................................................................................8, 9

*Kootenai Tribe of Idaho v. Veneman,*
    313 F.3d 1094 (9th Cir. 2002) .......................................................................................16

*Nat'l Farm Lines v. Interstate Commerce Comm'n,*
    564 F.2d 381 (10th Cir. 1977) .......................................................................................15

*Nat'l Res. Def. Council v. Kempthorne,*
    539 F. Supp. 2d 1155 (E.D. Cal. 2008)..........................................................................15

-iv-

*Sage Electrochromics, Inc. v. View, Inc.*,
No. 12-cv-06441-JST, 2013 WL 6139713 (N.D. Cal. Nov. 21, 2013)............................................8

*Sagebrush Rebellion, Inc. v. Watt*,
713 F.2d 525 (9th Cir. 1983) ....................................................................9

*Sierra Club v. EPA*,
995 F.2d 1478 (9th Cir. 1993) ....................................................................9

*Sierra Club v. Espy*,
18 F.3d 1202 (5th Cir. 1994) ....................................................................15

*Smith v. Los Angeles Unified Sch. Dist.*,
830 F.3d 843 (9th Cir. 2016) ....................................................................14

*Southwest Ctr. For Biological Diversity v. Berg*,
268 F.3d 810 (9th Cir. 2001) ....................................................................14, 15

*Spangler v. Pasadena City Bd. of Educ.*,
552 F.2d 1326 (9th Cir. 1977) ....................................................................16

*State of California ex rel. Lockyer v. United States*,
450 F.3d 436 (9th Cir. 2006) ....................................................................9

*State of California v. Bernhardt*,
No. 19-cv-06013-JST (N.D. Cal. Sept. 25, 2019)....................................................7

*State of California v. Bureau of Land Mgmt.*,
No. 17-cv-07186-WHO (N.D. Cal. Feb. 26, 2018) ....................................................13

*State of California v. Bureau of Land Mgmt.*,
No. 18-cv-00521-HSG, 2018 WL 3439453 (N.D. Cal. July 17, 2018).....................................13

*Trbovich v. United Mine Workers of Am.*,
404 U.S. 528 (1972)....................................................................14, 15

*United States v. Alisal Water Corp.*,
370 F.3d 915 (9th Cir. 2004) ....................................................................8

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*,
139 S. Ct. 361 (2018)....................................................................2, 10

*Wilderness Soc'y v. U.S. Forest Serv.*,
630 F.3d 1173 (9th Cir. 2011) ....................................................................8, 9, 16

**STATUTES**

16 U.S.C. § 1531....................................................................1

16 U.S.C. § 1532....................................................................2

-v-

16 U.S.C. § 1533(a)(1) ...................................................................................................................2

16 U.S.C. § 1533(a)(3)(A)(i) ...........................................................................................................2

16 U.S.C. § 1533(b)(1)(A) ...............................................................................................................2

16 U.S.C. § 1533(b)(2) ..................................................................................................................2, 9

16 U.S.C. § 1533(d) ...................................................................................................................2, 5, 11

16 U.S.C. § 1536(a)(2) ...................................................................................................................2, 6

16 U.S.C. § 1536(a)(3) ......................................................................................................................6

16 U.S.C. § 1536(c) ...........................................................................................................................6

16 U.S.C. § 1538(a)(1) ......................................................................................................................2

**RULE**

Fed. R. Civ. P. 24 ..................................................................................................................7, 8, 14

**CODE OF FEDERAL REGULATIONS AND FEDERAL REGISTER**

50 C.F.R. § 17.31 ...............................................................................................................................5

50 C.F.R. § 17.42 ...............................................................................................................................6

50 C.F.R. § 17.43 ...............................................................................................................................6

50 C.F.R. § 17.71 ...............................................................................................................................5

50 C.F.R. § 402.01 .............................................................................................................................2

50 C.F.R. § 402.02 .............................................................................................................................6

50 C.F.R. § 402.14 ..........................................................................................................................6, 7

50 C.F.R. § 424.02 .............................................................................................................................4

50 C.F.R. § 424.11 ..........................................................................................................................3, 4

50 C.F.R. § 424.12 .............................................................................................................................4

78 Fed. Reg. 61,452 (Oct. 3, 2013) ..................................................................................................5

84 Fed. Reg. 44,976 (Aug. 27, 2019) .....................................................................................3, 6, 7, 12

84 Fed. Reg. 45,020 (Aug. 27, 2019) .........................................................................................3, 4, 5

84 Fed. Reg. 44,753 (Aug. 27, 2019) .........................................................................................3, 5, 6

**OTHER SOURCES**

3B Moore's Federal Practice, ¶ 24.07[4] (2d ed. 1995) ........................................................15

ESA Cross-Industry Coalition's Comment on Proposed Revisions to Regulations
    (Sept. 24, 2018),
        Docket Nos. FWS-HQ-ES-2018-0006-55576, 0007-61590, 0009-55540....................................12

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

This litigation involves modest reforms to Endangered Species Act ("ESA") regulations promulgated by the Fish and Wildlife Service ("FWS") and the National Marine Fisheries Service ("NMFS").  These new rules apply across the nation.  And they affect the operations of all industries that comply with the ESA, including farming, ranching, home building, oil and gas, and forestry. Plaintiffs seek to vacate these rules and frustrate FWS's and NMFS's substantial efforts to clarify the ESA's requirements.  In effect, Plaintiffs seek to create regulatory uncertainty, which in turn would impede effective conservation and impose unique costs and undue burdens on the regulated community.

The Proposed Intervenors and their members constitute large segments of the regulated community.[1]  And they have significant protectable interests in the subject matter of this litigation, as shown by the eight detailed declarations filed in support of this motion.  Proposed Intervenors not only share an interest in the effective conservation that the reforms at issue here promote, but they also have unique interests distinct from those of the federal defendants.

As discussed more fully below, law and fact fully support intervention.  This motion is timely and only Proposed Intervenors can adequately represent the interests of members of the regulated community who supported, are subject to, and benefit from the 2019 Rules.  In addition, Proposed Intervenors would provide unique perspectives that would aid the Court's consideration of the important issues presented in this case.

### II.   BACKGROUND

#### A.   ESA Statutory and Regulatory Scheme.

Enacted in 1973, the purpose of the ESA is "to provide a program for the conservation of [] endangered species and threatened species." 16 U.S.C. § 1531(b).  But the ESA recognizes that conservation is ill-served by sweeping and unwieldy regulation.  And so it is essential that the statute

---

[1] The Proposed Intervenors consist of the following organizations:  (1) American Farm Bureau Federation ("AFBF"), (2) American Forest Resource Council ("AFRC"), (3) American Petroleum Institute ("API"), (4) Federal Forest Resource Coalition ("FFRC"), (5) National Alliance of Forest Owners ("NAFO"), (6) National Association of Home Builders ("NAHB"), (7) National Cattlemen's Beef Association ("NCBA"), and (8) Public Lands Council ("PLC").

-1-

"not be implemented haphazardly, on the basis of speculation or surmise." *Bennett v. Spear*, 520 U.S. 154, 176 (1997); *see* 16 U.S.C. §§ 1533(b)(1)(A), (b)(2); 1536(a)(2).

Under Section 4 of the Act, the Secretary of the Interior, acting through FWS, and the Secretary of Commerce, acting through NMFS, have the duty to "list" plants and wildlife as "threatened" or "endangered" where appropriate. 16 U.S.C. § 1533(a)(1). "Endangered" species are those "in danger of extinction throughout all or a significant portion of [their] range," while "threatened" species are those that are "likely to become [] endangered species within the foreseeable future throughout all or a significant portion of [their] range." *Id.* § 1532(6), (20). FWS has authority over terrestrial wildlife, plants, and freshwater fish and NMFS has authority over anadromous and marine species. *See* 50 C.F.R. § 402.01(b).

Section 4 also requires FWS and NMFS, when listing a species, to "concurrently . . . designate any habitat of such species which is then considered to be critical habitat" unless they determine that more time is needed to make the designation or that a designation of critical habitat would not be prudent. 16 U.S.C. § 1533(a)(3)(A)(i). A critical habitat designation "places conditions on the Federal Government's authority to effect any physical changes to the designated area, whether through activities of its own *or by facilitating private development*." *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 139 S. Ct. 361, 365-66 (2018) (emphasis added) (citing 16 U.S.C. § 1536(a)(2)). These conditions are implemented through the "consultation process" specified by Section 7 of the Act. 16 U.S.C. § 1536(a)(2).

Section 7 of the ESA requires other federal agencies to "consult" with FWS and NMFS to "insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of" a critical habitat. *Id.*

Section 9 of the Act makes it unlawful to "take" any *endangered* species, unless expressly authorized. *Id.* § 1538(a)(1). Importantly, Section 9 itself does not extend its take prohibition to *threatened* species. *Id.* That has to be done by action of the listing agency, FWS or NMFS, pursuant to ESA Section 4(d). *Id.* § 1533(d).

-2-

**B.     The 2019 ESA Rules.**

The 2019 Rules were years in the making.  They are the result of a rigorous, formal notice-and-comment rulemaking that enjoyed robust public participation.  Fairly read and properly understood, the revisions to the ESA's implementing regulations reflect technical changes to, and fine-tuning of, the ESA's listing, critical habitat designation, and consultation processes.  Accordingly, they allow FWS and NMFS to *better* provide for the conservation of species without placing undue burdens on the regulated community.

The revisions to the ESA's implementing regulations are summarized below.  *See* Regulations for Prohibitions to Threatened Wildlife and Plants, 84 Fed. Reg. 44,753 (Aug. 27, 2019) ("4(d) Rule"); Regulations for Interagency Cooperation, 84 Fed. Reg. 44,976 (Aug. 27, 2019) ("Interagency Cooperation Rule"); Regulations for Listing Species and Designating Critical Habitat, 84 Fed. Reg. 45,020 (Aug. 27, 2019) ("Listing and Designation Rule").

### 1.     Species Listing and Critical Habitat Designation Rule.

FWS and NMFS revised and clarified the criteria for listing species as threatened or endangered and designating critical habitat.  *See* Listing and Designation Rule, 84 Fed. Reg. at 45,052. There are two primary effects of the Listing and Designation Rule.  One is to avoid the listing of a species as threatened if the perceived threat and the species' responses to it are unduly speculative. The other is to avoid overbroad or imprudent designations of critical habitat.

As to the propriety of listing a species as threatened, FWS's and NMFS's regulations have long required them to consider "whether the species is likely to become an endangered species within the foreseeable future."  50 C.F.R. § 424.11(d).  The revised rule clarifies that the "foreseeable future" extends "so far into the future as the Services can reasonably determine that both the future threats and the species' responses to those threats are likely."  84 Fed. Reg. at 45,052.  FWS and NMFS may take "into account considerations such as the species' life-history characteristics, threat projection timeframes, and environmental variability."  *Id.*

As to critical habitat designation, the 2019 Rule specifies further instances where such action would not be prudent:  when the threat to the species' habitat "stem[s] solely from causes" the Services

"cannot [] address" or affects "[a]reas within" the United States that "provide no more than negligible conservation value . . . for a species occurring primarily outside" of the United States.  *Id.* at 45,053 (revising 50 C.F.R. § 424.12(a)(1)).

The 2019 Rule also provides that unoccupied habitat should only be designated critical habitat if occupied critical habitat is "inadequate to ensure conservation of the species" and that unoccupied habitat is "reasonably certain" to "contribute to the conservation of the species" and "contains one or more of those physical or biological features essential to the conservation of the species."  *Id.* (revising 50 C.F.R. § 424.12(b)(2)).  Essential "physical or biological features" must "occur in specific areas," and can include "water characteristics, soil type, geological features, sites, prey, vegetation, symbiotic species, or other features."  *Id.* at 45,052 (revising 50 C.F.R. § 424.02).

FWS and NMFS also amended their general requirement that they list, reclassify, or delist species as endangered or threatened "solely on the basis of the best available scientific and commercial information regarding a species' status," to remove the phrase "without reference to possible economic or other impacts of such determination."  *See id.* (amending 50 C.F.R. § 424.11(b)).  However, the regulation—consistent with the ESA itself—still requires the decision to be made "solely on the basis of the best available scientific and commercial information."  *See id.*

In addition to their duty to list species, FWS and NMFS, as noted, also have the authority to "delist" species when they are no longer threatened or endangered.  Generally, this can happen as a result of extinction, initial misclassification, or recovery of the species.  *See id.*  The 2019 Rule does not alter these criteria, instead replacing the term "recovery" with the more straightforward, but otherwise identical, ground that the "species does not meet the definition of an endangered species or a threatened species."  *Id.*; *see id.* at 45,035 ("Although we are removing the word 'recovery' from this section, the language will continue to include species that have recovered, because recovered species would no longer meet the definition of either an 'endangered species' or a 'threatened species.'").

The 2019 Rule also removed language requiring that "data substantiate" the delisting decision.  *Id.* at 45,052.  But, like removal of the term "recovery," removing this phrase does not alter the ESA's

-4-

substantive requirements.  FWS and NMFS are still required to comply with the *statutory* standard to establish that the species does not meet the definition of a threatened or endangered species "*based on the best scientific and commercial data available*."  *Id.* at 45,036 (emphasis added).

The Proposed Intervenors supported the Listing and Designation Rule, either wholly or with suggested modifications, and submitted comments in favor of it during notice and comment.  *See* Yates/AFBF Decl. at ¶¶ 11, 13; Joseph/AFRC Decl. at ¶ 9; Meadows/API Decl. at ¶¶ 9-10; Murray/NAFO Decl. at ¶¶ 8-9; Ward/NAHB Decl. at ¶¶ 10-12; Hart/NCBA Decl. at ¶ 4; Beymer/PLC Decl. at ¶ 4.

### 2.    The 4(d) Rule.

Section 9 of the ESA itself only says *endangered* species are protected by its take prohibition; Section 9 does *not* similarly include *threatened* species.  Instead, and as noted above, when it comes to threatened species, Section 4 of the Act authorizes FWS and NMFS to "by regulation prohibit with respect to any threatened species any act prohibited under section 9(a) . . . with respect to endangered species."  16 U.S.C. § 1533(d).  Prior to the 2019 Rule, FWS and NMFS exercised this authority in different ways.  NMFS has long issued species-specific "special rules" that provide take prohibitions tailored to the unique needs of each threatened species.  In contrast, FWS automatically extended the full scope of Section 9's take prohibition to threatened species it listed (with few exceptions), without regard to whether the conservation of the species actually required such prohibitions.  *See* 50 C.F.R. §§ 17.31(a) (2018) (wildlife); 17.71(a) (2018) (plants).  This was called the "Blanket 4(d) Rule," and it imposed substantial compliance costs, requiring members of the regulated community to either alter their routine practices or request a permit that would allow for incidental take.  It also failed to tailor regulations to facilitate actions that are, on balance, beneficial to listed species.  *Cf.*, *e.g.*, Determination of Endangered Status for the Taylor's Checkerspot Butterfly and Threatened Status for the Streaked Horned Lark, 78 Fed. Reg. 61,452 (Oct. 3, 2013) (establishing special rule to tailor take prohibitions on streaked horned lark to encourage agricultural activities under best management practices).

But under its new 4(d) Rule, FWS has brought its practices into line with NMFS, and has

PROPOSED DEFENDANT-INTERVENORS'
NOTICE OF MOT. & MOT. TO INTERVENE;
MPA IN SUPPORT

CASE NO. 4:19-cv-06013-JST

pledged to issue special rules for each new species it lists as threatened.  *See* 4(d) Rule, 84 Fed. Reg. at 44,753-54 (revising 50 C.F.R. § 17.31 (wildlife); § 17.71 (plants)).  Consequently, when FWS lists new species as threatened, it will "tailor protections to the needs of the threatened species," which "remov[es] redundant permitting requirements" for private parties.  *Id.* at 44,756-57.  When FWS has crafted special rules in the past, it has narrowed the scope of private conduct it regulates to permit incidental take resulting from routine commercial activities that will not significantly affect the species.  For example, it has allowed incidental take resulting from "routine ranching activities" and "forest management activities" in appropriate cases.  50 C.F.R. §§ 17.43(c)(3); 17.42(h)(2)(iii).

The Proposed Intervenors supported rescinding the Blanket 4(d) Rule and submitted comments in favor of the revised 4(d) Rule during notice and comment.  *See* Yates/AFBF Decl. at ¶¶ 11, 13; Joseph/AFRC Decl. at ¶ 9; Meadows/API Decl. at ¶¶ 9-10; Murray/NAFO Decl. at ¶¶ 8-9; Ward/NAHB Decl. at ¶¶ 10-12; Hart/NCBA Decl. at ¶¶ 3-4; Beymer/PLC Decl. at ¶¶ 3-4.

### 3. The Interagency Cooperation and Interagency Consultation Process Rule.

Section 7 of the ESA requires federal "action" agencies to consult with the relevant Service to ensure that actions they authorize, fund, or carry out are not likely to jeopardize the continued existence of any protected species or result in harm to critical habitat.  *See* 16 U.S.C. § 1536(a)(2).  This consultation requirement includes "the granting of licenses, contracts, leases, easements, rights-of-way, permits, or grants-in-aid."  50 C.F.R. § 402.02(c); *see* 16 U.S.C. § 1536(a)(3).

Consultation requirements begin with the action agency's evaluation of the likely effects of its own action, which in turn may trigger informal and formal consultation requirements with FWS or NMFS.  16 U.S.C. § 1536(c).  Under formal consultations, FWS or NMFS must prepare a biological opinion that determines whether the "the action is likely to jeopardize the continued existence of the listed species or result in the destruction or adverse modification of critical habitat" by judging the "effects of the [agency's proposed] action" against the "current status and environmental baseline of the listed species or critical habitat."  50 C.F.R. § 402.14(g)(2)-(4).

The 2019 Rule has clarified interagency cooperation requirements in several respects.  For example, FWS and NMFS addressed how to evaluate proposed agency actions by clarifying how to

measure the baseline, effects of the agency's action, and "destruction or adverse modification" of a species' critical habitat "as a whole." *See* 84 Fed. Reg. at 45,016-18.  In addition, the 2019 Rule streamlines the consultation process and makes it more efficient by creating an option for agencies to request "expedited" formal consultation in appropriate circumstances. *Id.* at 45,017 (promulgating 50 C.F.R. § 402.14(*l*)).

For informal consultations, the 2019 Rule similarly creates streamlined options for consultations, including a 60-day deadline for FWS and NMFS to either concur or disagree with an action agency's evaluation, "programmatic consultations" to "address[] an agency's multiple actions on a program, region, or other basis," and (under appropriate circumstances) exemptions from reinitiating consultation after a new species is listed for those agencies acting under programmatic land management plans. *Id.* at 45,016-18.

The Proposed Intervenors supported the Interagency Consultation Rule, either wholly or with suggested modifications, and submitted comments in support of it during notice and comment. *See* Yates/AFBF Decl. at ¶¶ 11, 13; Joseph/AFRC Decl. at ¶ 9; Meadows/API Decl. at ¶¶ 9-10; Murray/NAFO Decl. at ¶¶ 8-9; Ward/NAHB Decl. at ¶¶ 10-12; Hart/NCBA Decl. Decl. at ¶ 4; Beymer/PLC Decl. at ¶ 4.

### C.    Plaintiffs Have Sued to Vacate the 2019 Rules.

There are three related lawsuits before this Court concerning the 2019 Rules.  Plaintiffs allege that the 2019 Rules violate the ESA, the Administrative Procedure Act, and the National Environmental Policy Act: *Center for Biological Diversity v. Bernhardt*, No. 19-cv-05206-JST (N.D. Cal. Aug. 21, 2019); *State of California v. Bernhardt*, No. 19-cv-06013-JST (N.D. Cal. Sept. 25, 2019); *Animal Legal Def. Fund v. Bernhardt*, No. 19-cv-06812-JST (N.D. Cal. Oct. 21, 2019).  The federal defendants filed a Motion to Dismiss all three cases on December 6, 2019, with a hearing on their motion scheduled for February 26, 2020.

Proposed State Intervenors moved to intervene in *California v. Bernhardt*, on December 9, with a hearing on their motion scheduled for February 26, 2020.  The initial Case Management Conference is set for March 3, 2020.

-7-

## III.   ARGUMENT

Rule 24 of the Federal Rules of Civil Procedure provides for two types of intervention: mandatory and permissive.  A proposed intervenor must be allowed to intervene when it "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2).

When intervention as of right is unavailable, courts may still permit intervention when the proposed intervenor "has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  Proposed Intervenors meet both standards.

### A.   The Proposed Intervenors Are Entitled to Intervene as of Right Under Rule 24(a)(2).

Under Federal Rule of Civil Procedure 24(a)(2), a motion to intervene must be granted if the moving party (1) makes a timely motion; (2) has a "significantly protectable interest" concerning the subject matter of the action; (3) is "situated such that the disposition of the action may impair or impede the party's ability to protect that interest"; and (4) is "not [] adequately represented by existing parties." *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003) (citing Fed. R. Civ. P. 24(a)(2)).  The "requirements for intervention are broadly interpreted in favor of intervention" and the court's analysis is "guided primarily by practical and equitable considerations." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004).  This "liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (quotations and citation omitted).

#### 1.   The Proposed Intervenors' Motion Is Timely.

Rule 24 itself does not impose a strict deadline for intervention, so instead courts weigh three factors to determine whether a motion to intervene is timely:  "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002).  Each factor supports intervention here.

The Proposed Intervenors' motion is being filed less than three months after the initial complaint was filed and months before the March 2020 initial case management conference.  Courts regularly conclude that requests to intervene are timely at this early stage.  *See, e.g., Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995).  Indeed, this Court has concluded a Rule 24 motion was timely when it came after a *seven-month* delay and would require "duplicating several months of existing discovery."  *Sage Electrochromics, Inc. v. View, Inc.*, No. 12-cv-06441-JST, 2013 WL 6139713, at *3 (N.D. Cal. Nov. 21, 2013).  Granting this motion will not delay this action or result in any undue prejudice to any party.

### 2. The Proposed Intervenors and Their Members Have Significantly Protectable Interests in the Outcome of This Action.

The Proposed Intervenors have multiple "significantly protectable" interests in the outcome of this litigation.  Rule 24(a)(2) requires applicants to demonstrate that their "interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Wilderness Soc'y*, 630 F.3d at 1179 (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1484 (9th Cir. 1993), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d 1173).

Intervention as of right "does not require a specific legal or equitable interest," because "'the interest test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.'"  *Id.* at 1179 (quoting *County of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980)).  So a "party has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *State of California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006).

At the threshold, the Proposed Intervenors are "*entitled* as a matter of right to intervene in an action challenging the legality of [] measure[s] [they] supported," because they "participated in the administrative process" to promulgate the 2019 Rules at issue in this litigation.  *Babbitt*, 58 F.3d at 1397 (emphasis added) (collecting cases); *see, e.g.*, *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 526-27 (9th Cir. 1983) (organization granted intervention as of right when it "participated actively in the administrative process").

Additionally, the Proposed Intervenors and their members have "significantly protectable" interests in the substance of the 2019 Rules. The Proposed Intervenors represent large segments of the industries regulated directly or indirectly by the ESA, and they supported the 2019 Rules precisely *because* they would promote efficient and effective conservation, increase regulatory transparency, and reduce unnecessary regulatory costs. In addition to conservation, "economic consequences are an explicit concern of the ESA." *Bennett*, 520 U.S. at 177; *see* 16 U.S.C. § 1533(b)(2). And the 2019 Rules have significant economic and other consequences for the regulated community, because their net effect is to (1) provide greater clarity to FWS's and NMFS's listing and critical habitat designation criteria; (2) provide FWS with the means to better tailor prohibitions to the unique needs of each threatened species; and (3) streamline the interagency consultation process. Consequently, there is no doubt that if Plaintiffs are successful, those members could face higher costs and project delays that in many cases will *not* appreciably benefit listed species. Each new rule affects different aspects of different members' operations.

*First*, the Listing and Designation Rule provides greater transparency to the Proposed Intervenors' members whose land may be subject to the ESA and will consequently help limit unwarranted listings and overbroad critical habitat designations—which do not promote species conservation, place unnecessary burdens on regulated industry, and stymy private conservation efforts.

Listing new species as threatened or endangered imposes regulatory costs on those who seek to comply with the ESA, especially when a threatened species is subject to the full scope of take prohibitions, as was true under the Blanket 4(d) Rule. Similarly, designating critical habitats imposes regulatory burdens and can reduce property values of private landowners. *See* Murray/NAFO Decl. at ¶ 5; *Weyerhaeuser*, 139 S. Ct. at 368 n.1 (noting that property designated as critical habitat loses market value). When those decisions are made according to statutory standards and regulate only as much private conduct as is necessary to ensure conservation of the species and its habitat, then FWS and NMFS properly advance the ESA's core concern of conservation while also taking into account another one of the ESA's "explicit" concerns—"economic consequences." *See Bennett*, 520 U.S. at 176-77. On the other hand, unwarranted listing and overbroad designation decisions necessarily sweep

-10-

in too much private conduct, and impose unnecessary costs on regulated industry.

For example, AFRC and FFRC members have seen their timber contracts suspended, slowed, or cancelled because of overbroad critical habitat designations, negatively affecting their economic interests. *See* Joseph/AFRC Decl. at ¶ 5; Imbergamo/FFRC Decl. at ¶¶ 4, 6. Moreover, overbroad critical habitat designations impede forest management projects and harm AFRC's members' general interests in forest health, federal timber supply, and private forest land. *See* Joseph/AFRC Decl. ¶ 6. NAFO members have likewise faced disruptions to their timber sales resulting from the listing of a new species, ranging from delays in sales to outright restrictions on the timber they may harvest. *See* Murray/NAFO Decl. at ¶ 7. Similarly, designated habitats can impede API members' access to their oil and gas lease sites and increase permitting requirements and delays, all driving up the costs of their operations and impeding their ability to provide energy to the country. *See* Meadows/API Decl. at ¶¶ 5-6. In addition to the effect on core business activities, overly burdensome restrictions can reduce incentives to engage in voluntary conservation efforts, which runs contrary to the ESA's purpose. *See* Murray/NAFO Decl. at ¶ 5.

Under the 2019 Listing and Designation Rule, however, FWS and NMFS have taken steps to ensure that listing decisions will be well-founded. Moreover, the Rule will ensure that critical habitat designations will not be overbroad, thereby taking the ESA's concerns about economic consequences into account when designating critical habitat. The result is that members of the Proposed Intervenors face less uncertainty about whether their land will be subject to a critical habitat designation, and are less likely to have their land unnecessarily designated as critical habitat.

*Second*, the Proposed Intervenors' members will benefit from the 4(d) Rule. Promulgating appropriate, targeted prohibitions for a threatened species requires FWS and NMFS to impose only those prohibitions they "deem[] necessary and advisable." 16 U.S.C. § 1533(d). But when FWS declined to exercise its discretion and instead defaulted to the full suite of Section 9 prohibitions under the Blanket 4(d) Rule, it eschewed that statutory responsibility and often imposed unnecessary costs on the regulated community without any benefit to listed species. *See* Ward/NAHB Decl. at ¶ 8 (noting burdens on private landowners).

-11-

Chief among those costs, members of the regulated community had to alter their practices to avoid violating prohibitions against incidental take, which in some cases were overbroad.   For example, the Blanket 4(d) Rule often required AFBF, NCBA, and PLC's members to alter their routine farming and ranching practices at significant expense—and under the threat of litigation.   *See* Yates/AFBF Decl. at ¶ 10; Hart/NCBA Decl. at ¶ 4; Beymer/PLC Decl. at ¶ 3.   Because API's members' normal oil and gas operations could result in incidental take of threatened species, they faced possible complete prohibitions on oil and gas development activity in and around designated critical habitat.   *See* Meadows/API Decl. at ¶ 5.   In total, the result of the Blanket 4(d) Rule was that members of the Proposed Intervenors engaged in fewer productive activities at higher costs—whether that be farming, ranching, home-building, or oil and gas development.

But under the new 4(d) Rule, when FWS lists a species as "threatened," it will impose prohibitions in accordance with the needs of the threatened species.   This should allow the Proposed Intervenors' members to avoid having their activities be subject to Section 7 consultations when those activities would not be likely to have significant effects on listed species or their critical habitats.   They will also have to alter fewer practices, seek fewer incidental take permits, and face less litigation.   In sum, the 4(d) Rule will reduce uncertainty for the regulated community and facilitate the provision of goods and services while still protecting threatened species.

*Finally*, those members who rely on federal permits, licenses, leases, or contracts for their operations will benefit from a streamlined and more transparent interagency consultation process.   The consultation process is often time-consuming and can result in burdensome requirements on operations.   *See* Meadows/API Decl. at ¶ 7; Ward/NAHB Decl. at ¶ 9.   In fact, the consultation process can be so costly that one member of a regulated industry accepted a costly conservation measure that "provided no measurable benefit to a species and its habitat" because, if "the negotiations had continued, the project proponents would have been forced to wait an additional four months . . . to begin construction—at significant cost."   ESA Cross-Industry Coalition's Comment on Proposed Revisions to Regulations 37 n.13 (Sept. 24, 2018), Docket Nos. FWS-HQ-ES-2018-0006-55576, 0007-61590, 0009-55540, available at https://www.regulations.gov/document?D=FWS-HQ-ES-

2018-0006-55576.

Members of the Proposed Intervenors rely on myriad and expanding federal agency actions and authorizations to conduct their business activities, and thus have an interest in a well-functioning interagency consultation process.  *See* Yates/AFBF Decl. at ¶ 8; Ward/NAHB Decl. at ¶ 9.  For example, members of the Proposed Intervenors depend on federal livestock grazing permits, federal timber contracts, and federal oil and gas leases to operate.  *See* Joseph/AFRC Decl. at ¶ 5; Meadows/API Decl. at ¶ 7; Imbergamo/FFRC Decl. at ¶ 4; Beymer/PLC Decl. at ¶ 2.

The Interagency Cooperation Rule clarifies the bounds of FWS's and NMFS's analysis, and expedites the consultation process.  Specifically, FWS and NMFS have clarified what federal actions will require mitigation measures.  *See* 84 Fed. Reg. at 45,017-18.  This will result in fewer unnecessary restrictions on members' operations.  In addition, members (1) can seek expedited formal consultation, (2) have the benefit of a transparent 60-day timeline for informal consultations, and (3) will benefit from the time savings of programmatic consultations.  *See id.* at 45,016-18.  In total, the Interagency Cooperation Rule will reduce uncertainty and make more efficient the operations of members of the regulated community who rely on federal authorizations for their operations.

These interests are more than sufficient to support intervention as of right.  As this Court has recognized, representatives of a regulated community with interests in the prospective effect of the regulations at issue in litigation have an interest sufficient for intervention as of right.  For example, Proposed Intervenor API intervened in a case challenging the federal government's rescission of a regulation that imposed limitations on hydraulic fracturing on public and tribal lands.  *California v. Bureau of Land Mgmt.*, No. 18-cv-00521-HSG, 2018 WL 3439453, at *1 (N.D. Cal. July 17, 2018).  API asserted that, "as a national trade association that represents more than six hundred oil and gas companies, [it] has a significant economic and financial interest in [] litigation that is threatened by Plaintiffs' requested relief" to enjoin rescission of the rule.  *Id.* at *8.  The Court agreed and noted that "[i]n analogous circumstances, other courts in this district have allowed API and other interest groups to separately intervene under Rule 24(a) and (b)."  *Id.* (citing *State of California v. Bureau of Land Mgmt.*, No. 17-cv-07186-WHO, ECF No. 90 (N.D. Cal. Feb. 26, 2018) (order granting trade

-13-

associations' motions to intervene)).  Similarly, in *Center for Biological Diversity v. U.S. Fish & Wildlife Service*, No. 15-cv-05754-JST, ECF No. 49 (N.D. Cal. Apr. 7, 2016), this Court granted intervention as of right to AFRC and NAHB, among others.

Thus, the Proposed Intervenors have demonstrated that their members have "significantly protectable" interests in this litigation.  Moreover, these interests are not only sufficient to support intervention, but they also give the Proposed Intervenors unique perspectives that will aid this Court's resolution of Plaintiffs' claims.

### 3. The Disposition of This Action May Impair the Proposed Intervenors' Ability to Protect Their Interests.

The third requirement for intervention as of right follows from the second, and is satisfied if the prospective intervenor "would be substantially affected in a practical sense by the determination made in an action." *Southwest Ctr. For Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) (quoting Fed. R. Civ. P. 24 advisory committee's notes).  Here, "the injunctive relief sought by the plaintiffs will have direct, immediate, and harmful effects upon" Proposed Intervenors' members' interests by vacating the 2019 Rules and creating costly regulatory uncertainty.  *Id.* at 818 (quoting *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1494 (9th Cir. 1995)).  Plaintiffs' requested relief would roll back hard-won regulatory reforms that benefit the regulated community generally, and Proposed Intervenors' members specifically.  So Plaintiffs' suit "may as a practical matter impair or impede [the Proposed Intervenors'] ability to safeguard [their members'] protectable interest[s]." *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 862 (9th Cir. 2016).

As explained above, revoking the 2019 Rules and undoing FWS's and NMFS's efforts to make their listing, critical habitat designation, and consultation programs more efficient, effective, and transparent would affect the Proposed Intervenors and their members in diverse and harmful ways.  First, re-imposing the previous listing and designation criteria would reintroduce the regulatory uncertainty that allows for overbroad critical habitat designations, negatively affecting the Proposed Intervenors' members' activities and the value of their property.  Second, re-imposing the Blanket 4(d) Rule would subject their routine activities to the full scope of stringent take prohibitions for newly

-14-

listed threatened species, notwithstanding the fact that the full suite of prohibitions might not be necessary for, or even beneficial to, the species.  Finally, rescinding the revisions to the interagency consultation process will reintroduce uncertainty and inefficiency to consultations, negatively affecting the many members that rely on federal contracts, permits, and licenses to operate.

### 4.    Proposed Intervenors' Interests Are Not Adequately Represented.

The Proposed Intervenors have distinct interests from the federal defendants and have met their "minimal burden" to show that the federal defendants' representation of their protectable interests "*may be*" inadequate.  *Arakaki*, 324 F.3d at 1086 (emphasis added) (citing *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)).  "The most important factor in determining the adequacy of representation is how the [intervenor's] interest compares with the interests of existing parties." *Id.* (citations omitted).  An intervenor will be adequately represented only if "(1) the interests of a present party to the suit are such that it will undoubtedly make all of the intervenor's arguments; (2) the present party is capable of and willing to make such arguments; *and* (3) the intervenor would not offer any necessary element to the proceedings that the other parties would neglect." *Andrus*, 622 F.2d at 438-39 (emphasis added) (citation omitted).

This litigation presents "the familiar situation in which the governmental agency is seeking to protect not only the interest of the public but also the private interests of the petitioners in intervention, a task which is on its face impossible. . . .  [T]his kind of conflict satisfies the minimal burden of showing inadequacy of representation." *Nat'l Res. Def. Council v. Kempthorne*, 539 F. Supp. 2d 1155, 1188 (E.D. Cal. 2008) (alterations in original) (quoting *Nat'l Farm Lines v. Interstate Commerce Comm'n*, 564 F.2d 381, 384 (10th Cir. 1977)).

As is often true, there is a distinction between the Proposed Intervenors' interests and those of the federal defendants.  The Ninth Circuit has recognized that "[i]nadequate representation is most likely to be found when the applicant asserts a personal interest that does not belong to the general public," like Proposed Intervenors assert here. *Forest Conservation Council*, 66 F.3d at 1499 (quoting 3B Moore's Federal Practice, ¶ 24.07[4] (2d ed. 1995)).  Proposed Intervenors, as members of the regulated industries under the ESA, have their own "economic concerns" with respect to the 2019

-15-

Rules, which are narrower and distinct from the federal defendants' "broad public interest" in administration of the ESA. *Id.* (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir. 1994)). The federal defendants simply cannot represent the narrower interests of the Proposed Intervenors, even if they "occupy the same posture in litigation." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 899 (9th Cir. 2011); *see also Trbovich*, 404 U.S. at 538-39.

At bottom, the federal defendants' broad objective is to defend their ability to implement the requirements of the ESA. So they will not "undoubtedly make all" of the arguments necessary to defend the economic interests of the Proposed Intervenors and their members. *Berg*, 268 F.3d at 822. Nor can they be expected to adequately represent the interests of the Proposed Intervenors and their members in any potential settlement discussions that may ensue, as their interests are not strictly aligned with those of the Proposed Intervenors.

**B.      In the Alternative, Proposed Intervenors Should Be Granted Permissive Intervention Pursuant to Rule 24(b)(1)(B).**

Alternatively, the Proposed Intervenors should be permitted to intervene in this action pursuant to Rule 24(b)(1)(B). "Under Rule 24(b) the question here is whether the applicants . . . assert a claim or defense in common with the main action." *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1110 (9th Cir. 2002), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d 1173. Permissive intervention typically requires "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011) (collecting cases).

Each requirement is plainly met here. First, the Ninth Circuit has explained that the independent jurisdiction requirement is inapplicable when a party seeks intervention in a federal-question case and does not assert new claims—which is the situation here. *Id.* at 844. Second, the motion is timely for the reasons stated above. Lastly, Proposed Intervenors participated at every step of the rulemaking process for the 2019 Rules and seek to advance legal arguments directly in response to the allegations in the Complaint. Proposed Intervenors do not seek to add any new claims or otherwise broaden the subject of this action. All matters at issue in this litigation turn on the same

1   questions of law and share "common factual proof." *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th

2   Cir. 1998).  Indeed, the Proposed Intervenors' "intervention will significantly contribute to . . . the just

3   and equitable adjudication of the legal questions presented." *Spangler v. Pasadena City Bd. of Educ.*,

4   552 F.2d 1326, 1329 (9th Cir. 1977).

5            At a minimum, the Court should grant permissive intervention under these circumstances.

6   **IV.   CONCLUSION**

7            For the reasons stated above, the Proposed Intervenors ask that they be granted leave to

8   intervene in this action.

9            Respectfully submitted,

10

     Dated:  December 13, 2019                    BAKER BOTTS LLP
11

12                                                /s/ *Christopher J. Carr*
                                                  CHRISTOPHER J. CARR
13

14                                                Counsel for Proposed Defendant-Intervenors
                                                  AMERICAN FARM BUREAU FEDERATION,
15                                                AMERICAN FOREST RESOURCE COUNCIL,
                                                  AMERICAN PETROLEUM INSTITUTE,
16                                                FEDERAL FOREST RESOURCE COALITION,
                                                  NATIONAL ALLIANCE OF FOREST OWNERS,
17                                                NATIONAL ASSOCIATION OF HOME
                                                  BUILDERS, NATIONAL CATTLEMEN'S BEEF
18                                                ASSOCIATION, and PUBLIC LANDS COUNCIL

19

20

21

22

23

24

25

26

27

28

PROPOSED DEFENDANT-INTERVENORS'                              CASE NO. 4:19-cv-06013-JST
NOTICE OF MOT. & MOT. TO INTERVENE;
MPA IN SUPPORT