1   XAVIER BECERRA
    Attorney General of California
2   DAVID A. ZONANA, State Bar No. 196029
    DAVID G. ALDERSON, State Bar No. 231597
3   Supervising Deputy Attorneys General
    GEORGE TORGUN, State Bar No. 222085
4   TARA MUELLER, State Bar No. 161536
    ERIN GANAHL, State Bar No. 248472
5   Deputy Attorneys General
     1515 Clay Street, 20th Floor
6    P.O. Box 70550
     Oakland, CA  94612-0550
7    Telephone:  (510) 879-1002
     Fax:  (510) 622-2270
8    E-mail:  George.Torgun@doj.ca.gov

9   *Attorneys for Plaintiff State of California*

10  *[Additional counsel listed on signature page]*

MAURA HEALEY
Attorney General of Massachusetts
MATTHEW IRELAND (*pro hac vice*)
TURNER SMITH
Assistant Attorneys General
  Office of the Attorney General
  Environmental Protection Division
  One Ashburton Place, 18th Floor
  Boston, MA 02108
  Telephone:  (617) 727-2200
  Email:  Matthew.Ireland@mass.gov
  Email:  Turner.Smith@mass.gov

*Attorneys for Plaintiff Commonwealth of Massachusetts*

11              IN THE UNITED STATES DISTRICT COURT

12            FOR THE NORTHERN DISTRICT OF CALIFORNIA

13
14  **STATE OF CALIFORNIA,**
    **COMMONWEALTH OF**
15  **MASSACHUSETTS, STATE OF**
    **MARYLAND, STATE OF COLORADO,**
16  **STATE OF CONNECTICUT, STATE OF**
    **ILLINOIS, PEOPLE OF THE STATE OF**
17  **MICHIGAN, STATE OF MINNESOTA,**
    **STATE OF NEVADA, STATE OF NEW**
18  **JERSEY, STATE OF NEW MEXICO,**
    **STATE OF NEW YORK, STATE OF**
19  **NORTH CAROLINA, STATE OF**
    **OREGON, COMMONWEALTH OF**
20  **PENNSYLVANIA, STATE OF RHODE**
    **ISLAND, STATE OF VERMONT, STATE**
21  **OF WASHINGTON, STATE OF**
    **WISCONSIN, DISTRICT OF COLUMBIA,**
22  **and CITY OF NEW YORK,**

                                    Plaintiffs,
23
          v.
24  **DAVID BERNHARDT, U.S. Secretary of**
    **the Interior, WILBUR ROSS, U.S. Secretary**
25  **of Commerce, UNITED STATES FISH**
    **AND WILDLIFE SERVICE, and**
26  **NATIONAL MARINE FISHERIES**
    **SERVICE,**

                                    Defendants.
27
28

Case No. 4:19-cv-06013-JST

Related Cases: No. 4:19-cv-05206-JST

                No. 4:19-cv-06812-JST

**STATE PLAINTIFFS' OPPOSITION TO**
**FEDERAL DEFENDANTS' MOTION TO**
**DISMISS**

Date:        February 26, 2020
Time:        2:00 p.m.
Place:       Courtroom 6, 2nd Floor
Judge:       Hon. Jon S. Tigar

# TABLE OF CONTENTS

**Page**

Introduction ........................................................................................................................... 1

Background ........................................................................................................................... 2

Standard of Review .............................................................................................................. 5

Argument .............................................................................................................................. 6

    I.     State Plaintiffs Have Standing to Bring This Action. ........................................... 6

          A.     Injury in Fact. ............................................................................................ 6

                  1.     State Plaintiffs have demonstrated sufficient sovereign, economic, and procedural harms for standing purposes. ............... 7

                  2.     State Plaintiffs have alleged actual or impending concrete and particularized harms and need not await myriad specific applications of the Final Rules. .................................................... 11

          B.     Causation and Redressability. .................................................................. 16

    II.    State Plaintiffs' Challenge is Ripe for Review. ................................................... 17

          A.     Withholding Judicial Review Would Impose Hardship on State Plaintiffs. ................................................................................................. 18

          B.     State Plaintiffs' Claims Present Purely Legal Issues Requiring No Further Agency Refinement or Factual Development. ............................ 21

Conclusion .......................................................................................................................... 25

1

# TABLE OF AUTHORITIES

2

**Page**

3

CASES

4

*Abbott Labs. v. Gardner*
        387 U.S. 136 (1967) ...................................................................................................18, 23

*Air All. Houston v. EPA*
        906 F.3d 1049 (D.C. Cir. 2018) ...........................................................................................8

*Bishop Paiute Tribe v. Inyo Cty.*
        863 F.3d 1144 (9th Cir. 2017) ............................................................................................17

*Brown v. City of L.A.*
        521 F.3d 1238 (9th Cir. 2008) ............................................................................................17

*California ex rel. Lockyer v. U.S. Dep't of Agric.*
        575 F.3d 999 (9th Cir. 2009) ...............................................................................20, 21, 23

*California v. Azar*
        911 F.3d 558 (9th Cir. 2018) ................................................................................................8

*California v. EPA*
        385 F. Supp. 3d 903 (N.D. Cal. 2019) ...........................................................................6, 17

*California v. Trump*
        379 F. Supp. 3d 928 (N.D. Cal. 2019) ...............................................................................16

*Camp v. Pitts*
        411 U.S. 138 (1973) ...........................................................................................................12

*Cement Kiln Recycling Coalition v. EPA*
        493 F.3d 207 (D.C. Cir. 2007) ...........................................................................................25

*Central Delta Water Agency v. United States*
        306 F.3d 938 (9th Cir. 2002) ..............................................................................................13

*Citizens for Better Forestry v. U.S. Dep't of Agric.*
        341 F.3d 961 (9th Cir. 2003) ..........................................................................10, 20, 21, 22

*Citizens for Clean Energy v. U.S. Dep't of the Interior*
        384 F. Supp. 3d 1264 (D. Mont. 2019) ........................................................................10, 17

*City and Cty. of San Francisco v. Whitaker*
        357 F. Supp. 3d 931 (N.D. Cal. 2018) .................................................................................9

*City of Davis v. Coleman*
        521 F.2d 661 (9th Cir. 1975) ..............................................................................................10

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3

*Clark v. City of Seattle*
   899 F.3d 802 (9th Cir. 2018)..............................................................................17

4

*Comm. to Save the Rio Hondo v. Lucero*
   102 F.3d 445 (10th Cir. 1996)...........................................................................11

5

6

*Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.*
   789 F.3d 1075 (9th Cir. 2015)...............................................................21, 22, 25

7

8

*Ctr. for Biological Diversity v. Kempthorne*
   588 F.3d 701 (9th Cir. 2009).................................................................15, 19, 23, 24

9

10

*Dep't of Commerce v. New York*
   139 S. Ct. 2551 (2019) ..............................................................................11, 13

11

*Ecological Rights Found. v. Pac. Lumber Co.*
   230 F.3d 1141 (9th Cir. 2000)...........................................................................10

12

13

*Friends of Alaska Nat'l Wildlife Refuges v. Bernhardt*
   381 F. Supp. 3d 1127 (D. Alaska 2019).............................................................17

14

15

*Habeas Corpus Res. Ctr. v. U.S. Dep't of Justice*
   816 F.3d 1241 (9th Cir. 2016).................................................................... *passim*

16

*Kern v. U.S. Bureau of Land Mgmt.*
   284 F.3d 1062 (9th Cir. 2002)...........................................................................21

17

18

*Kootenai Tribe of Idaho v. Veneman*
   313 F.3d 1094 (9th Cir. 2002)...........................................................................16

19

20

*Lujan v. Defs. of Wildlife*
   504 U.S. 555 (1992) ................................................................................ *passim*

21

*Massachusetts v. EPA*
   549 U.S. 497 (2007) ................................................................................ *passim*

22

23

*Monsanto Co. v. Geertson Seed Farms*
   561 U.S. 139 (2010) ........................................................................................11

24

25

*Nat. Res. Def. Council v. EPA*
   863 F.2d 1420 (9th Cir. 1988)............................................................................9

26

*Nat. Res. Def. Council v. McCarthy*
   231 F. Supp. 3d 491 (N.D. Cal. 2017) .................................................................5

27

28

iii

1

2

## TABLE OF AUTHORITIES
### (continued)

Page

3

4

*Ohio Forestry Association v. Sierra Club*
    523 U.S. 726 (1998) ............................................................................... *passim*

5

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*
    547 U.S. 47 (2006) ..........................................................................................17

6

7

*Safe Air for Everyone v. Meyer*
    373 F.3d 1035 (9th Cir. 2004)...........................................................................5

8

9

*Safer Chemicals, Healthy Families v. EPA*
    943 F.3d 397 (9th Cir. 2019)...........................................................................17

10

*Sierra Forest Legacy v. Sherman*
    646 F.3d 1161 (9th Cir. 2011) .................................................................. *passim*

11

12

*Spokeo, Inc. v. Robins*
    136 S. Ct. 1540 (2016) ......................................................................................6

13

14

*State ex rel. Becerra v. Sessions*
    284 F. Supp. 3d 1015 (N.D. Cal. 2018) ..........................................................17

15

*Summers v. Earth Island Institute*
    555 U.S. 488 (2009) ............................................................................13, 14, 15

16

17

*Susan B. Anthony List v. Driehaus*
    573 U.S. 149 (2014) ..................................................................................11, 18

18

19

*Tenn. Valley Auth. v. Hill*
    437 U.S. 153 (1978) ..........................................................................................2

20

*Texas v. United States*
    809 F.3d 134 (5th Cir. 2015)............................................................................8

21

22

*Thomas v. Anchorage Equal Rights Comm'n*
    220 F.3d 1134 (9th Cir. 2000)........................................................................18

23

24

*W. Watersheds Project v. Kraayenbrink*
    632 F.3d 472 (9th Cir. 2011) .................................................................. *passim*

25

*Wash. Toxics Coal. v. U.S. Dep't of the Interior*
    457 F. Supp. 2d 1158 (W.D. Wash. 2006) .................................................15, 21

26

*Wilderness Society v. Rey*
    622 F.3d 1251 (9th Cir. 2010)........................................................................14

27

28

iv

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Wolfe v. Strankman*
    392 F.3d 358 (9th Cir. 2004)................................................................................5


**STATUTES**

5 U.S.C. § 551 ..........................................................................................................1, 22

5 U.S.C. § 553 ..............................................................................................................5, 9

5 U.S.C. § 704 ................................................................................................................22

5 U.S.C. § 706 ............................................................................................................9, 16

16 U.S.C. § 1531 .........................................................................................................1, 2

16 U.S.C. § 1532(16) .......................................................................................................3

16 U.S.C. § 1533 .........................................................................................................2, 3

16 U.S.C. § 1533(a)(3)(A) ..............................................................................................24

16 U.S.C. § 1535 .........................................................................................................7, 9

16 U.S.C. § 1536 ..............................................................................................................2

16 U.S.C. § 1538 ..............................................................................................................2

42 U.S.C. § 4321 ..............................................................................................................1

42 U.S.C. § 7607(d)(9)....................................................................................................16


**COURT RULES**

Federal Rule of Civil Procedure 12(b)(1) ........................................................................5


**FEDERAL REGULATIONS**

50 C.F.R. § 424.11(d) .....................................................................................................23

50 C.F.R. § 424.12(a)(1) .................................................................................................24

1

## TABLE OF AUTHORITIES
### (continued)

2
**Page**

3

**FEDERAL REGISTER NOTICES**

4

84 Fed. Reg. 44,753 ..................................................................................5

5

84 Fed. Reg. 44,758 ..................................................................................5

6

84 Fed. Reg. 44,976 ...........................................................................4, 5, 8

7

84 Fed. Reg. 45,014 ..................................................................................5

8

84 Fed. Reg. 45,020 ...........................................................................3, 5, 7

9

84 Fed. Reg. 45,050 ..................................................................................5

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**INTRODUCTION**

2      In this action, State Plaintiffs challenge the decision by the Secretary of the Interior and the

3   Secretary of Commerce, acting through the U.S. Fish & Wildlife Service ("FWS") and the

4   National Marine Fisheries Service ("NMFS") (collectively, "the Services"), to promulgate three

5   separate final rules ("Final Rules") that undermine key requirements of the federal Endangered

6   Species Act ("ESA"), 16 U.S.C. §§ 1531 *et seq.  See* First Amended Complaint for Declaratory

7   and Injunctive Relief, ECF No. 28 ("Complaint"), ¶¶ 1-2, 9-13.  State Plaintiffs allege that the

8   Final Rules violate the ESA's plain language, structure, and purposes; lack any reasoned basis,

9   violate notice and comment procedures, and are otherwise arbitrary and capricious under the

10  Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq.*; and that the Services violated

11  the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq.*, by failing to assess

12  the environmental impacts of the Final Rules.  Complaint, ¶¶ 124-148.

13      In their Motion to Dismiss (ECF No. 46, "Motion"), the Services argue that this Court lacks

14  subject matter jurisdiction over these claims because State Plaintiffs do not have standing and

15  their claims are not ripe for judicial review.  These assertions lack merit.  The Services'

16  arguments are based on a blatant distortion of State Plaintiffs' claims as challenging the future

17  implementation of the Final Rules, rather than the Final Rules themselves.  With regard to

18  standing, the Services simply ignore the Complaint's detailed allegations asserting existing or

19  imminent sovereign, economic, and procedural injuries resulting from promulgation of the Final

20  Rules, harms that the U.S. Supreme Court and the Ninth Circuit have repeatedly found to

21  constitute an injury in fact for standing purposes, especially given the "special solicitude"

22  provided to States.  *Massachusetts v. EPA*, 549 U.S. 497, 518, 520 (2007) ("*Mass. v. EPA*");

23  *Sierra Forest Legacy v. Sherman*, 646 F.3d 1161, 1178-79 (9th Cir. 2011).  Ignoring or

24  misapplying applicable law, the Services argue that State Plaintiffs must show "that the Services

25  have applied these new regulations in a specific context resulting in harm to their stated

26  interests."  Motion at 2.  In effect, the Services have created, without any support, a new legal test

27  for standing that would effectively bar *any* facial challenges to final rules, and instead require

28  State Plaintiffs to file dozens of legal challenges to address the myriad legal defects in the Final

1

1    Rules.  The Services' ripeness claim is equally meritless.  State Plaintiffs would be harmed by

2    withholding judicial review, and this case presents purely legal issues which will not benefit from

3    further factual development or administrative action by the Services.  Consequently, the Services'

4    Motion to Dismiss must be denied.

5                                             **BACKGROUND**

6           The ESA was enacted nearly forty-five years ago in a bipartisan effort "to halt and reverse

7    the trend toward species extinction, whatever the cost."  *Tenn. Valley Auth. v. Hill*, 437 U.S. 153,

8    184 (1978); *see* 16 U.S.C. § 1531(a).  The ESA accordingly enshrines a national policy of

9    "institutionalized caution" in recognition of the "overriding need to devote whatever effort and

10   resources [are] necessary to avoid further diminution of national and worldwide wildlife

11   resources."  *Hill*, 437 U.S. at 177, 194 (internal quotation omitted).  As the U.S. Supreme Court

12   has stated, the ESA constitutes "the most comprehensive legislation for the preservation of

13   endangered species ever enacted by any nation."  *Id*. at 180.

14          The ESA achieves its overriding statutory purposes through multiple vital programs, each

15   of which is undermined by the Final Rules.  Section 4 of the ESA, 16 U.S.C. § 1533, provides for

16   the listing of both endangered and threatened species based solely on the best scientific and

17   commercial data regarding threats to the species, and ensures the survival and recovery of listed

18   species by requiring the Services to designate "critical habitat" essential to their conservation.

19   Section 7, *id*. § 1536, mandates that all federal agencies, in consultation with the Services, utilize

20   their authorities in furtherance of the purposes of the ESA by carrying out programs for the

21   conservation of endangered and threatened species, and that such federal agencies also ensure that

22   any actions they authorize, fund, or carry out are not likely to jeopardize the continued existence

23   of any listed species or destroy or adversely modify their designated critical habitat.  Finally,

24   section 9 of the ESA, *id*. § 1538, prohibits the "take" (e.g., killing, injuring, harassing, or

25   harming) of listed endangered fish and wildlife species and prohibits other actions with respect to

26   listed endangered plant species, and section 4(d) separately authorizes extension of that

27   prohibition to listed threatened species, *see id*. § 1533(d).

28

The Services share joint responsibility for implementing the ESA to protect and conserve threatened and endangered species and their habitats.  Complaint, ¶ 105; *see* 16 U.S.C. § 1532(16).  In general, FWS is responsible for terrestrial and inland aquatic fish, wildlife, and plant species, while NMFS is responsible for marine and anadromous fish.  Complaint, ¶ 105. The Services implement these requirements through joint regulations which, until the issuance of the Final Rules, had not been substantially amended since the 1980s.  Complaint, ¶ 106.

Importantly, State Plaintiffs' Complaint does not, as the Services contend, "presuppose that the Services will *implement* the [Final Rules] in a manner that will run afoul of statutory provisions in the ESA."  *See* Motion at 2 (emphasis added).  Rather, State Plaintiffs contend that, in promulgating the Final Rules *themselves,* the Services violated the ESA, APA, and NEPA in significant and numerous ways. Complaint, ¶¶ 124-148.

First, among other alleged violations of the ESA and APA, the Final Rule addressing listing decisions and critical habitat designations pursuant to section 4 of the ESA (entitled "Revision of the Regulations for Listing Species and Designating Critical Habitat," 84 Fed. Reg. 45,020 (Aug. 27, 2019) (the "Listing Rule")), unlawfully and arbitrarily:

    a.  Injects economic considerations into the ESA's science-driven, species-focused analyses by removing from the implementing regulations the statutorily-required prohibition on considering the economic impacts of a proposed listing;

    b.  Limits the circumstances under which species can be listed as threatened under the ESA, based on the Services' determination of the "likelihood" of both future threats to a species and the species' responses to those threats in the "foreseeable future," contrary to the plain language of the ESA and its overriding conservation—*i.e.*, recovery—purpose;

    c.  Eliminates the Services' consideration of species' recovery, which is a fundamental and overriding statutory objective of the ESA, in the delisting process by removing language that refers to recovery as a basis for delisting;

d.   Expands significantly the expressly and purposefully narrow statutory "not prudent" exemption from the requirement to designate critical habitat; and

e.   Limits severely the circumstances for designating unoccupied critical habitat in a way that is contrary to the plain language of the ESA and its overriding conservation purpose.

Complaint, ¶¶ 110, 127, 135.

Second, among other alleged violations of the ESA and APA, the Final Rule revising regulations governing consultation (or cooperation) between federal agencies and the Services for federal agency actions that may affect listed species or critical habitat pursuant to section 7 of the ESA (entitled "Revision of Regulations for Interagency Cooperation," 84 Fed. Reg. 44,976 (Aug. 27, 2019) (the "Interagency Consultation Rule")), unlawfully and arbitrarily:

a.   Limits the circumstances under which a federal agency action would be deemed to destroy or adversely modify designated critical habitat by requiring the action to affect such habitat "as a whole";

b.   Limits significantly the nature and scope of the analysis of the effects of a federal agency action by altering the definitions of "effects of the action" and "environmental baseline" and requiring that the effects be both a "but for" result of the agency action and "reasonably certain to occur" based on "clear and substantial information";

c.   Limits the instances where changed circumstances affecting listed species or critical habitat would require re-initiation of consultation on a federal agency action;

d.   Limits federal action agencies' duty to insure mitigation of the adverse effects of their proposals, and unlawfully delegates to federal action agencies the ability to make biological determinations that the Services are required to make; and

e.   Allows for broad-based "programmatic" and "expedited" consultations that lack necessary site-specific and in-depth analysis of a proposed federal agency action, all contrary to the plain language of the ESA and its overriding conservation purpose.

Complaint, ¶¶ 111, 128, 136.

4

Third, the Final Rule entitled "Revision of the Regulations for Prohibitions to Threatened Wildlife and Plants," 84 Fed. Reg. 44,753 (Aug. 27, 2019) (the "4(d) Rule"), unlawfully and arbitrarily removes, without any reasoned explanation as required by the APA, the FWS's longstanding regulatory extension to all threatened species of the "take" and other prohibitions and protections that ESA section 9 affords to endangered species, contravening and undermining the ESA's conservation mandate.  Complaint, ¶¶ 112, 129, 137.[1]

In addition, State Plaintiffs' Complaint alleges that the Services failed to provide a meaningful opportunity to comment on several aspects of the Final Rules that were not included in, and are not logical outgrowths of, their proposed rules, in violation of section 553 of the APA, 5 U.S.C. § 553.  Complaint, ¶¶ 133, 138.  Finally, the Complaint alleges that the Services violated NEPA and the APA by categorically excluding the Final Rules from any environmental review, despite the fact that each of the Final Rules constitutes a major federal action that will significantly affect the human environment.  Complaint, ¶¶ 140-148.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) authorizes a court to dismiss claims over which it lacks subject matter jurisdiction.  A jurisdictional attack under Rule 12(b)(1) may be facial or factual.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  Here, the Services bring a facial attack to the Court's jurisdiction.  Motion at 14.  In a facial attack, "the challenger asserts that the allegations contained in the complaint are insufficient on their face to involve federal jurisdiction."  *Safe Air for Everyone*, 373 F.3d at 1039.  A district court must accept all allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).  The district court must also confine its inquiry to the allegations in the complaint.  *See Nat. Res. Def. Council v. McCarthy*, 231 F. Supp. 3d 491, 496 (N.D. Cal. 2017).  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that

---

[1] While the Services allege that the Final Rules simply "update and clarify" their existing regulations, *see* Motion at 3, all three rules are explicitly characterized as a "deregulatory action" pursuant to Executive Order 13771.  Complaint, ¶ 107; 84 Fed. Reg. at 45,050 (Listing Rule); 84 Fed. Reg. at 45,014 (Interagency Consultation Rule); 84 Fed. Reg. at 44,758 (4(d) Rule).

5

1   general allegations embrace those specific facts that are necessary to support the claim." *Lujan v.*

2   *Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotation and citation omitted).

3   **ARGUMENT**

4   **I.   STATE PLAINTIFFS HAVE STANDING TO BRING THIS ACTION.**

5   Article III standing requires that a "plaintiff must have (1) suffered an injury in fact, (2) that

6   is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed

7   by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "To

8   establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally

9   protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or

10   hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560).

11   As the U.S. Supreme Court has found, "States are not normal litigants for the purposes of

12   invoking federal jurisdiction" and are entitled to "special solicitude" that must be considered

13   when establishing standing. *Mass. v. EPA*, 549 U.S. at 518, 520. A State's "well-founded desire

14   to preserve its sovereign territory" supports standing in cases implicating environmental harms.

15   *Id.* at 519; *see also California v. EPA*, 385 F. Supp. 3d 903, 909–11 (N.D. Cal. 2019) (applying

16   *Mass. v. EPA* to standing analysis for state plaintiffs). That a State's own territory is the

17   "territory alleged to be affected" by the challenged action "reinforces the conclusion that its stake

18   in the outcome of this case is sufficiently concrete to warrant the exercise of federal judicial

19   power." *Mass. v. EPA*, 549 U.S. at 519.

20   **A.   Injury in Fact.**

21   The Services' Motion mounts a challenge under only the first standing prong, arguing that

22   State Plaintiffs fail to demonstrate an injury in fact. In particular, the Services contend that State

23   Plaintiffs' alleged injuries "are premised on speculation, conjecture, and possible future injury"

24   and do not "allege any specific *facts*, as opposed to conclusory statements, as to how Plaintiffs are

25   harmed" by the Final Rules. Motion at 16 (emphasis in original) (citing Complaint, ¶ 123). The

26   Services' meritless assertions ignore the many detailed allegations of harm in State Plaintiffs'

27   Complaint and also mischaracterize the applicable legal standards governing standing. Consistent

28

6

with the "special solicitude" recognized by the Supreme Court in *Massachusetts v. EPA*, State Plaintiffs easily satisfy this element of the standing analysis.

### 1. State Plaintiffs Have Demonstrated Sufficient Sovereign, Economic, and Procedural Harms for Standing Purposes.

The Complaint provides detailed allegations of concrete harm to State Plaintiffs' interests in protecting natural resources within their territories, including interests in protecting listed species and critical habitat that are owned and/or regulated by State Plaintiffs, and how those interests are harmed by the Final Rules. Complaint, ¶¶ 7, 19-81, 114-123. In particular, State Plaintiffs' territories are home to hundreds of federally-listed species and their designated critical habitat areas, as well as millions of acres of federal lands and countless projects that are subject to the ESA's section 7 consultation requirements. Complaint, ¶¶ 19-81. In most States, such species and property are held in trust by the State for the benefit of the people, or are considered the property of the State, and State Plaintiffs administer their own laws protecting imperiled species and habitat. *See, e.g.*, Complaint, ¶¶ 20, 27, 34, 37, 40, 42, 44, 50, 54, 57, 61, 64, 67, 70, 76, 115. In addition, pursuant to section 6 of the ESA, 16 U.S.C. § 1535, the Services are required to "cooperate to the maximum extent practicable with the States," including through land acquisition, management agreements, and cooperative agreements to fulfill the ESA's species conservation mandates. Complaint, ¶¶ 116, 120.

State Plaintiffs allege that the Final Rules' weakening of the ESA's substantive and procedural safeguards injures State Plaintiffs' sovereign interests in protecting their natural resources, including fish and wildlife resources. Complaint, ¶¶ 114, 118. As discussed above, the Final Rules undermine the key requirements and fundamental purposes of the ESA in numerous and significant ways, thereby injuring these sovereign interests. *See* Complaint, ¶¶ 9-12, 109-112. For example, in the Listing Rule, the Services have made it more difficult to list species as threatened by adding a requirement that threats to a species, and species' responses to those threats, must be "likely" in the "foreseeable future," while at the same time easing the process for delisting species by removing the consideration of recovery in the delisting process.

7

Complaint, ¶¶ 110, 127, 135.  In the Interagency Consultation Rule, as another example, the Services have limited the circumstances under which a federal agency action would be deemed likely to have an adverse effect on listed species or designated critical habitat sufficient to trigger the section 7 consultation requirement with the Services, by requiring, *inter alia*, that the proposed federal action be a "but for" cause of the effect, and that the effect be "reasonably certain to occur."  Complaint, ¶¶ 111, 128, 136.  At the same time, the Interagency Consultation Rule weakens the requirement to ensure that any mitigation measures required for actions that undergo consultation will in fact be implemented.  *Id.*  With regard to the 4(d) Rule, FWS has abandoned its longstanding policy that provided threatened species with the same level of "take" protections that are afforded to endangered species, subject only to exceptions carved out on a species-by-species basis, contrary to the overriding conservation purpose of the ESA and without a reasoned justification.  Complaint, ¶¶ 112, 129, 137.  For these and other reasons, State Plaintiffs allege that the Final Rules significantly and adversely affect their fish and wildlife resources and curtail their ability to help prevent federally-listed species from sliding further toward extinction.  Complaint, ¶ 117.

State Plaintiffs also allege that the Final Rules will cause specific and concrete harm to their financial and economic interests.  Complaint, ¶¶ 119, 120.  As a result of the Final Rules, the responsibility for, and the costs and burden of, protecting imperiled species and their habitats within State Plaintiffs' borders falls more heavily on State Plaintiffs.  *Id.*; *see California v. Azar*, 911 F.3d 558, 571–72 (9th Cir. 2018) (in challenge to federal rule exempting employers from covering contraceptive care in group health plans, California had standing because "women who lose coverage will seek contraceptive care through state-run programs or programs that the states are responsible for reimbursing," resulting in "economic harm" to the state); *Air All. Houston v. EPA*, 906 F.3d 1049, 1059–60 (D.C. Cir. 2018) ("[m]onetary expenditures to mitigate and recover from harms that could have been prevented absent the [federal rule] are precisely the kind of 'pocketbook' injury that is incurred by the state itself"); *Texas v. United States*, 809 F.3d 134, 155 (5th Cir. 2015) (impact on State resources provides basis for standing).  For example, under the

8

1   4(d) Rule, absent a species-specific rule, a newly-listed threatened species may only be protected

2   from "take" under state law, increasing the burden on State Plaintiffs to investigate violations and

3   enforce such protections.  Complaint, ¶ 120.  Furthermore, with regard to Cooperative

4   Agreements under section 6 of the ESA, where States conduct conservation activities regarding

5   listed species, State Plaintiffs must expend more resources to understand and comply with a

6   patchwork of species-specific 4(d) rules when taking such actions.  *Id.*

7         In addition to these concrete interests, State Plaintiffs have standing for their procedural

8   injuries related to the Services' failure to comply with the APA and NEPA.  To demonstrate

9   standing to bring a procedural claim, a plaintiff "must show that the procedures in question are

10  designed to protect some threatened concrete interest of his that is the ultimate basis of his

11  standing."  *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 485 (9th Cir. 2011) (citation

12  omitted).  In their Complaint, State Plaintiffs allege three different procedural injuries resulting

13  from the Services' promulgation of the Final Rules.  First, the Services failed to provide the

14  reasoned explanation required by the APA for the changes adopted in the Final Rules.

15  Complaint, ¶¶ 134-137.  As this Court recently found, "where plaintiffs allege that an agency's

16  action is arbitrary and capricious under § 706(2)(A) because of the agency's failure to follow the

17  'basic procedural requirement[ ]' of providing any reasoned explanation whatsoever, *Encino*

18  *Motorcars* [*v. Navarro*], 136 S. Ct. [2117,] 2125 [(2016)], a procedural standing analysis is

19  appropriate."  *City and Cty. of San Francisco v. Whitaker*, 357 F. Supp. 3d 931, 942 (N.D. Cal.

20  2018) (internal quotations and citations omitted).

21        Second, the Services failed to provide a meaningful opportunity to comment on several

22  aspects of the Final Rules that were not included in, and were not logical outgrowths[2] of, the

23  proposed rules, in violation of 5 U.S.C. § 553.  Complaint, ¶ 137.  These include (i) the Listing

24  Rule's requirement that the Secretary must determine that there is a "reasonable certainty" that an

25  unoccupied area will contribute to the conservation of the species and that the area currently

26  contains one or more of those physical or biological features essential to the conservation of the

27  ─────────────────
    [2] *See, e.g., Nat. Res. Def. Council v. EPA*, 863 F.2d 1420, 1429 (9th Cir. 1988) ("a final rule
28  which departs from a proposed rule must be a logical outgrowth of the proposed rule"; otherwise,
    "affected parties will have been deprived of notice and an opportunity to respond to the rule").

9

species in order to be designated as critical habitat; (ii) the Interagency Consultation Rule's new definition of "activities that are reasonably certain to occur" to require that such a conclusion be based upon "clear and substantial information"; and (iii) the Interagency Consultation Rule's expansion of the "environmental baseline" to include impacts from "ongoing agency activities or existing agency facilities that are not within the agency's discretion to modify."  *Id.*  As discussed above, these procedural failures directly impact State Plaintiffs' ability to protect their sovereign and economic interests in natural resources within their territories.  *See* Complaint, ¶¶ 114-123.

Third, State Plaintiffs have standing for their procedural injuries resulting from the Services' failure to comply with NEPA, resulting in an "increased risk" of environmental injury within State Plaintiffs' borders.  *See* Complaint, ¶¶ 13, 114-123, 140-148.  It is well-established that, where an action ultimately threatens a litigant's concrete interests, an agency's failure to follow NEPA's procedural mandates creates an injury sufficient for standing purposes.  *See W. Watersheds Project*, 632 F.3d at 485, 494-95 (applying procedural standing analysis to claims that agency failed to take "hard look" at action's impacts under NEPA); *Sierra Forest Legacy*, 646 F.3d at 1178 (California had standing to allege NEPA violations in connection with the Forest Service's amendment of a national forest management plan, because the plan "permits the Forest Service to implement forest management projects in California, and there is no real possibility that the Forest Service will then decline to adopt any management projects under the [plan]"); *Citizens for Clean Energy v. U.S. Dep't of the Interior*, 384 F. Supp. 3d 1264, 1274 (D. Mont. 2019) (finding that California's and other plaintiffs' "alleged procedural injury stems from the risk that takes place 'when governmental decisionmakers make up their minds without having before them an analysis of the likely effects of their decision on the environment'") (quoting *Citizens for Better Forestry v. U.S. Dep't of Agric.*, 341 F.3d 961, 971 (9th Cir. 2003)).

Put another way, "[t]he procedural injury implicit in agency failure to prepare an EIS"— namely, "the creation of a risk that serious environmental impacts will be overlooked"—"is itself a sufficient 'injury in fact' to support standing."  *City of Davis v. Coleman*, 521 F.2d 661, 671 (9th Cir. 1975); *see also Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1151 (9th

1    Cir. 2000) (holding that an "increased risk of harm" to the environment "can itself be injury in

2    fact sufficient for standing" for procedural claims); *Comm. to Save the Rio Hondo v. Lucero*, 102

3    F.3d 445, 448-49 (10th Cir. 1996) ("an injury of alleged increased environmental risks due to an

4    agency's uninformed decisionmaking may be the foundation for injury in fact under Article III").

5    Thus, the procedural injuries resulting from the Services' failure to comply with the APA and

6    NEPA also support State Plaintiffs' standing.

7                    **2.    State Plaintiffs Have Alleged Actual or Impending Concrete and
                            Particularized Harms and Need Not Await Myriad Specific
8                            Applications of the Final Rules.**

9            As the U.S. Supreme Court has stated, an injury in fact for standing purposes must be (a)

10   "concrete and particularized" and (b) "actual *or imminent*, not conjectural or hypothetical."

11   *Lujan*, 504 U.S. at 560 (emphasis added, internal quotations and citations omitted).  The Supreme

12   Court in *Lujan* recognized that "'imminence' is concededly a somewhat elastic concept," *id*. at

13   565 n.2, and has since found standing where plaintiffs demonstrate a "substantial risk" that such

14   harm will occur.  *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2565 (2019); *Monsanto Co.*

15   *v. Geertson Seed Farms*, 561 U.S. 139, 153-55 (2010).

16           State Plaintiffs easily meet these standards.  The allegations in State Plaintiffs' Complaint,

17   as discussed above, demonstrate concrete and particularized harms to State Plaintiffs' sovereign

18   or quasi-sovereign, economic, and procedural interests resulting from the Final Rules themselves,

19   and that these harms are either currently occurring, are "certainly impending," or at the very least,

20   that there is a "substantial risk" that such harms will occur.  *See Dep't of Commerce*, 139 S. Ct. at

21   2565 (to demonstrate Article III standing, future injuries "may suffice if the threatened injury is

22   certainly impending, or there is a substantial risk that the harm will occur'") (quoting *Susan B.*

23   *Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).  The Final Rules are now in effect and are

24   being implemented by the Services.  *See* Motion at 19-20.

25           The Services' Motion relies on a fundamental mischaracterization of State Plaintiffs'

26   Complaint by focusing on specific *applications* of the Final Rules, rather than on State Plaintiffs'

27   challenge to the Final Rules *themselves*, which constitute separate and distinct injuries in fact.

28

---

11

1   For example, the Services contend that "[t]hroughout the complaints, Plaintiffs presuppose that

2   the Services will implement the revisions in a manner that will run afoul of statutory provisions in

3   the ESA."  Motion at 2.  The Services then argue that State Plaintiffs' allegations of injury in fact

4   rely on "future speculative injuries caused by future, speculative administrative processes."

5   Motion at 18-24.  This is incorrect.

6        State Plaintiffs challenge the Services' promulgation of the Final Rules themselves as

7   violating the substantive requirements of the ESA on their face, as well as violating the

8   procedural and substantive requirements governing agency rulemaking under the APA and

9   NEPA.  *See* Complaint, ¶¶ 124-148.[3]  These claims will be decided based on an administrative

10   record for the Final Rules, without regard to any later application or implementation of the Final

11   Rules.  *See Camp v. Pitts*, 411 U.S. 138, 142 (1973) ("the focal point for judicial review should

12   be the administrative record already in existence, not some new record made initially in the

13   reviewing court").

14        The Services' argument, if accepted, would establish a new, unsupported legal test for

15   demonstrating an injury in fact that would require such injury to already have occurred, and

16   would severely restrict the ability of a plaintiff from bringing a facial challenge to final agency

17   regulations.  *See, e.g.*, Motion at 18 ("Plaintiffs do not identify any specific application of the

18   regulations to a particular species in a way that result in an injury to Plaintiffs"); 22 ("[a]s

19   relevant here, even assuming the Services applied the revised regulations in a manner that

20   changes the outcome of the consultation, it is still the action agency's duty to avoid jeopardizing

21   the listed species of concern to Plaintiffs"); 24 ("Plaintiffs may be able to establish standing to

22   _____

23   [3] As discussed, specifically, the First Cause of Action in the Complaint alleges that the Final
    Rules violate the plain language and conservation purposes of the ESA and therefore were
    promulgated contrary to law and "in excess of statutory jurisdiction, authority, or limitations, or
24   short of statutory right," in violation of the ESA and APA.  Complaint, ¶¶ 124-130.  The Second
    Cause of Action alleges that the Services failed to consider an important aspect of the problem,
25   provide a reasonable justification for the changes, or provide a meaningful opportunity to
    comment on certain changes to the proposed rules, which actions were "arbitrary, capricious, an
26   abuse of discretion, or otherwise not in accordance with law" and "without observance of [the]
    procedure required by law," in violation of the APA.  Complaint, ¶¶ 131-139.  The Third Cause
27   of Action alleges that the rules were promulgated without conducting any environmental review
    as required by NEPA, in violation of NEPA and the APA.  Complaint, ¶¶ 140-148.

28

1    challenge these regulatory revisions in the right case, *e.g.* where the Services apply these

2    revisions in a manner that concretely harms their interest"). But that is not the law. As discussed

3    above, State Plaintiffs are not required to wait for a specific application of the Final Rules in

4    order demonstrate an injury in fact and may challenge a regulation on its face if, as here,

5    promulgation of that regulation results in concrete and particularized harm to the plaintiff that is

6    currently occurring, certainly impending, or presents a substantial risk of occurring. *See Dep't of*

7    *Commerce*, 139 S. Ct. at 2565 (future injuries may suffice for Article III standing); *see also*

8    *Central Delta Water Agency v. United States*, 306 F.3d 938, 950 (9th Cir. 2002) (plaintiffs "need

9    not wait until the natural resources are despoiled before challenging the government action

10   leading to the potential destruction").[4]

11         The cases relied upon by the Services are inapposite. In *Summers v. Earth Island Institute*,

12   555 U.S. 488 (2009), a group of conservation organizations challenged procedural regulations

13   promulgated by the U.S. Forest Service exempting small fire-rehabilitation and timber salvage

14   projects from the notice, comment, and appeal process under the Forest Service Decisionmaking

15   and Appeals Reform Act, as well as the application of those regulations to a specific salvage

16   project in Sequoia National Forest (the Burnt Ridge Project). *Id*. at 490-91. In evaluating

17   plaintiffs' standing, the U.S. Supreme Court noted that there was no dispute that plaintiffs had

18   established standing with respect to the Burnt Ridge Project through affidavits submitted to the

19   district court. *Id*. at 494. However, "the parties settled their differences on that score," and the

20   plaintiffs had otherwise challenged "the regulation in the abstract" and—unlike the instant case—

21   without providing any specific allegations of harm. *Id*. at 495-96. The Court also found that

22   plaintiffs could not rely upon the alleged "deprivations of a procedural right without some

23   *concrete interest* that is affected by the deprivation" because the only concrete interest alleged by

24   plaintiffs was "in their challenge to the Burnt Ridge Project." *Id*. at 496-97 (emphasis added).

25   _____

     [4] As noted in their motion to intervene, Proposed Defendant-Intervenor States brought a similar
26   facial challenge to the Services' 2016 regulatory changes, and allege injuries akin to those of
     State Plaintiffs resulting from such rules. *See* ECF No. 53 at 2-4, 17 ("If Plaintiffs succeed, all
27   States will be burdened by a regulatory regime that violates the text of the ESA and impairs the
     abilities of the States to protect their at-risk species in creative ways"); 20 (prior rules would
28   "would infringe on the States' ability to protect both their lands and their wildlife"); 22 (noting
     "sovereign interests of States" and "unique interests in defending its at-risk species").

1    Following *Summers*, the Ninth Circuit in *Wilderness Society v. Rey*, 622 F.3d 1251 (9th Cir.

2    2010), rejected a challenge to the same regulations, finding that plaintiffs' "vague desire" to visit

3    an area "'without any description of concrete plans, or indeed any specification" of precisely

4    *when* they planned to visit the area "does not support a finding of actual or imminent injury."  *Id.*

5    at 1256 (quoting *Summers*, 555 U.S. at 496).

6         Here, in contrast to the vague and non-specific interests at issue in *Summers* and *Rey*, State

7    Plaintiffs have alleged concrete and particularized sovereign (regulatory and proprietary),

8    economic, and procedural injuries resulting from the Final Rules.[5]  As the U.S. Supreme Court

9    stated in *Massachusetts v. EPA*, the fact that a state "own[s] a great deal of the 'territory alleged

10   to be affected' only reinforces the conclusion that its stake in the outcome of this case is

11   sufficiently concrete to warrant the exercise of federal judicial power."  497 U.S. at 519.  Unlike

12   the situation in *Summers*, 555 U.S. at 495-96, it is not mere "conjecture" that these Final Rules

13   will affect the natural resources and sovereign interests of State Plaintiffs.  *Mass. v. EPA*, 497

14   U.S. at 521-23 (finding that increased risk of climate impacts to state territory due to federal

15   agency's refusal to regulate greenhouse gas emissions constituted injury in fact for standing

16   purposes); *see also Sierra Forest Legacy*, 646 F.3d at 1178-79 (evaluating facial challenge to

17   NEPA review of forest plan, and holding that "California has unquestionably asserted a well-

18   founded desire to protect both its territory and its proprietary interests both from direct harm and

19   from spill-over effects resulting from action on federal land, including ownership and trusteeship

20   over 'wildlife, water, State-owned land, and public trust lands,'" and distinguishing *Summers*).

21        In *Lujan*, on which the Services also rely, environmental organizations challenged a

22   regulation promulgated by the Services interpreting the ESA's section 7 consultation

23   requirements to apply only to actions taken in the United States or on the high seas.  504 U.S. at

24   558-59.  As in *Summers*, the U.S. Supreme Court found that affidavits from the organizations'

25   members were too vague to support standing.  *Id.* at 562-64.  Significantly, however, nowhere did

26   the Court in *Lujan* indicate that plaintiffs were required to wait for the challenged ESA regulation

---

27   [5] By their very nature, the injuries alleged by State Plaintiffs are not "generalized grievances" that
28   are "held in common by all members of the public" because State Plaintiffs' alleged injuries are
     to their own sovereign territories.  *See* Motion at 24.

14

to be applied to a specific project, rather than bringing a facial challenge, as the Services argue here.  Rather, *Lujan* strongly suggests that if the plaintiffs had concrete and specific plans to visit those areas in the future, their facial challenge would have been allowed to proceed.  Not surprisingly, courts have regularly found that plaintiffs have standing to bring such facial challenges.  *See, e.g., Ctr. for Biological Diversity v. Kempthorne*, 588 F.3d 701, 707-08 (9th Cir. 2009) (finding standing for facial challenge to FWS regulations that authorize take of polar bears and Pacific walrus by oil and gas activities in Alaska, where plaintiffs' members had specific plans to visit areas affected by the regulations to observe wildlife); *Wash. Toxics Coal. v. U.S. Dep't of the Interior*, 457 F. Supp. 2d 1158, 1170 (W.D. Wash. 2006) (finding standing for facial challenge to Services' regulation governing section 7 consultation procedures for EPA actions involving pesticide registration where plaintiffs alleged that regulation could remove or diminish section 7 protections for listed species).  And, just like the situation in *Summers*, the plaintiffs' aesthetic and recreational injuries in *Lujan* are distinct from the sovereign, economic, and procedural interests alleged by State Plaintiffs.  In fact, unlike the organizational members in *Lujan* who would have to travel abroad to have their interests affected by the regulation, the Final Rules here will impact State Plaintiffs' natural resources and sovereign territories in a direct and concrete way given the countless species, critical habitats, federal lands, and federal projects within State Plaintiffs' boundaries.  *See* Complaint, ¶¶ 19-81; *Sierra Forest Legacy*, 646 F.3d at 1178–79 (a "'well-founded desire to preserve [a state's] sovereign territory' 'support[s] federal jurisdiction,' which may be further reinforced by ownership of 'a great deal of the 'territory alleged to be affected' by a challenged federal action") (quoting *Mass. v. EPA*, 497 U.S. at 519).[6]

Finally, the Services' attempt to distinguish *Massachusetts v. EPA* is without merit.  *See* Motion at 23 n.18.  While the Services characterize it as a "pre-enforcement challenge," *Massachusetts v. EPA* involved a challenge to the denial of a Clean Air Act rulemaking petition

---

[6] The Services also contend that State Plaintiffs' allegations of harm falter because the Final Rules "are not retroactive and do not change any current protections for already-listed species." Motion at 16-17.  Yet State Plaintiffs' standing is not predicated on such a showing.  Nowhere do State Plaintiffs contend that the Final Rules are retroactive or challenge the Final Rules' application to previously-listed species, already-designated critical habitat, or section 7 consultations that have already occurred.

15

1    under a legal standard analogous to section 706 of the APA.  *Cf.* 5 U.S.C. § 706 *with* 42 U.S.C.

2    § 7607(d)(9).  In any event, no court has found that the "special solicitude" States are entitled to

3    in a standing analysis applies only in the context of a "pre-enforcement challenge."  *See, e.g.,*

4    *Sierra Forest Legacy*, 646 F.3d at 1178-79 (applying *Mass. v. EPA* standing analysis to

5    California's APA and NEPA claims); *California v. Trump*, 379 F. Supp. 3d 928, 938 (N.D. Cal.

6    2019) (states entitled to special solicitude in case involving constitutional, APA, and NEPA

7    claims).  And as with Massachusetts' claims of specific injuries to its coastal properties from sea

8    level rise in the *Massachusetts v. EPA* case, which were supported by affidavits during briefing

9    on the merits, State Plaintiffs here have made specific allegations in their Complaint regarding

10   impacts to their sovereign territories and wildlife from the Final Rules.  *See supra* at 7-9.

11       **B.**    **Causation and Redressability.**

12       Although the Services do not challenge the causation and redressability prongs of standing,

13   State Plaintiffs briefly address them here.  With regard to causation, because the Final Rules will

14   increase the risks of sovereign and economic harms to State Plaintiffs, the Final Rules, "[a]t a

15   minimum ... 'contribute[]' to [State Plaintiffs'] injuries."  *See Mass. v. EPA*, 549 U.S. at 523.  The

16   requested relief—a declaration that the Final Rules are unlawful and vacatur of the Final Rules—

17   would, at the very least, "reduce[] to some extent" State Plaintiffs' risk of injury, thereby

18   satisfying redressability.  *Id.* at 526.

19       With regard to State Plaintiffs' procedural injuries, a "person who has been accorded a

20   procedural right to protect his concrete interests can assert that right without meeting all the

21   normal standards for redressability and immediacy."  *Lujan*, 504 U.S. at 572 n.7.  For example, in

22   evaluating standing to bring NEPA claims, "[o]nce a plaintiff has established an injury in fact

23   under NEPA the causation and redressability requirements are relaxed," and plaintiffs "must

24   show only that they have a procedural right that, if exercised, could protect their concrete

25   interests."  *W. Watersheds Project*, 632 F.3d at 485 (internal quotations and citations omitted);

26   *see also Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1113 (9th Cir. 2002) (finding "[i]t

27   is enough that a revised EIS *may* redress plaintiffs' alleged injuries") (emphasis added), abrogated

28

16

1  in part on other grounds by *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1180 (9th Cir.

2  2011).  Here, the Services' failure to comply with NEPA deprived State Plaintiffs of their right to

3  have the significant environmental impacts of the Final Rules properly considered and mitigated

4  prior to their adoption and implementation, and also deprived State Plaintiffs of the opportunity to

5  influence the content of the Final Rules through the NEPA process.  *See Citizens for Clean*

6  *Energy*, 384 F. Supp. 3d at 1274 (finding that Plaintiffs satisfied the causation and redressability

7  requirements where "Defendants' failure to comply with NEPA deprived Plaintiffs of a

8  meaningful opportunity to influence the disposition of coal-lease applications").

9       In sum, State Plaintiffs have standing to challenge the Final Rules.[7]

10  **II.  STATE PLAINTIFFS' CHALLENGE IS RIPE FOR REVIEW.**

11       The Services also argue that State Plaintiffs' challenge to the Final Rules is not ripe for

12  review.  Ripeness—the requirement that claims are brought at the proper time— has both

13  constitutional and prudential roots.  As the Ninth Circuit has reiterated time and again, the

14  constitutional minimum of ripeness "coincides squarely with standing's injury in fact prong," and

15  where, as here, a plaintiff's injury in fact signals that a case and controversy exists in satisfaction

16  of Article III, the constitutional requirement of ripeness is also satisfied.  *Clark v. City of Seattle*,

17  899 F.3d 802, 809 (9th Cir. 2018) (quoting *Bishop Paiute Tribe v. Inyo Cty.*, 863 F.3d 1144, 1153

18  (9th Cir. 2017)); *see also Safer Chemicals, Healthy Families v. EPA*, 943 F.3d 397, 411 (9th Cir.

19  2019).

20       The Services' argument focuses on prudential, not constitutional, ripeness, which is a

21  discretionary consideration of this Court.  *See, e.g., State ex rel. Becerra v. Sessions*, 284 F. Supp.

22  3d 1015, 1031 (N.D. Cal. 2018) (noting that "[t]he Ninth Circuit has previously declined to reach

23  prudential ripeness when constitutional ripeness is satisfied"); *Friends of Alaska Nat'l Wildlife*

24  *Refuges v. Bernhardt*, 381 F. Supp. 3d 1127, 1135-36 (D. Alaska 2019) (finding that

25  ─────────────
    [7] With regard to the various types of plaintiffs in these related cases, State Plaintiffs note that "the
26  presence of one party with standing is sufficient to satisfy Article III's case-or-controversy
    requirement" for other plaintiffs.  *See Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*,
27  547 U.S. 47, 52 n.2 (2006); *Brown v. City of L.A.*, 521 F.3d 1238, 1240 n.1 (9th Cir. 2008)
    (finding that "the presence in a suit of even one party with standing suffices to make a claim
    justiciable"); *California v. EPA*, 385 F. Supp. 3d at 909 ("Because the Court finds the State
28  Plaintiffs have standing, it need not evaluate whether [environmental plaintiff] has standing").

17

1    "'[p]rudential considerations of ripeness are discretionary'" and "declin[ing] to refuse to

2    adjudicate this case on prudential grounds") (quoting *Thomas v. Anchorage Equal Rights*

3    *Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc)); *see also Susan B. Anthony List*, 573

4    U.S. at 167 (suggesting that once a court "has concluded that [plaintiffs] have alleged a sufficient

5    Article III injury," any prudential ripeness concerns do not render a claim nonjusticiable).

6         Prudential ripeness is designed to "prevent the courts, through avoidance of premature

7    adjudication, from entangling themselves in abstract disagreements over administrative policies."

8    *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967).  A case is prudentially ripe if the issues are fit

9    for judicial review and if the plaintiff would suffer hardship from the court withholding judicial

10   review until a later time.  *Id*. at 149.  In *Ohio Forestry Association v. Sierra Club*, 523 U.S. 726

11   (1998), the U.S. Supreme Court further refined this two-part test, holding that a court should

12   evaluate whether: (1) delayed review would cause hardship to the plaintiff; (2) judicial

13   intervention would inappropriately interfere with further administrative action; and (3) the courts

14   would benefit from further factual development of the issues presented.  *Id*. at 733.

15        Here, the same alleged harms that provide State Plaintiffs' standing also show that State

16   Plaintiffs will suffer hardship without immediate judicial review.  The second and third ripeness

17   criteria are also satisfied because there will be no further refinement of the three Final Rules

18   through subsequent agency action and because their application to specific factual circumstances

19   will not aid a reviewing court in determining the purely legal questions presented by State

20   Plaintiffs' Complaint.  Consequently, this case is ripe for judicial review.

21        **A.     Withholding Judicial Review Would Impose Hardship on State Plaintiffs.**

22        The Services first characterize this case as involving "pre-enforcement review" of a final

23   regulation and claim that because the Final Rules will not affect any "primary conduct" of State

24   Plaintiffs, there can be no hardship to State Plaintiffs in withholding judicial review.  Motion at

25   25-26 (citing *Habeas Corpus Res. Ctr. v. U.S. Dep't of Justice*, 816 F.3d 1241, 1252 (9th Cir.

26   2016)).  This argument misses the mark.  The "pre-enforcement review" requirements only apply

27   to cases where a regulated party is challenging "regulations anticipating that an administrative

28

18

1    agency will, *in the near future, apply* those regulations in a manner that will harm [that party's]

2    interests," and the party "may have to choose between complying with the regulations

3    immediately or facing penalties." *Habeas Corpus*, 816 F.3d at 1252 (emphasis added).  In such

4    instances, a court will normally decline to hear a challenge until the regulation is actually

5    enforced against the party asserting injury.  But this framework simply does not apply here.  This

6    is not a case challenging final regulations that may be enforced against State Plaintiffs as

7    regulated parties in the future.  Furthermore, as discussed in Part I above, State Plaintiffs allege

8    that the Services' promulgation of the regulations *in and of themselves* have harmed or

9    imminently will harm State Plaintiffs' concrete interests in various respects, not that potential

10   future *application* of the regulations will harm State Plaintiffs' interests.  Where, as here, a

11   plaintiff brings a facial challenge to a final agency action, the hardship inquiry is not limited to

12   whether the agency action affects the plaintiffs' "primary conduct," but whether it creates "legal

13   rights or obligations" that adversely affect the plaintiff.  *Ohio Forestry*, 523 U.S. at 733.

14        In this case, there is no question that the Final Rules create legal rights and obligations that

15   the Services must comply with in implementing the listing, critical habitat designation, and inter-

16   agency consultation provisions of the ESA.  Moreover, as discussed above, State Plaintiffs have

17   sufficiently alleged that the Services' promulgation of these Final Rules has harmed or

18   imminently will harm State Plaintiffs' sovereign, economic, and procedural interests.  Delaying

19   judicial review of the Final Rules until they are applied to specific factual circumstances would

20   cause hardship to State Plaintiffs by delaying or preventing them from addressing these present

21   and imminent harms.  *See CBD v. Kempthorne*, 588 F.3d at 708-09 ("[h]ardship may result from

22   past or imminent harm caused by the agency's adoption of the regulations").

23        Additionally, delaying judicial review until the Final Rules are applied in specific

24   circumstances would foreclose State Plaintiffs' ability to seek review of the Final Rules'

25   nationwide scope and effect.  In *Western Watersheds Project,* 632 F.3d at 486, the Ninth Circuit

26   held that challenges to final regulations implementing the Taylor Grazing Act were ripe upon

27   final publication of those rules in the Federal Register.  In doing so, the court noted that

28

19

1    "Plaintiffs are taking advantage of what may be their only opportunity to challenge [the agency

2    regulations] on a nationwide, programmatic basis." *Id.* at 486 (quoting *California ex rel. Lockyer*

3    *v. U.S. Dep't of Agric.*, 575 F.3d 999, 1011 (9th Cir. 2009)).  The same holds true of State

4    Plaintiffs' challenge to the Final Rules herein.

5         While State Plaintiffs might be able to challenge particular unlawful provisions of the Final

6    Rules through individual, as-applied challenges in the future, the Services would, in the interim,

7    continue implementing regulations that exceed the Services' statutory authority under the ESA.

8    A requirement that State Plaintiffs wait to challenge specific applications of the Final Rules

9    would be particularly onerous here because this case challenges myriad aspects of the Final Rules

10   under the ESA, APA, and NEPA.  Thus, State Plaintiffs would need to bring multiple future legal

11   challenges to multiple applications of each alleged unlawful aspect of the Final Rules.  This

12   would impose both an undue burden on State Plaintiffs as well as the courts.  This is unlike the

13   situation in *Ohio Forestry*, where the Court found that the plaintiffs could likely raise all facial

14   challenges to the national forest management plan at issue through a subsequent, single as-applied

15   challenge.  *See Ohio Forestry*, 523 U.S. at 734-35 (plaintiff "does not explain … why one initial

16   site-specific victory (if based on the Plan's unlawfulness) could not, through preclusion

17   principles, effectively carry the day").

18        Furthermore, under binding U.S. Supreme Court and Ninth Circuit precedent, the

19   Complaint's procedural challenges under the APA and NEPA were complete upon the Services'

20   publication of the Final Rules.  As the U.S. Supreme Court has noted with regard to NEPA, "a

21   person with standing who is injured by a failure to comply with the NEPA procedures may

22   complain of that failure at the time the failure takes place, for the claim can never get riper."

23   *Ohio Forestry*, 523 U.S. at 737.  The Ninth Circuit case law is in accord.  *See Citizens for Better

24   Forestry*, 341 F.3d at 977 (observing that "a NEPA challenge was ripe because the injury

25   occurred when the allegedly inadequate EIS was promulgated"); *California ex rel. Lockyer*, 575

26   F.3d at 1011 (holding that claims that federal rulemaking "improperly removed substantive

27   protections afforded" under a previous rule, and that those changes failed to comply with NEPA,

28

20

1   were ripe upon completion of the agency's rulemaking); *Kern v. U.S. Bureau of Land Mgmt.*, 284

2   F.3d 1062, 1070-71 (9th Cir. 2002) (finding that "[i]f there was an injury under NEPA, it

3   occurred when the allegedly inadequate EIS was promulgated" and rejecting ripeness challenge);

4   *accord Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1084 (9th Cir. 2015)

5   (finding claim that U.S. Forest Service failed to comply with the ESA when it declined to

6   reinitiate consultation on a forest plan ripe at the time that the plan was published).

7       Delaying judicial review of these procedural claims until an as-applied challenge would

8   only extend and compound the current harms.  *See Wash. Toxics*, 457 F. Supp. 2d at 1174-75

9   (finding that procedural injury has "already occurred by the very promulgation of the counterpart

10  [ESA] regulations" and "withholding review would exacerbate the hardship that already exists").

11  Consequently, in general, "[w]hen a party… suffers a procedural injury, it 'may complain of that

12  failure at the time the failure takes place,'" and "[t]he imminence of project-specific

13  implementation 'is irrelevant to the ripeness of an action raising a procedural injury.'"

14  *Cottonwood Envtl. Law Ctr.*, 789 F.3d at 1084 (quoting *Ohio Forestry*, 523 U.S. at 737 and

15  *Citizens for Better Forestry*, 341 F.3d at 977).  Indeed, challenging procedural failures prior to the

16  regulation's application "may be the[] only opportunity" to remedy those harms.  *California ex*

17  *rel. Lockyer*, 575 F.3d at 1011.

18  **B.   State Plaintiffs' Claims Present Purely Legal Issues Requiring No Further**
19      **Agency Refinement or Factual Development.**

20      State Plaintiffs' claims also are presently fit for judicial review because they present purely

21  legal issues and do not require further agency refinement or factual development.  The second and

22  third *Ohio Forestry* ripeness factors are "whether judicial intervention would inappropriately

23  interfere with further administrative action; and whether the courts would benefit from further

24  factual development of the issues presented."  *Habeas Corpus*, 816 F.3d at 1252 (quoting *Ohio*

25  *Forestry*, 523 U.S. at 733).  Neither can be said of State Plaintiffs' claims here.

26      First, the challenged regulations have reached a final administrative resting place, and

27  judicial review would not interfere with further administrative action.  In particular, no further

28

21

1   administrative action is necessary for this Court to determine whether the Final Rules are

2   inconsistent with the ESA's plain language and purposes.  Furthermore, the Services have not

3   indicated any intent to correct the violations of the APA and NEPA alleged in State Plaintiffs'

4   Complaint, so a ruling on those issues would not be premature.  The Services are not entitled to

5   "an opportunity to determine precisely how the regulations will be applied."  Motion at 26.

6   Subsequent application of the Final Rules to specific factual circumstances have no bearing on

7   State Plaintiffs' claims that the Final Rules *themselves* are facially inconsistent with the ESA,

8   APA, and NEPA as a matter of law, both substantively and procedurally.

9       The Supreme Court's decision in *Ohio Forestry* is readily distinguishable.  That case

10  involved a challenge to a forest management plan for a single national forest adopted under the

11  National Forest Management Act not, as is the case here, a challenge to a suite of regulations that

12  fundamentally and unlawfully alter the application of a nationwide federal law.  The Supreme

13  Court in *Ohio Forestry* found that the plan did not itself permit logging to occur, but rather was

14  designed to guide the Forest Service's future determinations of whether, and under what

15  conditions, to permit logging.  *Ohio Forestry*, 523 U.S. at 728.  Before any actual tree cutting

16  could occur, the Forest Service was required to take a number of future actions.  *Id*. at 729-30.

17       Such uncertainty regarding potential future "on the ground" effects are not present here.

18  No amount of refinement or application of the regulations in practice will fix the legal

19  deficiencies in the challenged regulations that render them unlawful on their face under the ESA

20  and that result in fewer substantive protections for listed species and critical habitat under the

21  ESA nationwide.  State Plaintiffs have challenged Final Rules that have reached their final

22  "administrative resting place."  *Citizens for Better Forestry*, 341 F.3d at 977; *Cottonwood Envtl.*

23  *Law Ctr.*, 789 F.3d at 1084; *see also* 5 U.S.C. § 551 (defining "agency action" to include "rule");

24  5 U.S.C. § 704 (providing that "final agency action for which there is no other adequate remedy

25  in a court" is "subject to judicial review").  These Final Rules govern the Services' substantive

26  administration and ultimate interpretation of the ESA and the level of substantive protection

27  afforded to imperiled species and habitat nationwide.

28

1    Moreover, because no further administrative action is required for the rules to take effect,

2    hearing State Plaintiffs' challenge now will not interfere with any statutory requirements or

3    agency plans for further rulemaking or elaboration.  *See CBD v. Kempthorne*, 588 F.3d at 708

4    ("[a] claim is usually ripe if the issues raised are primarily legal, do not require further factual

5    development, and the challenged action is final") (internal quotation and citation omitted); *W.*

6    *Watersheds Project*, 632 F.3d at 486 ("[h]ere, the dispute would not interfere with further

7    administrative action because both the EIS and the 2006 Regulations are final… The dispute over

8    the 2006 Regulations is ripe for adjudication")*; accord California ex rel. Lockyer*, 575 F.3d at

9    1011.  In sum, this is not a situation, where there are issues that "will sort themselves out as the

10   [agency] applies the Final Regulations" and makes subsequent decisions.  *Habeas Corpus*, 816

11   F.3d at 1254.[8]

12    Finally, and contrary to the Services' contention, this is not a case where judicial review

13   would benefit from further factual development.  State Plaintiffs' Complaint contains three causes

14   of action, each of which presents facial challenges to the three challenged Final Rules.

15   Specifically, State Plaintiffs ask this court to consider whether the Final Rules exceed the

16   Services' statutory authority in light of the ESA's plain language and conservation purposes; are

17   arbitrary and capricious or violate the notice and comment procedures under the APA; and were

18   promulgated in violation of NEPA because they were unaccompanied by the necessary

19   environmental review.  Complaint, ¶¶ 124-148.  Each of these claims turns on matters of statutory

20   construction and/or review of the administrative record.  They present purely legal issues that are

21   suitable now for judicial disposition and would not benefit from any factual development.  *Cf.*

22   *Abbott Labs*, 523 U.S. at 149 (holding that claims were ripe in light of all parties' agreement "that

23

24   _____

[8] The Services cite to the Final Rules' new limitations on the meaning of "foreseeable future,"
which will restrict the circumstances under which a species may be listed as threatened under

25   ESA.  *See* 50 C.F.R. § 424.11(d).  The Services argue that "[i]f this Court steps in now to dictate
how the Service … should apply that definition and, more broadly, their revised regulations, it

26   will deny the opportunity for these issues to 'sort themselves out' prior to judicial review."
Motion at 26 (quoting *Habeas Corpus*, 816 F.3d at 1254).  But State Plaintiffs' Complaint does

27   not seek an abstract judicial determination as to how the Services should apply these new
restrictions in the future, but rather seeks a declaration that these new regulatory provisions are

28   void *ab initio* because they exceed the agencies' authority under the ESA.

the issue tendered is a purely legal one"); *CBD v. Kempthorne*, 588 F.3d at 708 ("we have found purely legal facial challenges of regulations to be ripe").

This case is fundamentally different from the unripe challenge in *Habeas Corpus,* upon which the Services rely heavily. *See* Motion at 24-26. That case was brought by organizations representing capital prisoners in federal habeas proceedings challenging Department of Justice regulations establishing criteria for certifying states to be eligible for "fast-tracking" federal habeas cases. *Habeas Corpus*, 816 F.3d at 1243-46. The Ninth Circuit held that the plaintiffs' challenge to these regulations were not ripe until "the sentencing state requests certification and … the Attorney General finds that the state's capital-counsel mechanism comports with Chapter 154 and the Final Regulations." *Id*. at 1252. The court held, *inter alia*, that "in the absence of a concrete application of the Final Regulations, the challenges to the substance of the Final Regulations represent 'abstract disagreements over administrative policies, that the ripeness doctrine seeks to avoid.'" *Id.* at 1254 (quoting *Ohio Forestry*, 523 U.S. at 736). The court reasoned that "[a]ny deficiencies in the certification process and the criteria prescribed by the Final Regulations will become clearer as the Attorney General makes certification decisions and as those decisions undergo *de novo* review in the D.C. Circuit." *Id.*

Here, by contrast, the legal issues require no additional factual development for the Court to render a decision. Rather, this case presents concrete disputes about whether the Services' regulations conflict with Congressional intent and authority, and whether the Services adhered to the procedural requirements in adopting these changes, neither of which will be affected by further factual development regarding how the Services implement the regulations.[9]

Legal claims arising under the APA and based upon an administrative record do not require further factual development before judicial disposition. *See CBD v. Kempthorne*, 588 F.3d at 708

---

[9] The Services' example of the Final Rules' expansion of circumstances under which the Services may find that critical habitat designation is "not prudent" (Motion at 27), does not establish that additional factual development is necessary in this case. *See* 50 C.F.R. § 424.12(a)(1). The issue with regard to this regulation is whether, in providing for additional non-statutory exemptions from the ESA's statutory requirement to designate critical habitat, that regulation is beyond the scope of the statute and therefore beyond the Services' regulatory authority to adopt. *See* 16 U.S.C. § 1533(a)(3)(A). The Court's adjudication of this issue does not depend upon any specific factual application of the regulation.

("whether an agency action is arbitrary and capricious is a legal question that would not benefit from further factual development"); *see also Cement Kiln Recycling Coalition v. EPA*, 493 F.3d 207, 215 (D.C. Cir. 2007) ("[i]t is well established that claims that an agency's action is arbitrary and capricious or contrary to law present purely legal issues").  Furthermore, as to State Plaintiffs' procedural challenges, the courts have held that "[b]ecause the alleged procedural violation … is complete, so too is the factual development necessary to adjudicate the case." *Cottonwood Envtl. Law Ctr.*, 789 F.3d at 1084.  As with its standing arguments, the Services' position would preclude any facial challenges to final agency regulations, and always require such facial challenges to be raised in the context of an as-applied challenge to the regulation. Once again, this is not the law.

In sum, State Plaintiffs' claims are ripe for review.

## CONCLUSION

For the foregoing reasons, the Services' Motion to Dismiss should be denied.

1    Dated:  January 7, 2020                         Respectfully submitted,

2
     XAVIER BECERRA                                   MAURA HEALEY
3    Attorney General of California                  Attorney General of Massachusetts
     DAVID A. ZONANA
4    DAVID G. ALDERSON                                /s/ Matthew Ireland
     Supervising Deputy Attorneys General            MATTHEW IRELAND (*pro hac vice*)
5                                                     TURNER SMITH*
     /s/ George Torgun                                Assistant Attorneys General
6    GEORGE TORGUN, State Bar No. 222085              Office of the Attorney General
     TARA MUELLER, State Bar No. 161536               Environmental Protection Division
7    ERIN GANAHL, State Bar No. 248472                One Ashburton Place, 18th Floor
     Deputy Attorneys General                         Boston, MA 02108
8    1515 Clay Street, 20th Floor                     Telephone:  (617) 727-2200
     P.O. Box 70550                                   Email:  Matthew.Ireland@mass.gov
9    Oakland, CA  94612-0550
     Telephone:  (510) 879-1002                       *Attorneys for Plaintiff*
10   Email:  George.Torgun@doj.ca.gov                 *Commonwealth of Massachusetts*

11   *Attorneys for Plaintiff State of California*

12   BRIAN E. FROSH                                   PHILIP J. WEISER
     Attorney General of Maryland                     Attorney General of Colorado
13
     /s/ Steven J. Goldstein                          /s/ Eric R. Olson
14   STEVEN J. GOLDSTEIN (*pro hac vice*)             ERIC R. OLSON (*pro hac vice*)
     Special Assistant Attorney General              Solicitor General
15   Office of the Attorney General                   1300 Broadway, 10th Floor
     200 Saint Paul Place, 20th Floor                 Denver, Colorado 80203
16   Baltimore, Maryland 21202                        Telephone:  (720) 508-6548
     Telephone:  (410) 576-6414                       Email:  Eric.Olson@coag.gov
17   Email: sgoldstein@oag.state.md.us
                                                      *Attorneys for Plaintiff State of Colorado*
18   *Attorneys for Plaintiff State of Maryland*

19   WILLIAM TONG                                     KWAME RAOUL
     Attorney General of Connecticut                  Attorney General of Illinois
20
     /s/ Matthew I. Levine                            /s/ Jason E. James
21   MATTHEW I. LEVINE*                               JASON E. JAMES (*pro hac vice*)
     DANIEL M. SALTON (*pro hac vice*)                Assistant Attorney General
22   Assistant Attorneys General                      MATTHEW J. DUNN*
     Office of the Attorney General                   Chief, Environmental Enf./Asbestos Litig. Div.
23   P.O. Box 120                                     Office of the Attorney General,
     55 Elm Street                                    Environmental Bureau
24   Hartford, CT 06141-0120                          69 W. Washington St., 18th Floor
     Telephone:  (860) 808-5250                       Chicago, IL 60602
25   Email:  Daniel.Salton@ct.gov                     Telephone:  (312) 814-0660
                                                      Email:  jjames@atg.state.il.us
26   *Attorneys for Plaintiff State of Connecticut*
                                                      *Attorneys for Plaintiff State of Illinois*
27

28
                                              26

1

FOR THE PEOPLE OF THE STATE OF MICHIGAN

KEITH M. ELLISON
Attorney General of Minnesota

2

/s/ Nathan A. Gambill
NATHAN A. GAMBILL (*pro hac vice*)

3

(Michigan Bar No. P75506)
Assistant Attorney General

4

Environment, Natural Resources,
and Agriculture Division

5

P.O. Box 30755
Lansing, MI 48909

6

Telephone:  (517) 335-7664
Email:  gambilln@michigan.gov

7

*Attorney for Plaintiff the People of the State of*

8

*Michigan*

/s/ Peter N. Surdo
PETER N. SURDO*
Special Assistant Attorney General
Minnesota Office of the Attorney General
445 Minnesota Street
St. Paul MN 55101
Telephone:  (651) 757-1061
Email: peter.surdo@ag.state.mn.us

*Attorney for Plaintiff State of Minnesota*

9

GURBIR S. GREWAL
Attorney General of New Jersey

AARON D. FORD
Attorney General of Nevada

10

/s/ Lisa Morelli
LISA MORELLI, State Bar No. 137092

11

Deputy Attorney General
Environmental Enforcement &

12

Environmental Justice
R.J. Hughes Justice Complex

13

P.O. Box 093
Trenton, NJ 08625

14

Telephone:  (609) 376-2708
Email: Lisa.Morelli@law.njoag.gov

15

/s/ Tori N. Sundheim
TORI N. SUNDHEIM, State Bar No. 294559
Deputy Attorney General
Office of the Attorney General
100 North Carson Street
4 Carson City, Nevada 89701-4717
Telephone: (775) 684-1219
Fax: (775) 684-1180
Email: tsundheim@ag.nv.gov

16

*Attorneys for Plaintiff State of New Jersey*

*Attorneys for Plaintiff State of Nevada*

17

LETITIA JAMES
Attorney General of New York

HECTOR BALDERAS
Attorney General of New Mexico

18

/s/ Mihir A. Desai
MIHIR A. DESAI*

19

Assistant Attorney General
TIMOTHY HOFFMAN*

20

Senior Counsel
JENNIFER NALBONE

21

Environmental Scientist
Office of the Attorney General

22

Environmental Protection Bureau
28 Liberty Street, 19th Floor

23

New York, NY 10005
Telephone:  (212) 416-8478

24

Email:  mihir.desai@ag.ny.gov

/s/ William Grantham
WILLIAM GRANTHAM*
Assistant Attorney General
ANNE MINARD*
Special Assistant Attorney General
201 Third St. NW, Suite 300
Albuquerque, NM 87102
Telephone: (505) 717-3520
E-Mail: wgrantham@nmag.gov

*Attorneys for Plaintiff State of New Mexico*

25

*Attorneys for Plaintiff State of New York*

26

27

28

| | |
|---|---|
| ELLEN F. ROSENBLUM<br>Attorney General of Oregon | JOSHUA H. STEIN<br>Attorney General of North Carolina |
| /s/ Paul Garrahan<br>PAUL GARRAHAN (*pro hac vice*)<br>Attorney-in-Charge<br>STEVE NOVICK (*pro hac vice*)<br>Special Assistant Attorney General<br>Natural Resources Section<br>Oregon Department of Justice<br>1162 Court Street NE<br>Salem, OR 97301-4096<br>Telephone:  (503) 947-4593<br>Email: Steve.Novick@doj.state.or.us | /s/ Amy L. Bircher<br>AMY L. BIRCHER*<br>Special Deputy Attorney General<br>SCOTT A. CONKLIN*<br>Assistant Attorney General<br>North Carolina Department of Justice<br>114 W. Edenton Street<br>Raleigh, NC 27603<br>Telephone:  (919) 716-6400<br>Email:  abircher@ncdoj.gov<br>Email:  sconklin@ncdoj.gov |
| *Attorneys for Plaintiff State of Oregon* | *Attorneys for Plaintiff State of North Carolina* |
| PETER F. NERONHA<br>Attorney General of Rhode Island | JOSH SHAPIRO<br>Attorney General of Pennsylvania |
| /s/ Gregory S. Schultz<br>GREGORY S. SCHULTZ*<br>Special Assistant Attorney General<br>Office of the Attorney General<br>150 South Main Street<br>Providence, RI 02903<br>Telephone:  (401) 274-4400<br>Email:  gschultz@riag.ri.gov | /s/ Aimee D. Thomson<br>AIMEE D. THOMSON (*pro hac vice*)<br>Deputy Attorney General<br>ANN R. JOHNSTON<br>Senior Deputy Attorney General<br>Office of Attorney General<br>1600 Arch Street, Suite 300<br>Philadelphia, PA 19103<br>Telephone:  (267) 940-6696<br>Email:  athomson@attorneygeneral.gov |
| *Attorneys for Plaintiff State of Rhode Island* | *Attorneys for Plaintiff Commonwealth of Pennsylvania* |
| ROBERT W. FERGUSON<br>Attorney General of Washington | THOMAS J. DONOVAN, JR.<br>Attorney General of Vermont |
| /s/ Aurora Janke<br>AURORA JANKE (*pro hac vice*)<br>Assistant Attorney General<br>Washington Attorney General's Office Counsel<br>for Environmental Protection<br>800 5th Ave Ste. 2000 TB-14<br>Seattle, Washington 98104-3188<br>Telephone:  (206) 233-3391<br>Email:  Aurora.Janke@atg.wa.gov | /s/ Ryan P. Kane<br>RYAN P. KANE (*pro hac vice*)<br>Office of the Attorney General<br>109 State Street<br>Montpelier, VT 05602<br>Telephone:  (802) 828-3171<br>Email:  ryan.kane@vermont.gov |
| *Attorney for Plaintiff State of Washington* | *Attorneys for Plaintiff State of Vermont* |

1

JOSHUA L. KAUL
Attorney General of Wisconsin

2

/s/ Gabe Johnson-Karp

3

GABE JOHNSON-KARP (*pro hac vice*)
Assistant Attorney General

4

Wisconsin Department of Justice
Post Office Box 7857

5

Madison, WI 53707
Telephone: (608) 267-8904

6

Fax: (608) 267-2223
Email: johnsonkarpg@doj.state.wi.us

7

*Attorneys for Plaintiff State of Wisconsin*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KARL A. RACINE
Attorney General of the
District of Columbia

/s/ Sarah Kogel-Smucker
SARAH KOGEL-SMUCKER*
Special Assistant Attorney General
Public Advocacy Division
Office of the Attorney General
441 4th Street, N.W., Suite 630 South
Washington, D.C. 20001
Telephone:  (202) 724-9727
Email: sarah.kogel-smucker@dc.gov

*Attorneys for Plaintiff District of Columbia*

GEORGIA M. PESTANA
Acting Corporation Counsel
for the City of New York

/s/ Antonia Pereira
ANTONIA PEREIRA (*pro hac vice*)
Assistant Corporation Counsel
New York City Law Department
Environmental Law Division
100 Church Street, Room 6-140
New York, New York 10007
Telephone: (212) 356-2309
Email: anpereir@law.nyc.gov

*Attorneys for Plaintiff City of New York*

*\*Application for admission pro hac vice
forthcoming*

29