J. Tom Boer (SBN 199563)
jtboer@HuntonAK.com
**HUNTON ANDREWS KURTH LLP**
50 California Street, Suite 1700
San Francisco, California 94111-4604
Telephone: (415) 975-3700
Facsimile: (415) 975-3788

Andrew J. Turner (D.C. Bar No. 471179) (*pro hac vice pending*)
aturner@HuntonAK.com
Kerry L. McGrath (D.C. Bar No. 997277) (*pro hac vice pending*)
kmcgrath@HuntonAK.com
Karma B. Brown (D.C. Bar No. 479774) (*pro hac vice pending*)
kbbrown@HuntonAK.com
**HUNTON ANDREWS KURTH LLP**
2200 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 955-1500
Facsimile: (202) 778-2201

*Counsel for Amicus Curiae*
*Utility Water Act Group*

**Hunton Andrews Kurth LLP**
**50 California Street, Suite 1700**
**San Francisco, California 94111-4604**

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

CENTER FOR BIOLOGICAL DIVERSITY, et al.,

Plaintiffs,

v.

BERNHARDT, et al.,

Defendants.

CASE NO.: 4:19-CV-05206-JST

RELATED CASE: NO. 4:19-CV-06013-JST
RELATED CASE: NO. 4:19-CV-06812-JST

**NOTICE OF MOTION AND MOTION FOR LEAVE TO PARTICIPATE AS *AMICUS CURIAE* IN SUPPORT OF DEFENDANTS**

*[Proposed Order filed concurrently herewith]*

Date: March 25, 2020
Time: 2:00 p.m.
Courtroom: Courtroom 6
Judge: Hon. Jon S. Tigar

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111-4604

**TO THE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT**, on March 25, 2020, at 2:00 p.m., or as soon as this matter may be heard in the courtroom of the Honorable Jon S. Tigar, located at the Oakland Courthouse, 1301 Clay Street, Oakland, CA 94612, the Utility Water Act Group ("UWAG") will and hereby respectfully moves for leave to participate as *amicus curiae* in support of Defendants.

UWAG seeks an order granting leave to participate as *amicus curiae*. This Motion is based on this Notice of Motion, the supporting Memorandum of Points and Authorities, all pleadings and papers filed in this action, and such other written and oral argument or evidence as may be presented at or before the time this Motion is taken under submission.

Before the Court are three related actions, including this action. On December 6, 2019, Federal Defendants filed a motion to dismiss all three actions. Multiple groups have moved to intervene in the actions, and the hearings on the motion to dismiss, as well as the intervention motions, are set for February 26, 2020. UWAG takes no position on the pending motion to dismiss or motions to intervene. Counsel for UWAG contacted the existing parties to determine their positions on this Motion. The Federal Defendants do not oppose this Motion. The Center for Biological Diversity, et al., ("Plaintiffs") have indicated through counsel they would not be able to provide a position until they review this Motion. UWAG will confer with the Parties to determine whether this Motion can be resolved via stipulation.

UWAG respectfully requests the Court grant this Motion. A proposed order is filed herewith.

DATED: February 18, 2020

**HUNTON ANDREWS KURTH LLP**

By: /s/ J. Tom Boer

J. Tom Boer
HUNTON ANDREWS KURTH LLP
50 California Street, Suite 1700
San Francisco, California 94111-4604
(415) 975-3717
jtboer@HuntonAK.com

*Counsel for Amicus Curiae*
*Utility Water Act Group*

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111-4604

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii

MEMORANDUM OF POINTS AND AUTHORITIES ..... 1

I. Introduction ..... 1

II. UWAG Has Extensive Experience with the Endangered Species Act Regulatory Framework at Issue and Significant Interests at Stake in this Case. ..... 2

III. Plaintiffs' Challenge Raises Issues of Nationwide Importance with Far-Reaching Implications for UWAG. ..... 5

IV. UWAG Readily Meets the Liberal Standard for Amicus Participation. ..... 6

A. UWAG Would Provide a Unique Perspective. ..... 7

1. UWAG Members Have Extensive Experience Complying with the ESA, Including ESA Rules and Procedures and Service Practices. ..... 7

2. UWAG Is Extensively Involved in Species and Habitat Conservation Designed to Comply with and Further the Goals of the Act ..... 8

B. Federal Defendants and Proposed Defendant-Intervenors Represent Interests and Will Present Perspectives that Are Distinct From UWAG. ..... 9

C. UWAG's Request to Participate is Timely. ..... 10

V. Conclusion ..... 11

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alabama v. NMFS*, No. 16-cv-00593 (S.D. Ala. filed Feb. 2, 2017)........................................4

*Animal Legal Def. Fund v. Bernhardt*, No. 4:19-cv-06812-JST (N.D. Cal. filed Oct. 21, 2019) ........................................1

*British Airways Bd. v. Port Auth. of New York & New Jersey*, 71 F.R.D. 583 (S.D.N.Y. 1976) ........................................6

*California v. Bernhardt*, No. 4:19-cv-06013-JST (N.D. Cal. filed Sept. 25, 2019) ..................1

*Funbus Systems, Inc. v. Cal. Pub. Utils. Comm'n*, 801 F.2d 1120 (9th Cir. 1986) ..................7

*In re Roxford Foods Litig.*, 790 F. Supp. 987 (E.D. Cal. 1991) ............................................6

*Miller-Wohl Co. v. Comm'r of Labor & Indus.*, 694 F.2d 203 (9th Cir. 1982).........................7

*NGV Gaming, Ltd. v. Upstream Point Molate, LLC*, 355 F. Supp. 2d 1061 (N.D. Cal. 2005) .6

*Piedmont Paper Products, Inc. v. Am. Financial Corp.*, 89 F.R.D. 41 (S.D. Ohio 1980) ........6

*United States v. Louisiana*, 751 F. Supp. 608 (E.D. La. 1990)................................................6

*Warehouse Restaurant, Inc. v. Customs House Restaurant*, 1982 WL 63800 (N.D. Cal. 1982) ........................................6

**Federal Statutes**

16 U.S.C. § 1531(a)(5)........................................8

16 U.S.C. § 1534(a) ........................................8

16 U.S.C. § 1535(b) ........................................8

16 U.S.C. § 1536(a)(1)........................................8

16 U.S.C. § 1536(a)(2)........................................3

16 U.S.C. § 1539(a)(2)(A) ........................................8

**Federal Register**

Interagency Cooperation – Endangered Species Act of 1973, as Amended; Definition of Destruction or Adverse Modification of Critical Habitat, 81 Fed. Reg. 7214 (Feb. 11, 2016) .4

Policy Regarding Implementation of Section 4(b)(2) of the Endangered Species Act, Notice of Final Policy, 81 Fed. Reg. 7226, (Feb. 11, 2016)....................8

Listing Endangered and Threatened Species and Designating Critical Habitat; Implementing Changes to the Regulations for Designating Critical Habitat, 81 Fed. Reg. 7414 (Feb. 11, 2016)....................4

Receipt of Application for Enhancement of Survival Permit and Draft Candidate Conservation Agreement With Assurances / Candidate Conservation Agreement for Monarch Butterfly, 84 Fed. Reg. 15,229 (Apr. 15, 2019)....................9

Regulations for Prohibitions to Threatened Wildlife and Plants, 84 Fed. Reg. 44,753 (Aug. 27, 2019) ("4(d) Rule")....................1

Regulations for Interagency Cooperation, 84 Fed. Reg. 44,976 (Aug. 27, 2019) ("Interagency Cooperation Rule")....................1

Regulations for Listing Species and Designating Critical Habitat, 84 Fed. Reg. 45,020 (Aug. 27, 2019) ("Listing and Designation Rule")....................1

**Case Materials**

Notice of Motion and Motion to Intervene of Am. Farm Bureau Fed'n, *et al.*; Memorandum of Points and Authorities in Support, *California v. Bernhardt*, No. 4:19-CV-06013-JST (Dec. 13, 2019), ECF No. 64; *Animal Legal Def. Fund v. Bernhardt*, No. 4:19-CV-06812-JST (Dec. 13, 2019), ECF No. 24....................10

Notice of Motion and Motion to Intervene of Beaver Creek Buffalo Co., *et al.*; Memorandum of Points and Authorities in Support, *California v. Bernhardt*, No. 4:19-CV-05206-JST (Dec. 17, 2019), ECF No. 41; *Animal Legal Def. Fund v. Bernhardt*, No. 4:19-CV-06013-JST (Dec. 17, 2019), ECF No. 69; No. 4:19-CV-06812-JST (Dec. 17, 2019), ECF No. 29....................10

Notice of Motion and Motion of the States of Alabama, Alaska, Arizona *ex rel.* the Arizona Game and Fish Commission, Arkansas, Idaho, Kansas, Missouri, Montana, Nebraska, North Dakota, Utah, West Virginia, and Wyoming to Intervene as Defendants; Memorandum of Points and Authorities in Support Thereof; Declarations in Support Thereof, *California v. Bernhardt*, 4:19-CV-06013-JST (Dec. 9, 2019), ECF No. 53; *Animal Legal Def. Fund v. Bernhardt*, 4:19-CV-06812-JST (Jan. 7, 2020), ECF No. 35....................10

Brief of the National Hydropower Association, the Northwest Hydroelectric Association, Northwest Riverpartners and the Utility Water Act Group as *Amici Curiae* in Support of Petitioners, *State Water Contractors v. Jewell*, 574 U.S. 1074 (Jan. 12, 2015) (brief filed Nov. 6, 2014)....................5

Compl., *UWAG v. Nat'l Marine Fisheries Serv.*, No. 1:17-cv-00206 (S.D. Ala. May 11, 2017), ECF No. 1....................2

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111-4604

Brief of *Amici Curiae* American Exploration & Production Council, American Petroleum Institute, Independent Petroleum Association of America, National Association of Manufacturers, National Rural Electric Cooperative Association, and Utility Water Act Group in Support of Petitioner, *Weyerhaeuser Co. v. United States Fish & Wildlife Serv.*, 139 S. Ct. 361 (2018) (brief filed April 30, 2018)....4

**For the Convenience of the Court**

UWAG Comments on Proposed Rule for Interagency Cooperation Under the ESA, 73 Fed. Reg. 47,868 (Aug. 15, 2008), Docket ID No. FWS-R9-ES-2008-0093-8745 (Sept. 25, 2008) 4

UWAG, et al. Comments on Three Endangered Species Act Critical Habitat Proposals of the Services (Oct. 9, 2014), Docket ID No. FWS-HQ-ES-2012-0096-0144 (Oct. 9, 2014)....4

UWAG Comments on FWS Designation of Critical Habitat for the Western Distinct Population Segment of the Yellow-Billed Cuckoo; Proposed Rule, 79 Fed. Reg. 48,548 (Aug. 15, 2014), 79 Fed. Reg. 67,154 (Nov. 12, 2014), Docket ID No. FWS-R8-ES-2013-0011-1149 (Jan. 12, 2015)....4

UWAG Comments on Threatened Species Status for the Northern Long-Eared Bat With 4(d) Rule; Final Rule and Interim Rule with Request for Comment, 80 Fed. Reg. 17,974 (Apr. 2, 2015), Docket ID No. FWS-R5-ES-2011-0024-3779 (July 1, 2015)....4

UWAG Comments on the Services' Requests for Comments on Regulatory Reform/Streamlining Regulatory Processes and Reducing Regulatory Burden, 82 Fed. Reg. 28,429 (June 22, 2017), 82 Fed. Reg. 31,576 (July 7, 2017), Docket ID No. DOI-2017-0003-0114 (Aug. 21, 2017)....4

UWAG, et al. Comments on the ESA Rule Amendment Proposals, Docket ID No. FWS-HQ-ES-2018-0006-55576 (Sept. 24, 2018)....2

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111-4604

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111-4604

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. Introduction

The Utility Water Act Group ("UWAG") respectfully moves for leave to participate as *amicus curiae* in support of the Federal Defendants to defend the U.S. Fish and Wildlife Service ("FWS") and National Marine Fisheries Service ("NMFS") (collectively, the "Services") promulgation of three rules ("ESA Rule Amendments")[1] updating and clarifying the regulations governing the Services' implementation of the Endangered Species Act ("ESA" or the "Act").[2]

UWAG members include public, private, and investor-owned utilities, three national trade associations of energy companies, and individual energy companies. These entities have significant, protectable interests in the ESA Rule Amendments. Many of the individual energy companies that comprise UWAG have public service obligations to ensure a reliable and safe supply of electricity to their customers. In the course of providing energy nationwide, UWAG's members undertake a wide range of activities, including construction, operation, and maintenance of facilities, which may trigger various requirements under the ESA.

The Center for Biological Diversity, et al. ("Plaintiffs") bring a broad challenge to the Services' ESA Rule Amendments that overlooks fundamental principles of law governing implementation of the Act and the Services' decades of expertise in implementing the ESA, which led the Services to update their regulations and species and habitat conservation efforts nationwide. UWAG supports the Services' well-grounded regulations, which improve implementation of protections for listed species and therefore will have important implications for a wide range of activities undertaken by their members and the public. UWAG has extensive experience in the development and implementation of the ESA program and associated case law, developed through

---

[1] *See* Regulations for Prohibitions to Threatened Wildlife and Plants, 84 Fed. Reg. 44,753 (Aug. 27, 2019) ("4(d) Rule"); Regulations for Interagency Cooperation, 84 Fed. Reg. 44,976 (Aug. 27, 2019) ("Interagency Cooperation Rule"); and Regulations for Listing Species and Designating Critical Habitat, 84 Fed. Reg. 45,020 (Aug. 27, 2019) ("Listing and Designation Rule") (collectively, "ESA Rule Amendments").

[2] UWAG has moved for leave to participate in this action, which is related to *Animal Legal Def. Fund v. Bernhardt*, No. 4:19-cv-06812-JST (N.D. Cal. Filed Oct. 21, 2019), and *California v. Bernhardt*, No. 4:19-cv-06013-JST (N.D. Cal. Filed Sept. 25, 2019). To avoid duplication, and in light of the overlap of claims, UWAG has not filed similar motions in the related cases. If the cases are not consolidated for briefing purposes, to the extent necessary to defend the Rules, UWAG reserves the right to file a motion for leave to participate in the other related actions at an appropriate time to protect its interests.

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111-4604

decades of work ensuring compliance with the ESA and pursuing effective and efficient advancement of the ESA's goals, often in cooperation with the Services, state wildlife agencies, and non-profit organizations. UWAG has long been engaged with the Services on ESA regulatory reform, including participating in the rulemaking that led to the Services' promulgation of the ESA Rule Amendments[3] and filing a challenge to earlier ESA rules that were contrary to the Act.[4]

Due to UWAG's extensive involvement in ESA regulatory reform and the potential ramifications of this litigation, including any decision requiring the Services to reconsider the ESA Rule Amendments, or vacating or setting aside these Rules, UWAG respectfully requests the opportunity to participate in this case, in support of the Defendants and Defendant-Intervenors, to provide the perspectives of the electric power industry. UWAG's brief will focus on enhancing the Court's understanding of the underlying legal and factual issues and thereby assist in the resolution of this action. UWAG also will provide the Court with the benefit of its members' unique practical experience with implementation of ESA listings, ESA 4(d) Rules, critical habitat designations, and the section 7 consultation process. UWAG's motion is timely, as briefing on the Federal Defendants' motion to dismiss is still underway.

## II. UWAG Has Extensive Experience with the Endangered Species Act Regulatory Framework at Issue and Significant Interests at Stake in this Case.

UWAG is a voluntary, non-profit, unincorporated group of 112 individual energy companies, which own and operate over fifty percent of the nation's total generating capacity, and three national trade associations of energy companies: the Edison Electric Institute, the American Public Power Association, and the National Rural Electric Cooperative Association.[5] Collectively, these utilities serve more than 48 million Americans in 49 states. UWAG's purpose is, among other things, to participate on behalf of its members in federal agency rulemakings under the Clean Water Act ("CWA") and related statutes, such as the ESA, and in litigation arising from those rulemakings.

[3] UWAG, et al. Comments on the ESA Rule Amendment Proposals, Docket ID No. FWS-HQ-ES-2018-0006-55576 (Sept. 24, 2018).

[4] *See* Compl., *UWAG v. Nat'l Marine Fisheries Serv.*, No. 1:17-cv-00206 (S.D. Ala. May 11, 2017), ECF No. 1.

[5] *See* www.utilitywateractgroup.org.

The conservation of threatened and endangered species is important to UWAG members, who voluntarily undertake numerous activities to further the conservation of species and their habitats.

The listing of species and designation of land and water as critical habitat have significant consequences for UWAG. Many of UWAG's members own or operate facilities on or along waters where listed species occur, or undertake operations in the course of providing energy nationwide, such as utility line construction, maintenance, and operation, generation of electric power, including hydropower and other renewable energy, and maintenance of those facilities, which often require federal authorizations under the CWA and other statutes, and thus trigger ESA section 7 interagency consultation and other ESA compliance requirements.

ESA section 7(a)(2) requires federal agencies to insure, through consultation with the Services, that their actions (including issuance of federal permits or licenses) are not likely to jeopardize the continued existence of listed species or destroy or adversely modify designated critical habitat. 16 U.S.C. § 1536(a)(2). The ESA section 7 consultation process, while serving an important conservation function, can cause significant costs and delays, imposition of additional permitting requirements, and increased litigation risk if not implemented in an efficient manner. In many cases, these costs and delays affect not only UWAG's members but also consumers, institutions, and other members of the public, and can discourage rather than advance species and habitat conservation. Administration of the ESA regulatory program is thus important not only to UWAG and its members but also to accomplishing the goals of the Act, as well as serving the public at large, whose health, safety and general welfare depend on the affordable and reliable delivery of energy. In addition, UWAG's members are committed to conservation, including taking active steps to minimize impacts from their activities on wildlife and habitat through responsible planning, permitting, and practices, and participating in voluntary conservation measures to protect species and their habitat before those species are listed, which not only produce important environmental benefits, but also reduce the need for and potential costs and regulatory burdens that can result from species listings and designations of critical habitat.

The ESA Rule Amendments were promulgated through APA notice-and-comment rulemaking following extensive public participation, including by UWAG, Plaintiffs, and other

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111-4604

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111-4604

interested parties. UWAG participated in a wide range of regulatory actions leading up the ESA Rule Amendments.[6]

Most recently, the ESA Rule Amendments follow the Services' promulgation of rules in 2016 to revise certain aspects of the critical habitat regulations.[7] UWAG filed detailed comments on the Services' 2014 proposals to revise the critical habitat regulations.[8] When some of its concerns were not addressed in the final rules, UWAG, as part of an industry coalition, brought suit challenging the Services' 2016 rules.[9] UWAG's complaint set forth the reasons why the Services' 2016 regulations unlawfully expanded federal regulatory authority and control over lands and waters in violation of the ESA and APA, and allowed the Services to determine, during section 7 consultation, that almost any federal agency action (*e.g.*, permits, licenses, and easements) results in a prohibited "adverse modification." UWAG and the Services settled the action, and the Services agreed to review and reconsider the 2016 rules, which in part were addressed through the Services' promulgation of the ESA Rule Amendments.[10] The industry coalition and the state plaintiffs

---

[6] For example, in 2008, UWAG filed comments in response to the Services' proposed revisions to simplify and clarify the ESA section 7 consultation process. UWAG Comments on Proposed Rule for Interagency Cooperation Under the ESA, 73 Fed. Reg. 47,868 (Aug. 15, 2008), Docket ID No. FWS-R9-ES-2008-0093-8745 (Sept. 25, 2008). More recently, UWAG filed comments in response to the U.S. Department of the Interior and NMFS requests for public comment on existing policies and regulations that may warrant repeal, replacement, or modification. UWAG Comments on the Services' Requests for Comments on Regulatory Reform/Streamlining Regulatory Processes and Reducing Regulatory Burden, 82 Fed. Reg. 28,429 (June 22, 2017), 82 Fed. Reg. 31,576 (July 7, 2017), Docket ID No. DOI-2017-0003-0114 (Aug. 21, 2017). These comments support the Services' regulatory reform efforts and identify a number of aspects of the ESA regulations that were modified during the rulemaking, including using the proper environmental baseline, causation standard, and effects analysis during section 7 consultations. Finally, UWAG routinely submits comments on proposed listing determinations and proposals to designate critical habitat for listed species that have particular implications for their activities. *See, e.g.*, UWAG Comments on FWS Designation of Critical Habitat for the Western Distinct Population Segment of the Yellow-Billed Cuckoo; Proposed Rule, 79 Fed. Reg. 48,548 (Aug. 15, 2014), 79 Fed. Reg. 67,154 (Nov. 12, 2014), Docket ID No. FWS-R8-ES-2013-0011-1149 (Jan. 12, 2015); UWAG Comments on Threatened Species Status for the Northern Long-Eared Bat With 4(d) Rule; Final Rule and Interim Rule with Request for Comment, 80 Fed. Reg. 17,974 (Apr. 2, 2015), Docket ID No. FWS-R5-ES-2011-0024-3779 (July 1, 2015).

[7] Listing Endangered and Threatened Species and Designating Critical Habitat; Implementing Changes to the Regulations for Designating Critical Habitat, 81 Fed. Reg. 7414 (Feb. 11, 2016); Interagency Cooperation – Endangered Species Act of 1973, as Amended; Definition of Destruction or Adverse Modification of Critical Habitat, 81 Fed. Reg. 7214 (Feb. 11, 2016).

[8] UWAG, et al. Comments on Three Endangered Species Act Critical Habitat Proposals of the Services (Oct. 9, 2014), Docket ID No. FWS-HQ-ES-2012-0096-0144 (Oct. 9, 2014).

[9] *See supra* note 4. Twenty states, led by Alabama, filed a similar, separate action in the same court. *Alabama v. NMFS*, No. 16-cv-00593 (S.D. Ala. filed Feb. 2, 2017).

[10] UWAG has been actively engaged in other ESA litigation. For example, UWAG filed an *amici curiae* brief before the U.S. Supreme Court in *Weyerhaeuser Co. v. United States Fish & Wildlife Serv.*, 139 S. Ct. 361 (2018), which involved the designation of private land as critical habitat for the endangered dusky gopher frog. UWAG and others

retained the right to refile their actions should the Services' new rules not address their fundamental concerns.

**III. Plaintiffs' Challenge Raises Issues of Nationwide Importance with Far-Reaching Implications for UWAG.**

Plaintiffs have brought a broad challenge to the ESA Rule Amendments, arguing that the regulations are inconsistent with and contrary to the Act and are thus arbitrary and capricious under the APA. For example, Plaintiffs argue that changes to the causation standard, as well as revisions to the "adverse modification" and "environmental baseline" definitions, are inconsistent with the ESA. Pls.' First Am. Compl. at ¶¶ 112, 122. Plaintiffs further assert that the Services' failure to consult on the rules, which "may affect" threatened and endangered species and adversely modify their designated critical habitat, violates the ESA, Pls.' First Am. Compl. at ¶¶ 125-28, and Plaintiffs also argue that certain provisions of the new rules were adopted without sufficient notice and comment and are not a logical outgrowth of the proposed rule, in violation of the APA. Pls.' First Am. Compl. at ¶¶ 104-08. Finally, Plaintiffs claim that the Services violated the National Environmental Policy Act ("NEPA") and the APA by failing to prepare an Environmental Impact Statement ("EIS") that examines the environmental effects of the revisions. Pls.' First Am. Compl. at ¶¶ 94-103.

As a remedy, Plaintiffs: (i) seek an order declaring that the Services acted arbitrarily, capriciously, and contrary to NEPA, the ESA, and the APA in promulgating the regulations, (ii) request that the Court hold unlawful and vacate the regulations, and (iii) request that the Court enjoin the Services from applying or relying on the new regulations and reinstating the prior regulations. Pls.' First Am. Compl. at 41-42.

Plaintiffs mischaracterize the Services' promulgation of the ESA Rule Amendments. Contrary to Plaintiffs' assertions, the Services' regulatory revisions provide important (and necessary) regulatory clarifications that allow the Services to maintain and protect listed species and designated critical habitat while promoting increased regulatory certainty and consistency. Plaintiffs

filed a joint *amici curiae* brief supporting a petition for a *writ of certiorari* in *State Water Contractors v. Jewell*, 574 U.S. 1074 (Jan. 12, 2015) (brief filed Nov. 2014), which involved a FWS biological opinion on potential impacts to the Delta smelt resulting from the Central Valley and State Water Projects.

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111-4604

also ignore the value and extent of significant efforts by industry, including UWAG, states, federal and local governments, tribal entities, and private partners to conserve and protect species and their habitat to avoid future listings and designations of critical habitat. Instead, Plaintiffs selectively and erroneously portray certain provisions in the updated regulations as significant changes detrimental to species and their habitat, and ask this Court to vacate and set aside the ESA Rule Amendments based on arguments that are inconsistent with the text of the Act, the legislative history, and case law.

The ESA Rule Amendments provide important and well-considered updates to the Services' prior decades-old regulations to better implement the ESA and protect listed species and designated critical habitat, without unnecessary administrative burdens. Contrary to Plaintiffs' blanket assertions, the changes are modest, and in keeping with the Services' existing practices. But, based on the broad relief Plaintiffs seek, this Court's review of Plaintiffs' challenge could have serious consequences for UWAG.

**IV. UWAG Readily Meets the Liberal Standard for *Amicus* Participation.**

"It is well-settled that a trial court may, in the exercise of its discretion, permit the filing of an amicus curiae brief." *Warehouse Restaurant, Inc. v. Customs House Restaurant*, 1982 WL 63800, *2 (N.D. Cal. 1982) (citing *British Airways Bd. v. Port Auth. of New York & New Jersey*, 71 F.R.D. 583, 585 (S.D.N.Y. 1976); *Piedmont Paper Products, Inc. v. Am. Financial Corp*., 89 F.R.D. 41, 45 (S.D. Ohio 1980)). "There are no strict prerequisites that must be established prior to qualifying for amicus status; an individual seeking to appear as amicus must merely make a showing that his participation is useful to or otherwise desirable to the court." *In re Roxford Foods Litig*., 790 F. Supp. 987, 997 (E.D. Cal. 1991) (citing *United States v. Louisiana*, 751 F. Supp. 608, 620 (E.D. La. 1990)). "District courts frequently welcome amicus briefs from non-parties concerning legal issues that have potential ramifications beyond the parties directly involved or if the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *NGV Gaming, Ltd. v. Upstream Point Molate, LLC*, 355 F. Supp. 2d 1061, 1067

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111-4604

(N.D. Cal. 2005) (internal quotation marks and citation omitted). *Amici curiae* provide important benefits by "assisting in a case of general public interest, supplementing the efforts of counsel, and drawing the court's attention to law that might otherwise escape consideration." *Funbus Systems, Inc. v. Cal. Pub. Utils. Comm'n*, 801 F.2d 1120, 1125 (9th Cir. 1986) (citing *Miller-Wohl Co. v. Comm'r of Labor & Indus.*, 694 F.2d 203, 204 (9th Cir. 1982)).

The standard for amicus participation is liberal. UWAG's participation would provide the Court with its unique perspective on the Act, including interpretation of the ESA, the legislative history and development of the ESA Rule Amendments, and UWAG's significant experience navigating the Services' ESA regulatory program.

**A. UWAG Would Provide a Unique Perspective.**

**1. UWAG Members Have Extensive Experience Complying with the ESA, Including ESA Rules and Procedures and Service Practices.**

UWAG members' activities are essential to the resiliency of critical U.S. infrastructure, including construction and repair of essential components of the national electrical grid and sources of electrical power, and to the reliable, clean, safe, and affordable supply of energy and other products and services to U.S. consumers. UWAG's participation in this case would provide the Court with the specific perspective of critical elements of the electric power sector. UWAG members undertake projects related to linear utility lines, including construction, operation, and maintenance of such lines, and construction, operation, and maintenance of power generation facilities. These activities often require CWA permits, and/or other federal permits, and thus trigger ESA section 7 consultation or require incidental take permits under ESA section 10. The scope and breadth of the ESA section 7 consultation and section 10 permitting processes depend, in part, upon the listed species and designated critical habitat in the area of UWAG members' activities. These processes can take many months or years, significantly delaying projects and resulting in substantial additional costs, if not destroying a projects' economic viability. Delays impact UWAG's members' ability to undertake, for example, utility line and other linear construction and maintenance, or continued operation of existing dams, with potentially significant adverse impacts on consumer



Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111-4604

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111-4604

access to reliable and secure energy supplies at a reasonable cost. UWAG is thus well positioned to provide the Court with its unique perspective on the consultation regulations, including its members' experience working with the Services and the Services' application and interpretation of the ESA and its regulations for power generation and utility line projects.

**2. UWAG Is Extensively Involved in Species and Habitat Conservation Designed to Comply with and Further the Goals of the Act.**

The protection of listed species and their habitat is important to UWAG and its members and is often closely tied to members' corporate values and roles in their communities. The ESA establishes numerous conservation mechanisms. For example, it encourages "States and other interested parties, through Federal financial assistance and a system of incentives, to develop and maintain conservation programs…." 16 U.S.C. § 1531(a)(5). It authorizes or requires: acquisition of lands and waters to conserve listed species, *id*. § 1534(a); cooperative agreements between the Services and states for the administration and management of areas established for the conservation of listed species, *id*. § 1535(b); and federal agency programs for the conservation of listed species, *id*. § 1536(a)(1). The Act also creates strong incentives for private parties to conserve habitat by requiring the development and implementation of habitat conservation plans ("HCPs") in order to receive permits authorizing the incidental taking of listed species. *Id*. § 1539(a)(2)(A).

To minimize and avoid adverse impacts from their activities to the environment, including wildlife and habitat, UWAG members routinely engage in these sorts of conservation actions, as well as responsible planning, permitting, and best management practices, including under important ESA-based programs. For example, UWAG members, either alone or in partnership with the Services and other state and local agencies, develop and participate in conservation plans. Such partnerships include HCPs, candidate conservation agreements with assurances ("CCAAs"), and safe harbor agreements.[11] These types of public-private partnerships implement conservation actions the Services would be unable to accomplish without private landowner participation and funding.[12]

---

[11] *See, e.g.,* Policy Regarding Implementation of Section 4(b)(2) of the Endangered Species Act, Notice of Final Policy, 81 Fed. Reg. 7226, 7229 (Feb. 11, 2016).

[12] *Id.* at 7230.

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111-4604

UWAG members also participate in voluntary conservation measures to protect species and their habitat at the outset, and thereby avoid unnecessary listings and designations of critical habitat. For example, UWAG members are in the process of developing extensive voluntary conservation measures to ensure that the monarch butterfly and its habitat are protected without any need for a listing under the ESA.[13] UWAG members also participate in an HCP for the Florida scrub-jay, which provides a blueprint for public-private partnerships by which members coordinate land management activities with state and local governmental agencies. As a result of the HCP and coordination, the Florida scrub-jay metapopulation, which would have likely been extirpated, has been steadily increasing.

Voluntary conservation measures, such as those undertaken by UWAG members, often provide more protection than a listing or critical habitat designation, without imposing unnecessary regulatory burdens. These efforts by the Services, states, local governments, tribal entities, and private partners demonstrate the importance of the Services' regulatory program, in conjunction with voluntary efforts. UWAG's familiarity with these programs would provide helpful context for the Court to consider as it evaluates Plaintiffs' arguments.

**B. Federal Defendants and Proposed Defendant-Intervenors Represent Interests and Will Present Perspectives that Are Distinct From UWAG.**

The Federal Defendants are subject to the broad balance of environmental, administrative, public, and other interests the government must consider in addressing Plaintiffs' claims, which differs markedly from UWAG's specific interests in how such rules are applied to regulated entities. As a result, the Federal Defendants' primary interests in this case are to defend the Services' action, rulemaking policies and procedures, and their administrative resources. The Federal Defendants do not have any particular stake in how the application or implementation of the ESA Rule Amendments affect UWAG. Given its history and purpose, UWAG has a broad understanding of the significant legal and practical ramifications of the ESA Rule Amendments on its members' activities and thus can provide a different perspective about the core issues relevant to this action.

[13] *See* Receipt of Application for Enhancement of Survival Permit and Draft Candidate Conservation Agreement With Assurances / Candidate Conservation Agreement for Monarch Butterfly, 84 Fed. Reg. 15,229 (Apr. 15, 2019).

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111-4604

In addition, although Proposed Defendant-Intervenors are not yet parties to the case, UWAG members' operations, maintenance, and construction activities differ substantially from the activities undertaken by the Proposed Defendant-Intervenors. The Proposed Defendant-Intervenors include an industry coalition comprised of forestry, home-building, ranching, and oil and gas associations,[14] a group of states,[15] and a group representing cattlemen and bison-ranching interests.[16] These groups engage in a wide range of activities and have a wide range of interests. Yet none of these entities are engaged in the complex development, production, distribution, or delivery of electricity to the public, which is specific and unique. Indeed, the nature of an electrical grid that includes linear features that typically run with the landscape and that are increasingly designed to avoid and limit impacts to habitat and species are distinct from other forms of infrastructure and activities. These parties, therefore, are focused on a range of separate interests, not the specific and unique interests of the electric utility sector, and thus cannot be expected to adequately convey the unique perspective UWAG would present. As a result, UWAG's participation should aid the Court in understanding the legal and practical implications of Plaintiffs' challenges to the ESA Rule Amendments.

### C. UWAG's Request to Participate is Timely.

This motion is timely. UWAG would not duplicate, but would supplement, briefing by the Defendants and Defendant-Intervenors. UWAG proposes to meet and confer with the Parties, at an appropriate time, after this Court's decision on the Federal Defendants' motion to dismiss, should briefing on the merits of this case proceed. Given the early juncture of proceedings, allowing UWAG to participate, should the case proceed to the merits, will not delay this action or unfairly prejudice Plaintiffs.

---

[14] *See* Notice of Motion and Motion to Intervene of Am. Farm Bureau Fed'n, *et al.*; Memorandum of Points and Authorities in Support, No. 4:19-CV-05206-JST (Dec. 13, 2019), ECF No. 36; No. 4:19-CV-06013-JST (Dec. 13, 2019), ECF No. 64; No. 4:19-CV-06812-JST (Dec. 13, 2019), ECF No. 24.

[15] *See* Notice of Motion and Motion of the States of Alabama, Alaska, Arizona *ex rel.* the Arizona Game and Fish Commission, Arkansas, Idaho, Kansas, Missouri, Montana, Nebraska, North Dakota, Utah, West Virginia, and Wyoming to Intervene as Defendants; Memorandum of Points and Authorities in Support Thereof; Declarations in Support Thereof, No. 4:19-CV-05206-JST (Jan. 7, 2020), ECF No. 47; 4:19-CV-06013-JST (Dec. 9, 2019), ECF No. 53; 4:19-CV-06812-JST (Jan. 7, 2020), ECF No. 35.

[16] *See* Notice of Motion and Motion to Intervene of Beaver Creek Buffalo Co., *et al.*; Memorandum of Points and Authorities in Support, No. 4:19-CV-05206-JST (Dec. 17, 2019), ECF No. 41; No. 4:19-CV-06013-JST (Dec. 17, 2019), ECF No. 69; No. 4:19-CV-06812-JST (Dec. 17, 2019), ECF No. 29.

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111-4604

**V. Conclusion**

For the foregoing reasons, UWAG respectfully requests the Court grant its Motion for Leave to Participate as *Amicus Curiae* in support of Defendants.

DATED: February 18, 2020

**HUNTON ANDREWS KURTH LLP**

By: /s/ J. Tom Boer

J. Tom Boer
Andrew J. Turner
Kerry L. McGrath
Karma B. Brown
*Counsel for Amicus Curiae*
*Utility Water Act Group*