TODD KIM,
Assistant Attorney General
SETH M. BARSKY, Section Chief
MEREDITH L. FLAX, Assistant Section Chief
COBY HOWELL, Senior Trial Attorney
MICHAEL R. EITEL, Senior Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
1000 S.W. Third Avenue
Portland, OR 97204
Phone: (503) 727-1023
Fax: (503) 727-1117
Email: coby.howell@usdoj.gov

*Attorneys for Federal Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA (Oakland)

| | |
|---|---|
| STATE OF CALIFORNIA, ET AL., | Case. No. 4:19-cv-06013-JST |
| Plaintiffs, | **FEDERAL DEFENDANTS' MOTION TO STAY AND MEMORANDUM OF POINTS AND AUTHORITIES** |
| vs. | |
| HAALAND, ET AL., | Date: October 7, 2021[1] |
| Federal Defendants. | Time: 2:00 pm PDT |
| | Place: Courtroom 6, 2nd Floor |
| | Judge: The Honorable Jon S. Tigar |

---

[1] The parties stipulated to a briefing schedule for the motions to stay and Federal Defendants do not intend to alter that schedule with the noted hearing date. ECF 145 at 4; ECF 131. October 7, 2021 was the earliest available hearing date on the Court's calendar.

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that, on October 7, 2021, Federal Defendants will move this Court to stay the above-captioned case. This motion will be made before the Honorable Jon S. Tigar, United States District Judge, Oakland Courthouse, 1301 Clay Street, Oakland, CA 94612.

Federal Defendants move the Court for an order staying this case until the United States Fish and Wildlife Service ("FWS") and the National Marine Fisheries Service ("NMFS") (collectively, "Services") make final decisions acting on their announced intent to rescind 84 Fed. Reg. 44753 (Aug. 27, 2019), and revise 84 Fed. Reg. 45020 (Aug. 27, 2019) and 84 Fed. Reg. 44976 (Aug. 27, 2019) (collectively, "2019 ESA Rules") pursuant to Executive Order 13990, and requiring the parties to file a joint status report with the Court within one week after all final decisions are made, informing the Court of whether and how the parties plan to proceed with the litigation.

In the alternative, if the Court declines to stay the case until final decisions on the 2019 ESA Rules have been issued, Federal Defendants move the Court to stay proceedings until the Services have published the proposed rules to revise the joint 2019 ESA Rules.

This motion is based on the accompanying Memorandum of Points and Authorities and the Declarations of Gary D. Frazer ("Frazer Decl.") and Samuel D. Rauch III ("Rauch Decl.").

Counsel for the parties have conferred on this motion. Plaintiffs have indicated that they will oppose this motion. Intervenor-Defendants have reserved the right to respond.

Federal Defendants are filing this motion in all three related cases, but the motion is substantively identical in each case.

# TABLE OF CONTENTS

<u>PAGE</u>

INTRODUCTION ......................................................................................................... 1

BACKGROUND ............................................................................................................. 3

ARGUMENT ................................................................................................................... 9

I. The Court Should Exercise Its Broad Discretion to Stay this Case As the
Services' Already-Underway Administrative Process Could Moot or Narrow
Plaintiffs' Claims. ......................................................................................................... 9

1. The "Orderly Course of Justice" Factor is Met Because the Requested Stay
Can Be Expected to Simplify the Disputed Issues and Promote Judicial
Economy. ........................................................................................................... 11

2. Federal Defendants Will Suffer Hardship if the Litigation Proceeds Before
the Rulemaking Process to Revise and Rescind the 2019 ESA Rules is
Complete. ........................................................................................................... 15

3. Plaintiffs Will Not Be Prejudiced If the Case is Stayed Until the Services
Make Final Decisions on the 2019 ESA Rules. ............................................. 18

CONCLUSION .............................................................................................................. 20

# TABLE OF AUTHORITIES

<u>CASE</u>                                                                                                      <u>PAGE</u>

*Animal Legal Def. Fund v. Haaland,*
   19-cv-06812 (N.D. Cal. Oct. 21, 2019) ........................................................ 1

*Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.,*
   515 U.S. 687 (1995) ..................................................................................... 3

*Cal. ex rel. Lockyer v. U.S. Dep't of Agric.,*
   575 F.3d 999 (9th Cir. 2009) ...................................................................... 12

*California v. Haaland,*
   19-cv-6013 (N.D. Cal. Sept. 25, 2019)......................................................... 1

*California v. Haaland,*
   21-cv-00440-JST (N.D. Cal.) ............................................................1, 7, 18

*Center for Biological Diversity v. Haaland,*
   1-21-cv-00041 ................................................................................................ 7

*Center for Biological Diversity v. Haaland,*
   19-cv-5206 (N.D. Cal. Aug. 21, 2019) ......................................................... 1

*CMAX, Inc. v. Hall,*
   300 F.2d 265 (9th Cir. 1962) ................................................................. 9, 12

*Conservation Council for Hawaii, et al. v. Haaland et al.,*
   1-21-cv-00040 ................................................................................................ 7

*E. Bay Sanctuary Covenant v. Barr,*
   385 F. Supp.3d 922................................................................................... 16

*FCC v. Fox Television Stations, Inc.,*
   556 U.S. 502 (2009) ................................................................................... 12

*Fuller v. Amerigas Propane,*
   No. 09-2616 TEH, 2009 WL 2390358 (N.D. Cal. Aug. 3, 2009)............................ 11

*Gallion v. Charter Commc'ns,*
    287 F. Supp. 3d 920 (C.D. Cal. 2018) ...................................................... 11

*Gallion v. United States,*
    772 F. App'x 604 (9th Cir. 2019) ........................................................ 11

*Gustavson v. Mars, Inc.,*
    No. 13–cv–04537–LHK, 2014 WL 6986421 (N.D. Cal. Dec. 10, 2014) ................. 11

*Landis v. N. Am. Co.,*
    299 U.S. 248 (1936) ............................................................................ 9

*Leyva v. Certified Grocers of Cal.,*
    593 F.2d 857 (9th Cir. 1979) ............................................................. 10

*Lockyer v. Mirant Corp.,*
    398 F.3d 1098 (9th Cir. 2005) ............................................................. 9

*Matera v. Google,*
    No. 15-CV-04062-LHK, 2016 WL 454130 (N.D. Cal. Feb. 5, 2016) ..................... 11

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
    463 U.S. 29 (1983) ........................................................................ 12

*Twitter, Inc. v. Lynch,*
    139 F. Supp.3d 1075 (N.D. Cal. 2015) ................................................ 13


STATUTES

5 U.S.C. § 553 ........................................................................................ 16
16 U.S.C. § 1532(15) ............................................................................... 4
16 U.S.C. § 1540(f) ................................................................................. 3

FEDERAL REGULATIONS

50 C.F.R. § 402.01(b) .............................................................................. 4
84 Fed. Reg. 44976 (Aug. 27, 2019) ..................................................... 1, 4
84 Fed. Reg. 45020 (Aug. 27, 2019) ..................................................... 1, 4
85 Fed. Reg 82376 (Dec. 18, 2020) ....................................................... 6, 7
86 Fed. Reg. 7037 (Jan. 20, 2012) .................................................... 1, 5, 11
84 Fed. Reg. 44753 (Aug. 27, 2019) .................................................... 1, 4, 8

84 Fed. Reg. ............................................................................................................ 8

85 Fed. Reg. 81411 (Dec. 16, 2020) ........................................................................ 6

Motion to Stay, 4:19-cv-06013-JST

# INTRODUCTION

The Court should stay this case because the Services are actively working to rescind or revise the challenged 2019 ESA Rules.[2] To proceed with summary judgment briefing before the Services' rulemaking processes are complete would not only waste judicial and party resources, it would interfere with the rulemaking processes that are already underway.

Pursuant to Executive Order 13990 signed by President Biden on January 20, 2021 (titled "Executive Order on Protecting Public Health and the Environment and Restoring Science to Tackle the Climate Crisis"), the White House has directed the Services to evaluate and, where appropriate, revise or rescind environmental and public health related regulations that were issued under the Trump Administration. 86 Fed. Reg. 7037 (Jan. 20, 2021). In a publication accompanying that Executive Order, the White House specifically directed the Services to review the three Endangered Species Act ("ESA") regulations challenged in this action, *i.e.*, 84 Fed. Reg. 45020 ("Section 4 Rule"), 84 Fed. Reg. 44753 ("Section 4(d) Rule"), and 84 Fed. Reg. 44976 ("Section 7 Rule").[3] As a result of the Services' review of these

---

[2] This Court has related the three cases: *Center for Biological Diversity v. Haaland*, 19-cv-5206 (N.D. Cal. Aug. 21, 2019); *California v. Haaland*, 19-cv-6013 (N.D. Cal., Sept. 25, 2019); *Animal Legal Def. Fund v. Haaland*, 19-cv-06812 (N.D. Cal., Oct. 21, 2019). For purposes of this memorandum in support of Federal Defendants' Motion to Stay, the cases are referred to collectively in the singular tense. The Court has also related *California v. Haaland*, 21-cv-00440-JST (N.D. Cal.), with the above-related cases, which challenges the 2020 Critical Habitat Rules. The parties in that case plan to inform the Court how they intend to proceed by August 19, 2021.

[3] The Section 4 and Section 7 Rules were promulgated jointly by FWS and NMFS and the Section 4(d) Rule was promulgated by FWS alone. Accordingly, the Services

Motion to Stay, 4:19-cv-06013-JST

regulations, on June 4, 2021, FWS announced its intent to rescind the Section 4(d) Rule and the Services announced their intent to revise the Section 4 and Section 7 Rules.

If briefing on the merits of this case were to proceed before the Services make final decisions on the 2019 ESA Rules, the Services may be forced to prematurely formulate and take positions in litigation filings before they have arrived at final positions. Additionally, the Services may be forced to adopt such positions before they have even received or considered public comments on the proposed revisions (a fundamental part of the rulemaking process under the Administrative Procedure Act ("APA")).  Not only would it be a waste of the Court's and parties' resources to adjudicate rules that the Services are in the process of revising and rescinding, it could damage the integrity of the rulemaking process and potentially create public confusion over how the relevant portions of the ESA will be implemented.

Additionally, without a stay, agency resources would be diverted from the ongoing rulemaking processes because the small group of FWS and NMFS staff with the subject-matter expertise to work on the proposed revisions to the 2019 ESA Rules are the same staff who would be responsible for providing litigation support in this case. Conversely, Plaintiffs' interests will not be harmed by a stay because this is a facial challenge to the 2019 ESA Rules and Plaintiffs are free to challenge any final agency action in which the existing rules are applied in a way that harms

---

are undertaking joint rulemaking processes to revise the Section 4 and Section 7 Rules, and FWS alone is proposing to rescind the Section 4(d) Rule.

Plaintiffs' interests with respect to an ESA listed species. Indeed, Plaintiffs' alleged interests may actually be harmed if the case is *not* stayed because the diversion of agency resources necessary to provide support for Federal Defendants' anticipated summary judgment briefing would likely delay the rulemaking processes and prolong the Services' anticipated schedule for issuing the revised rules.[4]

Accordingly, Federal Defendants respectfully request that the Court stay the litigation until the Services complete the rulemaking processes and issue final decisions on the 2019 ESA Rules.[5]

## BACKGROUND

To achieve the conservation purposes of the ESA, Congress authorized the Secretaries of the Departments of the Interior and Commerce to "promulgate such regulations as may be appropriate to enforce" it. 16 U.S.C. § 1540(f); *Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*, 515 U.S. 687, 708 (1995) ("When it enacted the ESA, Congress delegated broad administrative and interpretive power to the Secretar[ies]"). The Secretaries of Interior and Commerce, acting through the

---

[4] The Services' anticipated schedule for revising the 2019 ESA Rules is set forth in the Declaration of Samuel D. Rauch III (NMFS) at ¶¶ 8-10, and the Declaration of Gary D. Frazer (FWS) at ¶ 8, attached and discussed herein.

[5] If the Court declines to issue a stay until the final decisions revising the 2019 ESA Rules have been issued, Federal Defendants request, in the alternative, that the Court stay proceedings until the Services have published the joint Section 4 and 7 proposed rules. As demonstrated by the Services' June 2021 announcement of their intent to revise the joint 2019 ESA Rules, the ongoing rulemaking process has the potential to moot, narrow, and/or alter the issues in dispute. Thus, staying the case until the proposed joint rules are published would at least allow the Court and the parties to assess whether the claims can be narrowed or whether an additional stay is warranted to allow the Services to complete rulemaking.

Services, share responsibility for implementing the ESA.[6] 16 U.S.C. § 1532(15). The three 2019 ESA Rules challenged by Plaintiffs in this action are the product of such rulemaking by the Services to implement, interpret, and clarify Sections 4, 4(d), and 7(a)(2) of the ESA.

The Section 4 Rule, promulgated jointly by FWS and NMFS on August 27, 2019, made several revisions to the regulatory text governing the procedures for adding, removing, and reclassifying endangered or threatened species and designating their critical habitat under the ESA. 84 Fed. Reg. 45020. The Section 7 Rule, also promulgated jointly by FWS and NMFS on August 27, 2019, made a number of revisions to the regulations guiding Section 7 consultation under the ESA. 84 Fed. Reg. 44976. And the Section 4(d) Rule, issued by FWS on August 27, 2019, removed the "blanket" extension of ESA Section 9 protections afforded to "endangered" species to all species listed as "threatened" as well. 84 Fed. Reg. 44753. *See also*, ECF 46 at 12-23 (detailing the changes).

Plaintiffs filed their motions for summary judgment asserting challenges to the merits of the three 2019 ESA Rules on January 19, 2021. ECF 86; ECF 116; ECF 130. The next day, President Biden issued Executive Order 13990, titled "Executive Order on Protecting Public Health and the Environment and Restoring

---

[6] Generally, Interior's jurisdiction extends to terrestrial and freshwater species and Commerce's jurisdiction covers marine and anadromous species. The Secretary of the Interior has delegated her authorities under the ESA to FWS, and the Secretary of Commerce has similarly delegated her authorities to NMFS. 50 C.F.R. § 402.01(b).

4

Science to Tackle the Climate Crisis." 86 Fed. Reg. 7037 (Jan. 20, 2021). Under his

Executive Order, President Biden declared it a policy of his Administration to:

> listen to the science; to improve public health and protect our environment; to ensure access to clean air and water; to limit exposure to dangerous chemicals and pesticides; to hold polluters accountable, including those who disproportionately harm communities of color and low-income communities; to reduce greenhouse gas emissions; to bolster resilience to the impacts of climate change; to restore and expand our national treasures and monuments; and to prioritize both environmental justice and the creation of the well-paying union jobs necessary to deliver on these goals.

*Id.* To that end, the Order directed all federal agencies to "immediately review and, as appropriate and consistent with applicable law, take action to address the promulgation of Federal regulations and other actions during the last 4 years that conflict with these important national objectives . . . ." *Id.* On the same day it issued Executive Order 13990, the White House also published a fact sheet which directed the Services to review the 2019 ESA Rules at issue in this action.[7]

In compliance with Executive Order 13990, the Services reviewed various rules promulgated over the last four years, including the 2019 ESA Rules. Following their review and evaluation of the challenged rules, on June 4, 2021, the Services made an announcement publicly declaring FWS's intent to propose rulemaking to

---

[7] *See* The White House, Fact Sheet: List of Agency Actions for Review, https://www.whitehouse.gov/briefing-room/statements-releases/2021/01/20/fact-sheet-list-of-agency-actions-for-review/ (last visited Aug. 13, 2021) ("White House Fact Sheet").

Motion to Stay, 4:19-cv-06013-JST

rescind the Section 4(d) Rule and the Services' intent to revise the other two rules at issue in this case (the Section 4 and 7 Rules).[8]

In light of the Services' intention to rescind and revise the contested rules, the parties jointly requested, and the Court granted a series of stays, the most recent of which expired on July 19, 2021, to allow the parties time to determine how to proceed given the Services' forthcoming revisions to and rescinding of the 2019 ESA Rules. ECF 95; ECF 129; ECF 143.  The Court has since terminated Plaintiffs' motions for summary judgment pending resolution of this motion to stay.  ECF 86; ECF 116; ECF 130.

Given the pending litigation, the Services have developed an expedited schedule for rulemaking to revise and rescind the 2019 ESA Rules that adheres to the requirements of the APA and other procedural agency rulemaking requirements. Frazer Decl. at ¶¶ 6-7. The schedule also takes into account the constraints and realities of the Services' workload and limited resources. For instance, in addition to working on revising and rescinding the 2019 ESA Rules, the same NMFS and FWS staff are working on addressing other ESA regulations issued by the prior Administration that are also being revised or rescinded pursuant to Executive Order 13990. Frazer Decl. at ¶ 7 (citing 85 Fed. Reg. 81411 (Dec. 16, 2020), 85 Fed. Reg 82376 (Dec. 18, 2020)). These other ESA regulations are also the

---

[8] *See* Press Release: U.S. Fish and Wildlife Service and NOAA Fisheries to Propose Regulatory Revisions to Endangered Species Act, https://www.fws.gov/news/ShowNews.cfm?ref=u.s.-fish-and-wildlife-service-and-noaa-fisheries-to-propose-regulatory-&_ID=36925 (last visited Aug. 13, 2021) ("Services' Press Release").

Motion to Stay, 4:19-cv-06013-JST

subject of litigation in which some of these plaintiffs are similarly pressing for expeditious rulemaking schedules. *Id.* (noting other litigation: *Conservation Council for Hawai'i, et al. v. Haaland et al.*, 1:21-cv-00040, *Center for Biological Diversity v. Haaland et al.,* 1-21-cv-00041, *State of California, et al., v. Haaland, et al.*, 4:21-cv-00440).

Notwithstanding the constraints in resources, the Services plan to submit proposed rules, proposing to revise and rescind the 2019 ESA Rules, to the Office of Management and Budget ("OMB") of the Executive Office of the President for review by October 18, 2021. Frazer Decl. at ¶ 8. After allowing for the 90-day period that OMB is permitted to review a proposed rule under Executive Order 12866, the Services plan to submit Notices of Proposed Rulemaking to the Federal Register for publication by January 27, 2022. *Id.* After the Notices of Proposed Rulemaking are published, the Services plan to accept public comments on the proposed rules over a 60-day period and to consider any well-founded requests for extensions of that period on a case-by-case basis. Rauch Decl. at ¶ 9. Finally, the Services anticipate sending the final rules to OMB by August 23, 2022 and the Final Action Notices to the Federal Register for publication of the final rules by December 2, 2022. Rauch Decl. at ¶ 10. The Services' anticipated rulemaking schedule is summarized in the table below.

| Rulemaking Process Step | Section 4 Rule | Section 7 Rule | Section 4(d) Rule |
|---|---|---|---|
| Proposed rule to Office of Management and Budget | October 18, 2021 | October 18, 2021 | January 14, 2022 |
| Proposed rule to Federal Register | January 27, 2022 | January 27, 2022 | April 25, 2022 |
| Final rule to Federal Register | December 2, 2022 | December 2, 2022 | January 27, 2023 |

Frazer Decl. at ¶ 8.

FWS's rulemaking for rescinding the Section 4(d) Rule is anticipated to proceed on a slightly different track because the same FWS staff members who are responsible for that rule are also responsible for drafting the revised Section 4 Rule. Frazer Decl. at ¶ 9. FWS has prioritized the Sections 4 and 7 Rules over the Section 4(d) Rule because it has determined that a longer timeline for the Section 4(d) rescission will not have any effects on species in the interim. *Id.* As stated in the rule, FWS will provide "threatened" species with appropriate protections at the time of listing – which can include providing the same protections that apply to endangered species through species-specific 4(d) rules. *Id.* (citing 84 Fed. Reg. 44,753 (Aug. 27, 2019)). Accordingly, FWS need only issue a species-specific 4(d) rule concurrent with a species' listing or reclassification as "threatened" in order to afford it protections until the final rule rescinding the Section 4(d) Rule is issued. *Id.*

There is only a limited number of agency staff and attorneys at the Services who possess the necessary experience and expertise to craft regulations under the complex ESA statutory and regulatory regime. Rauch Decl. at ¶ 6. Those individuals are undertaking a significant amount of work to meet the anticipated

schedule set forth above as well as their work on other ESA rulemakings initiated pursuant to Executive Order 13990. Frazer Decl. at ¶ 10. If agency staff is additionally required to provide litigation support to aid in briefing this case on its merits, the Services anticipate that the rulemakings will be delayed. *Id.*

## ARGUMENT

### I.  The Court Should Exercise Its Broad Discretion to Stay this Case As the Services' Already-Underway Administrative Process Could Moot or Narrow Plaintiffs' Claims.

The Supreme Court has held that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). A district court has broad discretion in granting a motion for stay, particularly in order to conserve judicial resources and alleviate crowded dockets. *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005). A court weighs three factors in determining whether to grant a stay: (1) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay;" (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the possible damage which may result from the granting of a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). Moreover, the Ninth Circuit has explained that a stay is appropriate where, as here, it would be "efficient for [a court's] docket and the fairest course for the parties [is] to enter a stay . . . pending resolution of independent proceedings which bear upon the case."

*Leyva v. Certified Grocers of Cal.*, 593 F.2d 857, 863-64 (9th Cir. 1979).  "This rule applies whether the separate proceedings are judicial, *administrative*, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Id.* (emphasis added).

The Court should stay this case pending completion of the Services' rulemaking process to revise and rescind the 2019 ESA Rules—a process that is already underway—because the stated intent of that process is to evaluate and change the regulations challenged in this case. The expenditure of judicial and party resources on briefing and adjudicating the merits of the 2019 ESA Rules before that process is complete would be wasteful, as the issues raised may be mooted or narrowed. Further, not only will the outcome of the rulemaking process likely bear upon the merits of this case, immediately proceeding with the litigation would put Federal Defendants in the compromising position of having to defend regulations they are actively trying to revise but cannot officially represent whether or how they will be revised because the administrative process (including the review and consideration of public comments) has not been completed. Absent a stay Federal Defendants would have to divert their limited resources from working on the revised 2019 ESA Rules to simultaneously provide support for summary judgment briefing in this litigation, which would likely delay the rulemaking process and leave the current rules Plaintiffs claim are harmful in place longer. Plaintiffs, on the other hand, would not be harmed by such a stay because they would have the opportunity to submit public comments on the proposed revisions

and potentially achieve the same result(s) they seek here, thus eliminating or narrowing the need for continued litigation.

### 1. The "Orderly Course of Justice" Factor is Met Because the Requested Stay Can Be Expected to Simplify the Disputed Issues and Promote Judicial Economy.

In applying the "orderly course of justice" factor discussed above, courts find that "considerations of judicial economy are highly relevant." *Gustavson v. Mars, Inc.*, No. 13–cv–04537–LHK, 2014 WL 6986421, at *3 (N.D. Cal. Dec. 10, 2014) (citation omitted); *Fuller v. Amerigas Propane*, No. 09-2616 TEH, 2009 WL 2390358, at *2 (N.D. Cal. Aug. 3, 2009) (staying an action "primarily" on the basis of judicial economy, "which furthers the [orderly course of justice] factor"); *Matera v. Google*, No. 15-CV-04062-LHK, 2016 WL 454130, at *2-3 (N.D. Cal. Feb. 5, 2016) (granting a stay until resolution of a pending Supreme Court case based on "the orderly course of justice" factor, including judicial economy considerations, because the case "may provide substantial guidance" as to whether the plaintiffs had standing); *see also Gallion v. Charter Commc'ns*, 287 F. Supp. 3d 920, 933 (C.D. Cal. 2018) (granting a stay because "substantial savings in judicial resources outweigh any potential prejudice to plaintiff"), *aff'd sub nom. Gallion v. United States*, 772 F. App'x 604 (9th Cir. 2019), *cert. denied*, 141 S.Ct. 194 (2020).

As discussed above, on January 20, 2021, President Biden issued Executive Order 13990 directing all federal agencies to review certain administrative actions taken under the previous Administration for the purpose of considering whether those actions should be suspended, revised, or rescinded. 86 Fed. Reg. 7,037. Along with President Biden's Executive Order, the White House published a fact sheet

1   directing the Services to specifically review the 2019 ESA Rules. *See* White House

2   Fact Sheet. As a result of the Services' review, on June 4, 2021, they announced

3   their intent to initiate rulemaking to rescind the Section 4(d) Rule and revise the

4   Section 4 and Section 7 Rules at issue in this litigation. *See* Services' Press

5   Release.[9]

6       To require the parties to proceed with briefing on the merits of this case

7   before the Services complete the administrative process to rescind and revise the

8   2019 ESA Rules would be contrary to the interests of judicial economy. Rather, the

9   "orderly course of justice" factor weighs in favor of granting a stay because a

10   simplification of the issues can "be expected to result from a stay" after the Services'

11   rulemaking process is complete. *CMAX,* 300 F.2d at 268. While the Services will

12   likely propose specific revisions to the Sections 4 and 7 Rules, they have already

13   decided to accept public comment on *all aspects* of those rules.  Frazer Decl. ¶ 6;

14   Rauch Decl. ¶ 10.   Regardless of the specific revisions, because the agencies are

15   accepting public comment on all aspects, the superseding rules could moot the

16   current challenges and a stay would avoid unnecessary adjudication and conserve

17   the resources of the Court and the parties. *Cal. ex rel. Lockyer v. U.S. Dep't of*

18   *Agric.*, 575 F.3d 999, 1015 (9th Cir. 2009) (rejecting the government's argument

19   that revision of an existing rule did not effectuate a substantive regulatory change);

20

21

22

23   _____

[9] Agencies have inherent authority to review past decisions and to revise, replace, or
repeal a decision as appropriate to the extent permitted by law and supported by a
reasoned explanation. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009);

24   *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983).

Motion to Stay, 4:19-cv-06013-JST

*Twitter, Inc. v. Lynch*, 139 F. Supp.3d 1075, 1081 (N.D. Cal. 2015) ("when subsequent legislation or rulemaking supersedes challenged regulations or rules, the challenge is moot.").

At the very least the specific revisions will greatly narrow the issues in dispute.  For example, Plaintiffs request that this Court vacate FWS's Section 4(d) Rule and "reinstate the prior regulatory regime," because the "4(d) Rule's removal of the 'blanket' extension to threatened species of all protections afforded to endangered plants and animals under section 9 of the ESA is contrary to the ESA's conservation purposes . . . ." ECF 28 ("Amend. Compl.") at ¶ 129, Prayer for Relief at ¶ 5. However, FWS has already announced its intent to provide the exact relief that Plaintiffs are requesting. Specifically, FWS announced that:

> FWS will propose to reinstate its "blanket 4(d) rule," which was withdrawn by the previous administration. The blanket 4(d) rule establishes the default of automatically extending protections provided to endangered species to those listed as threatened, unless the Service adopts a species-specific 4(d) rule.

Services' Press Release (citation omitted); *see also* Frazer Decl. at ¶ 4 ("FWS will propose to rescind the ESA Section 4(d) [R]ule . . . and to reinstate its 'blanket 4(d) rule,' which extends to species listed as threatened under the ESA the protections that the statute provides for endangered species . . . .").

By way of further example, Plaintiffs seek to vacate the Services' Section 4 Rule because, among other things, they believe that the "elimination of regulatory language in [the Section 4 Rule] that species listing, reclassification, and delisting decisions must be made 'without reference to possible economic or other impacts of

such determination' [was] contrary to . . . the ESA's conservation purposes." Amend. Compl. at ¶ 127. a. Meanwhile, the Services have already announced that they will "propose revising the [Section 4 Rule] to reinstate prior language affirming that listing determinations are made 'without reference to possible economic or other impacts of such determination,' along with other potential revisions also under discussion." Services' Press Release; *see also* Frazer Decl. at ¶ 5 ("Although the Services are currently in the process of determining the entire scope of the revisions, they will propose to revise the [Section 4 Rule] to reinstate prior language affirming that listing determinations are made 'without reference to possible economic or other impacts of such determination.'").

Similarly, Plaintiffs seek to set aside the Section 7 Rule because, among other things, the Services' "changes to the definition of 'effects of the action' in [the Section 7 Rule] limiting both the type and extent of effects of a proposed federal agency action that must be considered during the consultation process are contrary to . . . the ESA's conservation purposes." Amend. Compl. at ¶ 128. b. But here too, the Services have announced that they intend to "propose to revise the definition of 'effects of the action' and associated provisions to that portion of the [Section 7 R]ule." Services' Press Release; *see also* Frazer Decl. at ¶ 5 ("With respect to the regulations governing Section 7 consultation, the Services will propose to revise the definition of 'effects of the action' and its associated provisions, core provisions that are central in implementing ESA Section 7.").

Based on the Services' plan to take the actions discussed above (keeping in

mind that they are considering other proposed regulatory revisions as well), it is clear that judicial economy would be served by staying this litigation until completion of the rulemaking process to revise and rescind the 2019 ESA Rules. "Publishing the proposed [revised] rules and making timely final decisions on the proposals is a high priority for the Administration, and the Services have already begun working on the proposed rules." Frazer Decl. at ¶ 7. Because the ongoing administrative process will moot, narrow, and/or alter the scope of the claims at issue, Federal Defendants respectfully request that the Court afford deference to the Executive Branch and the prerogatives of the new Administration by granting a stay for the Services to complete their review and revision of the 2019 ESA Rules pursuant to Executive Order 13990.

### 2.   Federal Defendants Will Suffer Hardship if the Litigation Proceeds Before the Rulemaking Process to Revise and Rescind the 2019 ESA Rules is Complete.

Federal Defendants and the public at large are likely to experience hardship absent a stay of this litigation. As an initial matter, if a stay is denied and the parties were forced to proceed with summary judgment briefing on the challenged 2019 ESA Rules while the Services are simultaneously engaged in a process to revise and rescind those rules, this "would disrupt and compromise the agencies' policy deliberations, by forcing the agencies to prematurely formulate and publicly announce (in litigation filings) official government positions on the very issues that the agency is engaged in notice-and-comment rulemaking on." Rauch Decl. at ¶ 14. This would be harmful to the public in three major ways. First, under the APA, after an agency provides notice of proposed rulemaking, the agency is required to

"give interested persons an opportunity to participate in the rule making through

submission of written data, views, or arguments with or without opportunity for

oral presentation," and to consider all "relevant matter presented." 5 U.S.C. § 553

(c); *E. Bay Sanctuary Covenant v. Barr*, 385 F. Supp.3d 922, 948 (N.D. Cal.) (public

comment purposes "apply with particular force in important cases."). If the Services

were forced to take positions in litigation on the 2019 ESA Rules before they have

received or considered public comments on the proposed revisions (and possibly

before they have even finished developing all of the proposed revisions), this would

"be contrary to the spirit of proper administrative procedure" and damage the

integrity of the process. Rauch at ¶ 14; Frazer Decl. at ¶ 11.  Indeed, while litigation

positions may change over time, they tend to solidify the agencies' administrative

positions.

Second, "[i]t would also cause harmful confusion among the public and

stakeholders if the [Services] were announcing definitive public positions on the

very issues [they are] supposed to be in the midst of notice-and-comment

rulemaking upon." Rauch Decl. at ¶ 14. "Public confusion or misunderstanding of

this kind could impede effective and efficient implementation of the ESA in the

future." *Id.*; *see also* Frazer Decl. at ¶ 11 ("Positions taken by the agency in

litigation could lead to public confusion regarding how [the Department of the

Interior] will implement the ESA going forward.")  Here again, although having the

Department of Justice argue one position on behalf of the agencies, while those

same agencies are in the midst of administratively advancing a different

interpretation, is not entirely without precedent and permissible, it has the very real potential to confuse the public's understanding of the United States' position on the ESA.

Finally, absent a stay until final decisions on the 2019 ESA Rules are made, adjudication of this case could potentially interfere with the executive branch's rulemaking in an adverse way. For example, "if the Court were to issue a ruling on the claims challenging the 2019 regulations, it could constrain [the Services'] discretion to make regulatory changes and [] affect the outcome of the rulemaking." Frazer Decl. at ¶ 11.

Moreover, if litigation were to proceed without a stay, the increased and competing workload for the Services' small handful of agency staff and attorneys tasked with reviewing and revising the 2019 ESA Rules pursuant to Executive Order 13990 would be damaging to Federal Defendants and to the public interest. *See* Rauch Decl. at ¶ 6 ("The Services rely on a limited number of agency staff and attorneys who possess the necessary experience and expertise to craft regulations under the complex ESA statutory and regulatory regime."). The Services' staff are already stretched thin, as each rulemaking process to revise/rescind the three 2019 ESA Rules at issue here "require[s] substantial staff time to draft the proposed rules, review and address public comments, and draft the final rules." Frazer Decl. at ¶ 7. Additionally, the "same limited . . . staff and attorneys are working on rulemakings related to other ESA regulations that were issued by the prior Administration," including the rescission of two ESA critical habitat rules

challenged in a related case before this Court, *State of California, et al., v. Haaland, et al.*, 4:21-cv-00440. Rauch Decl. at ¶ 7; Frazer Decl. at ¶ 7.  Completing five rulemaking processes within roughly 16 months and with limited staff is not insignificant.

Absent the requested stay, the Services would have to devote significant resources to this litigation, including to provide support necessary to respond to renewed summary judgment motions, while also trying to prioritize working on the proposed rules to revise and rescind the 2019 ESA Rules. *See* Rauch Decl. at ¶ 15 ("Any time necessary to support the Department of Justice during the preparation of summary judgment briefing to meet court deadlines is time diverted for staff, attorneys, and decisionmakers from the Services' priority of developing these proposed rules, as well as other ESA rulemaking currently underway."); Frazer Decl. at ¶ 10 ("Litigation tasks such as reviewing arguments and factual allegations raised by Plaintiffs, assisting agency counsel and the Department of Justice attorneys with the development of arguments in Federal Defendants' cross-motion summary judgment briefs, and preparing declarations, if necessary, would divert scarce agency resources."). This disruptive diversion of limited resources would likely result in harm to the public interest, including Plaintiffs' interests, because "[i]f agency staff are required to provide litigation support on top of [their current] responsibilities, [the Services] expect that the rulemakings will be delayed." Frazer Decl. at ¶ 10.

3. **Plaintiffs Will Not Be Prejudiced If the Case is Stayed Until the Services Make Final Decisions on the 2019 ESA Rules.**

Plaintiffs will not suffer any prejudice from the requested stay. The Services have already commenced "ongoing efforts to diligently and expeditiously develop proposed rules . . . proposing changes to the 2019 [] ESA Rules, as described in the Services' June announcement." Rauch Decl. at ¶ 6. The rulemaking schedule that the Services have developed is as expeditious as possible while accounting for procedural requirements of the APA, OMB review, and the realities of the Services' workload and limited resources. Rauch Decl. at ¶ 6. Under the Services' schedule, they anticipate having the proposed revised Section 4 and Section 7 Rules submitted to the Federal Register and published for public comment by January 27, 2022, and the proposed rule to rescind the Section 4(d) Rule submitted to the Federal Register for public comment by April 25, 2022. Rauch Decl. at ¶ 8; Frazer Decl. at ¶ 8. Following publication of the proposed rules, the Services built time into the schedule to accept public comments for 60 days and consider well-founded requests for extensions on a case-by-case basis, then expects to publish final revised Section 4 and Section 7 Rules on December 2, 2022 and the final rule rescinding the Section 4(d) Rule on January 27, 2023. Rauch Decl. at ¶ 9; Frazer Decl. at ¶ 8.[10]

Staying this case until the final decisions are made on the 2019 ESA Rules according to the Services' schedule will not harm Plaintiffs because, first, Plaintiffs

---

[10] No newly listed "threatened" species will be harmed the interim before the Section 4(d) Rule is rescinded because FWS will provide "threatened" species with appropriate protections at the time of listing by issuing a species-specific 4(d) rule concurrent with its listing or reclassification up until the final rule rescinding the Section 4(d) Rule is issued. Frazer Decl. at ¶ 9.

Motion to Stay, 4:19-cv-06013-JST

will have an opportunity to participate in the rulemaking process by providing public comment on any portions of the 2019 ESA Rules they seek to change. This will allow Plaintiffs to potentially moot or narrow the claims in this case without the need for further litigation. Moreover, Plaintiffs will not be prejudiced by the requested stay because they have decided to bring only facial challenges in this litigation and remain free to challenge any final agency action taken by the Services in which the existing 2019 ESA Rules are applied in a way that harms Plaintiffs' interests with respect to ESA listed species. *See* Frazer Decl. at ¶ 13 ("[I]f Plaintiffs believe that the challenged regulations are currently being applied in a way that causes them harm in the context of a specific species or consultation, they could challenge the particular application of the regulations while challenging that agency decision.").

## CONCLUSION

Pursuant to Executive Order 13990, agency leadership and staff are actively engaged in reviewing and revising the challenged 2019 ESA Rules, which will moot or at least narrow issues that are central to Plaintiffs' claims in this case. Accordingly, the Court should stay this action until the Services' rulemaking processes to revise and rescind the 2019 ESA Rules have been completed and should require the parties to file a status report within one week of the Services' final

decisions to inform the Court of whether and how they will proceed with the

litigation.[11]



DATED: August 13, 2021.

                                    JEAN E. WILLIAMS,
                                    Acting Assistant Attorney General
                                    SETH M. BARSKY, Chief
                                    MEREDITH L. FLAX, Assistant Chief

                                    */s/ Coby Howell.*
                                    COBY HOWELL, Senior Trial Attorney
                                    U.S. Department of Justice
                                    Environment & Natural Resources Division
                                    Wildlife & Marine Resources Section
                                    MICHAEL R. EITEL, Senior Trial Attorney
                                    U.S. Department of Justice
                                    Environment & Natural Resources Division
                                    Wildlife & Marine Resources Section
                                    1000 S.W. Third Avenue
                                    Portland, OR 97204
                                    Phone: (503) 727-1023
                                    Fax: (503) 727-1117
                                    Email: coby.howell@usdoj.gov

                                    *Attorneys for Federal Defendants*

---

[11] In the alternative, the Court should stay proceedings until the Services have published the proposed rules to revise the joint 2019 ESA Rules. Informed by the contents of the proposed joint rules, such a stay would at least allow the Court and the parties to better assess whether an additional stay is warranted so that the Services can complete the rulemaking processes or, if the litigation were to proceed, how the issues can be narrowed to conserve the Court's and the parties' resources.

Motion to Stay, 4:19-cv-06013-JST

1

### CERTIFICATE OF SERVICE

2

I hereby certify that I electronically filed the foregoing with the Clerk of the Court

3

using the CM/ECF system, which will send notification of such to the attorneys of
record.

4

5

6

7

*/s/ Coby Howell*
COBY HOWELL, Senior Attorney

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Motion to Stay, 4:19-cv-06013-JST