TODD KIM, Assistant Attorney General
SETH M. BARSKY, Section Chief
MEREDITH L. FLAX, Assistant Section Chief
COBY HOWELL, Senior Trial Attorney
MICHAEL R. EITEL, Senior Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
1000 S.W. Third Avenue
Portland, OR 97204
Phone: (503) 727-1023
Fax: (503) 727-1117
Email: coby.howell@usdoj.gov

*Attorneys for Federal Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA (Oakland)

| | |
|---|---|
| STATE OF CALIFORNIA, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> HAALAND, et al., <br><br> Federal Defendants. | Case. No. 4:19-cv-06013-JST <br> Related Cases: 4:19-cv-05206-JST <br> 4:19-cv-06812-JST <br><br> **SECOND DECLARATION OF GARY D. FRAZER** <br><br> Judge: The Honorable Jon S. Tigar |

I, Gary D. Frazer, declare that the following statements are true and correct to the best of my knowledge and belief.

1.      I am the Assistant Director for the Ecological Services Program of the U.S. Fish and Wildlife Service ("FWS"), an agency of the U.S. Department of the Interior ("DOI"), located in Washington, D.C. In my capacity as Assistant Director, I am responsible to the Director of the FWS and to the Secretary of the Interior for the administration of the Endangered Species Act ("ESA"), including rule and policy development related to ESA implementation.

2.    On January 20, 2021, President Biden issued an Executive Order entitled "Executive Order on Protecting Public Health and the Environment and Restoring Science to Tackle the Climate Crisis." In conformance with the Executive Order, Federal Defendants reviewed the final rules at issue in this case, which revised regulations implementing Section 4 and Section 7 of the ESA.

3.    On June 4, 2021, FWS and the National Marine Fisheries Service ("NMFS") (collectively, the "Services") announced that they intend to initiate rulemakings to rescind one of the final rules challenged in this case, and to revise the other two rules. *See* https://www.fws.gov/news/ShowNews.cfm?ref=u.s.-fish-and-wildlife-serviceand-noaa-fisheries-to-propose-regulatory-&_ID=36925.

4.    FWS will propose to rescind the ESA Section 4(d) rule, 84 Fed. Reg. 44753, and to reinstate its "blanket 4(d) rule," which extends to species listed as threatened under the ESA the protections that the statute provides for endangered species unless FWS promulgates a species-specific 4(d) rule.

5.    The Services will jointly propose revisions to the ESA Section 4 and Section 7 rules challenged in this case. 84 Fed. Reg. 45020; 84 Fed. Reg. 44976.  Although the Services are currently in the process of determining the entire scope of the revisions, they will propose to revise the regulations for listing species and designating critical habitat to reinstate prior language affirming that listing determinations are made "without reference to possible economic or other impacts of such determination." *See* 49 Fed. Reg. 38,908 (Oct. 1, 1984). With respect to the regulations governing Section 7 consultation, the Services will propose to revise the definition of "effects of the action" and its associated provisions, core provisions that are central in implementing ESA Section 7. In addition to these revisions, the Services are discussing other revisions to both rules.

Second Declaration of Gary D. Frazer, 4:19-cv-06013-JST                    2

6.    Each proposed rule will have a 60-day public comment period. The Services will accept public comments on all aspects of the challenged 2019 rules, even if the agencies do not propose to revise those provisions of the regulations.

7.    Publishing the proposed rules and making timely final decisions on the proposals is a high priority for the Administration, and the Services have already begun working on the proposed rules. Each action will require substantial staff time to draft the proposed rules, review and address public comments, and draft the final rules. There are also other competing agency priorities, including the rescission of the Habitat Definition Rule and Critical Habitat Exclusion Rule challenged in the related case, *State of California v. Haaland*, No. 21-440. *See* 85 Fed. Reg. 81411 (Dec. 16, 2020) (Habitat Definition Rule); 85 Fed. Reg. 82376 (Dec. 18, 2020) (Critical Habitat Exclusion Rule). The Services have already submitted proposed rules rescinding the Habitat Definition Rule and Critical Habitat Exclusion Rule to the Office of Management and Budget ("OMB") and anticipate submitting those proposed rules to the Federal Register by October 18, 2021.

8.    The Services jointly developed the following anticipated rulemaking schedules for the rescission and revision of the rules at issue in this litigation, staggering them according to agency priorities. The rulemaking schedules include time for required review of the proposed and final rules by OMB. *See* Executive Order 12866 (Sept. 20, 1993) (establishing 90-day deadline for OMB review of regulatory actions, which may be extended under certain circumstances).

| Process Step | Revised Section 4 regulations | Revised Section 7 regulations | Section 4(d) blanket rule reinstatement |
|---|---|---|---|
| Submit proposed rule to OMB | 10/18/21 | 10/18/21 | 1/14/22 |
| Submit proposed rule to Federal Register | 1/27/22 | 1/27/22 | 4/25/22 |
| Submit final rule to Federal Register | 12/2/22 | 12/2/22 | 1/27/23 |

9.      The same staff members who are drafting the critical habitat rules are also responsible for drafting the proposed rule revising the Section 4 regulations. Additionally, for FWS, those same staff members must also draft the proposal to rescind the Section 4(d) rule and reinstate the blanket rule that was previously in effect. FWS prioritized the Section 4 and Section 7 rules over the Section 4(d) rule because we determined that a longer timeline for the Section 4(d) rescission will not have any effects on species in the interim. As stated in the 2019 4(d) rule, FWS will provide threatened species with appropriate protections at the time of listing – which may include providing the same protections that apply to endangered species – through species-specific 4(d) rules. *See* 84 Fed. Reg. 44,753 (Aug. 27, 2019) ("Species listed or reclassified as a threatened species after the effective date of this rule would have protective regulations only if the Service promulgates a species-specific rule (also referred to as a special rule). In those cases, we intend to finalize the species-specific rule concurrent with the final listing or reclassification determination."). As we explained in the rule, "[t]he only thing that this rulemaking will change is that the decision about what regulations to put in place will now by necessity be in the form of promulgating a species-specific rule." *Id.* at 44,756. Consistent with our statements in the final rule, we have promulgated a species-specific rule with each listing of a species as threatened since we finalized the Section 4(d) rule.

10.     FWS will suffer harm if this case proceeds while the agencies are engaged in the rulemakings. First, the small group of agency staff who are working on the proposed revisions are already undertaking a significant amount of work to meet the anticipated schedule. If agency staff are required to provide litigation support on top of those responsibilities, we will not be able to meet the ambitious timelines laid out above. Litigation tasks such as reviewing arguments and factual allegations raised by Plaintiffs, assisting agency counsel and the Department of Justice attorneys with the development of arguments in Federal Defendants' cross-motion summary judgment briefs, and preparing declarations, if necessary, would divert scarce agency resources. These tasks would also affect the attorneys in DOI's Office of the Solicitor, who previously provided extensive advice and counsel to FWS on the promulgation of all the rules challenged in this case and will continue to do so during the new rulemakings. If the attorneys are occupied with litigation tasks, it will affect FWS's ability to obtain timely advice from its attorneys regarding legal issues related to the new rulemakings, which could in turn delay the proposed and final rules.

11.     Second, DOI has an institutional interest in undertaking a robust notice-and-comment rulemaking process and exercising its policy discretion to revise the rules in accordance with the current Administration's priorities. Defending the challenged 2019 regulations would put the agency in the position of stating its views about the regulations issued by the previous Administration, while simultaneously proposing to revise certain aspects of those regulations. These are broad rules that are generally applicable to a wide variety of situations related to DOI's implementation of Sections 4 and 7 of the ESA. Positions taken by the agency in litigation could lead to public confusion regarding how DOI will implement the ESA going forward.  Finally, if the Court were to issue a ruling on the claims challenging the 2019 regulations, it could constrain our discretion to make regulatory changes and could affect the

Second Declaration of Gary D. Frazer, 4:19-cv-06013-JST                                        5

outcome of the rulemaking. It could also possibly delay the rulemakings if the agencies determine that the Court's ruling requires a change to the proposed rules.

12.     If the Services are able to focus their resources on the rulemakings and complete them according to schedule, it will benefit Plaintiffs and the general public. As explained above, FWS will propose to rescind the Section 4(d) rule and revert back to the "blanket 4(d) rule," which is the outcome that Plaintiffs seek here. In addition, the Services have announced their intention to revise certain aspects of the Section 4 and Section 7 rules that are challenged by Plaintiffs in this case. Although the Services intend to propose specific revisions to the rules, rather than rescinding them in their entirety, the agencies will accept public comments on all aspects of those rules through the notice-and-comment rulemaking process. Plaintiffs and other interested persons may recommend revisions to other provisions of the rules, which we will consider and respond to in the final rules. Therefore, it is possible that Plaintiffs will obtain the result they are seeking through the rulemaking process, which the Services have already begun and have committed to completing as expeditiously as possible. Although the revisions may not address all of Plaintiffs' concerns about the 2019 regulations, it is likely that the new rulemakings will substantially narrow the issues on which the parties disagree.

13.     As the Services explained in their final rules, the 2019 revisions to the Section 4 and Section 7 regulations did not substantively change how FWS lists species, designates critical habitat, or performs interagency consultations under the ESA. The revisions clarified our existing regulations to make them more consistent with the statutory language, case law, and existing agency practice. However, if Plaintiffs believe that the challenged regulations are currently being applied in a way that causes them harm in the context of a specific species or consultation, they could challenge the particular application of the regulations while challenging that agency decision.

Second Declaration of Gary D. Frazer, 4:19-cv-06013-JST                                         6

This declaration is made pursuant to 28 U.S.C. § 1746. I declare under penalty of perjury that the foregoing is true and correct to the best of my current knowledge.

Executed in Herndon, Virginia, on this 6th day of August 2021.

_____

Gary D. Frazer
Assistant Director
Ecological Services Program