TODD KIM, Assistant Attorney General
SETH M. BARSKY, Section Chief
MEREDITH L. FLAX, Assistant Section Chief
COBY HOWELL, Senior Trial Attorney
MICHAEL R. EITEL, Senior Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
1000 S.W. Third Avenue
Portland, OR 97204
Phone: (503) 727-1023
Fax: (503) 727-1117
Email: coby.howell@usdoj.gov

*Attorneys for Federal Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA (Oakland)

| | |
|---|---|
| STATE OF CALIFORNIA, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　　　vs.<br><br>HAALAND, et al.,<br><br>　　　　　Federal Defendants. | Case. No. 4:19-cv-06013-JST<br>Related Cases: 4:19-cv-05206-JST<br>　　　　　　　　　4:19-cv-06812-JST<br><br>**THIRD DECLARATION OF GARY D. FRAZER**<br><br>Judge: The Honorable Jon S. Tigar |

I, Gary D. Frazer, declare that the following statements are true and correct to the best of my knowledge and belief.

1. I am the Assistant Director for the Ecological Services Program of the U.S. Fish and Wildlife Service ("FWS"), an agency of the U.S. Department of the Interior ("DOI"), located in Washington, D.C. In my capacity as Assistant Director, I am responsible to the Director of the FWS and to the Secretary of the Interior for the administration of the Endangered Species Act ("ESA"), including development of regulations and policies related to ESA implementation such

as the final rules challenged in these related cases. I am making this declaration in support of Federal Defendants' request for remand of the challenged rules, without vacatur.

2. On January 20, 2021, President Biden issued an Executive Order entitled "Executive Order on Protecting Public Health and the Environment and Restoring Science to Tackle the Climate Crisis" ("E.O. 13990"). E.O. 13990 required the heads of all agencies to review all regulations, orders, guidance documents, policies, and similar agency actions adopted between January 20, 2017, and January 20, 2021. On the same day, President Biden issued a non-exhaustive list of agency actions that agency heads must review in accordance with E.O. 13990 (entitled "Fact Sheet: List of Agency Actions for Review").

3. The list of actions for review expressly included rules that FWS and the National Marine Fisheries Service ("NMFS") (collectively, the "Services"), had finalized jointly in 2019 and that had revised regulations implementing Section 4 and Section 7 of the ESA ("Joint Final Rules"). 84 Fed. Reg. 45020, 84 Fed. Reg. 44976. In accordance with E.O. 13990 and the Fact Sheet, DOI and the U.S. Department of Commerce ("DOC") jointly reviewed the Joint Final Rules. In addition, DOI also reviewed a rule that it had finalized in 2019 regarding protective regulations under section 4(d), 84 Fed. Reg. 44753 ("4(d) Rule"). Each of these 2019 rules (the Joint Final Rules and the 4(d) Rule) was challenged in this case.

**Concerns regarding challenged regulations**

4. After completing its review of the regulations, DOI has identified substantial concerns that warrant reexamination of each of the challenged rules. I am aware that DOC has also identified concerns with respect to the Joint Final Rules, and that the National Marine Fisheries Service (NMFS) is submitting a separate declaration also identifying substantial concerns with the challenged rules.

Third Declaration of Gary D. Frazer, 4:19-cv-06013-JST                                       2

5. DOI identified concerns specific to the 4(d) rule, which eliminated the so-called "blanket 4(d) rule" for species listed as threatened species in the future. The blanket 4(d) rule, which had been in effect for approximately forty years prior to the 2019 regulation, extended to threatened species the same protections that the statute provides for endangered species. The "blanket" protections applied unless FWS promulgated a species-specific 4(d) rule; in that event, the species-specific rule set forth all the protections that applied to that threatened species. Our prior practice worked to conserve threatened species efficiently by providing protections for every newly listed threatened species in the absence of species-specific 4(d) rules. The blanket rule gave FWS the flexibility to simply allow the prohibitions under ESA Section 9 to take effect for threatened species unless, as appropriate, FWS developed a species-specific 4(d) rule. We believe that either approach to applying protections to threatened species, whether through individualized rules or through a blanket rule, is a reasonable interpretation of our discretion under section 4(d). However, the 2019 rule provides less flexibility and may require additional resources at the time of listing as compared to the blanket rule.

6. DOI also identified concerns with certain provisions of the 2019 joint regulations for listing species and designating critical habitat under Section 4. The first concern is the elimination of longstanding regulatory language requiring that listing, reclassification, and delisting decisions must be made "without reference to possible economic or other impacts of such determination." 50 C.F.R. § 424.11(b). Removal of this phrase through the 2019 rule, as well as statements made in the preamble to the proposed rule discussing the removal of this phrase (83 FR 35193, July 25, 2018; pp. 35194–35195), caused confusion regarding the Services' intentions pertaining to consideration of economics in listing determinations, or intentions to collect and present economic impact information stemming from the listing of species. The Services never intended this revised language, as a matter of general practice, to

Third Declaration of Gary D. Frazer, 4:19-cv-06013-JST                              3

authorize the Services to consider economic information while deciding whether to list a species. Indeed, doing so would run afoul of the statutory requirement that listing decisions be based "solely on the best scientific and commercial data available." Although the ESA does not clearly prohibit FWS from compiling economic information, the revised language creates a risk that economic information may influence—or may be perceived by the public as having influenced—the listing determination.

7. Another provision of the 2019 Section 4 rule that raises concerns is the revision of circumstances in which the Services may find that it is "not prudent" to designate critical habitat for listed species. 50 C.F.R. § 424.12. In the 2019 rule the Services explained that the revisions were intended to provide clarity and that the Services anticipated that not-prudent findings would remain rare. 84 Fed. Reg. 45040-41. DOI is concerned that regulatory language addressing situations where "threats to the species' habitat stem solely from causes that cannot be addressed through management actions resulting from consultations under section 7(a)(2) of the Act," 50 C.F.R. § 424.12(a)(ii), created confusion for the public by suggesting the intent of the language was to allow the Services to regularly decline to designate critical habitat for species threatened by climate change, when that was not our intent. Public support and understanding of the ESA's regulatory provisions is important to the Services' successful implementation of the ESA, particularly for provisions that apply to private lands (like critical habitat designations). Furthermore, that language suggests that the only conservation benefits of a critical habitat designation result from the section 7 process, which is incorrect. Critical habitat designations also serve to inform the public and management agencies of the areas necessary to conserve listed species and may result in voluntary conservation efforts.

8. DOI also has concerns about the following revisions related to designation of unoccupied critical habitat: (1) the requirement that the Services must determine that a

designation limited to currently occupied areas would be inadequate for species conservation before designating unoccupied areas; and (2) the requirement for "reasonable certainty" that the area will contribute to the conservation of the species. 50 C.F.R. § 424.12(b)(2). DOI is concerned that the revisions may go beyond their intended purpose of ensuring that areas designated as unoccupied critical habitat actually contribute to the conservation of the species and wants to reevaluate the standard that the regulatory language adopts for designation of unoccupied areas.

9. With respect to the 2019 regulations for interagency cooperation under Section 7, DOI also identified substantial concerns with provisions related to "effects of the action" and its definition in 50 C.F.R. §§ 402.02 and 402.17. The 2019 revisions were intended to clarify the definition and reflect the Services' existing practice and prior interpretations. However, DOI is concerned that the changes related to "effects of the action" could be erroneously interpreted by other agencies or the public to narrow the type and/or extent of effects of a proposed federal agency action that the Services will consider during the consultation process. This potential confusion may result in allocation of resources that could detract from the Services' effective implementation of Section 7.

10. DOI also has concerns related to the environmental action statements for the categorical exclusions invoked by the Services as part of their compliance with the National Environmental Policy Act (NEPA) for all three rules. In general, DOI is concerned that some aspects of the rationale for invoking the categorical exclusions may not be adequately supported by the record. The environmental action statement supporting the categorical exclusion for each rule is fact-based and, if the Court remands the final rules without vacatur, DOI will reconsider the categorical exclusions in the context of any future rulemaking.

**Rulemakings to rescind and/or revise the challenged regulations**

11. On June 4, 2021, the Services announced that they intended to initiate rulemakings to rescind and/or revise the rules challenged in this case. *See* https://www.fws.gov/news/ShowNews.cfm?ref=u.s.-fish-and-wildlife-serviceand-noaa-fisheries-to-propose-regulatory-&_ID=36925. The Services stated that they intended to jointly propose revisions to the ESA Section 4 and Section 7 rules challenged in this case in an effort to address some of the concerns that I explained above. First, the Services planned to propose revising the regulations for listing species and designating critical habitat to reinstate the prior language affirming that listing determinations are made "without reference to possible economic or other impacts of such determination." Second, the Services planned to propose revising the definition of "effects of the action" and its associated provisions in the regulations governing Section 7 consultation. The Services were also considering other revisions to both rules. Additionally, FWS stated that it intended to rescind the ESA Section 4(d) rule and to reinstate its blanket 4(d) rule.

12. In my August 6, 2021, declaration supporting the Services' motion to stay this case, I provided an anticipated timeline for issuing the proposed rules. ECF No. 150-1 ¶ 8. At that time, the Services expected to submit the Section 4 and 7 proposed rules to the Office of Management and Budget ("OMB") by October 18, 2021, and the proposed Section 4(d) rescission rule by January 14, 2022. *Id.* That schedule was based on the agencies' priorities at the time we filed the motion for a stay, and it anticipated that this litigation would be stayed while the Services worked on the proposed rules.

13. After the Court denied the Services' motion to stay on October 7, 2021, DOI policymakers reevaluated their plans for revising the three rules. By that time, the Services had already made significant progress on draft proposals to revise the Section 4 and Section 7

Third Declaration of Gary D. Frazer, 4:19-cv-06013-JST                                                                                              6

regulations, and the drafts were in the process of being cleared through DOI policy leadership. In addition, FWS had begun drafting a proposal to rescind the Section 4(d) rule. However, with the denial of the motion to stay, DOI's focus shifted back to the litigation and away from the rulemakings.

14. Given the need to divert agency resources to the litigation, and the many other high-priority actions that DOI has begun or plans to undertake in the near future, as well as the uncertainty presented by the litigation, policymakers are considering how these rules fit within the Department's priorities and evaluating whether continuing to work on proposals to rescind and/or revise the challenged rules is the best use of limited agency resources. Due to the uncertainty surrounding the possible status of the challenged rules after the Court resolves Plaintiffs' motions for summary judgment, DOI does not intend to submit proposed rules to OMB until after the Court issues a decision on the motions. Instead, DOI is moving on to other agency priorities in the near term. However, should the Court remand the rules to the Services as requested, FWS would again make the rulemaking revisions a high priority, and rulemaking would once again proceed expeditiously.

This declaration is made pursuant to 28 U.S.C. § 1746. I declare under penalty of perjury that the foregoing is true and correct to the best of my current knowledge.

Executed in Herndon, Virginia, on this 8th day of December 2021.

                                                                                    _____
                                                                                    Gary D. Frazer
                                                                                    Assistant Director
                                                                                    Ecological Services Program

Third Declaration of Gary D. Frazer, 4:19-cv-06013-JST                                                          7