TODD KIM
Assistant Attorney General
SETH M. BARSKY, Section Chief
MEREDITH L. FLAX, Assistant Section Chief
COBY HOWELL, Senior Trial Attorney
MICHAEL R. EITEL, Senior Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
1000 S.W. Third Avenue
Portland, OR 97204
Phone: (503) 727-1023
Fax: (503) 727-1117
Email: coby.howell@usdoj.gov

*Attorneys for Federal Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA (Oakland)

| | |
|---|---|
| STATE OF CALIFORNIA, ET AL., <br><br> Plaintiffs, <br><br> vs. <br><br> HAALAND, ET AL., <br><br> Federal Defendants. | Case. No. 4:19-cv-06013-JST <br><br> **SUPPLEMENTAL BRIEF IN SUPPORT OF FEDERAL DEFENDANTS' MOTION FOR VOLUNTARY REMAND; RESPONSE TO PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT** |

TABLE OF CONTENTS

PAGE

INTRODUCTION ................................................................................................. 1

DISCUSSION ....................................................................................................... 3

   I.   The Services' NEPA Concerns ................................................................. 3

   II.   Vacatur is Not Warranted. ......................................................................... 8

CONCLUSION ................................................................................................... 11

# TABLE OF AUTHORITIES

**CASES**                                                                                                                             **PAGE**

*Alaska Ctr. for Env't v. U.S. Forest Serv.*,
   189 F.3d 851 (9th Cir. 1999) ............................................................................. 4

*Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*,
   988 F.2d 146 (D.C. Cir. 1993) ................................................................1, 2, 10

*Bowman Transp. v. Ark.-Best Freight Sys.*,
   419 U.S. 281 (1974) ........................................................................................ 5

*Cal. Cmtys. Against Toxics v. EPA*,
   688 F.3d 989 (9th Cir. 2012) ............................................................................. 7

*Ctr. for Biological Diversity v. Salazar*,
   706 F.3d 1085 (9th Cir. 2013) ........................................................................... 4

*FCC v. Fox Television Stations*,
   556 U.S. 502 (2009) ........................................................................................ 2

*Los Padres Forest Watch v. U.S. Forest Serv.*,
   25 F 4th 649 (9th Cir. 2022) ......................................................................... 2, 8

*Mountain Cmtys. for Fire Safety v. Elliott*,
   25 F. 4th 667 (9th Cir. 2022) ...............................................................1, 5, 8, 10

*Nat'l Fam. Farm Coal. v. EPA*,
   960 F.3d 1120 (9th Cir. 2020) ........................................................................... 8

*Nat'l Fam. Farm Coal. v. EPA*,
   966 F.3d 893 (9th Cir. 2020) ............................................................................ 9

*Pac. Rivers Council v. U.S. Forest Serv.*,
   942 F. Supp. 2d 1014 (E.D. Cal. 2013) ............................................................. 9

*SEC v. Chenery Corp.*,
   332 U.S. 194 (1947) ........................................................................................ 2

*Sierra Forest Legacy v. Sherman*,
 951 F. Supp. 2d 1100 (E.D. Cal. 2013) ........................................................................ 9

*Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*,
 100 F.3d 1443 (9th Cir. 1996) ...................................................................................... 8

*Williston Basin Interstate Pipeline Co. v. FERC*,
 519 F.3d 497 (D.C. Cir. 2008) ...................................................................................... 2

**REGULATIONS**

36 C.F.R. § 220.6(b) ............................................................................................................ 10
40 C.F.R. § 1501.4................................................................................................................. 4
43 C.F.R. § 46.215 ............................................................................................................. 4, 6
46 C.F.R. § 46.215 ................................................................................................................ 5

## INTRODUCTION

This brief responds to the Court's request for supplemental briefing related to Federal Defendants' motion for voluntary remand. ECF 155. First, the Court asked the U.S. Fish and Wildlife Service ("FWS") and National Marine Fisheries Service ("NMFS") (collectively "Services") to identify "their [National Environmental Policy Act ('NEPA')] concerns with the challenged regulations in greater detail, including what materials in the agency record cast doubt on the adequacy of the initial NEPA determinations the Services made when they promulgated the challenged regulations." ECF 155 at 2. The agencies provide this explanation in the Fifth Declaration of Samuel D. Rauch III ("Fifth Rauch Decl.") and the Fourth Declaration of Gary D. Frazer ("Fourth Frazer Decl.").

Second, the Court requested supplemental briefing on "whether the Services properly invoked the categorical exclusions under NEPA when they promulgated the challenged regulations and whether, under *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146 (D.C. Cir. 1993), vacatur is the proper remedy for a violation of NEPA." *Id.* As explained below, the Services believe that they could have provided a fuller explanation of their decision to invoke categorical exclusions under NEPA and why certain extraordinary circumstances factors may not apply here. However, that is not to say that the agencies believe that the invocation of categorical exclusions was erroneous. Indeed, the Ninth Circuit recently upheld the use of categorical exclusions against similar challenges. *See Mountain Cmtys. for Fire Safety v. Elliott*, 25 F.4th 667 (9th Cir. 2022) (upholding the agency's

categorical exclusion and extraordinary circumstances review); *Los Padres ForestWatch v. U.S. Forest Serv.*, 25 F.4th 649 (9th Cir. 2022) (same). It may very well be that the agencies would validly reach the same conclusion about the appropriate level of NEPA review in a future rulemaking to revise or rescind the 2019 regulations, albeit with greater explanation. *SEC v. Chenery Corp.*, 332 U.S. 194 (1947) (agencies may validly reach the same conclusions after remand). And it is this circumstance—where there is a "significant possibility" an agency can provide a more fulsome explanation—that *Allied-Signal* and its progeny indicate that vacatur is *not* warranted. *Allied-Signal*, 988 F.2d at 150-51 (decision whether to vacate depends in part on the seriousness of the order's deficiencies and thus the extent of doubt whether the agency chose correctly); *Williston Basin Interstate Pipeline Co. v. FERC*, 519 F.3d 497, 504 (D.C. Cir. 2008) ("seriousness" of a deficiency is determined at least in part by whether there is a "significant possibility that the [agency] may find an adequate explanation for its actions" on remand).

In short, the Services' concerns are well founded and justify a voluntary remand. This is true even if the agencies' concerns do not rise to the level of identifying a legal violation that warrants vacatur of the challenged regulations. Less than perfect agency actions can, and often should, survive judicial review. *FCC v. Fox Television Stations,* 556 U.S. 502, 513-14 (2009). Even so, agencies should not be encouraged to mechanically defend all prior actions that comply with the Administrative Procedure Act's ("APA") minimum standards of rationality. If

they have valid concerns—and they do here—agencies should be encouraged to identify those concerns and address them as Congress intended—through the APA's public rulemaking process. That is what we request here. For these reasons, Federal Defendants respectfully request that the Court remand the regulations, without vacatur, to the agencies.

## DISCUSSION

### I. The Services' NEPA Concerns

As noted, Federal Defendants seek voluntary remand of the challenged 2019 Endangered Species Act ("ESA") regulations. In support of this request, Federal Defendants provided the Third Declaration of Gary D. Frazer ("Third Frazer Decl.") and Fourth Declaration of Samuel D. Rauch III ("Fourth Rauch Decl.").

With respect to the NEPA claims, Mr. Frazer's third declaration states that the "[Department of the Interior ('DOI') . . . has concerns related to the environmental action statements for the categorical exclusions invoked by the Services as part of their compliance with [NEPA] for all three rules. In general, DOI is concerned that some aspects of the rationale for invoking the categorical exclusions may not be adequately supported by the record." Third Frazer Decl. ¶ 10. Mr. Rauch's fourth declaration similarly provides: "[The National Oceanic and Atmospheric Administration ['NOAA'] also has concerns related to the environmental action statements and categorical exclusion memoranda for the categorical exclusions invoked by the Services to comply with [NEPA] for the Joint

2019 ESA Rules. NOAA is concerned that some aspects of the rationales in these documents could be better supported by the record." Fourth Rauch Decl. ¶ 8.

As explained in greater detail below, the Services believe that the rationales provided in the environmental action statements and categorical exclusion memoranda, in particular the extraordinary circumstances reviews, could have been more thoroughly explained.

An agency may rely on a categorical exclusion for NEPA compliance only if it conducts an extraordinary circumstances review to determine whether the proposed action may have significant impacts on the environment. 40 C.F.R. § 1501.4; *see also Alaska Ctr. for Env't v. U.S. Forest Serv.,* 189 F.3d 851, 858 (9th Cir. 1999); *Ctr. for Biological Diversity v. Salazar*, 706 F.3d 1085, 1096 (9th Cir. 2013) ("even where an action falls into a categorical exclusion, an agency must nevertheless provide procedures for determining whether 'extraordinary circumstances' exist, such that the action, though 'normally excluded' from full NEPA analysis, 'may have a significant environmental effect'") (citation omitted). The Department of the Interior's NEPA regulations governing extraordinary circumstances require FWS to consider a range of factors. 43 C.F.R. § 46.215. NMFS is also required to perform a similar extraordinary circumstances review in accordance with NOAA Administrative Order 216-6A and Companion Manual for NAO 216-6A.

When reviewing whether an agency has properly invoked a categorical exclusion, courts review the agency's rationale in accordance with the APA. *Alaska Ctr. for Env't*, 189 F.3d at 857 ("An agency's determination that a particular action

falls within one of its categorical exclusions is reviewed under the arbitrary and capricious standard.") (citation omitted). An agency's administrative record must demonstrate that it has considered all relevant factors and provided a rational explanation for its decision, including an explanation of whether there are extraordinary circumstances. *Mountain Cmtys. for Fire Safety,* 25 F.4th 667 (evaluating the extraordinary circumstances review under an "arbitrary and capricious" standard). And, as with all APA claims, courts should "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transp. v. Ark.-Best Freight Sys.*, 419 U.S. 281, 286 (1974) (citation omitted).

The categorical exclusions relied on by the Services clearly apply to the preparation of regulations of an administrative, legal, technical, or procedural nature, including the challenged regulations in this case. And an agency's decision to use a categorical exclusion is not arbitrary and capricious if the agency reasonably determines that the particular activity is within the scope of the exclusion. *Mountain Cmtys. for Fire Safety,* 25 F.4th 667. Nevertheless, although the Services believe the categorical exclusions were correctly relied upon, they have identified legitimate concerns regarding the level of detail in their NEPA documents.

As explained in the Fourth Declaration of Gary D. Frazer and Fifth Declaration of Samuel D. Rauch III, the Services believe that the extraordinary circumstances reviews could have benefitted from more thorough explanations.

Fourth Frazer Decl. ¶ 4; Fifth Rauch Decl. ¶ 3; *see also* ESA0000124-133; ESA0000134-155; ESA0000156-167 (FWS's extraordinary circumstances reviews); ESA0000006; ESA0000009 (NMFS's extraordinary circumstances reviews). More specifically, NMFS provides that its "categorical exclusion memorandum did not describe with specificity how it concluded that neither the 2019 Final Section 7 nor Final Section 4 Rules triggered any of the extraordinary circumstances." Fifth Rauch Decl. ¶ 3. Similarly, FWS provides:

> We concluded that the rules would not have significant impacts on species listed or proposed to be listed under the ESA, and that they do not establish a precedent for future action or represent a decision in principle about future actions with potentially significant environmental effects. AR 127; AR 137; AR 159. However, we did not explain why the other extraordinary circumstances criteria do not apply to the challenged rules. See 46 C.F.R. § 46.215. If given the opportunity to revisit its analysis in the context of new rulemakings, DOI believes it could provide a more thorough extraordinary circumstances explanation.

Fourth Frazer Decl. ¶ 4.

The Services' concerns with NEPA relate to whether the environmental action statements and the categorical exclusion memoranda sufficiently explain why issuance of the challenged regulations do not involve extraordinary circumstances. Although there is no requirement to explicate the review of each factor in 43 C.F.R. § 46.215 or NOAA's Companion Manual at great length in all circumstances, the Services, upon further review, have determined that their extraordinary circumstances review could have been more thorough, perhaps by addressing other extraordinary circumstances factors in more detail.

The desire to provide a more thorough explanation does not mean that there are documents in the administrative record that call into question whether there are extraordinary circumstances. ECF 155 at 2. When the Services indicated that they have concerns with "some aspects of the rationales [that] could be better supported by the record," they were referring to the explanations in the environmental action statements and categorical exclusion memoranda. Fifth Rauch Decl. ¶ 3 ("I did not intend to imply that there are other documents in the administrative record driving concerns about the adequacy of the NEPA documentation, and I am not aware of any such documents. Rather, that statement was intended to convey that the explanations in the environmental action statements and categorical exclusion memoranda could have been more thorough, which gives rise to NOAA's concerns regarding NEPA."). Similarly, the Services were not indicating that there are documents that would have shown the presence of extraordinary circumstances. Fourth Frazer Decl. ¶ 3. Rather, the prior declarations were merely referring to the thoroughness of the explanations in the environmental action statements and categorical exclusion memoranda, *i.e.,* documents contained in the administrative record.

The Services' belief that their extraordinary circumstances reviews could have been more thoroughly documented gave rise to their legitimate concerns with respect to NEPA. This was one of the bases for seeking voluntary remand of the challenged ESA regulations. And the Services' request for voluntary remand is neither frivolous nor made in bad faith. Thus, the Court should grant the Services'

request for voluntary remand without reaching the merits, including with respect to Plaintiffs' NEPA claims. *Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012) (per curiam) ("Generally, courts only refuse voluntarily requested remand when the agency's request is frivolous or made in bad faith.") (citation omitted).

## II. Vacatur is Not Warranted.

Whether agency action should be vacated depends on how "serious the agency's errors are 'and the disruptive consequences of an interim change that may itself be changed.'" *Cal. Cmtys. Against Toxics*, 688 F.3d at 992 (citation omitted). In considering whether to leave a decision in place, a court should consider "the extent to which either vacating or leaving the decision in place would risk environmental harm." *Nat'l Fam. Farm Coal. v. EPA*, 960 F.3d 1120, 1144-45 (9th Cir. 2020) (citation omitted).

There is no serious error here. Even though the Services believe that they could have provided a more thorough explanation in the environmental action statements and categorical exclusion memoranda, that does not mean Federal Defendants are confessing error as to Plaintiffs' NEPA claims. Fourth Frazer Decl. ¶ 5; Fifth Rauch Decl. ¶ 4. If the Court remands the rules and the Services move forward with revising or rescinding the 2019 rules, there is a strong possibility that they will conclude that the application of categorical exclusions for the revised regulations is legally sound. *See Mountain Cmtys. for Fire Safety*, 25 F.4th 667 (upholding the agency's categorical exclusion and extraordinary circumstances review); *Los Padres ForestWatch,* 25 F.4th 649 (same).

That an agency can provide a fuller explanation does not render the existing decision arbitrary and capricious. *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1451 (9th Cir. 1996) ("Although the documents Southwest Center seeks to include 'might have supplied a fuller record,' they do not 'address issues not already there.'") (citation omitted). And here the record adequately supports the Services' NEPA determinations. ESA000005-7; ESA000008-10; ESA0000124-133; ESA0000134-155; ESA0000156-167. Because there is a strong possibility that the Services will legitimately reach similar conclusions regarding the appropriate level of review for NEPA compliance in a future rulemaking, vacatur is not warranted.

Further, vacatur would not be warranted even if the Court were to find an error in the Services' NEPA analyses. Vacatur is not automatic, even when the subject matter involves potential to harm to listed species. *Nat'l Fam. Farm Coal. v. EPA*, 966 F.3d 893, 929 (9th Cir. 2020) (declining to vacate and finding that ". . . failing to consider harm to monarch butterflies caused by killing target milkweed— is not serious") (citation omitted). This understanding applies equally to NEPA violations. *Sierra Forest Legacy v. Sherman*, 951 F. Supp. 2d 1100, 1106 (E.D. Cal. 2013) ("If vacatur in the face of a NEPA violation was virtually automatic as Plaintiffs herein appear to suggest, then the Ninth Circuit would not have remanded to this Court for further equitable consideration of the appropriate remedy . . ."); *Pac. Rivers Council v. U.S. Forest Serv.*, 942 F. Supp. 2d 1014, 1021 (E.D. Cal. 2013) (declining to vacate with a NEPA violation).

As explained in previous briefing in support of Federal Defendants' motion for voluntary remand, vacatur would be disruptive, potentially cause public confusion, and impede efficient implementation of the ESA. Fourth Rauch Decl. ¶ 12 ("Vacatur by the Court would be disruptive of ongoing and future implementation of ESA consultations and listing actions. It would cause confusion among the public, other agencies, and stakeholders, and impede the efficiency of ESA implementation, by abruptly altering the applicable regulatory framework and creating uncertainty about which standards to apply."). Impeding efficient implementation of the ESA and abruptly altering the existing framework for ESA decisions risks harm to listed species. This alone counsels against vacatur. *Sierra Forest Legacy,* 951 F. Supp. 2d at 1106 ("A curable NEPA defect can be addressed absent vacatur if neither *Allied-Signal* factor has been established.").

Neither of the *Allied-Signal* criteria are met here. Even if the Court finds that the Services' extraordinary circumstances documentation is so limited as to be arbitrary and capricious, such a finding is not a serious legal violation warranting vacatur. Any inadequacy in the explanations can be remedied with additional, more thorough explanations in a future rulemaking. And any flaw in the Services' NEPA analyses does not cast doubt on whether the Services "chose correctly" by invoking a categorical exclusion for the 2019 rules. *Allied-Signal*, 988 F.2d at 150. The Ninth Circuit, after all, recently upheld agency invocations of categorical exclusions in analogous circumstances, which strongly suggests that any errors with the agencies' analyses—if they exist—are not serious legal violations that

would justify vacatur. *Mountain Cmtys. for Fire Safety*, 25 F.4th 667.[1] Considering the lack of direct tangible harm to Plaintiffs from these regulations—a fact they repeatedly confirm by failing to point to concrete applications of the regulations causing perceptible harm to them or their members—any balancing of the equities also tips strongly in favor of the Services and against vacatur.

## CONCLUSION

Vacatur is not warranted under these circumstances. The Court therefore should grant Federal Defendants' motion, remand the 2019 ESA Rules without vacatur, and deny Plaintiffs' motions for summary judgment.

---

[1] For example, in *Mountain Cmtys*, the Ninth Circuit deferred to the agency's extraordinary circumstances review, as well as the scope of that review. 25 F.4th 667. Likewise, in *Los Padres*, the Ninth Circuit held that: "[a]lthough the list of resource conditions located at 36 C.F.R. § 220.6(b) is not intended to be exhaustive, NEPA merely permits, rather than requires, the Forest Service to consider additional factors during its extraordinary circumstances review." 25 F.4th 649.

DATED: March 4, 2022.

          TODD KIM
          Assistant Attorney General
          SETH M. BARSKY, Chief
          MEREDITH L. FLAX, Assistant Chief

          */s/ Coby Howell.*
          COBY HOWELL, Senior Trial Attorney
          U.S. Department of Justice
          Environment & Natural Resources Division
          Wildlife & Marine Resources Section
          MICHAEL R. EITEL, Senior Trial Attorney
          U.S. Department of Justice
          Environment & Natural Resources Division
          Wildlife & Marine Resources Section
          1000 S.W. Third Avenue
          Portland, OR 97204
          Phone: (503) 727-1023
          Fax: (503) 727-1117
          Email: coby.howell@usdoj.gov

          *Attorneys for Federal Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such to the attorneys of record.

*/s/ Coby Howell*
COBY HOWELL, Senior Attorney