1    STEVE MARSHALL
     *Attorney General of Alabama*
2    Edmund G. LaCour Jr. (*pro hac vice*)
     *Solicitor General*
3    James W. Davis (*pro hac vice*)
     *Deputy Attorney General*
4    A. Barrett Bowdre (*pro hac vice*)
     *Deputy Solicitor General*
5    OFFICE OF THE ALABAMA ATTORNEY GENERAL
        501 Washington Ave.
6       P.O. Box 300152
        Montgomery, AL 36130
7       Telephone: (334) 353-2196
        Fax: (334) 353-8400
8       E-mail: edmund.lacour@AlabamaAG.gov
            jim.davis@AlabamaAG.gov
9           barrett.bowdre@AlabamaAG.gov

10   *Counsel for Defendant-Intervenor State of Alabama*

Paul Beard II (SBN 210563)
FISHER BROYLES LLP
   5670 Wilshire Blvd., Ste. 1800
   Los Angeles, CA 90036-5653
   Telephone: (818) 216-3988
   Fax: (213) 402-5034
   E-mail:
paul.beard@fisherbroyles.com

*Counsel for Intervening States*

*[Additional counsel listed on signature page]*

11

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

12

13

| | |
|---|---|
| STATE OF CALIFORNIA, *et al.*, | Case No. 4:19-cv-06013-JST |
| Plaintiffs, | Related Cases: No. 4:19-cv-05206-JST |
| v. | No. 4:19-cv-06812-JST |
| DEB HAALAND, U.S. Secretary of the Interior, *et al.*, | **STATE INTERVENORS, PRIVATE LANDOWNER INTERVENORS, AND INDUSTRY INTERVENORS' JOINT TIME-SENSITIVE MOTION FOR STAY PENDING APPEAL; PROPOSED ORDER** |
| Defendants, | |
| and | |
| STATE OF ALABAMA, *et al.*, | Date: October 20, 2022 |
| State Intervenors, | Time: 2:00 p.m. |
| WASHINGTON CATTLEMEN'S ASSOCIATION, PACIFIC LEGAL FOUNDATION, | Place: Courtroom 6, 2nd Floor Judge: Honorable Jon S. Tigar |
| Private Landowner Intervenors, | |
| AMERICAN FARM BUREAU FEDERATION, *et al.*, | |
| Industry Intervenors. | |

## NOTICE OF MOTION AND MOTION FOR STAY PENDING APPEAL

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on **October 20 at 2:00 p.m.**, or as soon thereafter as may be heard by this Court, the State Intervenors,[1] the Private Landowner Intervenors,[2] and the Industry Intervenors[3] (collectively, the "Defendant Intervenors") move for an order staying the Court's July 5, 2022, Order Granting Motion To Remand and Vacating Challenged Regulations, ECF 193, and Final Judgment, ECF 194, pending their appeal of the Order and Final Judgment to the United States Court of Appeals for the Ninth Circuit.[4]

The Defendant Intervenors are also filing a request that the Court expedite its ruling on this motion and that pursuant to Local Rule 7-1(b) it resolve the motion without oral argument as soon after August 4, 2022, as the Court's schedule will allow, so that Intervenors may seek timely appellate relief if needed.

The motion is made under Federal Rule of Civil Procedure 62 and Federal Rule of Appellate Procedure 8(a)(1)(A). The motion is based on this notice of motion; the accompanying memorandum and proposed order; and the pleadings and filings in the three related cases. The

---

[1] The State Intervenors are the States of Alabama, Alaska, Arizona ex rel. Arizona Game and Fish Commission, Arkansas, Idaho, Kansas, Missouri, Montana, Nebraska, North Dakota, Utah, West Virginia, and Wyoming.

[2] For purposes of this Motion the Private Landowner Intervenors are Washington Cattlemen's Association and Pacific Legal Foundation. Defendant-Intervenors Ken Klemm and Beaver Creek Buffalo Company do not join this motion.

[3] The Industry Intervenors are the American Farm Bureau Federation, American Forest Resource Council, American Petroleum Institute, Federal Forest Resource Coalition, National Alliance of Forest Owners, National Association of Home Builders, National Cattlemen's Beef Association, and Public Lands Council.

[4] On July 5, 2022, the Court entered an identical order granting the Federal Defendants' motion to remand and vacating challenged regulations in the three related cases. *See Center for Biological Diversity v. Haaland*, No. 19-cv-05206 (N.D. Cal.), ECF 151; *California v. Haaland*, No. 19-cv-06013 (N.D. Cal.), ECF 193; and *Animal Legal Defense Fund v. Haaland*, No. 19-cv-06812 (N.D. Cal.), ECF 131. From this point on, this motion cites to the ECF number in the lowest-numbered case, *Center for Biological Diversity*, unless otherwise noted.

1

2    State Intervenors are concurrently filing their notices of appeal and the Private Landowner

3    Intervenors and Industry Intervenors will file their notice of appeal imminently. The Defendant

4    Intervenors have conferred with the other parties and have been advised that Plaintiffs oppose the

5    motion and that the Federal Defendants reserve their position until they have a chance to review

     this motion.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

2   TABLE OF CONTENTS.................................................................................................iii

3   TABLE OF AUTHORITIES .......................................................................................iv

4   MEMORANDUM OF POINTS AND AUTHORITIES ...............................................1

5   I.       INTRODUCTION .............................................................................................1

6   II.      BACKGROUND ..............................................................................................3

7
         A.       The Unlawful 2016 Regulations .......................................................3
8
         B.       The "Blanket" 4(d) Rule ....................................................................6
9
         C.       The Revised Rules ..............................................................................6
10
11       D.       This Litigation ....................................................................................8

12  III.     ARGUMENT ....................................................................................................9

13       A.       The Defendant Intervenors Are Likely to Succeed..............................9

14
             1.    Courts Cannot "Set Aside Agency Action" Under the APA Without Making
15                 a Merits Determination. .............................................................9

16           2.    The *Allied-Signal* Test Cannot Be Correctly Applied Without a Merits
17                 Determination ...........................................................................12

18           3.    The Equities Did Not Favor Vacatur. ......................................14

19       B.       The Defendant Intervenors Will Be Irreparably Harmed Without a Stay. ..........15

20       C.       A Stay Pending Appeal is in the Public Interest and Will Not Harm Plaintiffs. .20

21  IV.      CONCLUSION................................................................................................21
22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**CASES**

*Ala. ex rel. Steven T. Marshall,*
No. 1:16-cv-00593-CG-MU (S.D. Ala. Nov. 29, 2016) .................................................... 3, 5

*Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n,*
988 F.2d 146 (D.C. Cir. 1993) ..................................................................................... passim

*Ariz. Cattle Growers' Ass'n v. Salazar,*
606 F.3d 1160 (9th Cir. 2010) .................................................................................................. 4

*Brown v. Gen. Servs. Admin.,*
425 U.S. 820 (1976).................................................................................................................. 12

*Cal. Cmtys. Against Toxics v. EPA,*
688 F.3d 989 (9th Cir. 2012) ................................................................................................... 13

*Calvary Chapel Dayton Valley v. Sisolak,*
982 F.3d 1228 (9th Cir. 2020) .............................................................................................. 1, 2

*Darby v. Cisneros,*
509 U.S. 137 (1993)................................................................................................................... 10

*Hollingsworth v. Perry,*
558 U.S. 183 (2010)..................................................................................................................... 2

*Humane Soc. v. Locke,*
626 F.3d 1040 (9th Cir. 2010) ................................................................................................... 9

*In re Clean Water Act Rulemaking,*
568 F. Supp. 3d 1013 (N.D. Cal. 2021), *appeal filed,*
No. 21-1691 (9th Cir. Nov. 22, 2021).................................................................................... 1, 9

*Int'l Union, UMW v. FMSHA,*
920 F.2d 960 (D.C. Cir. 1990) ................................................................................................ 13

*Invenergy Renewables LLC v. United States,*
476 F. Supp. 3d 1323 (Ct. Int'l Trade 2020) ....................................................................... 17

*Lair v. Bullock,*
697 F.3d 1200 (9th Cir. 2012) ................................................................................................... 9

*Louisiana v. Am. Rivers,*
142 S. Ct. 1347 (2022)...................................................................................................... passim

*Markle Ints., LLC v. U.S. Fish & Wildlife Serv.*,
    827 F.3d 452 (5th Cir. 2016) ............................................................ 16

*Mexichem Specialty Resins, Inc. v. EPA*,
    787 F.3d 544 (D.C. Cir. 2015) .......................................................... 12

*Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983).............................................................................. 12

*Nat'l Family Farm Coal. v. United States*,
    966 F.3d 892 (9th Cir. 2020) ................................................ 3, 13, 14, 20

*Nat'l Parks Conservation Ass'n v. Salazar*,
    660 F. Supp. 2d 3 (D.D.C. 2009) ...................................................... 12

*Nken v. Holder*,
    556 U.S. 418 (2009)............................................................................. 9

*Packwood v. Senate Select Comm. on Ethics*,
    510 U.S. 1319 (1994).......................................................................... 1

*Paulsen v. Daniels*,
    413 F.3d 999 (9th Cir. 2005) ............................................................ 15

*Perez v. Mortg. Bankers Ass'n*,
    575 U.S. 92 (2015).............................................................................. 11

*Pollinator Stewardship Council v. EPA*,
    806 F.3d 520 (9th Cir. 2015) ............................................................ 14

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
    141 S. Ct. 63 (2020)............................................................................. 2

*Ruckelshaus v. Sierra Club*,
    463 U.S. 680 (1983)............................................................................. 11

*Schillinger v. United States*,
    155 U.S. 163 (1984)............................................................................. 11

*Silvers v. Sony Pictures Entm't, Inc.*,
    402 F.3d 881 (9th Cir. 2005) ............................................................ 10

*Tongol v. Donovan*,
    762 F.2d 727 (9th Cir. 1985) ............................................................ 11

*Transp. Div. of the Int'l Ass'n of Sheet Metal, Air, Rail, & Transp. Workers v.
    Fed. R.R. Admin.*,
    988 F.3d 1170 (9th Cir. 2021) .......................................................... 16

*Trout Unlimited v. Lohn,*
    559 F.3d 946 (9th Cir. 2009) ................................................................. 8

*United States v. Nixon,*
    418 U.S. 683 (1974) ........................................................................... 11

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.,*
    435 U.S. 519 (1978) ...................................................................... 1, 11

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.,*
    139 S. Ct. 361 (2018) ................................................................. 5, 16

**STATUTES**

5 U.S.C. § 70 ................................................................................... 10

5 U.S.C. § 551(5) ............................................................................ 11

5 U.S.C. § 706(2) ............................................................... 1, 2, 10, 11

16 U.S.C. § 1532(5)(A)(i) ............................................................. 4, 5

16 U.S.C. § 1532(5)(A)(ii) ................................................................ 4

16 U.S.C. § 1533(d) .......................................................................... 6

16 U.S.C. § 1536(a)(2) ...................................................................... 5

16 U.S.C. § 1538(a) .......................................................................... 6

**REGULATIONS**

50 C.F.R. § 17.31 (2018) ............................................................. 6, 19

50 C.F.R. § 424.12(b)(1-5) ............................................................... 4

49 Fed. Reg. 38,900 (Oct. 1, 1984) .................................................. 4

77 Fed. Reg. 76,740 (Dec. 28, 2012) .............................................. 18

81 Fed. Reg. 7214 (Feb. 11, 2016) ................................................... 5

81 Fed. Reg. 7414 (Feb. 11, 2016) ............................................... 3, 4

81 Fed. Reg. 8663 ........................................................................... 17

83 Fed. Reg. 35,174 (Jul. 25, 2018) ................................................ 7

83 Fed. Reg. 35,193 (Jul. 25, 2018) ............................................................................. 7

84 Fed. Reg. 44,976 (Aug. 27, 2019) ............................................................................ 7

83 Fed. Reg. 35,178 (Jul. 25, 2018) ............................................................................. 7

84 Fed. Reg. 44,753 (Aug. 27, 2019) ............................................................................ 7

84 Fed. Reg. 45,020 (Aug. 27, 2019) ............................................................................ 7

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.     INTRODUCTION**

3       The Supreme Court's stay in *Louisiana v. American Rivers*, 142 S. Ct. 1347 (2022),

4   "compels the result in this case." *Calvary Chapel Dayton Valley v. Sisolak*, 982 F.3d 1228, 1232-

5   33 (9th Cir. 2020). There, as here, plaintiffs challenged federal environmental regulations. *See In*

6   *re Clean Water Act Rulemaking*, 568 F. Supp. 3d 1013, 1020 (N.D. Cal. 2021), *appeal filed*, No.

7   21-1691 (9th Cir. Nov. 22, 2021), *stay granted*, *Louisiana v. Am. Rivers*, 142 S. Ct. 1347 (2022).

8   There, as here, before full briefing and a merits determination could occur, the federal defendants

9   moved to remand the regulations without vacating them, while the plaintiffs asked for remand *with*

10  vacatur. *Id.* at 1020-21. And there, as here, the district court granted plaintiffs the full relief they

11  sought, setting aside final agency action without first determining whether the action was unlawful.

12  *Id.* at 1028.

13      After the district court ruled, the defendant intervenors in *American Rivers* sought a stay

14  pending appeal—first from the district court, then from the Ninth Circuit, and then from the

15  Supreme Court. The first two courts denied the stay, meaning the defendant intervenors had an

16  "especially heavy burden" when they sought relief from the Supreme Court. *Packwood v. Senate*

17  *Select Comm. on Ethics*, 510 U.S. 1319, 1320 (1994) (Rehnquist, C.J., opinion in chambers). To

18  carry it, they contended that the district court violated the Administrative Procedure Act ("APA")

19  and the federal government's sovereign immunity when it "set aside" agency action under

20  circumstances not provided for by Congress: when the action had *not* been "found" to be

21  "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "without

22  observance of procedure required by," or "in excess of statutory jurisdiction, authority, or

23  limitations, or short of statutory right." *See* Application for Stay Pending Appeal at 17, *Louisiana*

24  *v. Am. Rivers*, No. 21A539 (U.S. Mar. 21, 2022) (quoting 5 U.S.C. § 706(2)). They asserted that

25  "a court has the authority to vacate a rule that an agency adopts through notice-and-comment

26  rulemaking *only* if it finds 'substantial procedural or substance reasons [for doing so] as mandated

27  by statute.'" *Id.* at 19 (alterations in original) (quoting *Vt. Yankee Nuclear Power Corp. v. Nat.*

28  *Res. Def. Council, Inc.*, 435 U.S. 519, 558 (1978)). The United States concurred, specifically

1   noting that they "agree[d] with applicants that the district court lacked authority to vacate the 2010

2   Rule without first determining that the Rule was invalid." Fed. Defs' Mem. in Opp. at 13,

3   *Louisiana v. Am. Rivers*, No. 21A539 (U.S. Mar. 28, 2022).

4          The *American Rivers* defendant intervenors also contended that they would be significantly

5   harmed unless the Supreme Court stayed the district court's vacatur. Though they had appealed

6   the district court's order to the Ninth Circuit, they feared that a new rule promulgated by the agency

7   would forever moot their appeal—and with it any opportunity for a court to determine whether the

8   district court had acted lawfully when it vacated the rule as it did. And in the interim, they argued,

9   they would lose the protection of the challenged rule that they had fought for *and that no court

10  had ever found to be unlawful*. Application at 24-28.

11         On April 6, 2022, the Supreme Court granted the stay. 142 S. Ct. 1347. In doing so, the

12  Court necessarily determined that the defendant intervenors are likely to succeed on the merits of

13  their appeal and that irreparable harm would likely result without a stay. *See Hollingsworth v.

14  Perry*, 558 U.S. 183, 190 (2010) (discussing factors an applicant "must" meet for the Court to issue

15  a stay). While the Supreme Court's order may not be directly or technically precedential, it should

16  at the least be *very* persuasive authority, particularly given the "especially heavy burden" the

17  defendant intervenors in that case had to meet. So the Ninth Circuit held in *Calvary Chapel Dayton

18  Valley*, when it looked to another stay issued by the high court—*Roman Catholic Diocese of

19  Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020)—to recognize a "seismic shift in Free Exercise law" that

20  "compel[led] the result" before the court of appeals. 982 F.3d at 1232-33.

21         This Court should do the same. Although it ruled against the Defendant Intervenors and

22  vacated the challenged regulations without a merits determination, the Supreme Court's action in

23  *American Rivers* confirms that a stay pending appeal is warranted.

24         First, the Defendant Intervenors are likely to succeed on the merits. The APA requires a

25  ruling on the merits before a court may "set aside agency action." 5 U.S.C. § 706(2). A proper

26  application of the *Allied-Signal* equitable balancing test requires one, too; its first prong asks "how

27  serious the agency's errors are," taking as a given that the agency *did* err—something that has not

28

1  been determined in this case. *Nat'l Family Farm Coal. v. United States*, 966 F.3d 892, 929 (9th

2  Cir. 2020) (citation omitted).

3       Second, the Defendant Intervenors will be irreparably harmed without a stay. They will

4  likely lose their right to appellate review of this important question of law, making the end run

5  around the APA's notice-and-comment requirements effectively unreviewable. And they will be

6  subject once again to the 2016 regulations that many of them challenged as unlawful and

7  participated in the notice-and-comment process to replace.

8       Third, the public interest favors a stay, and Plaintiffs will not be harmed by one. Neither

9  Plaintiffs nor the public has an equitable interest in an unlawful vacatur, while the public certainly

10  has an interest in benefitting from regulations that have neither been lawfully repealed nor declared

11  unlawful by any court.

12       Accordingly, the Defendant Intervenors respectfully ask the Court to stay its order vacating

13  the challenged regulations pending appeal.

14  **II.    BACKGROUND**

15       **A.    The Unlawful 2016 Regulations**

16       Many of the State Intervenors are here because they were plaintiffs in a prior case: *Alabama*

17  *ex rel. Steven T. Marshall v. National Marine Fisheries Service*, No. 1:16-cv-00593-CG-MU (S.D.

18  Ala. Compl. Filed Nov. 29, 2016), ECF 1. In that case, the States challenged the legality of two

19  regulations the Fish and Wildlife Service ("FWS") and the National Marine Fisheries Service

20  ("NMFS") had promulgated pursuant to the Endangered Species Act ("ESA").

21       The first rule eliminated the Services' longstanding two-step approach for designating

22  "critical habitat." *See* Listing Endangered and Threatened Species and Designating Critical

23  Habitat; Implementing Changes to the Regulation for Designating Critical Habitat, 81 Fed. Reg.

24  7414 (Feb. 11, 2016). Under the two-step approach that the Services had used for thirty years, the

25  Services looked first to areas a species already occupied and determined whether those areas were

26  adequate to meet the conservation needs of the species. Only if the occupied areas were inadequate

27  did the Services proceed to step two: designating as "critical habitat" unoccupied areas that

28

Defendant Intervenors'
Mot. for Stay Pending Appeal
No. 4:19-cv-06013-JST

1   contained the biological or physical elements "essential to the conservation of the species." *See* 49

2   Fed. Reg. 38,900, 38,909 (Oct. 1, 1984) (previously codified at 50 C.F.R. § 424.12(b)(1-5)).

3        With the 2016 rule change, the Services collapsed the two steps, allowing the agencies to

4   designate unoccupied areas as critical habitat without regard to whether designating occupied areas

5   alone would be sufficient to meet conservation needs. *See* 81 Fed. Reg. 7414, 7426-27. This was

6   unlawful. Section 3(5)(A)(ii) of the ESA is clear that unoccupied areas may be designated as

7   critical habitat *only* if "such areas are essential for the conservation of the species." 16 U.S.C. §

8   1532(5)(A)(ii). "The statute thus differentiates between 'occupied' and 'unoccupied' areas,

9   imposing a more onerous procedure on the designation of unoccupied areas by requiring the

10  Secretary to make a showing that unoccupied areas are essential for the conservation of the

11  species." *Ariz. Cattle Growers' Ass'n v. Salazar*, 606 F.3d 1160, 1163 (9th Cir. 2010). Because

12  designating *unoccupied* areas as critical habitat cannot be "essential for the conservation of the

13  species" if designating only *occupied* areas would meet conservation needs, the ESA itself

14  necessitates a two-step inquiry of the kind abandoned by the Services in 2016.

15       Worse, the Services also changed their regulations to allow them to designate an area as

16  "critical habitat for the species" even if it was not "habitat" at all—that is, even if the species could

17  not survive if placed in its designated unoccupied "critical habitat." As the 2016 Rule put it, "[t]he

18  presence of physical or biological features [essential to the conservation of the species[5]] is not

19  required by the statute for the inclusion of unoccupied areas in a designation of critical habitat."

20  81 Fed. Reg. at 7420. This, of course, made no sense; a desert cannot be unoccupied "critical

21  habitat" for an alligator if there is no water available for the alligator to live in. As the Supreme

22  Court explained in 2018: "Even if an area otherwise meets the statutory definition of unoccupied

23  critical habitat because the Secretary finds the area essential for the conservation of the species,

24  Section 4(a)(3)(i) [of the ESA] does not authorize the Secretary to designate the area as *critical*

25

---

26  [5] The bracketed text comes from the ESA's definition of occupied critical habitat, which is "the
    specific areas within the geographical area occupied by the species … on which are found those
27  physical or biological features (I) essential to the conservation of the species and (II) which may
    require special management considerations or protection." 16 U.S.C. § 1532(5)(A)(i).
28

Defendant Intervenors'
Mot. for Stay Pending Appeal
No. 4:19-cv-06013-JST

1   habitat unless it is also *habitat* for the species." *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*,

2   139 S. Ct. 361, 368 (2018). This aspect of the 2016 Rule was also clearly unlawful.

3       The second regulation challenged by the States concerned the Services' new definition of

4   "destruction or adverse modification" of critical habitat. *See* Interagency Cooperation—

5   Endangered Species Act of 1973, as Amended; Definition of Destruction or Adverse Modification

6   of Critical Habitat, 81 Fed. Reg. 7214 (Feb. 11, 2016). Under Section 7 of the ESA, federal

7   agencies must consult with the Services to ensure that their actions do not "result in the destruction

8   or adverse modification of [critical] habitat" of an endangered species. 16 U.S.C. § 1536(a)(2). In

9   this way federal agencies must not act in a way that makes "essential" habitable land or water

10  uninhabitable for a listed species. *See id.* § 1532(5)(A)(i) (defining "critical habitat"). But in their

11  rule change, the Services defined "destruction or adverse modification" to include alterations "that

12  preclude or significantly delay development" of features that would be, if only they existed,

13  essential to the conservation of a species. 81 Fed. Reg. 7214, 7226. When combined with the

14  unlawful Section 4 regulations (discussed above), this meant that the services could (1) declare as

15  critical habitat areas that did not have and may never have the physical or biological features

16  necessary to support a species, and (2) prohibit an activity that might prevent the development of

17  those features that did not and may never exist. The regulation thus allowed the Services to prevent

18  a landowner, for example, from planting loblolly pine trees in a barren field if having longleaf pine

19  trees there might one day be more beneficial to a species, *even though the species could not survive*

20  *in the field as it existed since it was barren*. This was clear overreach under the text of the ESA.

21      In November 2016, a group of 18 States (later joined by two additional States) sued the

22  Services and the Secretaries of the Departments of the Interior and Commerce to challenge the

23  regulatory changes as unlawful under the ESA and APA. *See Ala. ex rel. Steven T. Marshall*, No.

24  1:16-cv-00593-CG-MU (S.D. Ala. Nov. 29, 2016). In March 2018, the parties reached a

25  settlement. As part of the settlement agreement, the Services agreed to reconsider the critical

26  habitat regulations and their definition of "destruction or adverse modification." They also agreed

27

28

Defendant Intervenors'
Mot. for Stay Pending Appeal
No. 4:19-cv-06013-JST

1    to notify the States if no rule change would be forthcoming, in which case the States could renew

2    their challenge. *See* ECF 47-3 at 20-26.

3         **B.**     **The "Blanket" 4(d) Rule**

4         Under the ESA, species listed as endangered receive automatic protections, including

5    against any "take" by a private or public entity. 16 U.S.C. § 1538(a). The Act does not afford the

6    same statutory protections to threatened species. Rather, the statute provides that "[w]henever any

7    species is listed as a threatened species … the Secretary shall issue such regulations as he deems

8    necessary and advisable to provide for the conservation of such species." *Id.* § 1533(d). The Act

9    also specifies that the Secretary "may" extend to threatened species the protections afforded to

10   endangered species. *Id.*

11        In 1975, however, FWS issued a regulation, commonly known as the "blanket 4(d) rule,"

12   that prohibited the take of all threatened species, including any subsequently listed threatened

13   species, unless the agency issued a separate rule to relax the prohibition for a particular species.

14   50 C.F.R. § 17.31 (2018). Under that regulation, endangered and threatened species were generally

15   regulated in the same manner, despite the differences in the threats they face and despite

16   Congress's choice to explicitly distinguish between these two categories for purposes of regulating

17   take.

18        On August 10, 2016, the Private Landowner Intervenors filed a rulemaking petition with

19   FWS urging the repeal of the blanket 4(d) rule. *See* ECF 152-1 at ¶ 3; *see also* ECF 152-3. That

20   Petition explained that the blanket 4(d) rule exceeded FWS' authority under the ESA, which only

21   authorizes take of threatened species to be regulated after a determination that such regulation is

22   necessary and advisable for the particular species. ECF 152-3 at 9-13; *see also* 16 U.S.C.

23   § 1533(d); S. Rep. No. 93-307, at 8. This interpretation is compelled by the text of the statute, the

24   overall statutory scheme, and the legislative history. *See* ECF 159 at 10-18.

25        **C.**     **The Revised Rules**

26        The Services did reconsider the challenged 2016 regulations. And FWS did reconsider its

27   "blanket" approach to ESA Section 4(d). In July 2018, they issued three notices of proposed

28

Defendant Intervenors'
Mot. for Stay Pending Appeal
No. 4:19-cv-06013-JST

1   rulemaking, two of which concerned the regulations challenged in the 2016 lawsuit, and one

2   concerning the blanket 4(d) rule. The State Intervenors, counsel for the Private Landowner

3   Intervenors, and the Industry Intervenors supported the proposed rules in notice and comment. *See*

4   ECF 47 at 13-14; ECF 152-1 at ¶ 2; ECF 152-2, Yates/AFBF Decl. at ¶¶ 11, 13 (ECF 36-3);

5   Joseph/AFRC Decl. at ¶ 9 (ECF 36-4); Meadows/API Decl. at ¶¶ 9-10 (ECF 36-5); Murray/NAFO

6   Decl. at ¶¶ 8-9 (ECF 36-7); Ward/NAHB Decl. at ¶¶ 10-12 (ECF 36-8); Hart/NCBA Decl. at ¶¶ 3-

7   4 (ECF 36-9); Beymer/PLC Decl. at ¶¶ 3-4 (ECF 36-10). The Rules became final in August 2019.

8   First, in the Section 4 Rules, the Services restored the two-step process for designating

9   critical habitat and complied with the Supreme Court's decision in *Weyerhaeuser* by ensuring that

10   unoccupied "critical habitat" is, first and foremost, habitat. The Services also made clear that they

11   would apply the same statutory definitions for determining whether to list or de-list a species as

12   "endangered" or "threatened." *See* Revision of the Regulation for Listing Species and Designating

13   Critical Habitat, 83 Fed. Reg. 35,193 (Jul. 25, 2018); Regulations for Listing Species and

14   Designating Critical Habitat, 84 Fed. Reg. 45,020 (Aug. 27, 2019) (Revised Section 4 Rules).

15   Second, in the Section 7 interagency consultation Rule, the Services corrected the

16   overreach of the 2016 regulations that allowed the Services to consider whether a proposed

17   alteration from another agency would adversely modify or destroy features in habitat that *did not*

18   *exist*. Revision of Regulations for Interagency Cooperation, 83 Fed. Reg. 35,178 (Jul. 25, 2018);

19   Regulations for Interagency Cooperation, 84 Fed. Reg. 44,976 (Aug. 27, 2019) (Revised Section

20   7 Rules).

21   Third, the Section 4(d) Rule repealed the FWS's blanket extension of protections afforded

22   to endangered species to threatened species. *See* Revision of the Regulations for Prohibitions to

23   Threatened Wildlife and Plants, 83 Fed. Reg. 35,174 (Jul. 25, 2018); Regulations for Prohibitions

24   to Threatened Wildlife and Plants, 84 Fed. Reg. 44,753 (Aug. 27, 2019) (Revised Section 4(d)

25   Rule). This brought FWS in line with the longstanding practice of NMFS, which has always taken

26   a more tailored approach to the protection of newly listed threatened species by promulgating

27   species-specific protections when a species is listed as threatened. *See* 84 Fed. Reg. at 44,753; *see*

28

Defendant Intervenors'
Mot. for Stay Pending Appeal
No. 4:19-cv-06013-JST

*also Trout Unlimited v. Lohn*, 559 F.3d 946, 962 (9th Cir. 2009) (upholding NMFS' longstanding approach to Section 4(d)).

### D.    This Litigation

In 2019, three groups of Plaintiffs—two sets of environmental groups and a cohort of States—challenged the 2019 Rules as unlawful under the ESA, the APA, and the National Environmental Policy Act ("NEPA"). Three groups of intervenors—a cohort of States, a group of private landowners, and various industry groups—intervened to defend the Rules.

Plaintiffs moved for summary judgment in January 2021. ECF 116. Soon afterward, President Biden directed the Services to review the 2019 Rules, so the Services sought—and the other parties agreed to—a stay of proceedings. ECF 123, 125, 127. In June 2021, the Services announced their intent to revise the Section 4 and Section 7 Rules, and FWS announced its intent to rescind the Section 4(d) Rule.

Summary judgment briefing resumed in October. ECF 141, 142. Rather than responding substantively to Plaintiffs summary judgment motions, however, the Federal Defendants moved for voluntary remand *without* vacatur of the challenged Rules because they had identified some "substantial concerns" with the 2019 Rules. ECF 146 at 27. Notably, the Services did *not* state that the 2019 Rules were unlawful or had been unlawfully promulgated.

Plaintiffs responded to the Federal Defendants' motion by upping the ante, asking for remand *with* vacatur—the same relief they sought in their summary judgment motion (though this time without a merits determination). *See* ECF 149; ECF 142 at 50. The Defendant Intervenors vehemently opposed Plaintiffs' suggestion and argued that vacating the challenged Rules without finding them unlawful would be wholly improper and itself unlawful. *See* ECF 151 at 8-10; ECF 152 at 24-27; ECF 153 at 13-15; ECF 158 at 4-5. The Defendant Intervenors also apprised the Court of the Supreme Court's stay in *American Rivers* in procedurally similar circumstances. ECF 166.

On July 5, 2022, the Court entered an order granting the Federal Defendants' motion to remand and the Plaintiffs' request to vacate the challenged regulations. ECF 168. The Court did

not make a merits determination before doing so. Instead, the Court relied on the district court's *American Rivers* decision that the Supreme Court stayed to find that "because vacatur is an equitable remedy, and because the APA does not expressly preclude the exercise of equitable jurisdiction, the APA does not preclude the granting of vacatur without a decision on the merits." *Id.* at 7 (quoting *In re Clean Water Act Rulemaking*, 568 F. Supp. 3d at 1022). The Court thus proceeded to consider the *Allied-Signal* factors for determining whether to vacate an unlawful rule before remanding it. Relying on decisions in which courts had determined that regulations were unlawful, the Court held that "this is not the 'rare circumstance' in which remand without vacatur would be appropriate," and thus vacated the 2019 Rules. *Id.* at 10-11 (quoting *Humane Soc. v. Locke*, 626 F.3d 1040, 1053 n.7 (9th Cir. 2010)).

## III.   ARGUMENT

The factors for entering a stay pending appeal are "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Lair v. Bullock*, 697 F.3d 1200, 1203 (9th Cir. 2012) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). The first two factors are "the most critical." *Id.* 1204. These factors strongly weigh in favor of staying the vacatur order in this case.

### A.   The Defendant Intervenors Are Likely to Succeed.

As the Supreme Court's stay order in *American Rivers* confirms, the Defendant Intervenors are likely to succeed on the merits of their appeals because (1) courts cannot "set aside agency action" under the APA without first making a merits determination; (2) it is impossible for courts to correctly apply the *Allied-Signal* factors without making a merits determination; and (3) even if it were possible to apply *Allied-Signal* in this context, the equities did not favor vacatur.

#### 1.   Courts Cannot "Set Aside Agency Action" Under the APA Without Making a Merits Determination.

In enacting the APA, Congress authorized district courts to "hold unlawful and set aside agency action" when the action is "found to be" "arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with the law," "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "without observance of procedure required by law." 5 U.S.C. § 706(2). Congress then set out the procedural requirements to be followed in determining whether an agency action is unlawful: "In making the foregoing determinations, the court shall *review the whole record* or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error." *Id.* (emphasis added).

The plain text of the APA thus demonstrates that courts cannot "set aside agency action" consistent with these statutory requirements *unless* they find the agency action unlawful. Any other reading would make the procedure Congress mandated superfluous; "review[ing] the whole record" is wholly unnecessary if courts can simply "set aside agency action" without "hold[ing] [it] unlawful" (as the Court did here). Such a reading also violates the "presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions." *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005) (en banc). By setting out precise avenues by which courts may "hold unlawful and set aside agency action," Congress necessarily excluded the shorter path the Court took.

What the text of the statute mandates, broader justiciability principles confirm—particularly because Congress made clear that the APA should not be construed to affect "other limitations on judicial review," and imposed on courts the "duty" "to dismiss any action or deny relief on any other appropriate legal or equitable ground." 5 U.S.C. § 702; *see Darby v. Cisneros*, 509 U.S. 137, 153 (1993) ("The elimination of the defense of sovereign immunity did not affect any other limitation on judicial review that would otherwise apply under the APA.").

Though the Court relied on its "equitable jurisdiction" to reason that "the APA does not preclude the granting of vacatur without a decision on the merits," ECF 168 at 7, the Court did not explain how such jurisdiction allows courts to act *outside* the procedures of the APA. Since the APA is a circumscribed waiver of sovereign immunity, its procedures must be followed *exactly* because Congress's waiver of immunity must be construed *narrowly*. *Tongol v. Donovan*, 762 F.2d 727, 730 (9th Cir. 1985). Courts may not "expand[]" that waiver "beyond what the language

1  *requires.*" *Id.* (emphasis in original) (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685

2  (1983)). Or as the Supreme Court has explained: "Beyond the letter of such consent the courts may

3  not go, no matter how beneficial they may deem, or in fact might be, their possession of a larger

4  jurisdiction over the liabilities of the government." *Schillinger v. United States*, 155 U.S. 163, 166

5  (1984). This Court erred when it ignored Congress's—and the Supreme Court's—directive that it

6  may "set aside" agency action "only for substantial procedural or substantive reasons as mandated

7  by statute, not simply because the court is unhappy with the result reached." *Vt. Yankee Nuclear*

8  *Power Corp.*, 435 U.S. at 558 (citation omitted).

9      The Federal Defendants' expression of "substantial concerns with the 2019 ESA Rules"

10  does not change matters. ECF 165 at 20. For one, the stated "concerns" were not concessions of

11  the unlawfulness of the current Rules, but general concerns of policy or procedure regarding only

12  a subset of the enacted regulations. The Federal Defendants were clear that they were *not*

13  conceding that the challenged Rules were unlawful or that the Services could not enact them again.

14  As they put it: "The Services' identification of substantial concerns is different from a legal

15  confession of error.… Continued implementation is thus not unlawful." ECF 154 at 12-13.

16      For another, even if the Federal Defendants had confessed error, such a confession would

17  not allow the Services to circumvent the notice-and-comment procedures absent a judicial

18  determination on the merits. Agencies must "use the same procedures when they amend or repeal

19  a rule as they used to issue the rule in the first instance." *Perez v. Mortg. Bankers Ass'n*, 575 U.S.

20  92, 101 (2015). Here, that means notice and comment. 5 U.S.C. § 551(5). The only exception to

21  that rule is if a *court* determines that the rule is unlawful. 5 U.S.C. § 706(2). Unless the challenged

22  regulations are either repealed by notice-and-comment rulemaking or set aside by a court in

23  accordance with the APA, the rules "remain in force." *United States v. Nixon*, 418 U.S. 683, 696

24  (1974).

25      This Court's contrary reading would allow "the Federal [D]efendants to do what they

26  cannot do under the APA, repeal a rule without public notice and comment, without judicial

27  consideration of the merits." *Nat'l Parks Conservation Ass'n v. Salazar*, 660 F. Supp. 2d 3, 4

28

Defendant Intervenors'
Mot. for Stay Pending Appeal
No. 4:19-cv-06013-JST

(D.D.C. 2009). As the D.C. Circuit has explained, the risk of relying on agency concessions—much less "substantial concerns"—to vacate a rule "is that an agency could circumvent the rulemaking process through litigation concessions, thereby denying interested parties the opportunity to oppose or otherwise comment on significant changes in regulatory policy. If any agency could engage in rescission by concession, the doctrine requiring agencies to give reasons before they rescind rules would be a dead letter." *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 557 (D.C. Cir. 2015) (citing *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 52 (1983)). "It would require the suspension of disbelief to ascribe to Congress the design to allow its careful and thorough remedial scheme to be circumvented by artful pleading." *Brown v. Gen. Servs. Admin.,* 425 U.S. 820, 833 (1976).

It would also be manifestly unfair. The State Intervenors and certain of the Industry Intervenors challenged the 2016 regulations. They entered into a settlement agreement so the Services would reconsider the rules. They participated in notice and comment in support of the new regulations. Similarly, the Private Landowner Intervenors petitioned for repeal of the blanket 4(d) rule, supported FWS's repeal of the blanket 4(d) rule through notice and comment (through counsel), and, along with the other Defendant Intervenors, intervened to defend that repeal in this litigation. But now the Defendant Intervenors are deprived of a full opportunity to be heard on the merits of repeal, either through notice-and-comment rulemaking or through a judicial determination on the merits. That is not what the APA envisions or allows.

## 2. The *Allied-Signal* Test Cannot Be Correctly Applied Without a Merits Determination.

Having determined that its "equity jurisdiction" allowed it to eschew a ruling on the merits, the Court proceeded to its *Allied Signal* analysis. ECF 168 at 8-11. The Ninth Circuit has adopted the D.C. Circuit's *Allied-Signal* two-prong test for determining whether unlawful agency action should be vacated on remand. Under this test, "[w]hether agency action should be vacated depends on how serious the agency's errors are and the disruptive consequences of an interim change that may itself be changed." *Nat'l Family Farm Coal.*, 966 F.3d at 929 (quoting *Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012)); *see Allied-Signal, Inc. v. U.S. Nuclear Regul.*

Defendant Intervenors'
Mot. for Stay Pending Appeal
No. 4:19-cv-06013-JST

1  *Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993) ("The decision whether to vacate depends on the

2  'seriousness of the [regulation's] deficiencies (and thus the extent of doubt whether the agency

3  chose correctly) and the disruptive consequences of an interim change that may itself be changed.'"

4  (quoting *Int'l Union, UMW v. FMSHA*, 920 F.2d 960, 967 (D.C. Cir. 1990)).

5        To state the rule is to reveal its inapplicability in this posture. It assumes the thing that

6  hasn't been proved—that the Services committed error—and asks the court to determine how

7  serious that "error" was. It is like asking a surgeon to weigh the pros and cons of amputating a

8  gangrenous leg without first determining that the leg is infected with gangrene. Because the test

9  makes no sense when the agency action has *not* been "found to be" unlawful, the Court could not

10  help but err in applying the test here.

11        The Court's misapplication may have stemmed from the general language, cited by

12  Plaintiffs in their brief and repeated by this Court in its Order, that the normal remedy for any

13  remanded agency rule is vacatur. *See* ECF 149 at 11 ("Vacatur is the normal remedy in cases where

14  a court orders a remand of a challenged agency action"); *id.* ("Vacatur is the presumptive remedy"

15  (citations omitted)); ECF 168 at 10 (finding that "this is not the 'rare circumstance' in which

16  remand without vacatur would be appropriate").

17        But these statements are only partially correct—or rather, their correctness depends on the

18  procedural posture of the case. A rule *that has been found unlawful* is presumptively vacated unless

19  the *Allied-Signal* factors suggest that either (1) the procedural error is so minor that the same rule

20  may be repromulgated, or (2) the equities otherwise dictate that the rule should remain in place

21  notwithstanding its unlawfulness. This interaction between the merits determination and the

22  *Allied-Signal* test is perfectly logical. It stands to reason that an unlawful rule should be "set aside,"

23  in accordance with the text of the APA, absent some circumstance that counsels against vacatur.

24  No such logic counsels that a court should presumptively vacate a rule about which it has

25  determined nothing at all.

26

27

28

### 3.      The Equities Did Not Favor Vacatur.

Not only was this Court's application of the *Allied-Signal* factors misplaced, it was also erroneous. That is, even if *Allied-Signal* applied in the context of a rule that has not been found unlawful, it would still counsel against vacatur here.

For the seriousness-of-the-error factor, courts "look to 'whether the agency would likely be able to offer better reasoning or whether by complying with procedural rules, it could adopt the same rule on remand, or whether such fundamental flaws in the agency's decision make it unlikely that the same rule would be adopted on remand." *Nat'l Family Farm Coal.*, 966 F.3d at 929 (quoting *Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015)); *see Allied-Signal*, 988 F.2d at 203. As the Defendant Intervenors explained in their responses to the Federal Defendants' motion for remand, even assuming the procedural deficiencies alleged by Plaintiffs, the statutory text confirms that the Services could—and should—adopt the same rules on remand. *See* ECF 151 at 11-21; ECF 152 at 19-24, 27-28; ECF 153 at 16-28. The Court discounted these arguments because the Services have not "evinced any desire to keep the 2019 ESA Rules intact." ECF 168 at 8. That may be true, and it may even give the Services reason to go through notice-and-comment rulemaking, but it cannot be enough to sidestep the APA's procedural requirements.

The Court also erred when it considered the disruptive consequences of vacatur. The Defendant Intervenors had argued that it would be unfair to (1) subject them to the unlawful 2016 regulations they had previously challenged, (2) violate their statutory rights to participate in notice and comment or defend the merits of the Rules in court, and (3) remove the protections of the 2019 regulations they had fought for and are benefitting from. ECF 151 at 21-24. The Court again discounted these arguments because "the Services have requested remand precisely to address their substantial concerns with the 2019 ESA Rules." ECF 168 at 10 (cleaned up). "Thus," the Court reasoned, "regardless of whether this Court vacates the 2019 ESA Rules, they will not remain in effect in their current form. There is no reliance interest for vacatur to injure." ECF 168 at 10.

Respectfully, this cannot be right. While it may be true that the Services will eventually rescind the 2019 Rules, there is a world of difference between the Services going through notice-and-comment rulemaking to do so and this Court short circuiting that process by vacating Rules

that no court has found to be unlawful. Such reasoning would appear to discount to zero the Defendant Intervenors' interests in participating in the process the APA requires—even if the 2019 Rules will eventually be rescinded either way. While the Court's judicial bypass may make for efficient policymaking, it is not the procedure contemplated by Congress when it enacted the APA.

Last, the Court at least should have severed the provisions that (1) Plaintiffs did not challenge, (2) the Services did not raise "concerns" about, and (3) the Services could, and likely are statutorily compelled to, enact again. *See* ECF 153 at 9-11 (breaking down the provisions of the Rules that Plaintiffs did not challenge or which the Federal Defendants have said nothing about); ECF 151 at 13 & n.3 (arguing that the Court should "at least sever the delisting standard and the critical habitat provisions" because those provisions are likely "compelled by statute"); ECF 152 at 8 (arguing that "the 4(d) Rule and certain provisions of the Rule for Designating Unoccupied Areas are statutorily compelled"). For all these reasons, the Defendant Intervenors are likely to succeed on the merits of their appeals.

### B.    The Defendant Intervenors Will Be Irreparably Harmed Without a Stay.

When the Supreme Court granted a stay in *American Rivers*, it not only found that the defendant intervenors were likely to succeed on the merits, but also that they would be irreparably harmed absent a stay. Such is the case here, too.

*First*, because "[t]he effect of invalidating an agency rule is to reinstate the rule previously in force," *Paulsen v. Daniels*, 413 F.3d 999, 1008 (9th Cir. 2005), vacatur will resurrect the unlawful 2016 regulations that the State Intervenors challenged in court and settled with the Federal Defendants based on their promise to reconsider the rules. As explained above, the 2016 regulations concerning the designation of critical habitat and the definition of "destruction or adverse modification" violated the ESA by ignoring Congress's distinction between unoccupied and occupied areas, disregarded the statute's requirement that "critical habitat" be "habitat," and allowed the Services to designate as "critical habitat" unoccupied areas in which a species could not survive—all at great cost to stakeholders and with no benefit to speak of on the other side of the ledger. Indeed, under the 2016 regulations, "virtually any part of the United States could be

designated as 'critical habitat' for any given endangered species so long as the property could be modified in a way that would support introduction and subsequent conservation of the species on it." *Markle Ints., LLC v. U.S. Fish & Wildlife Serv.*, 827 F.3d 452, 483 (5th Cir. 2016) (Owen, J., dissenting), *vacated and remanded sub nom. Weyerhaeuser*, 139 S. Ct. 361. Resurrecting these unlawful rules would fly in the face of the Supreme Court's holding in *Weyerhaeuser*, 139 S. Ct. at 368.

Likewise, the Court's order of vacatur will immediately resurrect the blanket approach to ESA section 4(d). As a result, the Court has brought about an immediate return to the unlawful regime which the Private Landowner Intervenors petitioned FWS to repeal in 2016.

*Second*, unless a stay is issued, the statutory and procedural rights of the Defendant Intervenors will be violated. Many of the State Intervenors challenged the 2016 regulations as unlawful and settled with the Federal Defendants based on their representation that they would reconsider the rules. Then the States participated in notice and comment and secured enactment of the Rules. Similarly, in 2016 the Private Landowner Intervenors initiated the lengthy process of filing a rulemaking petition to repeal the blanket 4(d) rule. *See* ECF 41-4 ¶¶ 8-11 (Meacham Decl.); 41-7 ¶ 9 (Gaziano Decl.). They finally received a response to this petition in the form of the 2018 Proposed Regulations, and then through counsel participated in the notice-and-comment process to secure the repeal of the Blanket 4(d) Rule. ECF 152-1 ¶ 2 (Yates Decl.). The Industry Intervenors also participated in the notice-and-comment process. ECF 104 at ESA0083035, ESA0089472, ESA0002362, ESA0292261, ESA0295171. Vacatur has therefore deprived the Defendant Intervenors of their statutory rights under the APA, resulting in an irreparable procedural harm. *See Transp. Div. of the Int'l Ass'n of Sheet Metal, Air, Rail, & Transp. Workers v. Fed. R.R. Admin.*, 988 F.3d 1170, 1180 (9th Cir. 2021) (noting that notice and comment are "the most fundamental of the APA's procedural requirements"); *Invenergy Renewables LLC v. United States*, 476 F. Supp. 3d 1323, 1352-53 (Ct. Int'l Trade 2020) (recognizing that "a procedural injury can itself constitute irreparable harm" (citation omitted)). And absent a stay, it is also likely that the Defendant Intervenors will never be able to fully exercise their appellate rights to seek judicial

1   review of the Court's decision because the Services have indicated that they intend to "engage in

2   rulemaking to revise and rescind the challenged 2019 ESA Rules." ECF 146 at 29.

3          Indeed, as to the 4(d) rule in particular the Court's order has completely eviscerated the

4   procedural protections afforded the Defendant Intervenors by the APA's notice-and-comment

5   requirements. FWS previously announced its intention to propose rescission of the 4(d) Rule via

6   notice-and-comment rulemaking. ECF 146 at 24; 146-1 ¶ 5. But by vacating the 4(d) Rule in

7   response to the Plaintiffs' request this Court has eliminated the need for FWS to conduct any

8   further rulemaking to rescind that rule. It therefore eliminated the last avenue for the Private

9   Landowner Intervenors to press their argument that the 2019 4(d) Rule's repeal of the blanket 4(d)

10  rule was statutorily compelled. *See* ECF 159 at 10-18. As such, in the absence of a stay, the Order

11  leaves the Private Landowner Intervenors with no recourse whatsoever, other than to return to

12  square one and expend the significant time and resources required to submit yet another

13  rulemaking petition requesting elimination of the unlawful blanket 4(d) rule.

14         *Third*, vacatur will result in significant real-world harm to the Defendant Intervenors. The

15  Intervenor States have "primary authority and responsibility for protection and management of

16  fish, wildlife, and plants and their habitats." 81 Fed. Reg. at 8663. The 2019 Rules were enacted

17  at least in part to respond to the needs of States to work with stakeholders in ways that allowed

18  landowners to view the presence of threatened or endangered species as assets, not liabilities. The

19  FWS's repeal of the blanket 4(d) rule, for instance, allowed States to engage landowners in creative

20  conservation efforts. Such conservation efforts that align the incentives of all stakeholders are very

21  much needed in the Intervenor States. *See* Decl. of Christopher M. Blankenship, ECF 47-3 at 3

22  (explaining why the 2019 Rules benefit Alabama's efforts to preserve the gopher tortoise); Decl.

23  of Jim DeVos, ECF 47-6 at 3 (explaining how the distinction between threatened and endangered

24  species has benefitted the Apache trout and Gila trout in Arizona through managed sport fishing);

25  Decl. of James N. Douglas, ECF 47-9 at 5 (noting that the repeal of the blanket 4(d) rule "will

26  allow a more nuanced development of restrictions that do not conflict with [Nebraska's] ongoing

27

28

1   management programs to improve wetland habitat for other species if the eastern black rail is

2   ultimately listed as a threatened species," as the Services have proposed).

3          Similar real-world harms will attend judicial repeal of other portions of the challenged

4   Rules. Alaska would once more be subject to the uncertainty involved in listing decisions based

5   on models forecasting out a hundred years or more—like the decision the NMFS made when listing

6   certain bearded seals as threatened species. *See* Threatened Status for the Beringia and Okhotsk

7   Distinct Population Segments of the Erignathus barbatus nauticus Subspecies of the Bearded Seal,

8   77 Fed. Reg. 76,740 (Dec. 28, 2012). States would lose the benefit of regulating species that no

9   longer qualify as threatened or endangered under the ESA yet remain listed as such due to the

10  Services' prior regulations. *See* Decl. of Melissa Schlichting, ECF 47-3 at 2-3 (noting that Montana

11  has been able to keep its Rocky Mountain Grey Wolf population at "five to six times above the

12  federally required amount" by licensing limited hunting—resulting in $3.4 million in revenue for

13  wolf management—and establishing a livestock loss board to reimburse rangers whose livestock

14  are killed by wolves). And setting aside the interagency cooperation regulations would make

15  decisions concerning federal land use even more cumbersome (with no attendant benefit to the

16  species), thus directly harming States like Idaho, where over 60% of the land is federally managed.

17  *See* Decl. of Scott Pugrud, ECF 47-7 at 5. Then there are the harms to State sovereignty caused by

18  the overreach of the 2016 rules, and the significant costs to all stakeholders caused by a constantly

19  shifting regulatory environment. *See* Decl. of Angela Bruce, ECF 47-11 at 4 (attesting that vacatur

20  would harm Wyoming's "interest[] in exercising the full extent of its state law and regulatory

21  authority to successfully manage wildlife and related natural resources within its jurisdiction, and

22  to maintain its sovereign interests"); Decl. of Douglas Vincent-Lang, ECF 47-5 at 8 (stating that

23  vacatur would "create an environment of regulatory unpredictability" in Alaska that "will

24  ultimately result in revenue losses and associated impacts to Alaska and its citizens").

25         Absent a stay, similar real-world harms will occur to Private Landowner Intervenor

26  Washington Cattlemen's Association, whose membership provides habitat to numerous species

27  listed as threatened and endangered and numerous species being considered for listing as

28

threatened or endangered. *See* ECF 41-4 ¶¶ 5 (Meacham Decl.). These members are significantly burdened by ESA regulations, including the treatment of common land use activities as "take" if they inadvertently disturb or harm listed species or their habitat, and the increase in permitting burdens resulting from the designation of critical habitat. ECF 41-4 ¶¶ 5-7, 10, 13 (Meacham Decl.). By vacating the 2019 Regulations and abruptly returning the country to the pre-2019 regime, the Court's vacatur order significantly impacts those members' abilities to run their businesses, manage their properties, and pursue their conservation goals, free from the significant regulatory burdens and perverse incentives imposed by FWS's blanket prohibition on take, and the Services' pre-2019 regime for designating unoccupied critical habitat. *See id.* For example, under the 2019 4(d) Rule those members whose properties are impacted by the presence of endangered species would have been rewarded whenever a subsequent improvement in an endangered species' status lead to its downlisting to threatened, because such a downlisting would have resulted in the lifting of the significant land use restrictions associated with the ESA's broad prohibition on take. However, Washington Cattlemen's Association's membership will be denied any such regulatory relief under the "blanket" 4(d) rule—which treats threatened and endangered species identically for purposes of the ESA's take prohibition. *See* 50 C.F.R. § 17.31 (2018).

The Industry Intervenors will also suffer real-world harms akin to those described above, as previously detailed in Industry Intervenors' response to the Federal Defendants' motion for voluntary remand. *See* ECF 153 at 14-23. An abrupt return to the blanket 4(d) rule would again require members of the regulated community to alter their practices to avoid violating prohibitions against incidental take—which in many cases are overbroad—and will likely frustrate implementation of beneficial conservation actions the members would otherwise undertake. *See* Yates/AFBF Decl. at ¶¶ 10, 11, 13 (ECF 36-3); Joseph/AFRC Decl. at ¶ 9 (ECF 36-4); Meadows/API Decl. at ¶¶ 5, 9-10 (ECF 36-5); Murray/NAFO Decl. at ¶¶ 8-9 (ECF 36-7); Ward/NAHB Decl. at ¶¶ 8-12 (ECF 36-8); Hart/NCBA Decl. at ¶¶ 3-4 (ECF 36-9); Beymer/PLC Decl. at ¶¶ 3-4 (ECF 36-10). A return to the pre-2019 Section 4 Rule would also harm the Industry Intervenors for similar reasons as those articulated by the Private Landowner Intervenors: they will

again face substantial and uncertain operational costs, the cancellation, suspension, or slowing of contracts, and the loss of access to portions of their property due to overbroad critical habitat designations. *See* Joseph/AFRC Decl. at ¶¶ 5-6 (ECF 36-4); Imbergamo/FFRC Decl. at ¶¶ 4, 6 (ECF 36-6); Murray/NAFO Decl. at ¶ 7 (ECF 36-7); Meadows/API Decl. at ¶¶ 5-6 (ECF 36-5). And resuscitating the pre-2019 section 7 regime will reduce transparency, promote inefficiency, and re-impose burdensome and time-consuming requirements that are often barriers to members of the Industry Intervenors obtaining federal permits, licenses, leases, or contracts that are necessary for their operations. *See* Meadows/API Decl. at ¶ 7 (ECF 36-5); Ward/NAHB Decl. at ¶ 9 (ECF 36-8); Yates/AFBF Decl. at ¶ 8 (ECF 36-3); Joseph/AFRC Decl. at ¶ 5 (ECF 36-4); Meadows/API Decl. at ¶ 7 (ECF 36-5); Imbergamo/FFRC Decl. at ¶ 4 (ECF 36-6); Beymer/PLC Decl. at ¶ 2 (ECF 36-10).

Immense harm will thus result without a stay. Absent a stay, the 2019 Rules will be vacated, the unlawful 2016 rules will be resurrected, and the Services will soon promulgate a new set of rules that would cause even more changes and likely preclude the Defendant Intervenors from fully exercising their appellate rights. As even the Federal Defendants recognize, the disruptive whipsaw effect of such a ruling cannot be overstated: "It would cause confusion among the public, other agencies, and stakeholders, and impede the efficiency of ESA implementation, by abruptly altering the regulatory framework and creating uncertainty about which standards to apply." ECF 146 at 36; *see also Nat'l Family Farm Coal.*, 966 F.3d at 929 (noting the "disruptive consequences of an interim change that may itself be changed" (citation omitted)).

**C.      A Stay Pending Appeal is in the Public Interest and Will Not Harm Plaintiffs.**

Plaintiffs, by contrast, will not be harmed by a stay. The Services have indicated that they will address Plaintiffs' concerns on remand, and Plaintiffs are not entitled to vacatur without having proved that the regulations they challenge are unlawful. And as the Federal Defendants pointed out, "Plaintiffs still have not established any real or tangible harm from implementation of the 2019 ESA Rules." ECF 154 at 10.

1   As for the public interest, the public is also entitled to participate in notice and comment

2   before a duly enacted regulation is vacated through a judicial bypass procedure never contemplated

3   by the APA. The public's reliance interests would also be served by the stability of the 2019 Rules

4   while the Services engage in additional rulemaking. The alternative is untenable: immediately

5   vacating the 2019 regulations and subjecting stakeholders to the 2016 regulations, only to have

6   those soon replaced by another set of regulations. This Court would serve the public interest and

7   minimize confusion by granting a stay.

8   **IV.   CONCLUSION**

9   For the above reasons, the State Intervenors, the Private Landowner Intervenors, and the

10   Industry Intervenors respectfully request that the Court stay its order vacating the challenged Rules

11   pending appeal.

12

13   In compliance with Local Rule 5-1, the filer of this document attests that all signatories

14   listed have concurred in the filing of this document.

15   Respectfully submitted this 21st day of July, 2022.

16

17

18

19

20

21

22

23

24

25

26

27

28

STEVE MARSHALL
Attorney General of Alabama

s/ A. Barrett Bowdre
Edmund G. LaCour Jr. (*pro hac vice*)
*Solicitor General*
James W. Davis (*pro hac vice*)
*Deputy Attorney General*
A. Barrett Bowdre (*pro hac vice*)
*Deputy Solicitor General*
OFFICE OF THE ALABAMA ATTORNEY
GENERAL
501 Washington Ave.
Montgomery, AL 36130
Telephone: (334) 353-2196
Fax: (334) 353-8400
E-mail: edmund.lacour@AlabamaAG.gov
jim.davis@AlabamaAG.gov
barrett.bowdre@AlabamaAG.gov

*Counsel for Defendant-Intervenor*
*State of Alabama*

s/ Paul Beard II
Paul Beard II (SBN 210563)
FISHERBROYLES LLP
5670 Wilshire Blvd., Ste. 1800
Los Angeles, CA 90036-5653
Telephone: (818) 216-3988
Fax: (213) 402-5034
E-mail: paul.beard@fisherbroyles.com

*Counsel for Intervening States*

MARK BRNOVICH
Attorney General of Arizona

s/ L. John LeSueur
L. John LeSueur (*pro hac vice*)
Assistant Attorney General
OFFICE OF THE ARIZONA ATTORNEY GENERAL
2005 N. Central Avenue
Phoenix, Arizona 85004
Telephone: (602) 542-0640
E-mail: John.LeSueur@azag.gov

*Counsel for Defendant-Intervenor*
*State of Arizona ex rel. Ariz. Game & Fish*
*Commission*

s/ Charles T. Yates
Charles T. Yates (SBN 327704)
Email: cyates@pacificlegal.org
Damien M. Schiff (SBN 235101)
Email: dschiff@pacificlegal.org
PACIFIC LEGAL FOUNDATION
555 Capitol Mall, Ste. 1290
Sacramento, CA 95814
Telephone: (916) 419-7111

*Counsel for Private-Landowner-Intervenors*
*Washington Cattlemen's Association and*
*Pacific Legal Foundation*

s/ Christopher J. Carr
Christopher J. Carr (SBN 184076)
Navi Singh Dhillon (SBN 279537)
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, CA 94111
Telephone: (415) 856-7000
chriscarr@paulhastings.com
navidhillon@paulhastings.com

*Counsel for Industry Defendant-Intervenors*
*American Farm Bureau, American Forest*
*Resource Council, American Petroleum*
*Institute, Federal Forest Resource Coalition,*
*National Alliance of Forest Owners, National*
*Association of Home Builders, National*
*Cattlemen's Beef Association, and Public*
*Lands Council*

*[Additional counsel listed on next page]*

DEREK SCHMIDT
Attorney General of Kansas

s/ Jeffrey A. Chanay
Jeffrey A. Chanay (*pro hac vice*)
*Chief Deputy Attorney General*
OFFICE OF THE KANSAS ATTORNEY GENERAL
120 SW Tenth Avenue
Topeka, KS 66612-1597
Telephone: (785) 296-2215
Fax: (785) 291-3767
E-mail: jeff.chanay@ag.ks.gov

*Counsel for Defendant-Intervenor*
*State of Kansas*

DOUGLAS J. PETERSON
Attorney General of Nebraska

s/ Justin D. Lavene
Justin D. Lavene (*pro hac vice*)
*Assistant Attorney General*
Carlton Wiggam (*pro hac vice*)
*Assistant Attorney General*
2115 State Capitol
Lincoln, NE 68509
Telephone: (402) 471-2682
E-mail: justin.lavene@nebraska.gov
carlton.wiggam@nebraska.gov

*Counsel for Defendant-Intervenor*
*State of Nebraska*

AUSTIN KNUDSEN
Attorney General of Montana

s/ David Dewhirst
David Dewhirst (*pro hac vice*)
*Solicitor General*
MONTANA DEPARTMENT OF JUSTICE
215 N. Sanders St., P.O. Box 201401
Helena, MT 59620-1401
Telephone: (406) 444-3602
Fax: (406) 444-2026
E-mail: david.dewhirst@mt.gov

*Counsel for Defendant-Intervenor*
*State of Montana*

TREG. R. TAYLOR
Attorney General of Alaska

LESLIE RUTLEDGE
Attorney General of Arkansas

LAWRENCE G. WASDEN
Attorney General of Idaho

ERIC S. SCHMITT
Attorney General of Missouri

DREW H. WRIGLEY
Attorney General of North Dakota

SEAN D. REYES
Attorney General of Utah

PATRICK MORRISEY
Attorney General of West Virginia

BRIDGET HILL
Attorney General of Wyoming

Defendant Intervenors'
Mot. for Stay Pending Appeal
No. 4:19-cv-06013-JST