1   ROB BONTA
    Attorney General of California
2   DAVID A. ZONANA, State Bar No. 196029
    DAVID G. ALDERSON, State Bar No. 231597
3   Supervising Deputy Attorneys General
    GEORGE TORGUN, State Bar No. 222085
4   TARA MUELLER, State Bar No. 161536
    Deputy Attorneys General
5    1515 Clay Street, 20th Floor
     P.O. Box 70550
6    Oakland, CA  94612-0550
     Telephone:  (510) 879-1002
7    Fax:  (510) 622-2270
     E-mail:  George.Torgun@doj.ca.gov
8
    *Attorneys for Plaintiff State of California*
9
    *[Additional counsel listed on signature page]*
10

11              IN THE UNITED STATES DISTRICT COURT
12          FOR THE NORTHERN DISTRICT OF CALIFORNIA
                       OAKLAND DIVISION
13

14  STATE OF CALIFORNIA, *et al.*,          Case No. 4:19-cv-06013-JST

15                      Plaintiffs,          Related Cases:  No. 4:19-cv-05206-JST
16          v.                                              No. 4:19-cv-06812-JST

    HAALAND, *et al.*,
17                                           PLAINTIFFS' JOINT OPPOSITION TO
                        Defendants,          MOTION FOR STAY PENDING APPEAL
18
            and                              Date:      October 20, 2022
19                                           Time:      2:00 pm
    STATE OF ALABAMA, *et al.*,              Place:     Courtroom 6, 2nd Floor
20                                           Judge:     Hon. Jon S. Tigar
                 Defendant-Intervenors.
21

22

23

24

25

26

27

28

TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................ 2

ARGUMENT .................................................................................................... 4

    I.      INTERVENORS ARE NOT ENTITLED TO A STAY BECAUSE THEY
           HAVE FAILED TO MAKE A STRONG SHOWING OF SUCCESS ON
           THE MERITS OF THEIR APPEAL. ...................................................... 5

           A.      Intervenors' Appeal Cannot Succeed Because the Remand Order Is
                  Non-Final and Unappealable by Them. ..................................... 5

           B.      Intervenors Are Unlikely to Succeed in Establishing that Vacatur
                  of the 2019 ESA Rules Was Erroneous. .................................... 6

           C.      This Court May Apply the *Allied-Signal* Factors and Properly Did
                  So Here. ................................................................................. 12

    II.     INTERVENORS FAIL TO ESTABLISH IRREPARABLE INJURY,
           WHICH IS FATAL TO THEIR MOTION. ....................................... 17

            A.      Intervenors' Claimed Injuries Are Wholly Speculative. ......................... 17

           B.      Economic Injuries Are Not Enough to Justify a Stay. ............................. 19

    III.    HARM TO PLAINTIFFS AND THE PUBLIC INTEREST WEIGH
           HEAVILY AGAINST A STAY ..................................................... 20

            A.      This Court Has Already Determined that Significant Harm Will
                  Result from Keeping the 2019 ESA Rules in Effect During
                  Remand. ................................................................................ 21

           B.      The Public Interest Is Best Served by Vacating the 2019 ESA
                  Rules. .................................................................................... 23

CONCLUSION ................................................................................................. 24

PLAINTIFFS' JOINT OPPOSITION TO MOTION FOR STAY PENDING APPEAL
Case No. 4:19-cv-06013-JST

TABLE OF AUTHORITIES

**Cases**

*Al Otro Lado v. Wolf,*
    952 F.3d 999 (9th Cir. 2020) .......................................................................... 20

*All. for the Wild Rockies v. Cottrell,*
    632 F.3d 1127 (9th Cir. 2011) ........................................................................ 21

*Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n,*
    988 F.2d 146 (D.C. Cir. 1993) ....................................... 1, 4, 12, 13, 16

*Alsea Valley All. v. Dep't of Com.,*
    358 F.3d 1181 (9th Cir. 2004) ...................................................................... 5, 6

*Am. Hosp. Ass'n v. Harris,*
    625 F.2d 1328 (7th Cir. 1980) ....................................................................... 20

*American Waterways Operations v. Wheeler,*
    427 F. Supp. 3d 95 (D.D.C. 2019) .............................................................. 12

*Amoco Prod. Co. v. Vill. of Gambell,*
    480 U.S. 531 (1987) ......................................................................................... 22

*ASSE Int'l, Inc. v. Kerry,*
    182 F. Supp. 3d 1059 (C.D. Cal. 2016) ........................................ 8, 12, 16

*Cal. by & Through Becerra v. Azar,*
    501 F. Supp. 3d 830 (N.D. Cal. 2020) ....................................................... 23

*California Cmtys. Against Toxics v. EPA,*
    688 F.3d 989 (9th Cir. 2012) ........................................................................ 9, 11

*Chlorine Chemistry Council v. EPA,*
    206 F.3d 1286 (D.C. Cir. 2000) ...................................................................... 9

*Cottonwood Envt'l Law Ctr. v. U.S. Forest Serv.,*
    789 F.3d 1075 (9th Cir. 2015) .................................................................. 21, 22

*Crow Indian Tribe v. United States,*
    965 F.3d 662 (9th Cir. 2020) ........................................................................... 6

*Ctr. for Native Ecosys. v. Salazar,*
    795 F. Supp. 2d 1236 (D. Colo. 2011) ......................................... 8, 9, 10, 13, 21

*Doe #1 v. Trump,*
    957 F.3d 1050 (9th Cir. 2020) .................................................................. 20, 24

*E. Bay Sanctuary Covenant v. Biden*,
    993 F.3d 640 (9th Cir. 2021) ................................................................. 17, 20

*Ford Motor Co. v. Nat'l Labor Rel. Bd.*,
    305 U.S. 364 (1939) ...................................................................................... 9

*Grosz-Salomon v. Paul Revere Life Ins. Co.*,
    237 F.3d 1154 (9th Cir. 2001) ................................................................... 16

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    938 F.3d 985 (9th Cir. 2019) ..................................................................... 20

*Idaho Farm Bur. Fed'n v. Babbitt*,
    58 F.3d 1392 (9th Cir. 1995) ..................................................................... 11

*In Re Clean Water Act Rulemaking*,
    568 F. Supp. 3d 1013 (N.D. Cal. 2021) ...................................................... 7

*Invenergy Renewables LLC v. United States*,
    476 F. Supp. 3d 1323 (Ct. Int'l Trade 2020) ............................................ 18

*Lands Council v. McNair*,
    537 F.3d 981 (9th Cir. 2008) ..................................................................... 21

*League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*,
    752 F.3d 755 (9th Cir. 2014) ..................................................................... 21

*Leiva-Perez v. Holder*,
    640 F.3d 962 (9th Cir. 2011) ................................................................ 17, 20

*Limnia v. U.S. Dep't of Energy*,
    857 F.3d 379 (D.C. Cir. 2017) ................................................................... 12

*Liu Luwei v. Phyto Tech Corp.*,
    No. CV 18-2174-JFW, 2018 WL 11255593 (C.D. Cal. 2018) ................... 20

*Louisiana v. Am. Rivers*,
    142 S. Ct. 1347 (Apr. 6, 2022) ..................................................................... 7

*N. Coast Rivers All. v. DOI*,
    No. 1:16-cv-00307, 2016 WL 8673038 (E.D. Cal. Dec. 16, 2016) ........ 8, 12

*N. Mariana Islands v. United States*,
    686 F. Supp. 2d 7 (D.D.C. 2009) ............................................................... 18

*Nat'l Family Farm Coal. v. EPA*,
    966 F.3d 893 (9th Cir. 2020) ..................................................................... 13

iv

*Nat'l Ski Areas Ass'n v. U.S. Forest Serv.,*
  910 F. Supp. 2d 1269 (D. Colo. 2012) ............................................................... 8, 10

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.,*
  422 F.3d 782 (9th Cir. 2005) ............................................................................... 22

*Navajo Nation v. Regan,*
  563 F. Supp. 3d 1164 (D. N.M 2021) ....................................... 8, 9, 10, 12, 15, 19

*Nken v. Holder,*
  556 U.S. 418 (2009) .............................................................................................. 4

*NRDC v. DOI,*
  275 F. Supp. 2d 1136 (C.D. Cal. 2002) .................................... 8, 9, 11, 12, 21

*Pascua Yaqui Tribe v. EPA,*
  557 F. Supp. 3d 949 (D. Ariz. 2021) ................... 8, 10, 12, 13, 16, 19, 23, 24

*Pollinator Stewardship Council v. EPA,*
  806 F.3d 520 (9th Cir. 2015) ........................................................................ 11, 13

*Porter v. Warner Holding Co.,*
  328 U.S. 395 (1946) .......................................................................................... 9, 10

*Sampson v. Murray,*
  415 U.S. 61 (1974) .............................................................................................. 20

*SKF USA, Inc. v. United States,*
  254 F.3d 1022 (Fed. Cir. 2001) ....................................................................... 9, 11

*Tenn. Valley Auth. v. Hill,*
  437 U.S. 153 (1978) ............................................................................... 21, 22, 23

*Trujillo v. Gen. Elec. Co.,*
  621 F.2d 1084 (10th Cir. 1981) ............................................................................ 9

*Tyler v. Fitzsimmons,*
  990 F.2d 28 (1st Cir. 1993) ................................................................................. 10

*United States v. Morgan,*
  307 U.S. 183 (1939) ............................................................................................ 10

*Vermont Yankee Nuclear Power Corp. v. NRDC,*
  435 U.S. 519 (1978) ............................................................................................ 10

*Washington v. Trump,*
  847 F.3d 1151 (9th Cir. 2017) ........................................................................... 4, 5

*Webster v. Doe*,
    486 U.S. 592 (1988).................................................................................................... 10

*Weinberger v. Romero-Barcelo*,
    456 U.S. 305 (1982)...................................................................................................... 9

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*,
    139 S. Ct. 361 (2018).................................................................................................. 17

*Wild Rockies v. Marten*,
    No. CV 17-21-M, 2018 WL 2943251 (D. Mont. June 12, 2018) ................................ 8

**Statutes**

5 U.S.C. § 553............................................................................................................... 18

5 U.S.C. § 702............................................................................................................... 11

16 U.S.C. § 1531........................................................................................................... 23

16 U.S.C. § 1532........................................................................................................... 23

16 U.S.C. § 1536........................................................................................................... 23

28 U.S.C. § 1291............................................................................................................. 5

**Regulations**

84 Fed. Reg. 44,753 (Sept. 26, 2019) ............................................................................ 2

84 Fed. Reg. 44,976 (Sept. 26, 2019) ............................................................................ 2

84 Fed. Reg. 45,020 (Sept. 26, 2019) ............................................................................ 2

87 Fed. Reg. 37,757 (June 24, 2022) ........................................................................... 17

INTRODUCTION

On July 5, 2022, this Court granted the Services' request for voluntary remand of three Endangered Species Act ("ESA") rules issued by the U.S. Fish and Wildlife Service and National Marine Fisheries Service ("the Services") in 2019 ("2019 ESA Rules").  Order Granting Motion to Remand and Vacating Challenged Regulations, ECF 168 ("Remand Order").[1]  In doing so, however, this Court denied the Services' request for remand without vacatur. Applying the well-established test set forth in *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Commission*, 988 F.2d 146, 150–51 (D.C. Cir. 1993), this Court found ample evidence—primarily from the Services themselves—of substantive and procedural flaws in the 2019 ESA Rules.  Furthermore, the Court found that keeping the 2019 ESA Rules in place upon remand would cause more public and inter-agency confusion than vacating them and would not harm any interested party, particularly because the Services had already announced their intent to revise or rescind them.

Now Intervenors seek to stay the effectiveness of the vacatur portion of this Court's ruling pending appeal to the Ninth Circuit, based on an unreasoned order of the U.S. Supreme Court in a different case.  As discussed below, that effort should fail.  First, Intervenors cannot establish a likelihood of success on appeal.  Because remands of agency rules are generally non-final for appellate purposes, Intervenors' appeal is jurisdictionally deficient.  Even if Intervenors could overcome the jurisdictional issue, Intervenors fail to show that the Court's well-founded order was erroneous.  The Supreme Court order upon which Intervenors heavily rely contains no legal analysis or discussion and lacks precedential force, so it cannot adequately support their theory that district courts lack equitable authority to order voluntary remand with vacatur.

Second, Intervenors fail to show how they are harmed by returning to a status quo that has successfully governed implementation of the ESA for over 30 years.  Intervenors' assertions

---

[1] Plaintiffs are filing the same joint opposition in each of the three related cases.  Unless otherwise noted, all ECF references are to numbers from the earliest filed case, *Center for Biological Diversity v. Haaland*, No. 4:19-cv-5206-JST (N.D. Cal., filed Aug. 19, 2019).

1    to the contrary are incorrect and fall well short of establishing the substantial and irreparable

2    harm required to justify a stay.  In contrast, as this Court has already recognized, significant

3    public confusion and harm would befall Plaintiffs, the public, species, and habitat were the 2019

4    ESA Rules to remain in place indefinitely during the remand and appeal process.  As a result,

5    injury to Plaintiffs and the public interest weigh heavily against issuing a stay.  Plaintiffs ask the

6    Court to deny Intervenors' motion.[2]

BACKGROUND

7

8       In 2019, the Services issued three rules that significantly and unlawfully weakened

9    longstanding protections for the more than 1600 domestic plant and animal species listed as

10    endangered or threatened under the ESA.  The Listing Rule (ESA § 4) unlawfully injected

11    economic considerations into the listing process, limited the circumstances under which species

12    could be listed as "threatened" in the future, and fundamentally altered the Services' approach to

13    designating critical habitat, allowing the Services to exempt habitat that is vital for species

14    recovery.  84 Fed. Reg. 45,020 (Sept. 26, 2019).  The Interagency Consultation Rule (ESA § 7)

15    added requirements and definitions that reduced the number and scope of, and alternatives and

16    mitigation measures for, the statutorily required inter-agency consultations for federal agency

17    actions to protect listed species and critical habitat.  84 Fed. Reg. 44,976 (Sept. 26, 2019).  And

18    the Blanket Rule Repeal (ESA § 4(d)) removed automatic protections against take (i.e., harming

19    or killing) of newly-listed threatened species.  84 Fed. Reg. 44,753 (Sept. 26, 2019).

20       Three sets of plaintiffs representing environmental groups, an animal welfare group, and

21    nineteen states and cities challenged the 2019 ESA Rules as unlawful and arbitrary and

22    capricious under the ESA, National Environmental Policy Act ("NEPA"), and the Administrative

23    Procedure Act ("APA").  ECF 1.  A coalition of industry groups, various private landowners, and

24    a group of other states moved to intervene in support of the rules, ECF 36, 41, 47.  Plaintiffs

25

26    [2] Plaintiffs filed a joint Rule 59(e) motion to alter or amend the judgment on July 28, 2022, ECF 180, and ask the Court to defer ruling on Intervenors' stay motion until the motions can be heard and decided together.

27

28    PLAINTIFFS' JOINT OPPOSITION TO MOTION FOR STAY PENDING APPEAL
Case No. 4:19-cv-06013-JST       2

survived the Services' motions to dismiss and filed motions for summary judgment in January 2021.  ECF 116.

Upon taking office, President Biden signed Executive Order 13990, directing the Services to review the 2019 ESA Rules in light of national environmental protection objectives. While the Services considered that Executive Order, Plaintiffs agreed to several successive litigation stays.  But after Plaintiffs opposed the Services' motion to prolong the stay for another year and a half, ECF 132, the Court restored the summary judgment briefing schedule, finding that while the rules are "on the books, ... the plaintiffs make out a case of a possible damage." ECF 138, Stay Transcript at 23.  In response, despite previously publicly announcing an intent to revise the 2019 ESA Rules, the Services ceased all work on any revised rules and rescinded the previous target rulemaking deadlines—leaving the 2019 ESA Rules in effect with no end date. *See* ECF 146-1, Third Frazer Decl. ¶¶12–13; ECF 146-2, Fourth Rauch Decl. ¶¶9–10.  Plaintiffs refiled their summary judgment motions on October 15, 2021.  ECF 142.

In lieu of addressing the substance of Plaintiffs' motions, and despite acknowledging their "substantial and legitimate concerns over many aspects of these rules," the Services moved for voluntary remand of the 2019 ESA Rules *without* vacatur.  ECF 146 at 22–23.  Plaintiffs opposed the Services' motion, arguing remand *with* vacatur was the appropriate remedy and again highlighting the significant harms resulting from continued application of the unlawful 2019 ESA Rules.  *See* ECF 149 at 12–21.  In the alternative, Plaintiffs requested that remand be denied altogether, and summary judgment proceedings continue.  *Id.*

Following supplemental briefing on the Services' NEPA violations as requested by the Court, the Court issued the Remand Order granting the Services' request to voluntarily remand this action and Plaintiffs' request to vacate the 2019 ESA Rules.  ECF 168.  The Court noted its inherent equitable authority to vacate the rule, and in doing so noted that an order vacating the rule in response to the Services' voluntary remand motion would not be inconsistent with any Ninth Circuit authority, Remand Order at 7, and that a majority of district courts in this Circuit

have so ruled, *id*. at 6.  The Court also emphasized that the Services' own "substantial concessions regarding the infirmity of the 2019 ESA Rules" weighed in favor of that result.  *Id.* at 7 n.8.

The Court then applied the two vacatur factors set forth in *Allied-Signal, Inc.*, 988 F.2d at 150–51.  It again highlighted the Services' admission of "substantial" and "legitimate" concerns about the 2019 ESA Rules, *id.* at 8–9, and stated that "on this record, the Court has no difficulty in concluding that 'fundamental flaws in the agency's decision make it unlikely that the same rule[s] would be adopted on remand,'" *id.* at 9.  The Court also found no serious or irremediable harm from vacatur, concluding that leaving the 2019 ESA Rules in place would cause harm and equal or greater confusion than restoring regulations that had been in place since at least 1986.  *Id.* at 9.

Intervenors filed a notice of appeal and moved this Court to stay the Remand Order pending appeal.  ECF 171.  Plaintiffs filed a motion under Fed. R. Civ. P. 59(e), requesting that the Court amend its remand order and judgment to rule on Plaintiffs' NEPA claims.  *See* ECF 180.  If the Court grants Plaintiffs' Rule 59(e) motion, this would moot Intervenors' stay motion, and consequently Plaintiffs ask the Court to consider these motions together.

ARGUMENT

A stay is "an intrusion into the ordinary process of administration and judicial review." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (cleaned up).  Even when "irreparable injury might otherwise result," a stay pending appeal "is not a matter of right."  *Washington v. Trump*, 847 F.3d 1151, 1164 (9th Cir. 2017) (per curiam) (*quoting Nken*, 556 U.S. at 433).  "It is instead an exercise of judicial discretion," with the propriety of issuance "dependent upon the circumstances of the particular case."  *Id.* (internal quotations omitted).  "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433–34.

Four factors govern whether the court should issue a stay: (1) whether the applicant has made a "strong showing" of likely success on the merits; (2) whether the applicant will be

irreparably injured without a stay; (3) whether the stay will "substantially injure" other parties; and (4) whether the public interest favors a stay. *Washington*, 847 F.3d at 1164. "The first two factors ... are the most critical." *Id*. As set out below, because Intervenors fail to carry their burden with regard to any of these factors, the Court should deny their request for a stay.

I.    INTERVENORS ARE NOT ENTITLED TO A STAY BECAUSE THEY HAVE FAILED TO MAKE A STRONG SHOWING OF SUCCESS ON THE MERITS OF THEIR APPEAL.

A.    <u>Intervenors' Appeal Cannot Succeed Because the Remand Order Is Non-Final and Unappealable by Them.</u>

Intervenors' appeal is unlikely to succeed because the Remand Order is non-final and cannot be appealed by Intervenors. Appellate courts generally have jurisdiction only over "final decisions of the district courts." 28 U.S.C. § 1291. A district court order remanding a matter to an agency, with or without vacatur, is generally considered non-final. *See Alsea Valley All. v. Dep't of Commerce*, 358 F.3d 1181, 1184–86 (9th Cir. 2004). "A remand order will be considered 'final where (1) the district court conclusively resolves a separable legal issue, (2) the remand order forces the agency to apply a potentially erroneous rule which may result in a wasted proceeding, and (3) review would, as a practical matter, be foreclosed if an immediate appeal were unavailable.'" *Id.* at 1184 (cleaned up). In most cases, this means that appeal of an order remanding a matter to an agency is only available to the relevant agency, not defendant-intervenors. *Id.* at 1184–86.

Intervenors' stay motion does not address jurisdiction at all, much less make any attempt to show that they can meet the three-part test for appealing the Remand Order. And, indeed, they cannot. First, although the Court noted the Services themselves had "substantial and legitimate concerns" about legality of the 2019 ESA Rules, it did not conclusively resolve or order the Services to consider any particular issue upon remand. *See* Remand Order at 11. Second, the Remand Order does not force the Services to apply a potentially erroneous rule; to the contrary, it prevents application of the unlawful 2019 ESA Rules and deprivation of Plaintiffs' day in court. Third, Intervenors will have ample opportunity to advocate for the retention of some or all

aspects of the 2019 ESA Rules during the Services' rulemaking processes on remand. *Alsea Valley*, 358 F.3d at 1184–85. Here, as in *Alsea Valley*, "it is possible that the action" taken by the [agency] on remand "will provide [Intervenors] with all the relief [they seek]." *Id.* at 1185. And "[i]f [Intervenors] perceive[] the resulting rule (or lack thereof) to be unlawful and adverse to [their] interests, [they] can bring suit at that point to challenge the Service's action. If dissatisfied with the district court's determination, [Intervenors] would then be able to appeal." *Id.* Finally, Intervenors also can challenge any alleged unlawful application of the pre-2019 ESA rules in the interim.

Intervenors also cannot avoid the general rule prohibiting non-agency appeals of remand orders by framing their appeal as relating only to the vacatur portion of the Remand Order. *Alsea Valley* rejected just such an attempt to "parse" a remand order that vacated an agency decision, notwithstanding the appealing party's argument that appellate review of the vacatur would "effectively be denied by the immediate harm" that could occur. *Id.* at 1185–86. Nothing of substance distinguishes Intervenors' argument here from the appealing party's argument in *Alsea Valley*, and the result—dismissal of the appeal—is likely to be the same.[3]

In short, Intervenors are unlikely to succeed on the merits of their appeal because the Remand Order is not final and not appealable by Intervenors in this case.

B. **Intervenors Are Unlikely to Succeed in Establishing that Vacatur of the 2019 ESA Rules Was Erroneous.**

1. *The unexplained Supreme Court order in* Louisiana v. American Rivers *does not compel a stay here.*

Even if Intervenors could surmount the procedural barriers to their appeal, they remain unlikely to succeed on the merits of their challenge to the vacatur portion of this Court's Remand

---

[3] *Crow Indian Tribe v. United States*, 965 F.3d 662 (9th Cir. 2020), is not to the contrary. In that case, the Ninth Circuit permitted a non-agency party to appeal where the agency also had appealed and the District Court had issued a "definitive ruling" ordering the agency to include new provisions in the rule on remand—provisions the appealing party opposed. *Id.* at 676. Here, the Remand Order includes no such definitive and conclusive resolution of any issues raised by Intervenors and does not require the Services to include any specific provision in revised ESA rules.

1    Order.  Intervenors pin their hopes on a summary order from the U.S. Supreme Court's

2    emergency docket in another matter.  *See* ECF 171 at 9–10 ("The Supreme Court's stay in

3    *Louisiana* … compels the result in this case"), citing *Louisiana v. Am. Rivers*, 142 S. Ct. 1347

4    (Apr. 6, 2022) (*Louisiana*).  The *Louisiana* order—issued after the parties to this case had

5    completed briefing on the Services' motion to remand—took the unusual step of staying, without

6    explanation, another Northern California District Court judge's ruling vacating a federal

7    regulation without finally determining the merits of the challenges to that rule.

8         The key issue on appeal in the *Louisiana* case was whether the district court had authority

9    to vacate a Clean Water Act ("CWA") regulation in response to the federal government's request

10   for a voluntary remand, without first deciding the merits of the challenges to that rule.  Similar to

11   the instant case, the district court (Judge Alsup, N.D. Cal.) granted the EPA's motion for

12   voluntary remand and vacated the CWA rule without reaching a final decision on the merits.  *In*

13   *Re Clean Water Act Rulemaking*, 568 F. Supp. 3d 1013 (N.D. Cal. 2021).  The district court and

14   the Ninth Circuit both denied the intervenors' post-judgment motions for stay of the vacatur

15   portion of the district court's ruling pending appeal.  Though EPA did not appeal and opposed

16   requests to stay the order, the intervenors in *Louisiana* then asked the Supreme Court to stay the

17   vacatur pending appeal or decide the case on the merits before the Ninth Circuit had ruled.

18   Plaintiffs and EPA again opposed, but the Supreme Court granted the stay request in a one-

19   paragraph order, without explanation and "without full briefing and argument."  *See Louisiana*,

20   142 S. Ct. at 1349 (Kagan J. dissenting).

21        Intervenors argue that, in granting the stay, "the Court necessarily determined that the

22   defendant intervenors are likely to succeed on the merits of their appeal and that irreparable harm

23   would likely result without a stay."  ECF 171 at 10.  But no such reasoning is apparent from the

24   face of the order.  While the order may raise questions about what the Supreme Court may one

25   day decide regarding a court's authority to vacate a rule on remand without making a final

26   decision on the merits, this issue has yet to be decided by either the Ninth Circuit or the U.S.

27

28   PLAINTIFFS' JOINT OPPOSITION TO MOTION FOR STAY PENDING APPEAL
     Case No. 4:19-cv-06013-JST              7

Supreme Court.  And indeed, Intervenors acknowledge, as they must, that the Supreme Court's stay order in *Louisiana* is not binding precedent.  *Id.*  Had the Supreme Court intended to definitively determine that vacatur is not available absent a merits ruling, the Court could have issued a reasoned opinion saying so—but the Court chose not to do this.

Moreover, the *Louisiana* case is in a different procedural posture than this case, with briefing on the merits of the appeal and issuance of a revised replacement CWA rule both on the horizon.  These factors certainly could have influenced the Supreme Court's decision.  Here, by contrast, the appeal process has just begun, and the Services have no definitive schedule for issuance of revised ESA rules, meaning that the challenged 2019 ESA Rules could be in effect for several more years to come if the vacatur portion of the Remand Order is stayed. Accordingly, the balance of equities strongly weighs against staying the vacatur in this case.

For all these reasons, the Supreme Court's ruling in *Louisiana* provides insufficient grounds on which to grant a stay of the vacatur portion of the Remand Order.

2.      *The Court has broad equitable authority to vacate rules on remand.*

Intervenors' constrained views of this Court's inherent equitable authority to vacate a rule on voluntary remand likewise are unpersuasive.  First, as this Court has already explained (Remand Order at 6–7), the weight of district court authority in the Ninth Circuit supports the proposition that courts have equitable authority to vacate agency actions on a motion for voluntary remand.  *See, e.g.*, *Navajo Nation v. Regan*, 563 F. Supp. 3d 1164, 1167–68 (D. N.M 2021); *Pascua Yaqui Tribe v. EPA*, 557 F. Supp. 3d 949, 954 (D. Ariz. 2021); *Wild Rockies v. Marten*, No. CV 17-21-M, 2018 WL 2943251, at *2–4 (D. Mont. June 12, 2018); *ASSE Int'l, Inc. v. Kerry*, 182 F. Supp. 3d 1059, 1064–65 (C.D. Cal. 2016); *N. Coast Rivers All. v. DOI*, No. 1:16-cv-00307, 2016 WL 8673038, at *6 (E.D. Cal. Dec. 16, 2016); *NRDC v. DOI*, 275 F. Supp. 2d 1136, 1143 (C.D. Cal. 2002) ("*NRDC*"); *see also Nat'l Ski Areas Ass'n v. U.S. Forest Serv.*, 910 F. Supp. 2d 1269, 1285–86 (D. Colo. 2012); *Ctr. for Native Ecosys. v. Salazar*, 795 F. Supp. 2d 1236, 1241–42 (D. Colo. 2011).

1    Intervenors directly attack this authority, arguing that such an approach is expressly

2 foreclosed by the APA and precluded by sovereign immunity.  ECF 171 at 17–20.  Concern for

3 the separation of powers, however, has led federal courts to develop a permissive framework

4 under which an agency's request for voluntary remand to reconsider a rule is often granted, even

5 absent a conclusive confession of error.  *SKF USA, Inc. v. United States*, 254 F.3d 1022, 1029

6 (Fed. Cir. 2001); *see also California Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir.

7 2012) ("*CCAT*").  In such cases, the court has discretion over whether to grant the remand, so

8 long as the agency's concerns with the challenged rule are "substantial and legitimate" and the

9 request is not "frivolous or in bad faith." *Id.*  "Voluntary remand is consistent with the principle

10 that administrative agencies have an inherent authority to reconsider their own decisions" and

11 "also promotes judicial economy by allowing the relevant agency to rectify and reconsider an

12 erroneous decision without further expenditure of judicial resources." *NRDC*, 275 F. Supp. 2d at

13 1141 (*quoting Trujillo v. Gen. Elec. Co*., 621 F.2d 1084, 1086 (10th Cir. 1981) (cleaned up)).

14    In such situations, the court also possesses a corresponding equitable authority to vacate

15 rules as necessary to do "complete rather than truncated justice." *Porter v. Warner Holding Co.*,

16 328 U.S. 395, 398 (1946); *see also Ctr. for Native Ecosys.*, 795 F. Supp. 2d at 1241 ("absent an

17 express congressional mandate to the contrary, courts "retain traditional equitable discretion"),

18 (*citing Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982)); *accord NRDC*, 275 F. Supp.

19 2d at 1141 (*citing Ford Motor Co. v. Nat'l Labor Rel. Bd*., 305 U.S. 364, 373 (1939)).  Without

20 equitable authority to vacate a challenged rule on voluntary remand, a plaintiff would be unfairly

21 precluded from litigating a rule—which it asserts is legally invalid and causing ongoing harm—

22 for an indefinite period of time. *Cf. Chlorine Chemistry Council v. EPA*, 206 F.3d 1286, 1288

23 (D.C. Cir. 2000) (denying motion for voluntary remand without vacatur for this reason); *Navajo

24 Nation*, 563 F. Supp. 3d at 1167, 1170 (vacatur warranted where agencies "have not provided

25 any timeline for even proposing a new rule, let alone finalizing one," and ongoing adverse

26 cumulative effects from application of the challenged rule would occur in the meantime).

27

1    A court reviewing agency action "sits as a court of equity" and may shape relief "in

2    conformity to equitable principles." *United States v. Morgan*, 307 U.S. 183, 191 (1939); *see also*

3    *Tyler v. Fitzsimmons*, 990 F.2d 28, 32 n.3 (1st Cir. 1993) (courts have "inherent authority" to

4    condition remand order "as it deems appropriate").  Granting an agency's request for voluntary

5    remand with vacatur balances two competing considerations: allowing an agency to reconsider a

6    problematic rule in the first instance and conserve judicial resources, while, at the same time,

7    avoiding harm to the plaintiff and the public that would result from leaving such rule in place

8    while it is being reconsidered.  *See Navajo Nation*, 563 F. Supp. 3d at 1167–70; *Pascua Yaqui*

9    *Tribe*, 557 F. Supp. 3d at 953–56.  This Court's exercise of its equitable authority here was well

10   within the bounds of this longstanding recognition of judicial authority to review agency actions.

11   Contrary to Intervenors' argument, the APA does not displace this inherent judicial

12   authority to do equity.  Congress's intent to foreclose equitable remedies "must be clear."

13   *Webster v. Doe*, 486 U.S. 592, 603 (1988).  "Unless a statute in so many words, or by a

14   necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of

15   that jurisdiction is to be recognized and applied."  *Porter*, 328 U.S. at 398.  In fact, the APA

16   evinces an opposite intent—to *preserve* rather than restrict the equitable powers of the courts.

17   Section 702 expressly provides that "[n]othing herein (1) affects ... the power or duty of the court

18   to dismiss any action or deny relief on any other appropriate legal or equitable ground."  In other

19   words, section 706(2) is "not exclusive" and expressly does not limit a reviewing court's

20   authority to set aside an agency's action."  *Ctr. for Native Ecosys.*, 795 F. Supp. 2d at 1241; *see*

21   *also National Ski Areas Ass'n*, 910 F. Supp. 2d at 1285.[4]

22   Indeed, the Ninth Circuit has held that, despite the seemingly mandatory language of

23   section 706(2)(A) (e.g., that a reviewing court "shall set aside" agency action it finds unlawful),

24

25   [4] *Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 558 (1978), cited by
     Intervenors, does not dictate a different result, as the quoted portion of that opinion simply held

26   that the courts do not have authority under the APA to second-guess a policy choice made by the
     agency in adopting a challenged rule. That is not what the Court did here.

27

28

1   "when equity demands, the regulation can be left in place while the agency follows the necessary

2   procedures." *Idaho Farm Bur. Fed'n v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir. 1995); *accord*

3   *Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015); *CCAT*, 688 F.3d at

4   992; *NRDC*, 275 F. Supp. 2d at 1145.  If Intervenors were correct that a court's vacatur power

5   began and ended with the "mandatory" language of Section 706(A)(2), then vacatur of an

6   unlawful rule would *always* be mandatory.  It consequently follows that APA does not limit the

7   court's inherent equitable authority.

8   The APA's sovereign immunity waiver provision likewise is not helpful to Intervenors.

9   ECF 171 at 18–19; 5 U.S.C. § 702.  The question raised by Intervenors—whether the Court

10  retained its traditional equity jurisdiction to craft an appropriate remedy on granting an agency's

11  voluntary motion to remand to reconsider a final rule—is simply not a question of sovereign

12  immunity.  Intervenors' reliance on Congress's preservation of "other limitations on judicial

13  review," 5 U.S.C. § 702(1), gets them no further because, as discussed above, there was no such

14  pre-existing limitation on the Court's equitable authority for the APA to preserve.

15  Intervenors' argument that they are being denied the notice and opportunity to comment

16  on rescission of the 2019 ESA Rules (ECF 171 at 19–20) also misses the point.  The issue here is

17  the Court's exercise of its equitable authority to craft an appropriate remedy pending an

18  additional rulemaking on remand—with all attendant APA procedures—in light of all the

19  circumstances of the case and balancing all of the equities.  That judicial authority is not

20  constrained by the APA.

21  Intervenors also overlook the significant protections within the established framework for

22  evaluating agency requests for remand, which, as noted, examines whether the request is

23  "frivolous or in bad faith."  *SKF USA*, 254 F.3d at 1029.  And any decision regarding vacatur

24  must be made pursuant to the two-part *Allied-Signal* test—fully briefed and argued by all parties

25  here—which requires the reviewing court to consider both the magnitude of the agency's error

26  and any prejudice that would result from vacatur.  Intervenors' claim of potential for abuse

27

28  PLAINTIFFS' JOINT OPPOSITION TO MOTION FOR STAY PENDING APPEAL
    Case No. 4:19-cv-06013-JST              11

1   wrongly presumes that the courts will condone agency attempts to repeal rules without notice

2   and comment under the guise of motions for voluntary remand.  In fact, the courts have denied

3   voluntary remand requests when this is the case.  *See, e.g.*, *Limnia v. U.S. Dep't of Energy*, 857

4   F.3d 379, 386–88 (D.C. Cir. 2017); *American Waterways Operations v. Wheeler*, 427 F. Supp.

5   3d 95, 98–99 (D.D.C. 2019).  And Intervenors wholly ignore the countervailing risk that, if

6   vacatur is *not* available, agencies may withdraw illegal actions—like the 2019 ESA Rules—from

7   judicial review, without the accountability of confessing error, and leave parties challenging that

8   action—like Plaintiffs here—without any meaningful remedy.

9        C.    <u>This Court May Apply the *Allied-Signal* Factors and Properly Did So Here.</u>

10        The Intervenors also are unlikely to succeed on their assertion that the Court improperly

11   applied the two-factor test for vacatur in *Allied-Signal*, 988 F.2d 146.

12        *1.*    *The Court may apply Allied-Signal in considering vacatur following a request for voluntary remand.*

13        Citing no authority for the proposition, Intervenors first assert that the Court did cannot

14   apply the first *Allied-Signal* factor regarding the seriousness of the agency's errors without first

15   making a determination regarding the unlawfulness of the challenged rule.  ECF 171 at 20–21.

16   But multiple courts have done so, applying the *Allied-Signal* test to determine whether a rule

17   should be vacated following a motion for voluntary remand of a rule that the government agrees

18   is no longer defensible.  *See, e.g.*, *ASSE Int'l, Inc. v. Kerry*, 182 F. Supp. 3d 1059, 1064 (C.D.

19   Cal. 2016) ("Courts faced with a motion for voluntary remand employ the same equitable

20   analysis courts use to decide whether to vacate agency action after a ruling on the merits")

21   (cleaned up) (*quoting NRDC*, 275 F. Supp. 2d at 1143); *N. Coast Rivers All.*, 2016 WL8673038,

22   at *6 (same); *Pascua Yaqui Tribe*, 557 F. Supp. 3d at 954–55 ("[I]n the Ninth Circuit, remand

23   with vacatur may be appropriate even in the absence of a merits adjudication"); *Navajo Nation*,

24   563 F. Supp. 3d at 1168 (a court's equitable discretion to grant a motion for voluntary remand

25   with vacatur "exists regardless of whether the court has reached a decision on the merits"); *Ctr.*

26

27

28

*for Native Ecosys.*, 795 F. Supp. 2d at 1242 ("vacation of an agency action without an express determination on the merits is well within the bounds of traditional equity discretion").[5]

2.    *The Court properly applied the Allied-Signal factors in this case.*

Intervenors next assert that "even if *Allied-Signal* applied in the context of a rule that has not been found unlawful, it would still counsel against vacatur here." ECF 171 at 22.

The Court's analysis of the first prong of *Allied-Signal*—the seriousness of the agency's errors—is well-supported by the record. As the Court identified, the first prong of *Allied-Signal* seeks to evaluate "whether the agency could adopt the same rule on remand, and whether [the] fundamental flaws in the agency's decision make it unlikely that the same rule would be adopted on remand." Remand Order at 8, citing *Pollinator Stewardship Council*, 806 F.3d at 532; *see also Allied-Signal*, 988 F.2d at 150–51 ("The decision whether to vacate depends on 'the seriousness of the [regulation's] deficiencies (and thus the extent of doubt whether the agency chose correctly)….'"). Courts have recognized that doubt over the propriety of agency actions also can be established by examining: (1) the extent to which the agency's action contravenes the purposes of the statute; (2) whether the agency could adopt the same rule on remand; and (3) whether the action was the result of reasoned decision making. *See Pollinator Stewardship Council*, 806 F.3d at 532; *see also Pascua Yaqui Tribe*, 557 F. Supp. 3d at 955 ("[t]he concerns identified … are not mere procedural errors or problems that could be remedied through further explanation").

Here, the Court correctly found significant doubt over the propriety of the 2019 ESA Rules for all three reasons. The Court first noted that "the Services themselves concede that they 'have substantial concerns with'" numerous procedural and substantive aspects of the 2019 ESA Rules, including the entirety of the Blanket 4(d) Rule Repeal, and several substantive provisions of the Listing Rule and Interagency Consultation Rule. Remand Order at 8, citing ECF 146 at

---

[5] *Nat'l Family Farm Coal. v. EPA*, 966 F.3d 893, 929 (9th Cir. 2020) (ECF 171 at 20–21), does not hold otherwise. Rather, that case simply sets forth the basic *Allied-Signal* test, and applies it in a case where the court had made a merits determination.

29–30, 32.  The Court noted that many of the Services' concerns paralleled those raised by Plaintiffs, as the Services themselves conceded.  *Id.*, *see* ECF 146 at 29–30, 32, 37–38; Fourth Rauch Decl., ECF 146-2, ¶¶6–7 ("The Services are reconsidering the 2019 Joint ESA Rules in light of the text and purpose of the ESA, its Congressional history, and the principles outlined in EO 13990 ... NOAA has substantial concerns about whether portions of the 2019 Joint ESA Rules are consistent with the goals and purposes of the ESA and EO 13990"); Third Frazer Decl., ECF 146-1, ¶ 4 ("After completing its review of the regulations, DOI has identified substantial concerns that warrant reexamination of each of the challenged rules").

In particular, the Services expressed multiple "substantial concerns" with the Blanket 4(d) Rule Repeal that eliminated the so-called "blanket" protections for species listed as threatened, including that the rule "reduces FWS' flexibility and may require additional resources at the time of listing as compared to the blanket rule."  ECF 146 at 29–30; Third Frazer Decl., ECF 146-1, ¶ 5.  The Services also expressed concern with the Listing Rule's deletion of language referencing the ESA's prohibition on considering economic impacts in the listing process, which they stated could "run afoul of" the statute and lead to public confusion as to whether the Service intends to consider economic information in listing determinations.  ECF 146 at 29–30; Third Frazer Decl., ECF 146-1, ¶ 6.  And the Services also identified "substantial concerns with" the Listing Rule's changes to the circumstances under which it is "not prudent" to designate critical habitat, which they stated: (1) could cause public confusion, (2) misstated the benefits of designating critical habitat, and (3) "allow[ed] the Services to regularly decline to designate critical habitat for species threatened by climate change, when that was not [their] intent."  ECF 146 at 30; Third Frazer Decl., ECF 146-1, ¶ 7.  The Services also noted their concerns with the provisions restricting designation of unoccupied habitat in the Listing Rule, stating that "the revisions may go beyond their intended purpose."  Third Frazer Decl., ECF 146-1, ¶ 8.

Finally, the Services likewise expressed "substantial concerns with certain aspects of the Interagency Consultation Rule, namely the provisions related to 'effects of the action' and its definition in 50 C.F.R. §§ 402.02 and 402.17." ECF 146 at 31–32; Third Frazer Decl., ECF 146-1, ¶ 9. Again, the Services indicated that these regulatory changes: (1) were likely to cause public confusion over what types of federal agency actions are subject to section 7 consultation, (2) could be interpreted as unlawfully narrowing the scope of federal agency actions subject to consultation, and (3) "could detract from the Services' effective implementation of Section 7 by adding time and expenses to a consultation." ECF 146 at 31; Third Frazer Decl., ECF 146-1, ¶ 9.

The Court also found that the fact that the Services had already publicly stated their intent to reconsider and revise the Listing and Interagency Consultation Rules and to rescind the Blanket 4(d) Rule Repeal in its entirety demonstrated that the Services were unlikely to adopt the same rule on remand. Remand Order at 8–9.

In short, the Court properly found that "on this record, the Court has no difficulty in concluding that fundamental flaws in the agency's decision make it unlikely that the same rule[s] would be adopted on remand." Remand Order at 9 (quotation omitted). Intervenors are unlikely to succeed in their argument that the errors are not "serious" under the first *Allied-Signal* factor because the Services are not likely to adopt the same rules on remand. ECF 171 at 22. And their conclusory claim that the ESA "confirms that the Services could—and should—adopt the same rules on remand" (*id.*) and their errors were not serious—wholly ignores the Services' significant concessions regarding the multiple legal infirmities of the rules recognized by this Court and the rules' many legal flaws detailed in Plaintiffs' motions for summary judgment.

As to the second *Allied-Signal* factor regarding the disruptive consequences of vacatur, the Court found no serious or irremediable harm from vacatur, quoting the Services themselves explaining just the opposite: that leaving the 2019 ESA Rules in place would cause harm and equal or greater public confusion than vacating them. Remand Order at 9. And the fact that most of the prior ESA rules had been in place for over 30 years provides further support for this

finding. *See Navajo Nation*, 563 F. Supp. 3d at 1169 (vacatur would not be disruptive because "it would simply reinstate the long-term status quo" that "applied for most of the past three decades"); *accord Pascua Yaqui Tribe*, 557 F. Supp. 3d at 956 (reinstating pre-2015 regulatory regime for waters of the United States, which was "familiar to the Agencies and industry alike"). In addition, the Court observed that the Services had already "put the public on notice that the regulations' existence in their current form is unlikely," and consequently it was "doubtful that vacatur would add to" any existing regulatory uncertainty.  Remand Order at 9.

Further, the Court correctly disagreed with Intervenors' arguments that they would be harmed by vacatur of the 2019 ESA Rules, finding that any allegations of harm to them rested on assumptions that the 2019 ESA Rules would continue in force, an assumption the Court found unsupported by the record given the Services' clearly stated intentions to revise and rescind the rules on remand.  *Id.* at 10 ("[R]egardless of whether this Court vacates the 2019 ESA Rules, they will not remain in effect in their current form"); *see ASSE Int'l*, 182 F. Supp. 3d at 1065 (government assertion that vacating rules on remand would cause harm "is undermined by its statements that it intends to vacate them itself on remand").[6]  For all these reasons, the Court's application of the *Allied-Signal* factors is unlikely to be overturned on appeal as an abuse of discretion.  *See Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1163 (9th Cir. 2001) (abuse of discretion standard of review for vacatur).

Lastly, citing no authority, Intervenors argue that the Court should have severed provisions of the 2019 ESA Rules that Plaintiffs did not challenge, the Service did not raise concerns about, and the Services lawfully could enact again.  ECF 171 at 23.  This argument is misplaced because Plaintiffs challenged *all* three rules in full as violating NEPA.  Moreover, the three specific rule provisions (the delisting standard, critical habitat provisions, and the Blanket

---

[6] Intervenors argue that the Court's decision to vacate the rules discounts "to zero" their interest commenting on the rescission of the 2019 ESA Rules.  ECF 171 at 22–23. But this argument is simply a restatement of their challenge to the Court's authority to vacate absent a merits determination as contrary to the APA and *Allied-Signal* (ECF 171 at 20–21), and must fail for the reasons indicated in Parts II.B.2 and II.C.1.

4(d) Rule) Intervenors cite as examples of allegedly severable provisions each are ones that Plaintiffs argued were statutorily *prohibited* rather than "compelled." *Id.* And in any event, contrary to Intervenors' request, courts "ordinarily do not attempt … to fashion a valid regulation from the remnants of the old rule." *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 681 (9th Cir. 2021).

In short, Intervenors have not established a likelihood of success. They are barred from appealing this Court's non-final remand order and, even if the order were appealable, the Court's decision and reasoning were sound.

## II.   INTERVENORS FAIL TO ESTABLISH IRREPARABLE INJURY, WHICH IS FATAL TO THEIR MOTION.

In the Ninth Circuit, irreparable harm is the "bedrock requirement" of obtaining a stay pending appeal, with stays denied to parties that do not meet this threshold, "regardless of their showing on the other stay factors." *Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011). Here, Intervenors have alleged no irreparable harms to justify a stay. Consequently, the Court should deny Intervenors' motion.

### A.   Intervenors' Claimed Injuries Are Wholly Speculative.

Intervenors put forth a host of alleged harms—none of which constitute the irreparable injury needed to satisfy the demanding stay standard. Each of Intervenors' assertions are the type of speculative and unsubstantiated harms that are insufficient to warrant a stay.

At the threshold, Intervenors baldly assert that the pre-2019 regulations are "unlawful," without identifying any support for that position. ECF 171 at 23–24. The only case they cite, *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 139 S. Ct. 361, 368 (2018), did not find any pre-2019 regulation unlawful. Rather, *Weyerhaeuser* holds simply that any areas designated as "critical habitat" must also be "habitat," but it expresses no opinion on the proper interpretation of "habitat" and remanded to the circuit court to consider this question in the first instance, without expressly invalidating any pre-2019 regulation. *Id.* Most importantly, the 2019 ESA Rules did not contain a definition of habitat at all. A separately issued and challenged 2020 rule

did define habitat, but the Services rescinded that rule in June 2022. 87 Fed. Reg. 37,757 (June 24, 2022). As a result, "[r]esurrecting" the pre-2019 regulations does not "fly in the face of the Supreme Court's holding," ECF 171 at 16, or that of any other court. Rather, this Court's vacatur leaves the pre-2019 regulations in exactly the same state as the Supreme Court did: in force while further litigation continues.

Intervenors' separate assertion that vacatur violated their "statutory and procedural rights" is similarly flawed. *Id*. at 24. Intervenors identify no procedural right that is impaired by this Court's vacatur: they *did* participate in notice and comment on the 2019 ESA Rules as well as the briefing on Services' motions to stay and to remand, and they will be able to comment again during the Services' reconsideration of the ESA rules on remand. *Id.* As noted, the Court's Remand Order does not dictate any particular outcome on remand. Similarly, Intervenors identify no infringement of a statutory right because notice and comment rulemaking under the APA does not grant Intervenors, or any other interested party, a right to any specific rule or other substantive outcome from the rulemaking process. *See* 5 U.S.C. § 553.[7] Further, all of the APA cases Intervenors cite relate to actions by agencies bound by the APA, and not to the courts' exercise of their inherent equitable authority, which is not subject to the APA. *See Invenergy Renewables LLC v. United States*, 476 F. Supp. 3d 1323 (Ct. Int'l Trade 2020) (alleging APA violations by the Office of the United States Trade Representative); *N. Mariana Islands v. United States*, 686 F. Supp. 2d 7 (D.D.C. 2009) (alleging APA violations by the Department of Homeland Security).

Intervenors' claims of "significant real-world harm" also do not rise above the level of speculation. ECF 171 at 25. For example, the State Intervenors assert that the 2019 ESA Rules,

---

[7] Intervenors assert that the vacatur prejudicially reinstates certain pre-2019 regulations (the Blanket 4(d) Rule and certain critical habitat provisions) that they previously had challenged as unlawful and settled in 2016, based on the Intervenors' submission of rulemaking petitions and the Services' commitment to reconsider those rules, which process was completed with the 2019 ESA Rules. ECF 171 at 24. But the Court's remand with vacatur simply places Intervenors in the same position they occupied—and indeed bargained for—when the agencies previously re-examined the regulations.

particularly the repeal of the Blanket 4(d) Rule, permitted them to engage in their own separate conservation programs that, in their view, "allowed landowners to view the presence of threatened or endangered species as assets, not liabilities." *Id*. But their declarations do not establish that establishment of these programs were a direct result of the 2019 ESA Rules, and indeed, some of these programs were in effect years prior to enactment of the 2019 ESA Rules. *See generally* ECF 45-3, 47-6, 47-9. For example, while Intervenors showcase Montana's regulation of the Rocky Mountain Grey Wolf population, ECF 171 at 26, they fail to note that Montana assumed responsibility for that species *in 2011*, years prior to the 2019 ESA Rules. ECF 47-8, ¶ 4. Intervenors offer no reason why a return to the pre-2019 regulatory regime would undermine these programs, much less cause irreparable harm.

Finally, Intervenors' argument that reinstating the pre-2019 rules would create a "whipsaw" effect is overblown. With this Court's vacatur, the Services have merely returned to the regulatory regime in effect for decades prior to 2019. Indeed, it is the Services' adoption of the 2019 ESA Rules that dramatically broke with that prior practice and created disruption to the State Intervenors' regulatory regimes. *See Pascua Yaqui Tribe*, 557 F. Supp. 3d at 956; *Navajo Nation*, 563 F. Supp. 3d at 1169 (vacating challenged rules on voluntary remand would not cause irreparable harm because it would simply reinstate the longstanding, preexisting status quo that is well-understood by all parties). Nor can those entities claim any legitimate reliance interests, where, as here, they were on notice of Plaintiffs' challenges to the 2019 ESA Rules within about a month of their adoption, and the Services themselves now have highlighted their infirmities and committed to revising them.

### B.   Economic Injuries Are Not Enough to Justify a Stay.

Separately, the private-party Intervenors' references to increased compliance costs and other claimed economic burdens of complying with the pre-2019 ESA rules do not establish the irreparable injury necessary to justify a stay.[8] ECF 171 at 26–28. Economic harm generally is

---

[8] To the extent that the State Intervenors rely on unsubstantiated economic harms that allegedly will befall their residents, *see* ECF 171 at 26, the same arguments apply.

1   not considered irreparable absent concrete proof of unrecoverable monetary damages, which

2   Intervenors have not offered here.  *See E. Bay Sanctuary Covenant v. Biden*, 993 F.3d at 677 (9th

3   Cir. 2021).  Similarly, a general "risk of delay" to unidentified projects during the permitting

4   process, or the potential for speculative future harm, also is not sufficient.  *See Doe #1 v. Trump*,

5   957 F.3d 1050, 1059 (9th Cir. 2020) ("conclusory factual assertions and speculative arguments"

6   unsupported by the record are insufficient); *Liu Luwei v. Phyto Tech Corp.*, No. CV 18-2174-

7   JFW, 2018 WL 11255593, at *1 (C.D. Cal. 2018) ("pure speculation" of irreparable injury

8   insufficient to justify a stay).

9        Nor can increased compliance costs rise to the level of irreparable injury warranting stay.

10  *See Al Otro Lado v. Wolf*, 952 F.3d 999, 1008 (9th Cir. 2020) ("The key word in this

11  consideration is irreparable.  Mere injuries, however substantial, in terms of money, time and

12  energy necessarily expended . . . are not enough") (*quoting Sampson v. Murray*, 415 U.S. 61, 90

13  (1974)).  As such, courts routinely reject assertions that monetary injury and ordinary

14  compliance costs are irreparable.  *See Doe #1 v. Trump*, 957 F.3d at 1058–60; *hiQ Labs, Inc. v.*

15  *LinkedIn Corp.*, 938 F.3d 985, 993 (9th Cir. 2019) (monetary injury is not normally considered

16  irreparable "absent a threat of being driven out of business"); *see also Am. Hosp. Ass'n v. Harris*,

17  625 F.2d 1328, 1331 (7th Cir. 1980) (determining that "injury resulting from attempted

18  compliance with government regulation ordinarily is not irreparable harm").

19       In sum, Intervenors' vague references to general economic harm and increased

20  compliance costs that they assert will result from reinstatement of the pre-2019 ESA rules are

21  plainly insufficient to meet their burden of establishing irreparable harm necessary for a stay.

22  III.   HARM TO PLAINTIFFS AND THE PUBLIC INTEREST WEIGH HEAVILY
         AGAINST A STAY

23       Intervenors' failure to establish a likelihood of success and and irreparable harm relieves

24  the Court from needing to address the final two factors for granting a stay pending appeal.  *See*

25  *Leiva-Perez*, 640 F.3d at 965.  However, to the extent this Court considers those factors, each

26  also weighs against a stay.  Plaintiffs have detailed numerous harms resulting from

27

28  PLAINTIFFS' JOINT OPPOSITION TO MOTION FOR STAY PENDING APPEAL
    Case No. 4:19-cv-06013-JST          20

implementation of the 2019 ESA Rules, and there is a "well-established 'public interest in preserving nature and avoiding irreparable environmental injury.'" *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1138 (9th Cir. 2011) (*quoting Lands Council v. McNair*, 537 F.3d 981, 1005 (9th Cir. 2008)); *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014) (irreparable environmental injuries outweigh temporary economic harms).

Moreover, in cases involving ESA violations, courts have regularly found that "the equities and public interest factors *always* tip in favor of the protected species." *Cottonwood Envt'l Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1090–91 (9th Cir. 2015) (emphasis added), discussing *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 174, 184, 194 (1978) (listed species are "to be afforded the highest of priorities" and protected "whatever the cost"); *see also NRDC*, 275 F. Supp. 2d at 1146 (holding that "the strong policy" in the ESA "indicates that the court should resolve uncertainties in estimating risk of harm" to species and habitat during the remand process in favor of their protection); *Ctr. for Native Ecosys.*, 795 F. Supp. 2d at 1243 ("in enacting the ESA, Congress definitively skewed the balancing process in favor of species protection").  The harm to Plaintiffs, imperiled species, and the public interest from leaving the 2019 ESA Rules in place weighs heavily against a stay.

> A.   This Court Has Already Determined that Significant Harm Will Result from Keeping the 2019 ESA Rules in Effect During Remand.

In denying the Services' prior motion to stay this litigation, this Court has already recognized the harms to Plaintiffs, species and habitat that would result from leaving the 2019 ESA Rules in effect for an extended period of time, finding that "the possible damage which may result from the granting of a stay also clearly favors lifting the stay."  ECF 138; ECF 145 at 21–23.  Moreover, as noted, the Court's Remand Order finds that leaving the 2019 ESA Rules in place during a remand "will cause equal or greater confusion" among the public, other agencies, and stakeholders, than vacating the rules, given the Services' admitted flaws in the challenged regulations.  Remand Order at 9.

1    Plaintiffs have explained specific harms that would result from continued application of

2  the 2019 ESA Rules, including significant reductions in: (1) protections for threatened species,

3  (2) the number and extent of critical habitat designations, and (3) the number, scope and depth

4  of, and extent of mitigation measures for, inter-agency consultations for federal agency actions.

5  *See* ECF 135 at 6–11; ECF 149 at 13–21.  Unlike Intervenors' speculative economic injuries,

6  these are the types of concrete environmental harms that courts have regularly found to constitute

7  irreparable injury.  *See Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545 (1987)

8  ("Environmental injury, by its nature, can seldom be adequately remedied by money damages

9  and is often permanent or at least of long duration, i.e., irreparable"); *cf. Navajo Nation*, 563 F.

10  Supp. 3d at 1170 (absent vacatur, the "cascading and cumulative" effects on the environment

11  "will continue unabated" and "[s]uch pollution and destruction cannot easily be undone").

12    This is even more true in ESA cases, since the Supreme Court has recognized that the

13  ESA was designed to afford endangered and threatened species the "highest of priorities" and "to

14  halt and reverse the trend toward species extinction, whatever the cost."  *TVA v. Hill*, 437 U.S. at

15  174, 184, 194.  Accordingly, the Court held that the balance of harms always tips in favor of

16  protecting such species.  *See id*. at 194 ("Congress has spoken in the plainest of words, making it

17  abundantly clear that the balance has been struck in favor of affording endangered species the

18  highest of priorities, thereby adopting a policy which it described as 'institutionalized caution'");

19  *accord Cottonwood*, 789 F.3d at 1090–92; *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv*.,

20  422 F.3d 782, 793 (9th Cir. 2005).

21    Beyond continued harm to imperiled species and their habitat, a stay of the 2019 ESA

22  Rules also would increase legal disruption and public confusion given the fundamental legal

23  errors committed in these rulemakings, as the Services themselves admit.  *See* ECF 146-1, ¶¶4–

24  11; ECF 146-2, ¶¶7–8.  By contrast, denial of the stay would continue the regulatory status quo

25  that was in effect for the past 30 years or more.  *See, e.g.*, ECF 146-1, ¶ 5 (prior section 4(d) rule

26  "had been in effect for approximately forty years" and "worked to conserve threatened species

27

28

efficiently"), ¶ 6 (expressing concern re 2019 ESA Rule's "elimination of longstanding regulatory language" regarding listing decisions).  Consequently, continuing this longstanding regulatory regime is the least disruptive and uncertain for the parties, the public, and the courts, while mitigating the environmental harms caused by implementation and application of the 2019 ESA Rules.  *See Cal. by & Through Becerra v. Azar*, 501 F. Supp. 3d 830, 843 (N.D. Cal. 2020) ("[V]acating the agency's action simply preserves a status quo that has existed since at least the early 1990's while the agency takes the time it needs to give proper consideration to the matter"); *cf. Pascua Yaqui Tribe*, 557 F. Supp. 3d at 956 (rejecting argument that reinstating prior rule would increase regulatory uncertainty, since "[t]he pre-2015 regulatory regime is familiar to the Agencies and industry alike," and regulatory uncertainty "typically attends vacatur of any rule and is insufficient to justify remand without vacatur").

Intervenors vaguely claim that Plaintiffs "will not be harmed by a stay" because the Services "will address Plaintiffs' concerns on remand."  ECF 171 at 28.  Given that precisely the same thing could be said for Intervenors' stated concerns, this argument cannot support a stay, especially if the 2019 ESA Rules remain in effect during what could be a lengthy remand period. Intervenors also point to a single statement regarding harm from the Services' reply brief on their remand motion, *id.*, which is contrary not only to the substantial showing of harm made by Plaintiffs, but also to the explicit findings the Court made in its Remand Order.

B.    The Public Interest Is Best Served by Vacating the 2019 ESA Rules.

The same environmental harms that Plaintiffs have identified also demonstrate that the public interest is best served by declining to reinstate the 2019 ESA Rules.  Congress has made clear in the ESA that preservation of endangered species is manifestly in the public interest.  16 U.S.C. §§ 1531(a)(3), (b), (c)(1), 1536(a)(1), 1532(5); *TVA v. Hill*, 437 U.S. at 174, 184, 194.

A stay of the Remand Order pending appeal and allowing the 2019 ESA Rules to remain in effect would also create more of the "general whipsawing" and "substantial uncertainty" that Intervenors caution against.  ECF 171 at 28.  As discussed above, the Remand Order preserves the status quo while the Services undertake a new rulemaking, by returning to a familiar and

well-established regulatory regime, with decades of judicial precedent governing the listing process, designation of critical habitat, and inter-agency consultations under the ESA. *Pascua Yaqui Tribe*, 557 F. Supp. 3d at 956. Given "the lack of harm to [Intervenors] from maintaining the status quo pending resolution of this appeal," and the serious risk of harm to the Plaintiffs and imperiled species posed by the 2019 ESA Rules, "the public interest favors preserving the status quo" and denying the requested stay. *See Doe #1 v. Trump*, 957 F.3d at 1069.

## CONCLUSION

For the foregoing reasons, this Court should deny Intervenors' request for a stay pending appeal.

Respectfully submitted this 4th day of August, 2022.

ROB BONTA
Attorney General of California
DAVID A. ZONANA
DAVID G. ALDERSON
Supervising Deputy Attorneys General

/s/ George Torgun
GEORGE TORGUN, State Bar No. 222085
TARA MUELLER, State Bar No. 161536
Deputy Attorneys General
1515 Clay Street, 20th Floor
P.O. Box 70550
Oakland, CA 94612-0550
Telephone: (510) 879-1002
Email: George.Torgun@doj.ca.gov

MAURA HEALEY
Attorney General of Massachusetts

/s/ Matthew Ireland
TURNER SMITH (*pro hac vice*)
Assistant Attorney General and Deputy Chief
MATTHEW IRELAND
Assistant Attorney General
Office of the Attorney General
Environmental Protection Division
One Ashburton Place, 18th Floor
Boston, MA 02108
Telephone: (617) 727-2200
Email: Matthew.Ireland@mass.gov

BRIAN E. FROSH
Attorney General of Maryland

/s/ Steven J. Goldstein
STEVEN J. GOLDSTEIN (*pro hac vice*)
Special Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
Telephone:  (410) 576-6414
Email:  sgoldstein@oag.state.md.us

*Attorneys for Plaintiffs*

* In compliance with Civil Local Rule 5-1(h)(3), the filer of this document attests that all signatories listed have concurred in the filing of this document.

1

CERTIFICATE OF SERVICE

2
    I hereby certify that on today's date, I electronically filed the foregoing document with

3
the Clerk of the Court using the CM/ECF system, which will send notification of this filing to the

4
attorneys of record and all registered participants.

5
Dated: August 4, 2022.                          */s/ George Torgun*

6                                               GEORGE TORGUN

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28