1    STEVE MARSHALL
     *Attorney General of Alabama*
2    Edmund G. LaCour Jr. (*pro hac vice*)
     *Solicitor General*
3    James W. Davis (*pro hac vice*)
     *Deputy Attorney General*
4    A. Barrett Bowdre (*pro hac vice*)
     *Deputy Solicitor General*
5    OFFICE OF THE ALABAMA ATTORNEY GENERAL
        501 Washington Ave.
6       P.O. Box 300152
        Montgomery, AL 36130
7       Telephone: (334) 353-2196
        Fax: (334) 353-8400
8       E-mail: edmund.lacour@AlabamaAG.gov
               jim.davis@AlabamaAG.gov
9               barrett.bowdre@AlabamaAG.gov

10   *Counsel for Defendant-Intervenor State of
     Alabama*

                                                    Paul Beard II (SBN 210563)
                                                    FISHER BROYLES LLP
                                                       5670 Wilshire Blvd., Ste. 1800
                                                       Los Angeles, CA 90036-5653
                                                       Telephone: (818) 216-3988
                                                       Fax: (213) 402-5034
                                                       E-mail:
                                                    paul.beard@fisherbroyles.com

                                                    *Counsel for Intervening States*

                                                    *[Additional counsel listed on signature
                                                    page]*

11

12                   **UNITED STATES DISTRICT COURT**
                    **NORTHERN DISTRICT OF CALIFORNIA**
13                         **OAKLAND DIVISION**

14   STATE OF CALIFORNIA, *et al.*,                  Case No. 4:19-cv-06013-JST

15        Plaintiffs,                                Related Cases: No. 4:19-cv-06812-JST
                                                                    No. 4:19-cv-05206-JST
16        v.
                                                     **DEFENDANT INTERVENORS' JOINT
17   DEB HAALAND, U.S. Secretary of the Interior,    REPLY IN SUPPORT OF THEIR TIME-
     *et al.*,                                       SENSITIVE MOTION FOR STAY
18                                                   PENDING APPEAL**
          Defendants,
19
          and
20                                                   Date: October 20, 2022
     STATE OF ALABAMA, *et al.*,                     Time: 2:00 p.m.
21                                                   Place: Courtroom 6, 2nd Floor
          State Intervenors,                         Judge: Honorable Jon S. Tigar
22
     WASHINGTON CATTLEMEN'S
23   ASSOCIATION, PACIFIC LEGAL
     FOUNDATION,
24
          Private Landowner Intervenors,
25
     AMERICAN FARM BUREAU FEDERATION,
26   *et al.*,

27        Industry Intervenors.

28

1

2

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................................i

TABLE OF AUTHORITIES .......................................................................................................ii

I.       INTRODUCTION ............................................................................................................. 1

II.      ARGUMENT ..................................................................................................................... 3

      A.  The Defendant Intervenors Are Likely to Succeed on the Merits of Their
          Appeals ....................................................................................................................... 3

          1.  The *American Rivers* Stay is Instructive................................................................. 3

          2.  Plaintiffs' Unbounded View of the Court's Equitable Authority to Act
              Outside the APA is Wrong ............................................................................... 6

          3.  The Court Misapplied *Allied-Signal* ..................................................................... 8

      B.  The Defendant Intervenors Can Appeal This Court's Order ...................................... 8

      C.  The Defendant Intervenors Have Standing to Appeal, and a Stay is Needed to
          Prevent Irreparable Harm Pending Their Appeal ..................................................... 11

      D.  A Stay Pending Appeal Serves the Public Interest .................................................. 12

III.     CONCLUSION................................................................................................................. 14

**TABLE OF AUTHORITIES**

CASES

*Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*,
   988 F.2d 146 (D.C. Cir. 1993) .......................................................................... 3, 8

*Alabama ex rel. Steven T. Marshall v. National Marine Fisheries Service*,
   No. 1:16-cv-00593-CG-MU (S.D. Ala. Nov. 29, 2016)..................................... 9

*Alsea Valley All. v. Dep't of Com.*,
   358 F.3d 1181 (9th Cir. 2004) ............................................... 2, 5, 9, 10, 11

*Animal Legal Defense Fund v. Haaland*,
   No. 19-cv-06812 (N.D. Cal. Oct. 21, 2019) ..................................................... 1

*Cal. Cmtys. Against Toxics v. EPA*,
   688 F.3d 989 (9th Cir. 2012) .......................................................................... 13

*California v. Haaland*,
   No. 19-cv-06013 (N.D. Cal. Sept. 25, 2019) ............................................... 1, 3

*Calvary Chapel Dayton Valley v. Sisolak*,
   982 F.3d 1228 (9th Cir. 2020) .......................................................................... 2

*Center for Biological Diversity v. Haaland*,
   No. 19-cv-05206 (N.D. Cal. Aug. 21, 2019) .................................................... 1

*Chlorine Chemistry Council v. EPA*,
   206 F.3d 1286 (D.C. Cir. 2000)........................................................................ 4

*Collard v. U.S. Dep't of Interior*,
   154 F.3d 933 (9th Cir. 1998) ............................................................................ 9

*Crow Indian Tribe v. United States*,
   965 F.3d 662 (9th Cir. 2020) ..................................................................... 10, 11

*Food Marketing Inst. v. Argus Leader Media*,
   139 S. Ct. 2356 (2019)..................................................................................... 11

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*,
   527 U.S. 308 (1999)........................................................................................... 6

*Hollingsworth v. Perry*,
   558 U.S. 183 (2010).......................................................................................... 2

*Hughes v. Oklahoma*,
   441 U.S. 322 (1979).........................................................................................11

*In re Clean Water Act Rulemaking*,
  568 F. Supp. 3d 1013 (N.D. Cal. 2021), *appeal filed*, No. 21-1691 (9th Cir.
  Nov. 22, 2021) ............................................................................................................ 4

*Louisiana v. Am. Rivers*,
  142 S. Ct. 1347 (2022) ..................................................................................... passim

*Mexichem Specialty Resins, Inc. v. EPA*,
  787 F.3d 544 (D.C. Cir. 2015) ................................................................................. 8

*Montes v. United States*,
  37 F.3d 1347 (9th Cir. 1994) ................................................................................. 10

*Nat'l Fam. Farm Coal. v. EPA*,
  966 F.3d 893 (9th Cir. 2020) ................................................................................. 13

*Nken v. Holder*,
  556 U.S. 418 (2009) ................................................................................................. 6

*North Dakota v. EPA*,
  No. 15-1456 (D.C. Cir. May 15, 2017) .................................................................... 8

*Patel v. Del Taco, Inc.*,
  446 F.3d 996 (9th Cir. 2006) ................................................................................. 10

*Paul v. Daniels*,
  413 F.3d 999 (9th Cir. 2005) ................................................................................. 11

*Perez v. Morg. Bankers Ass'n*,
  575 U.S. 92 (2015) ................................................................................................. 12

*Porter v. Warner Holding Co.*,
  328 U.S. 395 (1946) ................................................................................................. 7

*SKF USA Inc. v. United States*,
  254 F.3d 1022 (Fed. Cir. 2001) ............................................................................... 7

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) ........................................................................................... 3, 12

*Trout Unlimited v. Lohn*,
  559 F.3d 946 (9th Cir. 2002) ................................................................................... 8

*United States v. Morgan*,
  307 U.S. 183 (1939) ........................................................................................... 4, 6

*Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
  435 U.S. 519 (1978) ................................................................................................. 4

*Wagner v. Principi*,
  370 F.3d 1089 (Fed. Cir. 2004)................................................................................. 7

*Washington v. Trump*,
  847 F.3d 1151 (9th Cir. 2017) ................................................................................. 6

*West Virginia v. EPA*,
  142 S. Ct 2587 (2022)................................................................................. 3, 11

**STATUTES**

5 U.S.C. § 706(1) ................................................................................................. 7

5 U.S.C. § 706(2) ......................................................................................... 2, 6, 7

**REGULATIONS**

49 Fed. Reg. 38,900, 38,909 (Oct. 1, 1984)................................................. 13

81 Fed. Reg. 7414 (Feb. 11, 2016) ............................................................. 13

84 Fed. Reg. 44,753, 44,757 (Aug. 27, 2019)............................................. 13

50 C.F.R. § 424.12(b)(1-5) ........................................................................... 13

<u>**REPLY**</u>

## I.    INTRODUCTION

Plaintiffs are walking quite the tight rope. On the one hand they ask this Court to take the extraordinary step of altering its order and judgment based on their concern that the Supreme Court's stay in *Louisiana v. American Rivers*, 142 S. Ct. 1347 (2022), indicates that they may have led the Court into error (or that at least a similar stay could be warranted in this case). *See* ECF 180 at 6.[1] Plaintiffs do not put it quite that way, of course; they claim that it is "*Intervenors'* interpretation of the legal effect of the Supreme Court's unexplained order [that] casts uncertainty over this case." *Id.* (emphasis added). But if there were not merit to "Intervenors' interpretation," why file the Rule 59(e) motion?

On the other hand, Plaintiffs say there is nothing to worry about—the Court's pre-merits vacatur was "well-founded," ECF 181 at 7, the Defendant Intervenors cannot show that the order "was erroneous," *id.*, and as for the Supreme Court's stay order, nothing at all can be gleaned except "questions about what the Supreme Court may one day decide," *id.* at 13. Not only that, Plaintiffs say, but only federal agencies can seek appellate review of a court's pre-merits vacatur, meaning that the only the way the Supreme Court could even give that future guidance is if the federal government happens to appeal. *See id.* at 11-12.

For their part, the Federal Defendants do not defend the Court's order. They agree that "the Court erred in vacating" the challenged regulations without considering their legality, ECF 182 at 11-12, and they emphasize that the government "did not confess error on any aspect of the 2019 ESA Rules," *id.* at 12 n.4. Nevertheless, they too argue that the Court's error is unreviewable unless they (and only they) decide to appeal. *Id.* at 12. They also argue that the Defendant Intervenors have neither established standing to appeal nor demonstrated harm from the Court's judgment. *Id.* at 13-14.

---

[1] The Defendant-Intervenors are filing an identical joint reply in each of the three related cases: *Center for Biological Diversity v. Haaland*, No. 19-cv-05206 (N.D. Cal. Aug. 21, 2019); *California v. Haaland*, No. 19-cv-06013 (N.D. Cal. Sept. 25, 2019); and *Animal Legal Defense Fund v. Haaland*, No. 19-cv-06812 (N.D. Cal. Oct. 21, 2019). Except where otherwise noted, reference will be made to the ECF numbers in the lowest-numbered case: *Center for Biological Diversity*.

1    These arguments fail. *First*, the Supreme Court's order in *American Rivers* is in fact quite

2    instructive. Plaintiffs and the Federal Defendants recognize that the primary considerations for *any*

3    court to grant a stay are likelihood of success on the merits and injury absent a stay. ECF 182 at

4    11; ECF 181 at 10-11. And for the Supreme Court to grant "a stay pending the filing and

5    disposition of a petition for a writ of certiorari, an applicant *must* show … a fair prospect that a

6    majority of the Court will vote to reverse the judgment below" and "a likelihood that irreparable

7    harm will result from the denial of a stay." *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010)

8    (emphasis added). That the Supreme Court granted a stay in *American Rivers*, then, means that the

9    intervenors in that case met these requirements. It is thus notable that the Supreme Court granted

10   the stay even though the other parties in that case had also argued that the intervenors could not

11   seek review of a district court's pre-merits vacatur and that the intervenors would not be harmed.

12   By granting the stay in the face of these arguments, the Supreme Court strongly "signal[ed] its

13   view of the merits." *American Rivers*, 142 S. Ct. at 1349 (Kagan, J., dissenting). This Court should

14   heed that signal. *Cf. Calvary Chapel Dayton Valley v. Sisolak*, 982 F.3d 1228, 1232-33 (9th Cir.

15   2020).

16       *Second*, the Defendant Intervenors can seek appellate review in this case because "review

17   would, as a practical matter, be foreclosed if an immediate appeal were unavailable." *Alsea Valley*

18   *All. v. Dep't of Com.*, 358 F.3d 1181, 1184 (9th Cir. 2004). The question on appeal is whether a

19   district court has the authority to vacate agency action when the action has *not* been "found" to be

20   "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "without

21   observance of procedure required by," or "in excess of statutory jurisdiction, authority, or

22   limitations, or short of statutory right." 5 U.S.C. § 706(2). That question will not be—cannot be—

23   addressed by the agencies on remand.

24       *Third*, the Defendant Intervenors have standing to appeal and will be irreparably harmed

25   without a stay. The Federal Defendants recognize that their standing arguments are the same ones

26   they lodged against Plaintiffs, "albeit conversely." ECF 182 at 13. The Court rejected them, finding

27   that the state and organizational plaintiffs had sufficiently alleged that they are indeed affected by

28

Defendant Intervenors' Reply
in Supp. of Mot. for Stay
No. 4:19-cv-06013-JST

the current regulations. *E.g.*, *California*, ECF 98 at 8-9. The same is true here, "albeit conversely": the Defendant Intervenors have all shown that they will be significantly harmed if the current regulations are vacated. *See, e.g.*, ECF 171 at 23-28. They will be subject once again to the unlawful 2016 regulations that brought them significant real-world harm and which they fought to replace. They will suffer from regulatory whiplash from being governed by the 2019 rules, then the 2016 rules, and then the 2023 (or 2024) rules in a short period. Their procedural right to comment on a rule's rescission will be abolished, and with it any hope that the Services will protect their concrete interests by not rescinding the rule. *Cf. Summers v. Earth Island Inst.*, 555 U.S. 488, 497-98 (2009). And they will likely forever lose their right to appellate review because new regulations would moot their appeal. That is enough to seek (and obtain) a stay from this Court, and to ask for relief on appeal. *See West Virginia v. EPA*, 142 S. Ct 2587, 2606 (2022).

The Defendant Intervenors respectfully ask the Court to stay the vacatur order pending appeal.

## II.   ARGUMENT

### A.   The Defendant Intervenors Are Likely to Succeed on the Merits of Their Appeals.

As they explained in their stay motion, the Defendant Intervenors are likely to succeed on the merits of their appeals. *See* ECF 171 at 17-23. Courts cannot "set aside agency action" under the APA without first making a merits determination, and that truth infects any attempt to apply *Allied-Signal* to a rule that has not been found unlawful because the test *assumes* the very thing in dispute: that the rule in question *is* unlawful.

Plaintiffs offer three rejoinders: (1) that nothing can be learned from the Supreme Court's action in *American Rivers*, (2) that the Court has broad "equitable authority" to grant relief outside of the APA, and (3) that the Court correctly applied *Allied-Signal*. ECF 181 at 12-23. None are persuasive.

### 1.   The *American Rivers* Stay is Instructive.

As this Court recognized when it relied on the district court's pre-merits vacatur order in *American Rivers*, ECF 168 at 6-7, the relevant issues in that case and this one are strikingly similar.

In both cases, plaintiffs challenged environmental regulations. *See In re Clean Water Act Rulemaking*, 568 F. Supp. 3d 1013, 1020 (N.D. Cal. 2021), *appeal filed*, No. 21-1691 (9th Cir. Nov. 22, 2021), *stay granted*, *Louisiana v. Am. Rivers*, 142 S. Ct. 1347 (2022). In both cases, before full briefing and a merits determination could occur, the federal defendants moved to remand without vacatur, while the plaintiffs moved for remand *with* vacatur. *Id.* at 1020-21. In both cases, the district courts granted plaintiffs the full relief they sought, setting aside final agency action without first determining whether the action was unlawful. *Id.* at 1028.

When the intervenors in *American Rivers* sought a stay pending appeal, the plaintiffs and the federal government in that case made similar arguments, too. Before the Supreme Court, for instance, the plaintiffs there—many of whom are plaintiffs here—argued that pre-merits vacatur is consistent with the "courts' traditional understanding of equitable authority over administrative actions." *See* Resp. to App. for Stay Pending Appeal at 13, *Louisiana v. Am Rivers*, No. 21A539 (U.S. Mar. 28, 2022) ["*Am. Rivers* Ps' Resp."]. They even relied on the same sentence from the same case that Plaintiffs do here: *United States v. Morgan*, 307 U.S. 183, 191 (1939), decided before the APA was even enacted. *Compare Am. Rivers* Resp. 13 *with* ECF 181 at 16. So it went for the rest of their response—the same cases discussed, the same arguments made, the same or similar phrasing used. *Compare, e.g.*, *Am. Rivers* Ps' Resp. 12 ("A court must have the power to vacate a rule when granting an agency's request for remand because otherwise the rule's challengers are left subject to a rule they claim is invalid." (citing *Chlorine Chemistry Council v. EPA*, 206 F.3d 1286, 1288 (D.C. Cir. 2000)); *id.* at 15 ("The APA's sovereign immunity waiver provision is no more helpful to Applicants than its judicial review provision."); *and id.* at 14 ("*Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519 (1978), does not counsel otherwise or control."), *with* ECF 181 at 15 ("Without equitable authority to vacate a challenged rule on voluntary remand, a plaintiff would be unfairly precluded from litigating a rule—which it asserts is legally invalid and causing ongoing harm—for an indefinite period of time." (citing *Chlorine Chemistry Council*, 206 F.3d at 1288)); *id.* at 17 ("The APA's sovereign

1    immunity waiver provision likewise is not helpful to Intervenors."); *and id.* at 16 n.4 ("*Vermont*

2    *Yankee Nuclear Power Corp.* … does not dictate a different result….").

3           The same is true for the federal government's arguments. There, as here, the federal

4    defendants agreed "that the district court lacked authority to vacate the [challenged] Rule[s]

5    without first determine that the Rule[s] w[ere] invalid." Mem. for Fed. Resp. at 13, *Louisiana v.*

6    *Am. Rivers*, No. 21A539 (U.S. Mar. 28, 2022) ["*Am. Rivers* Fed. Resp."]; *see* ECF at 6. They

7    nevertheless opposed the intervenors' stay application because, among other reasons, the

8    government claimed that under Ninth Circuit precedent the remand order was not final as to anyone

9    but the government. *Am. Rivers* Fed. Resp. 20 (citing *Alsea Valley*, 358 F.3d at 1184); *see* ECF

10   182 at 12. The plaintiffs also made that argument, there and here. *See Am. Rivers* Ps' Resp. 11;

11   ECF 181 at 11-12. And they—the plaintiffs and the federal defendants—also argued that the

12   intervenors had not demonstrated that they would suffer harm absent a stay because their alleged

13   harms were "too speculative." *Am. Rivers* Fed. Resp. 17; *Am. Rivers* Ps' Resp. 20-21; ECF 181

14   23; ECF 182 14. So it goes here.

15          The point here is not to fault the other parties and their counsel for recycling their briefing.

16   The point is that their recycling makes perfect sense: the issues and arguments in the two cases are

17   nearly identical, and *they were presented to and considered by the Supreme Court* in *American*

18   *Rivers*. That is important because Plaintiffs paint the Supreme Court's stay order as "unusual,"

19   entered "without explanation" and "without full briefing and argument"—an enigma about which

20   nothing can be known save for some "questions about what the Supreme Court may one day

21   decide." ECF 181 at 13 (citations omitted). For this to be true, though, Plaintiffs' primary argument

22   must be false: that the Defendant Intervenors "are not entitled to a stay because they have failed to

23   make a strong showing of success on the merits of their appeal." ECF 181 at 11. Either the same

24   standard governs both cases—in which case we can tell from the Supreme Court's decision that it

25   determined that the intervenors in *American Rivers* are likely to succeed on the merits of their

26   appeal—or Plaintiffs have enunciated the wrong standard and the Defendant Intervenors here need

27   not show a likelihood of success. Of course, the former is true. *See* ECF 181 at 10 (citing *Nken v.*

28

*Holder*, 556 U.S. 418, 427 (2009); *Washington v. Trump*, 847 F.3d 1151, 1164 (9th Cir. 2017)). The *American Rivers* stay thus "signal[ed]" the Court's "view of the merits." 142 S. Ct. at 1349 (Kagan, J., dissenting). Because the merits of the two cases are so similar, the Defendant Intervenors in this case are entitled to a stay, too.

> **2.     Plaintiffs' Unbounded View of the Court's Equitable Authority to Act Outside the APA is Wrong.**

In the APA, Congress authorized district courts to "hold unlawful and set aside agency action" when the action is "found to be" "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "without observance of procedure required by law." 5 U.S.C. § 706(2). Courts cannot "set aside agency action" consistent with these statutory requirements *unless* they find the agency action unlawful.

Plaintiffs do not necessarily disagree with that proposition. Instead, they argue that the APA's limitation does not matter because courts have "inherent equitable authority" to act outside those statutory bounds. *See* ECF 181 at 14-18. Relying on the Supreme Court's pre-APA decision in *Morgan*, Plaintiffs assert that "[a] court reviewing agency action 'sits as a court of equity' and may shape relief 'in conformity to equitable principles.'" ECF 181 at 16 (quoting *Morgan*, 307 U.S. at 191). Doing equity here, they conclude, means pre-merits vacatur. *Id.*

There are at least two problems with this reasoning. First, "equity" is not a free-floating get-out-of-jail-free card that allows courts to sidestep the law whenever they think it best. Rather, the federal courts' traditional equitable discretion is tethered to "the jurisdiction in equity exercised by the High Court of Chancery in England at the time of the adoption of the Constitution and the enactment of the original Judiciary Act, 1789." *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 318 (1999) (citation omitted). So the question is "whether the relief [Plaintiffs] requested here"—pre-merits vacatur—"was traditionally accorded by courts of equity." *Id.* at 319. The answer is no: Plaintiffs have not pointed to a historical analog for the novel "equitable" remedy they asked this Court to craft.

Second, as Plaintiffs recognize, traditional equitable jurisdiction is limited when, "by a necessary and inescapable inference," a statute "restricts the court's jurisdiction in equity." ECF 181 at 16 (quoting *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946)). The APA provides just such an inference. By setting out precise paths by which courts may "set aside agency action"—by first "hold[ing]" that action "unlawful," 5 U.S.C. § 706(2)—Congress necessarily closed off other avenues. Any other reading would make the procedure Congress mandated superfluous. It would also have no logical ending point. If "equity" allows a court to ignore the APA's requirement that it "review the whole record or those parts of it cited by a party" before setting agency action aside, can it also ignore the record when it holds agency action unlawful? Can it "compel agency action []*lawfully* withheld," *id.* § 706(1), if the court determines it would be "equitable" to do so? And if courts have the inherent equitable authority to set aside agency action without finding it unlawful, must they wait for a lawsuit to do so, or can they scan the pages of the Federal Register and vacate rules that (say) a new administration begins to have "substantial concerns" about? These questions sound absurd, and they are, but it is not at all apparent what line of reasoning separates them from the question in this case: whether a court can rely on its "equitable" authority to grant relief the APA does not contemplate.

Plaintiffs also raise the concern that, if pre-merits "vacatur is *not* available, agencies may withdraw illegal actions … from judicial review, without the accountability of confessing error, and leave parties challenging that action—like Plaintiffs here—without any meaningful remedy." ECF 181 at 18. This is not so much an argument *for* pre-merits vacatur as it is an argument *against* remand without vacatur when "the agency's request is frivolous or in bad faith," *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001)—or when there are other reasons to deny an agency's request for remand, *see Wagner v. Principi*, 370 F.3d 1089, 1092-97 (Fed. Cir. 2004) (denying an agency motion for remand and instead reaching the merits of a statutory question). Plaintiffs could have opposed the Federal Defendants' remand motion in its entirety and argued that only a merits determination would give them a meaningful (and lawfully obtained) remedy.

1   Or they could have sought a preliminary injunction to enjoin enforcement of the regulations. That

2   they did neither does not mean "equity" must tread a new path.

3              **3.      The Court Misapplied *Allied-Signal*.**

4         Because the application of *Allied-Signal* to this case has already been so thoroughly

5   briefed, the Defendant Intervenors offer here only a couple of points in reply to Plaintiffs' latest

6   arguments.

7         One, Plaintiffs continue to emphasize that "the Services express multiple 'substantial

8   concerns'" with certain provisions of the 2019 Rules. ECF 181 at 20-21. And the Services'

9   "concerns" continue to be irrelevant. For one, as the Federal Defendants note in their response,

10  while they "expressed substantial concerns," the Services "did not confess error on any aspect of

11  the 2019 ESA Rules." ECF 182 at 12 n.4. For another, even if the Federal Defendants

12  had confessed error, that would also not justify a pre-merits vacatur under the first step of *Allied-*

13  *Signal*. *See Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 557 (D.C. Cir. 2015) ("EPA's

14  consent is not alone a sufficient basis for us to stay or vacate a rule."); *see also* Supp. Br. for State

15  Respondent-Intervenors States of Cal. et al., at 5 n.5, *North Dakota v. EPA*, No. 15-1456 (D.C.

16  Cir. May 15, 2017) ("Even if EPA disclaims its previous positions, vacatur is not permissible.").

17        Two, Plaintiffs note that, "[i]n particular, the Services expressed multiple 'substantial

18  concerns' with the Blanket 4(d) Rule Repeal that eliminated the so-called 'blanket' protections for

19  species listed as threatened." ECF 181 at 20. And they claim that the rule could not be adopted

20  again on remand because of its "multiple legal infirmities." *Id.* at 21. Conspicuously left out of this

21  analysis, though, is any mention that the Ninth Circuit has already recognized that a non-blanket

22  4(d) rule is permissible. *See Trout Unlimited v. Lohn*, 559 F.3d 946, 962 (9th Cir. 2002). The

23  Service thus *could* retain the 2019 4(d) rule on remand, and it is very likely *required* to do so. *See,*

24  *e.g.*, ECF 152 at 21-23.

25            **B.      The Defendant Intervenors Can Appeal This Court's Order.**

26        Next, while Plaintiffs emphasize that pre-merits vacatur "prevents … deprivation of

27  Plaintiffs' day in court," ECF 181 at 11, they show remarkably little concern for anyone else's

28

1   adjudicative rights. Relying on the Ninth Circuit's decision in *Alsea Valley*, 358 F.3d at 1184-86,

2   both they and the Federal Defendants claim that the Defendant Intervenors cannot appeal the

3   Court's final judgment because *no one* can appeal that judgment except for the Services. *Id.*; *see*

4   ECF 182 at 12. *Alsea Valley* does not impose such a harsh and unfair rule.

5       In the Ninth Circuit, "[a] remand order will be considered 'final'"—and thus appealable—

6   "'where (1) the district court conclusively resolves a separable legal issue, (2) the remand order

7   forces the agency to apply a potentially erroneous rule which may result in a wasted proceeding,

8   and (3) review would, as a practical matter, be foreclosed if an immediate appeal were

9   unavailable.'" *Alsea Valley*, 358 F.3d at 1184 (quoting *Collard v. U.S. Dep't of Interior*, 154 F.3d

10   933, 935 (9th Cir. 1998)). Such is the case here.

11      First, the Court conclusively resolved whether it possesses the equitable authority to vacate

12   agency regulations without an adjudication of the merits. That issue is the whole case at this point.

13   *See* ECF 169 (entering judgment and closing case). And that issue is clearly "separable" from the

14   underlying merits, which the Court never resolved and *will* never resolve in this case.

15      Second, the vacatur "order forces the [Services] to apply a potentially erroneous rule which

16   may result in a wasted proceeding," *Alsea Valley*, 358 F.3d at 1184 (citation omitted), because it

17   resurrects the pre-2019 blanket 4(d) rule and rules for designating unoccupied critical habitat and

18   delisting species. As the Defendant Intervenors have argued throughout this litigation, much of

19   this regulatory regime was unlawful. *E.g.*, ECF 171 at 11-14; ECF 159 at 9-20; ECF 47 at 11-19.

20   That is why, for instance, the Private Landowner Intervenors filed a rulemaking petition with FWS

21   urging repeal of the blanket 4(d) rule, *see* ECF 152-1 at ¶ 3, and many of the State Intervenors

22   challenged the 2016 rules in court, *see Alabama ex rel. Steven T. Marshall v. National Marine

23   Fisheries Service*, No. 1:16-cv-00593-CG-MU (S.D. Ala. Compl. Filed Nov. 29, 2016), ECF 1.

24      Third, "review would, as a practical matter, be foreclosed if an immediate appeal were

25   unavailable." *Alsea Valley*, 358 F.3d at 1184 (citation omitted). The premise of *Alsea Valley* is that

26   remand is not final to non-agency litigants because they may "influence the ultimate shape of the

27   Service rule during the public participation phase of the rulemaking process," and then can

28

Defendant Intervenors' Reply
in Supp. of Mot. for Stay
No. 4:19-cv-06013-JST

challenge any resulting rule as needed. 358 F.3d at 1184-85. Not so here. On remand, the Services will not decide—indeed, cannot decide—whether a district court has the authority to enter a pre-merits vacatur. And given the Court's vacatur, there need not even *be* any further process for the Services to rescind the challenged rules because they have already been whisked away. That means that any APA process in which the Defendant Intervenors *could* have advocated for retention of the rules has been rendered superfluous. Unless they are able to appeal this Court's order, the Defendant Intervenors' right to appellate review will be forever foreclosed.

That cannot be the case. The Ninth Circuit gives the finality requirement "a practical rather than a technical construction." *Montes v. United States*, 37 F.3d 1347, 1350 (9th Cir. 1994). Finality exists whenever there "is a full adjudication of the issues." *Patel v. Del Taco, Inc.*, 446 F.3d 996, 1000 (9th Cir. 2006). Thus, in *Crow Indian Tribe v. United States*, 965 F.3d 662, 670, 675-77 (9th Cir. 2020), the Court of Appeals recognized that the *Alsea Valley* rule did *not* prevent the intervenors in that case from seeking appellate review of a district court's order. That order had vacated and remanded an FWS rule concerning the delisting of certain grizzly bear populations because (among other reasons) FWS had failed to include a "recalibration of any new grizzly population estimator" in its rule. The Ninth Circuit explained that, in *Alsea Valley*, it had held that "the remand order was not final as to the private party intervenors … because their positions would be taken into account in the remand proceeding." *Id.* at 676. "The same is not the case here," the Court held, "because the district court has issued a definitive ruling, contrary to the Intervenors' position, concluding that the FWS's failure to include a commitment to recalibration in the 2017 Rule was arbitrary and capricious." *Id.* The Court continued: "Indeed, the FWS removed a commitment to recalibration from the 2017 Rule at the insistence of the Intervenors. The district court has now ordered the FWS to include it in any new rulemaking. An appeal is the only way the Intervenors' objections can be considered. We thus have jurisdiction to consider their appeal." *Id.* (citations omitted).

So too here: "An appeal is the only way the Intervenors' objections can be considered." And that makes sense, given the "practical" construction to finality the Ninth Circuit applies. Were

it otherwise, *Alsea Valley* could be misconstrued to immunize from review any scenario where a new administration attains the windfall of a pre-merits vacatur of its predecessor's actions. That cannot be the rule, and thankfully is not.

### C. The Defendant Intervenors Have Standing to Appeal, and a Stay is Needed to Prevent Irreparable Harm Pending Their Appeal.

As explained in their motion, a stay is needed to prevent irreparable harm. *See* ECF 171 at 23-28. That was true of the intervenors in *American Rivers*, and it is true of the Defendant Intervenors here.

Both the Plaintiffs and Federal Defendants challenge this aspect of the Defendant Intervenors' motion, with the Federal Defendants going so far as to claim (in a single, conclusory paragraph) that the Defendant Intervenors lack standing to appeal because they have not shown injury in fact. ECF 182 at 13-14; *see* ECF 181 at 23-26. These claims blink reality.

"In considering a litigant's standing to appeal, the question is whether it has experienced an injury 'fairly traceable to the *judgment below*.'" *West Virginia*, 142 S. Ct. at 2606 (quoting *Food Marketing Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2362 (2019)). "If so, and a favorable ruling from the appellate court would redress that injury, then the appellant has a cognizable Article III stake." *Id.* (cleaned up and citation omitted).

Here, the Court vacated the 2019 rules that the Defendant Intervenors fought for and relied on. In so doing, the Court resurrected the pre-2019 rules. *See Paul v. Daniels*, 413 F.3d 999, 1008 (9th Cir. 2005) ("The effect of invalidating an agency rule is to reinstate the rule previously in force."). Yet those rules *were* harmful to the Defendant Intervenors, and resurrecting them *is* harmful to the Defendant Intervenors. *See* ECF 171 at 23-28. That claim is not speculative: We know what those rules are and how they interfered with States' ability to protect their natural resources as they saw fit. *E.g.*, ECF 47 at 11-13; *see also Crow Indian Tribe*, 965 F.3d at 676-77 (recognizing states' standing to appeal because "states have an interest in conservation and protection of wild animals" (quoting *Hughes v. Oklahoma*, 441 U.S. 322, 337 (1979)). We know that the 2019 Section 4 and Section 4(d) rules provided regulatory relief to Washington Cattlemen's Association's membership by reducing burdensome costs associated with ESA

11

regulation and incentivizing those whose properties are impacted by the presence of endangered species to care for the species by tying species improvement to less regulation. *See, e.g.*, ECF 41-4 ¶¶ 5-7, 10, 13. We know that reimposing the pre-2019 section 7 regime will reduce transparency, promote inefficiency, and re-impose burdensome and time-consuming requirements that are often barriers to members of the Industry Intervenors obtaining federal permits, licenses, leases, or contracts that are necessary for their operations. *See* Meadows/API Decl. at ¶ 7 (ECF 36-5); Ward/NAHB Decl. at ¶ 9 (ECF 36-8); Yates/AFBF Decl. at ¶ 8 (ECF 36-3); Joseph/AFRC Decl. at ¶ 5 (ECF 36-4); Meadows/API Decl. at ¶ 7 (ECF 36-5); Imbergamo/FFRC Decl. at ¶ 4 (ECF 36-6); Beymer/PLC Decl. at ¶ 2 (ECF 36-10).

Nor can Federal Defendants so easily write off the Defendant Intervenors' procedural concerns. *See* ECF 182 at 13. As the case they rely on explains, "deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Summers*, 555 U.S. at 496. But the Defendant Intervenors' procedural injuries do not exist "*in vacuo*." The Court's judicial bypass of the APA's requirements harms the Defendant Intervenors in the real world (as detailed at ECF 171 at 23-28), nullifies their past participation in the rulemaking process (because it vacates a rule adopted by the Services without finding it unlawful), and makes meaningless any future participation (if the Services even go through notice-and-comment to "rescind" the already-vacated rules).

### D.     A Stay Pending Appeal Serves the Public Interest.

Last, a stay pending appeal also serves the public interest because the public is entitled to participate in notice and comment before a duly enacted regulation is vacated without a determination that the regulation is unlawful. *Cf. Perez v. Morg. Bankers Ass'n*, 575 U.S. 92, 101 (2015). A stay would also preserve regulatory certainty, rather imposing on the public and regulated entities three sets of rules in a matter of months. As the Federal Defendants recognize, left unabated, the Court's action will "cause confusion among the public, other agencies, and stakeholders, and impede the efficiency of ESA implementation, by abruptly altering the regulatory framework and creating uncertainty about which standards to apply." ECF 146 at 36;

*see also Nat'l Fam. Farm Coal. v. EPA*, 966 F.3d 893, 929 (9th Cir. 2020) (warning of "the disruptive consequences of an interim change that may itself be changed" (quoting *Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012)).

Plaintiffs downplay these concerns by baldly asserting that "denial of the stay would continue the regulatory status quo that was in effect for the past 30 years or more." ECF 181 at 28. But that is a remarkable (and false) statement considering that: (1) the 2019 Rules have now been in effect for three years, (2) vacating those rules resurrects the 2016 rules that were also in effect for three (not thirty) years, and (3) it was the 2019 Rules that *restored* the Services' longstanding two-step approach for designating "critical habitat"—a rule that the Services *had* used for thirty years before the 2016 rules charted a new course. *See* 49 Fed. Reg. 38,900, 38,909 (Oct. 1, 1984) (previously codified at 50 C.F.R. § 424.12(b)(1-5)), *amended by* Listing Endangered and Threatened Species and Designating Critical Habitat; Implementing Changes to the Regulation for Designating Critical Habitat, 81 Fed. Reg. 7414 (Feb. 11, 2016). In any event, given that Plaintiffs never sought a preliminary injunction, we are hardly in a "pre-effective date" posture where considerations of "status quo" versus "new practice" is an especially relevant consideration.

Plaintiffs also rely on their allegations of environmental harm to argue against a stay. ECF 181 at 28. But Plaintiffs' allegations are unproven (hence the *pre*-merits vacatur), and the Services determined that their 2019 regulations would *not* harm the environment. *E.g.*, 84 Fed. Reg. 44,753, 44,757 (Aug. 27, 2019) ("By meaningfully recognizing the differences in the regulatory framework between endangered species and threatened species, we believe that crafting species-specific 4(d) rules will incentivize conservation for both endangered species and threatened species. Private landowners and other stakeholders may see more of an incentive to work on recovery actions for endangered species, with an eventual goal of downlisting to threatened species status with a species-specific 4(d) rule that might result in reduced regulation."). Unless and until Plaintiffs can prove their case, the public interest is not served by vacating rules that were lawfully enacted.

### III.     CONCLUSION

At root, Plaintiffs' and the Federal Defendants' opposition to the Defendant Intervenors' stay motion is a cynical attempt to make this Court's pre-merits vacatur unreviewable. But the Court has made its decision, and the Defendant Intervenors are entitled to seek appellate review so a higher court can resolve the pre-merits vacatur question. To guarantee that such review can occur, the Defendant Intervenors respectfully request that the Court stay its order vacating the challenged Rules pending appeal.

In compliance with Local Rule 5-1, the filer of this document attests that all signatories listed have concurred in the filing of this document.

Respectfully submitted this 11th day of August, 2022.

14

STEVE MARSHALL
Attorney General of Alabama

s/ A. Barrett Bowdre
Edmund G. LaCour Jr. (*pro hac vice*)
*Solicitor General*
James W. Davis (*pro hac vice*)
*Deputy Attorney General*
A. Barrett Bowdre (*pro hac vice*)
*Deputy Solicitor General*
OFFICE OF THE ALABAMA ATTORNEY
GENERAL
501 Washington Ave.
Montgomery, AL 36130
Telephone: (334) 353-2196
Fax: (334) 353-8400
E-mail: edmund.lacour@AlabamaAG.gov
jim.davis@AlabamaAG.gov
barrett.bowdre@AlabamaAG.gov

*Counsel for Defendant-Intervenor*
*State of Alabama*

s/ Paul Beard II
Paul Beard II (SBN 210563)
FISHERBROYLES LLP
5670 Wilshire Blvd., Ste. 1800
Los Angeles, CA 90036-5653
Telephone: (818) 216-3988
Fax: (213) 402-5034
E-mail: paul.beard@fisherbroyles.com

*Counsel for Intervening States*

MARK BRNOVICH
Attorney General of Arizona

s/ L. John LeSueur
L. John LeSueur (*pro hac vice*)
Assistant Attorney General
OFFICE OF THE ARIZONA ATTORNEY GENERAL
2005 N. Central Avenue
Phoenix, Arizona 85004
Telephone: (602) 542-0640
E-mail: John.LeSueur@azag.gov

*Counsel for Defendant-Intervenor*
*State of Arizona ex rel. Ariz. Game & Fish*
*Commission*

s/ Charles T. Yates
Charles T. Yates (SBN 327704)
Email: cyates@pacificlegal.org
Damien M. Schiff (SBN 235101)
Email: dschiff@pacificlegal.org
PACIFIC LEGAL FOUNDATION
555 Capitol Mall, Ste. 1290
Sacramento, CA 95814
Telephone: (916) 419-7111

*Counsel for Private-Landowner-Intervenors*
*Washington Cattlemen's Association and*
*Pacific Legal Foundation*

s/ Christopher J. Carr
Christopher J. Carr (SBN 184076)
Navi Singh Dhillon (SBN 279537)
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, CA 94111
Telephone: (415) 856-7000
chriscarr@paulhastings.com
navidhillon@paulhastings.com

*Counsel for Industry Defendant-Intervenors*
*American Farm Bureau, American Forest*
*Resource Council, American Petroleum*
*Institute, Federal Forest Resource Coalition,*
*National Alliance of Forest Owners, National*
*Association of Home Builders, National*
*Cattlemen's Beef Association, and Public*
*Lands Council*

*[Additional counsel listed on next page]*

Defendant Intervenors' Reply
in Supp. of Mot. for Stay
No. 4:19-cv-06013-JST

DEREK SCHMIDT
Attorney General of Kansas

s/ Jeffrey A. Chanay
Jeffrey A. Chanay (*pro hac vice*)
*Chief Deputy Attorney General*
OFFICE OF THE KANSAS ATTORNEY GENERAL
120 SW Tenth Avenue
Topeka, KS 66612-1597
Telephone: (785) 296-2215
Fax: (785) 291-3767
E-mail: jeff.chanay@ag.ks.gov

*Counsel for Defendant-Intervenor*
*State of Kansas*

DOUGLAS J. PETERSON
Attorney General of Nebraska

s/ Justin D. Lavene
Justin D. Lavene (*pro hac vice*)
*Assistant Attorney General*
Carlton Wiggam (*pro hac vice*)
*Assistant Attorney General*
2115 State Capitol
Lincoln, NE 68509
Telephone: (402) 471-2682
E-mail: justin.lavene@nebraska.gov
carlton.wiggam@nebraska.gov

*Counsel for Defendant-Intervenor*
*State of Nebraska*

AUSTIN KNUDSEN
Attorney General of Montana

s/ David Dewhirst
David Dewhirst (*pro hac vice*)
*Solicitor General*
MONTANA DEPARTMENT OF JUSTICE
215 N. Sanders St., P.O. Box 201401
Helena, MT 59620-1401
Telephone: (406) 444-3602
Fax: (406) 444-2026
E-mail: david.dewhirst@mt.gov

*Counsel for Defendant-Intervenor*
*State of Montana*

TREG. R. TAYLOR
Attorney General of Alaska

LESLIE RUTLEDGE
Attorney General of Arkansas

LAWRENCE G. WASDEN
Attorney General of Idaho

ERIC S. SCHMITT
Attorney General of Missouri

DREW H. WRIGLEY
Attorney General of North Dakota

SEAN D. REYES
Attorney General of Utah

PATRICK MORRISEY
Attorney General of West Virginia

BRIDGET HILL
Attorney General of Wyoming